UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                    :

IN RE BANK OF AMERICA CORP.      :
SECURITIES, DERIVATIVE, AND     :
EMPLOYEE RETIREMENT INCOME   :
SECURITY ACT (ERISA) LITIGATION  :
                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                    :

THIS DOCUMENT RELATES TO     :
                    :

Consolidated Securities Action      :
                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Master File
No. 09 MD 2058 (PKC)

ECF Case

Oral Argument Requested

## MEMORANDUM OF LAW IN SUPPORT OF
## OUTSIDE DIRECTORS' MOTION FOR SUMMARY JUDGMENT

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Counsel for Defendants William Barnet,
III, Frank P. Bramble, Sr., John T.
Collins, Gary L. Countryman, Tommy R.
Franks, Charles K. Gifford, Monica C.
Lozano, Walter E. Massey, Thomas J.
May, Patricia E. Mitchell, Thomas M.
Ryan, O. Temple Sloan, Jr., Meredith R.
Spangler, Robert L. Tillman and Jackie
M. Ward*

Dated:  June 3, 2012

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .......................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................. 5

I.   THE OUTSIDE DIRECTORS ARE ENTITLED TO SUMMARY JUDGMENT ON
     PLAINTIFFS' SECTION 11 CLAIM ................................................................... 5

     A.   The Section 11 Claim ............................................................................... 6

     B.   The Outside Directors' Due Diligence Defense ...................................... 6

     C.   There Is No Genuine Issue As to Whether the Outside Directors Had,
          After Reasonable Investigation, Reasonable Grounds to Believe that the
          Form 8-K Report Accurately Described the Merger Agreement............. 9

II.  THE OUTSIDE DIRECTORS ARE ENTITLED TO SUMMARY JUDGMENT ON
     PLAINTIFFS' SECTION 14(a) CLAIMS ......................................................... 13

     A.   There Is No Genuine Issue as to Whether the Outside Directors Were
          Negligent for Any Misstatement in the Proxy Regarding Merrill's Ability
          to Pay Bonuses for 2008 ....................................................................... 14

     B.   There Is No Genuine Issue as to Whether the Outside Directors Were
          Negligent for the Nondisclosure of Merrill's Fourth Quarter Losses.... 16

     C.   There Is No Genuine Issue as to Whether the Outside Directors Were
          Negligent for the Nondisclosure of the Alleged Existence of a Material
          Adverse Change or Updated Accretion/Dilution Analysis................... 21

III. THE OUTSIDE DIRECTORS ARE ENTITLED TO SUMMARY JUDGMENT ON
     PLAINTIFFS' "CONTROLLING PERSON" CLAIMS..................................... 23

CONCLUSION.............................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

PAGE

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) .........................................24

*Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142 (S.D. Cal. 2008) ......15, 19

*In re Bank of Am. Sec., Deriv. & ERISA Litig.*, 757 F. Supp. 2d 260 (S.D.N.Y. 2010) ....... *passim*

*In re Bayer AG Sec. Litig.*, 2004 WL 2190357 (S.D.N.Y. Sept. 30, 2004)....................................24

*Bond Opportunity Fund v. Unilab Corp.*, 2003 WL 21058251 (S.D.N.Y. May 9, 2003),
   *aff'd*, 87 F. App'x 772 (2d Cir. 2004)................................................................................15, 19

*Britton v. Parker*, 2009 WL 3158133 (D. Colo. Sept. 23, 2009)............................................15, 19

*Buttry v. Gen. Signal Corp.*, 68 F.3d 1488 (2d Cir. 1995)..............................................................5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................................5

*Demarco v. Edens*, 390 F.2d 836 (2d Cir. 1968) .........................................................................24

*In re Duane Reade Inc. Sec. Litig.*, 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003) ....................23

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)......................................................................2, 7

*Gottlieb v. Cnty. of Orange*, 84 F.3d 511 (2d Cir. 1996).................................................................5

*Gould v. Am. Hawaiian S.S. Co.*, 351 F. Supp. 853 (D. Del. 1972) ..............................................13

*Hamilton Bank & Trust Co. v. Holliday*, 469 F. Supp. 1229 (N.D. Ga. 1979)..............................24

*Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718 (2d Cir. 1994) ..........................................................18

*Howard v. SEC*, 376 F.3d 1136 (D.C. Cir. 2004) .........................................................................20

*Johnson v. Riddle*, 443 F.3d 723 (10th Cir. 2006)..........................................................................5

*Kimmel v. Labenski*, 1988 WL 19229 (S.D.N.Y. Feb. 10, 1988) .................................................25

*Metge v. Baehler*, 577 F. Supp. 810 (S.D. Iowa 1984),
   *aff'd in relevant part*, 762 F.2d 621 (8th Cir. 1985)................................................................25

P<small>AGE</small>

*Minzer v. Keegan*, 1999 WL 33972459 (E.D.N.Y. Jan. 25, 1999),
  *aff'd*, 218 F.3d 144 (2d Cir. 2000) ........................................................................14

*Salit v. Stanley Works*, 802 F. Supp. 728 (D. Conn. 1992) .................................14, 19

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996) .................................25

*SEC v. Shanahan*, 646 F.3d 536 (8th Cir. 2011) .........................................16, 18, 20

*In re WorldCom, Inc. Sec. Litig.*, 2005 WL 638268 (S.D.N.Y. Mar. 21, 2005) .................9, 10, 12


S<small>TATUTES</small> & R<small>ULES</small>

15 U.S.C. § 77k(a)(2) ..............................................................................................6

15 U.S.C. § 77k(b) ...................................................................................................7

15 U.S.C. § 77k(b)(3)(A) .......................................................................................2, 7

15 U.S.C. § 77k(c) ...................................................................................................7

15 U.S.C. § 77o(a) .................................................................................................24

15 U.S.C. § 78n(a) .................................................................................................13

15 U.S.C. § 78t(a) ..................................................................................................24

17 C.F.R. § 230.176 ........................................................................................2, 3, 7, 8

17 C.F.R. § 230.176(e) ...........................................................................................10

17 C.F.R. § 230.176(f) .........................................................................................8, 11

17 C.F.R. § 230.176(h) ...........................................................................................12

Fed. R. Civ. P. 56(a) ................................................................................................5


O<small>THER</small> A<small>UTHORITIES</small>

Adoption of Integrated Disclosure System,
  47 Fed. Reg. 11380-01, 11399 (Mar. 16, 1982) ..................................................8

H.R. Rep. No. 152 (1933) ....................................................................................8, 12

P<small>AGE</small>

James M. Landis, *The Legislative History of the Securities Act of 1933*,
28 Geo. Wash. L. Rev. 29 (1959) ...............................................................................8

SEC Release No. 6335, 1981 WL 31062 (Aug. 6, 1981) ..................................................8, 10, 12

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Outside Directors respectfully submit this memorandum of law in support of their motion for summary judgment on all claims asserted against them in the Consolidated Second Amended Class Action Complaint, dated October 15, 2010 ("Complaint" or "Compl.").[1]

## PRELIMINARY STATEMENT

The Complaint asserts claims against the Outside Directors of Bank of America ("BAC") under the Securities Act of 1933 for alleged misstatements in a registration statement for an October 2008 secondary stock offering, and under the Securities Exchange Act of 1934 for allegedly improper disclosures in a November 2008 proxy solicitation regarding BAC's proposed acquisition of Merrill Lynch (the "Merger").

The claims under Sections 11 and 15 of the Securities Act (Counts VII and IX) are brought by purchasers in the October 2008 offering who assert that the prospectus supplement for the offering was misleading because it incorporated by reference a September 18, 2008 Form 8-K report regarding the proposed Merger that omitted mention of the parties' agreement that Merrill could pay 2008 bonuses up to $5.8 billion (the "Bonus Cap").  The claims under Sections 14(a) and 20(a) of the Securities Exchange Act (Counts V and VI) are brought by BAC stockholders who were entitled to vote on the stock issuance that was part of the proposed Merger and assert that the proxy that solicited their vote (the "Proxy") similarly did not mention the Bonus Cap and also omitted (and was not later supplemented with) information about Merrill's performance during the fourth quarter of 2008.

---

[1] The "Outside Directors" are William Barnet, III, Frank P. Bramble, Sr., John T. Collins, Gary L. Countryman, Tommy R. Franks, Charles K. Gifford, Monica C. Lozano, Walter E. Massey, Thomas J. May, Patricia E. Mitchell, Thomas M. Ryan, O. Temple Sloan, Jr., Meredith R. Spangler, Robert L. Tillman and Jackie M. Ward. Each of them was a non-executive director of BAC at the relevant times.  *See* Outside Directors' Statement of Undisputed Material Facts ("56.1 Stmt.") ¶ 1, filed herewith.  The Outside Directors join and incorporate by reference the arguments for summary judgment made by Bank of America and Banc of America Securities LLC.

The Outside Directors are entitled to summary judgment on these claims, even assuming for purposes of this motion that additional disclosures were required.  The uncontroverted facts supply no basis for holding the Outside Directors liable for the claimed securities law violations.  This is not a case of directors failing to diligence management's statements about a company's performance in periodic SEC filings.  Rather, the purported omissions here pertain to matters that were not regularly reviewed with the Board and are not ordinarily disclosed—*i.e.*, a confidential bonus cap agreed with a proposed merger partner and that partner's interim results and internal forecasts.  Indeed, the Outside Directors were unaware of the Bonus Cap and did not learn of any interim fourth-quarter results or forecasts for Merrill (which were not even reviewed with Merrill's own directors) until after the December 5, 2008 stockholder vote, and there is no basis to claim that the Outside Directors should have known that additional disclosures were required.

With regard to the Section 11 claim for nondisclosure of the Bonus Cap, there is no genuine dispute that the Outside Directors' conduct, viewed in light of their role and the roles of others pertaining to the relevant matters and disclosures, meets the standard for their statutory "due diligence" defense under Section 11.  That defense insulates the Outside Directors from liability upon a showing that, after "reasonable investigation," they had "reasonable ground to believe" that the registration statement contained no untrue statement and did not omit any statement necessary to make other statements not misleading.  15 U.S.C. § 77k(b)(3)(A).  As the Supreme Court has noted, for defendants such as directors, Section 11 liability is "premised on negligent behavior." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 208 & n.26 (1976).

The SEC has identified in Rule 176 the "relevant circumstances" for determining whether a person's conduct constitutes "a reasonable investigation or a reasonable grounds for belief" that affords a defense under Section 11.  17 C.F.R. § 230.176.  These situation-specific

2

considerations include matters such as the person's "relationship to the issuer," his or her "[r]easonable reliance" on others and whether the person had any responsibility for a "fact or document incorporated by reference" in the offering documents. *Id.* In this case, the circumstances relevant to establishing the Outside Directors' "due diligence" defense are relatively few, straightforward and uncontroverted.

Plaintiffs assert that BAC's September 18, 2008 Form 8-K that reported the merger agreement with Merrill (the "Merger Agreement") and was incorporated by reference into the offering documents did not mention the Bonus Cap, which was contained in a confidential schedule to the Merger Agreement. There can be no genuine dispute that after reasonable investigation the Outside Directors had reasonable grounds for their confidence in the October 2008 offering documents. They did not know about the Bonus Cap and had no reason to question whether the Merger Agreement filed with the Form 8-K omitted material terms pertaining to Merrill's 2008 bonuses. They had reviewed the key terms of the Merger with BAC's management prior to approving it on September 14, 2008, but the Bonus Cap was not among the terms discussed. They had appropriately directed management to complete the Merger Agreement and all related SEC filings, and they had no expertise about what those documents were required to contain. As to those matters, they reasonably relied on management, which was assisted by highly skilled and experienced counsel. Section 11 does not hold outside directors to the standard of detecting purported omissions of ancillary terms of complex mergers in the legal documents prepared by experienced management and highly skilled lawyers.

For similar reasons, there is no genuine issue as to whether the Outside Directors are liable under Section 14(a) for the nondisclosure of the Bonus Cap in the Proxy. To prevail under Section 14(a), Plaintiffs must prove that the Outside Directors were negligent. *See In re Bank of*

*Am. Sec., Derivative & ERISA Litig.*, 757 F. Supp. 2d 260, 322 (S.D.N.Y. 2010). But there is no evidence that the Outside Directors knew or should have known about the Bonus Cap and that the Proxy was deficient for not disclosing it. They were unaware of the Bonus Cap until after the December 5, 2008 stockholder vote and had every reason to think that the Proxy and Merger Agreement accurately described the terms of the proposed Merger. Section 14(a) does not require outside directors to review SEC filings regarding a complex merger to ensure that they accurately reflect all terms of the parties' agreement. That is a job for the individuals who conducted the merger negotiations and the highly trained legal professionals who assist them.

The Outside Directors are likewise entitled to summary judgment on the claims under Section 14(a) for not disclosing information regarding Merrill's fourth quarter performance before the December 5, 2008 stockholder vote. The Complaint does not allege that the Board was aware of Merrill's interim and projected fourth-quarter losses, and in fact, the record is clear that the Outside Directors received no interim or forecasted fourth-quarter results for Merrill until *after* the stockholder vote. Nor is there any evidence that the Outside Directors were advised, or had any reason to believe, that any additional disclosures were necessary. For substantially the same reasons, the Outside Directors are entitled to summary judgment on Plaintiffs' additional—and unpled—claims under Section 14(a) that BAC should have disclosed certain internal estimates that the Merger would not be accretive until 2011 and that Merrill purportedly had sustained a material adverse change in its financial condition.

Finally, summary judgment should be granted on Plaintiffs' "controlling person" claims under Section 15 of the Securities Act and Section 20(a) of the Exchange Act. Even assuming that nondisclosure of the Bonus Cap violated Section 11, the Outside Directors are not liable under Section 15, because they personally had no knowledge of the Bonus Cap or grounds to

4

believe that the September 18, 2008 Form 8-K report omitted any material terms of the Merger. Similarly, even assuming that the Proxy violated Section 14(a), the Outside Directors are not liable under Section 20(a), because they were not "culpable participants," and the undisputed evidence demonstrates their good faith, which is a complete defense under Section 20(a).

## ARGUMENT

The Outside Directors are entitled to summary judgment "[i]f the undisputed facts reveal that there is an absence of sufficient proof as to any essential element on which [Plaintiffs] ha[ve] the burden of proof." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 519 (2d Cir. 1996) (citing, *inter alia*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)); *see also* Fed. R. Civ. P. 56(a). Once the moving party meets its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case," the burden shifts to the opposing party to come forward with evidence as to each essential element of its claim. *Celotex*, 477 U.S. at 325.

Where a defendant seeks summary judgment on the basis of an affirmative defense, such as the Outside Directors' "due diligence" defense to the Section 11 claim or their good faith defense under Section 20(a), the defendant "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." The plaintiff then has the burden to "demonstrate with specificity the existence of a disputed material fact." *See, e.g.*, *Johnson v. Riddle*, 443 F.3d 723, 724 n.1 (10th Cir. 2006) (citation omitted); *see also Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995) (same "principles apply equally whether summary judgment is granted on the merits of the claim, or on an affirmative defense").

## I.   THE OUTSIDE DIRECTORS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' SECTION 11 CLAIM

The Outside Directors are entitled to summary judgment on Plaintiffs' Section 11 claim because there is no disputed material fact regarding their affirmative defense of due diligence.

The Outside Directors did not fail to perform any action reasonably required of them with regard to the offering documents' disclosures about Merrill's ability to pay bonuses. The absence of any negligence on their part requires summary judgment in their favor.

### A.   The Section 11 Claim

The offering documents for the October 2008 secondary offering incorporated by reference several of BAC's prior SEC filings, including the September 18, 2008 Form 8-K report of BAC's entry into the Merger Agreement. 56.1 Stmt. ¶ 16. That report included a copy of the Merger Agreement. *Id.* ¶ 9.

Plaintiffs assert that the Merger Agreement was misleading as a result of the interplay between a negative covenant that Merrill would not "pay any amounts to Employees not required by any current plan or agreement" and certain exceptions to that covenant. Compl. ¶¶ 368-72. The stated exceptions included, among others, exceptions "set forth in . . . Section 5.2 of the Company Disclosure Schedule." 56.1 Stmt. ¶ 12. This non-public Company Disclosure Schedule contained the Bonus Cap exception to the covenant not to pay discretionary bonuses, *i.e.*, the agreement that Merrill could pay 2008 incentive compensation up to $5.8 billion. *Id.* ¶ 13. Plaintiffs assert that the Form 8-K report and Merger Agreement misrepresented by implication that as of September 18, 2008 there was no agreement that Merrill could pay incentive compensation, whereas the Bonus Cap allegedly had already been agreed. Compl. ¶¶ 368-372. This supposed implication allegedly rendered the offering documents misleading, because potential purchasers of BAC stock in the secondary offering purportedly would have considered it important that Merrill could pay 2008 bonuses up to $5.8 billion. *See id.*

### B.   The Outside Directors' Due Diligence Defense

As directors at the time of the offering, the Outside Directors are statutory defendants under Section 11(a). 15 U.S.C. § 77k(a)(2). They are not, however, held to a standard of strict

liability for any actionable misstatements.  Section 11(b) provides that notwithstanding

subsection (a), "no person, other than the issuer, shall be liable as provided therein who shall

sustain the burden of proof" as to certain affirmative defenses.  *Id.* § 77k(b).  One such defense,

applicable to parts of registration statements not made on expert authority, is known as the "due

diligence" defense.  It is established by a director upon a showing that

> he had, after reasonable investigation, reasonable ground to believe and
> did believe, at the time such part of the registration statement became
> effective, that the statements therein were true and that there was no
> omission to state a material fact required to be stated therein or necessary
> to make the statements therein not misleading.

*Id.* § 77k(b)(3)(A).  As the Supreme Court explained in *Ernst & Ernst v. Hochfelder*, "directors

of the issuer" are "accorded a complete defense against civil liability based on the exercise of

reasonable investigation and a reasonable belief that the registration statement was not

misleading."  425 U.S. at 208 n.26.  The standard of "reasonableness" is ordinary prudence.

Section 11(c) states that for purposes of Section 11(b)(3), "the standard of reasonableness shall

be that required of a prudent man in the management of his own property."  15 U.S.C. § 77k(c).

"In effect, this is a negligence standard."  *Ernst & Ernst*, 425 U.S. at 208.

In 1982, the SEC adopted Rule 176 to elaborate on certain "relevant circumstances"

bearing on whether, in a given case, a Section 11 defendant's conduct was "reasonable" for

purposes of Section 11(b)(3).  17 C.F.R. § 230.176.  Rule 176 states that "[i]n determining

whether or not the conduct of a person constitutes a reasonable investigation or a reasonable

ground for belief" "relevant circumstances" may include, among others:

- "The type of person"

- "The presence or *absence of another relationship to the issuer* when the person is
  a director or proposed director"

- "*Reasonable reliance on officers, employees, and others* whose duties should have given them knowledge of the particular facts (in the light of the functions and responsibilities of the particular person with respect to the issuer and the filing)"

- "Whether, with respect to a fact or document incorporated by reference, the particular person *had any responsibility for the fact or document* at the time of filing from which it was incorporated"

*Id.* (emphases added).  As the SEC explained, "what constitutes reasonable investigation and reasonable ground for belief depends upon the circumstances of each registration.  The prospect of continued flexible application of that standard by the courts *should provide assurance to subject persons that they will not incur unreasonable investigative burdens*."  Adoption of Integrated Disclosure System, 47 Fed. Reg. 11380-01, 11399 (Mar. 16, 1982) (emphasis added).

In proposing Rule 176, the SEC acknowledged that in appropriate circumstances officers and directors could reasonably delegate all responsibility to others, particularly where professional skills are required, and that such delegation would constitute a reasonable investigation and reasonable grounds for belief in the accuracy of the company's disclosures:

> Delegation to others of the performance of acts which it is unreasonable to require that the fiduciary shall personally perform is permissible.  Especially is this true where the character of the acts involves professional skill or facilities not possessed by the fiduciary himself.  *In such cases reliance by the fiduciary, if his reliance is reasonable in the light of all the circumstances, is a full discharge of his responsibilities.*

SEC Release No. 6335, 1981 WL 31062, at *14 (Aug. 6, 1981) (emphasis added) (quoting H.R. Rep. No. 152, at 26 (1933)); *see also* 17 C.F.R. § 230.176(f).  In this regard, the SEC noted that the legislative history of the Securities Act reflected a desire to "avoid placing excessive burdens on the issuer's directors."  SEC Release No. 6335, 1981 WL 31062, at *15.[2]

---

[2] *See also* James M. Landis, *The Legislative History of the Securities Act of 1933*, 28 Geo. Wash. L. Rev. 29, 48 (1959) ("It seemed impossible to define in statutory language the extent to which a fiduciary might lawfully delegate his duties to others.  In lieu of such an effort, resort was made to general language in the report to indicate that a goodly measure of delegation was justifiable, particularly insofar as corporate directors are concerned.").

As this Court noted in *In re WorldCom, Inc. Sec. Litig.*, 2005 WL 638268, at *7 (S.D.N.Y. Mar. 21, 2005), the case law discussing the affirmative defenses of Section 11 defendants is "scant."  What is clear is that a "defendant's assertion of the due diligence defense requires an exquisitely fact intensive inquiry."  *Id.* at *11.  And although fact intensive inquiries generally "do not lend themselves easily to resolution on summary judgment," the Court noted that "with a properly supported motion it is conceivable that summary judgment could be granted, *particularly when brought on behalf of an outside director*."  *Id.* (emphasis added).

In *WorldCom*, the Court denied summary judgment to a director defendant because there were factual disputes as to whether he was an insider and, moreover, whether he had been alerted to "red flags" of fraud in WorldCom's accounting for "line costs," a key element of its financial reporting.  *Id.* at *11-12.  The defendant's role, coupled with these alleged "red flags," raised genuine issues as to whether he was obligated "to inquire until satisfied as to the integrity of the line cost data."  *Id.* at *11; *see also id.* at *12 (noting that assertions "raise[d] questions as to whether it was incumbent on [the defendant] to engage in a more active dialogue with management").  The Court acknowledged, however, that in other cases—where, for example, there were no red flags about critical accounting matters—"reliance on management's presentations to the Board, after a careful examination of the materials provided to the Board, may suffice."  *Id.* at *12.  This is such a case.

### C.   There Is No Genuine Issue As to Whether the Outside Directors Had, After Reasonable Investigation, Reasonable Grounds to Believe that the Form 8-K Report Accurately Described the Merger Agreement

In the context of Plaintiffs' claim that the September 18, 2008 Form 8-K incorporated by reference into the October 2008 offering documents misrepresented the parties' agreement with regard to the Bonus Cap, and in view of the relevant circumstances—*i.e.*, the undisputed facts regarding the Outside Directors' evaluation of the Merger, their lack of knowledge of the Bonus

9

Cap and their appropriate delegation of responsibility for preparing the Merger Agreement documentation and all related SEC filings—there is no genuine issue as to whether the Outside Directors' conduct met the standard of reasonableness that satisfies their due diligence defense.

First, each Outside Director is a non-management director, 56.1 Stmt. ¶ 1, and thus is held to a less stringent standard of investigation. As this Court noted in *WorldCom*, whether a defendant is an "inside or outside director" is "a classification that weighs heavily on any evaluation of" whether "he is entitled to summary judgment on his due diligence defense." 2005 WL 638268, at *12. Nor did any of the Outside Directors have "another relationship" with the issuer. *See* 17 C.F.R. § 230.176(e). Accordingly, they each are held to the lower standard of investigation and belief appropriate for "an outside director with no special knowledge or additional responsibility." SEC Release No. 6335, 1981 WL 31062, at *14.

Second, the Outside Directors had familiarized themselves with and evaluated the key terms of the Merger, having reviewed a summary of the key terms prior to the special Board meeting on September 14, 2008, and having discussed them at the meeting. 56.1 Stmt. ¶¶ 2-4. These terms included, among others, the proposed exchange ratio, the expected timing and need for stockholder approvals and the constitution of the Board of the combined company. *Id.* ¶ 4. The Bonus Cap was not among the terms reviewed by the Board at the meeting. *Id.* ¶ 5. Indeed, Merrill's payment of bonuses to its employees for 2008 "never came up" during the meeting. *Id.* Nor was the Bonus Cap raised at any of the other four meetings of the Board between September 14 and the October 7 offering. *See id.* ¶ 6 (citing, *inter alia*, Ex. 6 at 273:14-274:6 (Gifford Dep.) (not aware of Bonus Cap until after it was reported in press)).[3]

---

[3] "Ex. __" refers to the exhibits attached to the Declaration of Brian M. Burnovski, filed herewith. "Dep." refers to testimony in this Action. "DE Dep." refers to testimony in the parallel derivative action pending in the Delaware Court of Chancery. "SEC Dep." refers to testimony in the action styled *SEC v. Bank of America Corp.*, 09-CV-6829 (S.D.N.Y.). "NYAG Dep." refers to testimony taken by the New York Attorney General.

Third, the Outside Directors reasonably expected that management and counsel would appropriately document the Merger Agreement and make all necessary disclosures. *See* 17 C.F.R. § 230.176(f) (discussing "[r]easonable reliance" on others). Management had negotiated the Merger Agreement, *see* 56.1 Stmt. ¶ 3, and it was entirely reasonable for the Outside Directors to rely on management to complete the documentation and, with counsel's assistance, to ensure that BAC's disclosures regarding the Merger Agreement included all material terms that needed to be disclosed. After approving the Merger, the Board had approved resolutions that properly assigned to management the tasks of finalizing the Merger Agreement and preparing all necessary securities law filings, including the September 18, 2008 Form 8-K report. *Id.* ¶ 7. The Outside Directors had no reason to question management's discharge of that assignment, especially given that they understood that BAC's management had substantial M&A experience and would be assisted by in-house counsel and highly skilled lawyers from the law firm of Wachtell, Lipton, Rosen & Katz ("Wachtell"). *Id.* ¶ 8.

In the context of the Merger, these actions by the Outside Directors fully satisfied their obligations under the securities laws, which did not require them to ensure personally that all terms of the Merger were reflected in the documentation filed with the SEC. Their direction to management to complete such documentation, coupled with their reasonable expectation that the Bank's executives and highly skilled lawyers would ensure that all required disclosures were made, demonstrates that, after "reasonable investigation," they had "a reasonable ground for belief" in the completeness and accuracy of BAC's disclosures.[4] Even if they had been made aware of the Bonus Cap, the Outside Directors would have had no basis to question whether it

---

[4] Indeed, counsel made the judgment that the Bonus Cap, and the numerous other matters contained in the Disclosure Schedule, did not need to be disclosed. *Id.* ¶ 14. Nicholas Demmo, a Wachtell corporate partner who worked on the transaction, testified that exceptions to negative covenants are "typically" contained in a disclosure schedule that is not publicly filed, Ex. 22 at 100:25-101:2 (Demmo DE Dep.), and that Wachtell determined that disclosure of the Bonus Cap was not necessary, Ex. 23 at 39:19-46:18, 215:16-216:14, 217:7-15 (Demmo Dep.).

should have been disclosed.  As Mr. Gifford testified, as a non-lawyer who "didn't have the expertise to decide" complex disclosure issues, he relied on inside and outside counsel to make such judgments.  Ex. 6 at 239:12-25 (Gifford Dep.); *id.* at 245:8-11 ("I am not equipped to, professionally to opine on when we should disclose something.  There are people that are retained and trained to advise us as such.").  As the SEC has recognized, the delegation of such technical legal matters—which it would be unreasonable to expect the Outside Directors to perform personally—is not only "permissible" but should also constitute "*a full discharge*" of a director's due diligence responsibilities.  SEC Release No. 6335, 1981 WL 31062, at *14 (emphasis added) (quoting H.R. Rep. No. 152, at 26).

Finally, it is highly relevant that the Section 11 claim here arises from an 8-K filing for which the Outside Directors had no responsibility.  *See* 17 C.F.R. § 230.176(h).  The September 18 Form 8-K report and the Merger Agreement were prepared by management and counsel and were not provided to the Outside Directors prior to being filed and were not signed by them. 56.1 Stmt. ¶¶ 10-11.  Nor is there any requirement or practice for such filings to be reviewed by a company's outside directors, who are not expected to diligence every SEC filing or public announcement.  This is not a case of incorporation of false financial reports that had been reviewed and approved by outside directors in the course of the company's periodic reporting obligations, as was the case in *WorldCom*.  *See* 2005 WL 638268, at *1-2.  Rather, the allegedly misleading statements at issue here appeared in documents for which the Outside Directors had no responsibility at the time they were filed.  As the SEC has recognized, the absence of such responsibility is a further "relevant circumstance" that supports the Outside Directors' contention of reasonable investigation and reasonable ground for belief.  *See* 17 C.F.R. § 230.176(h)

(relevant whether the defendant "had responsibility" for a fact or document "at the time of the filing from which it was incorporated").

In sum, the undisputed evidence regarding the "relevant circumstances" demonstrates that the Outside Directors are entitled to summary judgment on their statutory due diligence defense.  Having reviewed the key terms of the Merger Agreement with management, having no knowledge of the Bonus Cap and having appropriately delegated to management and counsel the task of preparing the Merger Agreement and all related disclosures, the Outside Directors "had, after reasonable investigation, reasonable grounds to believe and did believe" that the offering documents for the October 2008 offering were not materially misleading, and accordingly are entitled to summary judgment on the Section 11 claim.

## II.   THE OUTSIDE DIRECTORS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' SECTION 14(a) CLAIMS

This Court has held that, to prevail under Section 14(a), 15 U.S.C. § 78n(a), Plaintiffs must prove that the Outside Directors were negligent with respect to the alleged Proxy misstatements and omissions.  *See In re Bank of Am.*, 757 F. Supp. 2d at 322.  The Court held that Plaintiffs could prove negligence by showing that the Outside Directors "were aware that the Joint Proxy was materially deficient" or "should have been aware of deficiencies" but "took no steps to remedy or inquire about them."  *Id.* at 324.  That standard, the Court noted, did "not make impermissible any reliance on expertise of legal or financial counsel in areas pertinent to their respective expertise."  *Id.* (quoting *Gould v. Am. Hawaiian S.S. Co.*, 351 F. Supp. 853, 865 (D. Del. 1972)).  The directors are not "guarantors or insurers of the accuracy of proxy statements."  *Id.*

The Outside Directors are entitled to summary judgment on the Section 14(a) claims because there is no evidence that the Outside Directors were negligent with regard to any of the

13

alleged misstatements or omissions.  As demonstrated below, the Outside Directors never

learned of any of the information allegedly omitted from the Proxy or were given any cause for

concern about BAC's disclosures.  Moreover, the Board did "everything that it should have

done" in connection with the Proxy solicitation, including having a "robust conversation about

the transaction," ensuring that BAC had an "experienced and capable" management team and

experienced counsel handling the disclosures, and holding regular meetings to obtain updates on

the transaction, "which would have given management ample time to provide any additional

information" that management deemed pertinent for the Board.  Ex. 2 at 264:15-265:22

(Bramble DE Dep.).

> **A.      There Is No Genuine Issue as to Whether the Outside Directors
>          Were Negligent for Any Misstatement in the Proxy Regarding
>          Merrill's Ability to Pay Bonuses for 2008**

The Outside Directors are entitled to summary judgment on Plaintiffs' Section 14(a)

claim that the Proxy mailed to BAC stockholders on November 3, 2008, which attached the

Merger Agreement but not the confidential Disclosure Schedule, was misleading because it did

not disclose the Bonus Cap.

As discussed above, the Outside Directors were unaware of the Bonus Cap before the

stockholder vote, nor was it something about which they reasonably should have known.  *See* pp.

9-13, *supra*.  The absence of evidence that the Outside Directors knew or should have known

about the Bonus Cap precludes them from being liable under Section 14(a) for its nondisclosure.

*See Minzer v. Keegan*, 1999 WL 33972459, at *13 (E.D.N.Y. Jan. 25, 1999) (dismissing Section

14(a) claim on grounds that plaintiff failed to allege that outside directors knew information that

purportedly was omitted from proxy), *aff'd*, 218 F.3d 144 (2d Cir. 2000); *Salit v. Stanley Works*,

802 F. Supp. 728, 733 (D. Conn. 1992) (dismissing Section 14(a) claim where "plaintiffs have

not pled that the individual defendants knew of the facts allegedly omitted from the proxy

14

statement (and, not being alleged to have been personally involved in its issuance, therefore, had no duty to see that they were included in the statement)"); *see also, e.g.*, *Britton v. Parker*, 2009 WL 3158133, at *11 (D. Colo. Sept. 23, 2009); *Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1159 (S.D. Cal. 2008); *Bond Opportunity Fund v. Unilab Corp.*, 2003 WL 21058251, at *10 (S.D.N.Y. May 9, 2003) ("knowledge cannot be attributed to directors simply by virtue of their positions"), *aff'd*, 87 F. App'x 772 (2d Cir. 2004).

Moreover, the Outside Directors reasonably entrusted management and counsel to draft the Proxy and ensure its completeness. They had directed BAC's experienced management team to complete all securities filings required by the Merger, including the Proxy, and understood that management would be assisted by its highly skilled advisors. *See* 56.1 Stmt. ¶ 7; *id* ¶ 8 (citing, *inter alia*, Ex. 11 at 72:19-73:6 (May Dep.) (Board "delegates to management the responsibility . . . to prepare—with outside counsel and internal counsel—the appropriate proxy materials and disclosures")); *id.* ¶ 17 (citing, *inter alia*, Ex. 25 at 169:25-170:16 (Mayopoulos DE Dep.) (Wachtell is "highly experienced and knowledgeable about what proxy statements are supposed to contain. And they draft it.")). In these circumstances, the Outside Directors cannot reasonably be viewed as being liable for not having personally examined the complex documentation regarding the Merger to ensure that it accurately reflected bonus terms about which they had never been informed.

As the Eighth Circuit recently held in affirming the dismissal of a Section 14(a) claim against an outside director, where, as here, the uncontroverted evidence demonstrates that the director relied on management with the assistance of counsel to ensure the appropriateness and accuracy of the proxy disclosures, "did not draft the proxy statements, believed that the statements were truthful and accurate, did not perceive that [the proxy] might be misleading . . .

15

and was never made aware of any reason to be concerned that [relevant information] was not fully disclosed," the director is entitled to judgment as a matter of law. *See SEC v. Shanahan*, 646 F.3d 536, 544, 547 (8th Cir. 2011). The same result is required here. The Outside Directors appropriately entrusted the Bank's executives and counsel with the task of preparing the Proxy and ensuring that the disclosures were appropriate, and they had no reason to believe the Proxy or the Merger Agreement incorporated therein did not accurately describe all material terms of the Merger Agreement. They are accordingly entitled to summary judgment on the Section 14(a) claim based on the nondisclosure of the Bonus Cap.

**B.      There Is No Genuine Issue as to Whether the Outside Directors Were Negligent for the Nondisclosure of Merrill's Fourth Quarter Losses**

Plaintiffs also claim that the Outside Directors violated Section 14(a) by not supplementing the Proxy with information regarding Merrill's interim monthly results and its forecasted fourth-quarter performance in advance of the December 5, 2008 stockholder vote. Again, there is no evidence that would permit a conclusion that the Outside Directors were negligently responsible for such nondisclosures. They had no knowledge of Merrill's interim and forecasted results and no "reason to be concerned that [relevant information] was not fully disclosed." *Shanahan*, 646 F.3d at 547. They are accordingly entitled to summary judgment.

The Complaint alleges that the Outside Directors were *not* informed of Merrill's fourth quarter losses or of any disclosure obligation prior to the vote. Compl. ¶ 249.[5] Nor is there evidence that would permit a jury to conclude that the Outside Directors knew or should have known about Merrill's interim results or forecasts. The Board met nine times between the

---

[5] The initial complaint (Docket No. 29) alleged that Messrs. Lewis and Price discussed Merrill's losses with the Board (¶ 99), and this Court denied the Outside Directors' motion to dismiss on that basis, *In re Bank of Am.*, 757 F. Supp. 2d at 326. The amended Complaint struck that allegation. *See* Ex. 60 at 36.

16

approval of the Merger on September 14, 2008 and the December 5 stockholder vote, both formally and on "voluntary" calls that Mr. Lewis had instituted in late-September 2008.  56.1 Stmt. ¶¶ 27-28.  In these meetings, the Board discussed the effects of the unprecedented economic climate on BAC's businesses and received updates on the Merger transition.  *Id.* ¶ 29 (citing Ex. 5 at 64:24-65:11 (Franks DE Dep.) (meetings "virtually always include[d] an update on Merrill, where they were, where the transition was"); Ex. 15 at 129:11-14 (Sloan DE Dep.) (Board was "constantly being updated" on "the status of the merger, as we would with any other merger")).[6]  At no time during this period did the Board learn of any particular interim results or forecasts for Merrill's fourth quarter.  *See id.* ¶ 54.  Indeed, even Merrill's *own* directors were not provided with its fourth quarter forecasts.  *Id.* ¶ 52.

Plaintiffs allege that BAC knew as of November 12 that Merrill had incurred a loss of $7.536 billion pre-tax in October and was forecasting a quarterly loss of $5.4 billion post-tax ($8.9 billion pre-tax).  Compl. ¶ 102.  But again, the Outside Directors did not learn of these alleged figures before the stockholder vote.  The Board met only once between November 12 and December 5, on November 21, and on that occasion management provided a general update on the Merrill transition.  56.1 Stmt. ¶¶ 43-44.  Contemporaneous notes reflect that the Board was told that BAC and Merrill were "experiencing similar problems," that Merrill's "[l]iquidity [was] OK" and that its "core int[erest] income [was] holding well."  *Id.* ¶ 44.  There is no evidence of any discussion of Merrill's October results or fourth quarter forecast on the November 21 call.

Plaintiffs allege that on December 3, 2008, Merrill, with input from BAC, increased its projections for its fourth quarter loss to $9 billion after-tax (approximately $14 billion pretax).

---

[6] Among other Merrill-related issues, the Board discussed management integration and talent-planning and retention, the effect of the Merger on BAC's capital planning, Merrill's results and market-disruption-related losses for the *third quarter* and plans to review risk oversight for the Merrill transition.  *See* 56.1 Stmt. ¶ 30.

Compl. ¶¶ 124-25; *see also* 56.1 Stmt. ¶ 47. But again, there is no evidence that the Outside

Directors had this December 3 information prior to the December 5 stockholder vote. Indeed,

after the November 21 call, there were no further discussions with the Board until December 5,

when management reported the results of the vote that took place earlier that day. 56.1 Stmt.

¶ 50. The Outside Directors have uniformly testified that they did not recall *any* specific forecast

for Merrill's fourth quarter until the Board's regular, year-end planning meeting on December 9,

four days *after* the stockholder vote. *See id.* ¶ 54 (citing, *inter alia*, Ex. 1 at 167:6-15 (Barnet DE

Dep.) (12/9 meeting was "the first time we had an estimate for the fourth quarter")).[7]

The Outside Directors likewise cannot be viewed as negligent for not pressing

management for Merrill's interim results and forecasts before the vote. In "the context of a

deteriorating economic environment," the Outside Directors were not told anything that they

regarded as "alarming" or "overly significant about Merrill" during the period leading up to the

December 5 stockholder vote. *Id.* ¶ 32. Nor were there any indications in their discussions with

management that Merrill was incurring losses that would be surprising in the context of the well-

publicized difficulties affecting the financial services industry generally. *Id.* ¶ 33 (citing Ex. 6 at

278:19-279:3 (Gifford Dep.) (in "almost weekly board meetings," Merrill "was discussed in

many different contexts" but there was "nothing in those discussions, updates" that "would

suggest there was a surprise coming in the financial numbers of Merrill")).

---

[7] Mr. May testified that he believed that materials presented to the Board in October 2008 included an
estimate of Merrill's fourth quarter performance, Ex. 12 at 91:17-92:18 (May NYAG Dep.), but he later clarified
that he had no recollection of actually receiving a specific forecast, *id.* at 94:9-12. He also was clearly mistaken,
because the October 2008 board materials contained no fourth quarter forecast for Merrill. *See* 56.1 Stmt. ¶ 31.
And although Mr. Price testified that he "would have kept" the Board apprised of the "most current forecast that [he]
had throughout the period," *e.g.*, Ex. 28 at 142:2-5 (Price NYAG 3/16/09 Dep.), there is no evidence that he actually
provided any particular forecast prior to the vote. This testimony provides no basis for inferring that the Outside
Directors "must have" received a forecast that should have raised concerns about the need for additional disclosure
and therefore creates no genuine issue of fact. *See Shanahan*, 646 F.3d at 547 (affirming that negligence could not
be proved as a matter of law where "jury could only speculate" that outside director had "failed to exercise
reasonable care in overseeing [company's] proxy communications"); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718,
723 (2d Cir. 1994) ("conjecture or surmise" cannot defeat motion for summary judgment (citation omitted)).

Given that no basis exists to conclude that the Outside Directors knew or should have known any interim result figures or forecasts for Merrill before the December 5 stockholder vote, they cannot be viewed as negligent in not requiring that such information be disclosed. *See Britton*, 2009 WL 3158133, at *11 (dismissing Section 14(a) claim at pleading stage where individual defendants were not alleged to know information that purportedly should have been disclosed in proxy statement); *Atlas*, 556 F. Supp. 2d at 1159; *Salit*, 802 F. Supp. at 733; *Bond Opportunity Fund*, 2003 WL 21058251, at *10.

In any event, even if there were a triable issue about whether the Outside Directors knew or should have known about Merrill's interim results or forecasts prior to the stockholder vote, there is still no basis by which to infer negligence.  Management never advised the Board prior to the stockholder vote that it was concerned about the Merger or any of the related disclosures. 56.1 Stmt. ¶¶ 29-34, 45.  Nor did the Board have notice of any "red flags" that signaled the possible need for additional disclosures.  *Id.*  As this Court has noted, the Proxy and the companies' third quarter Form 10-Qs, "painted a grim portrait of Merrill's near-term and medium-term prospects," *In re Bank of Am.*, 757 F. Supp. 2d at 305; *see also* 56.1 Stmt. ¶¶ 19, 23-26.[8]  The Outside Directors had no reason to question whether fourth quarter developments warranted more dire disclosures than the "grim portrait" that had been presented to the market already.  *See, e.g.*, Ex. 2 at 349:17-22 (Bramble DE Dep.) (never brought to his attention that "there were any issues or problems with respect to the disclosures that had been made").  Thus, even if Mr. Price's belief that he "would have" shared Merrill's fourth quarter forecasts with the Board, *see* n. 7, *supra*, created a question as to whether the Outside Directors received any such

---

[8] Among other things, the Proxy warned that "[d]uring the past few weeks"—*i.e.*, in October, within the fourth quarter—"market conditions have been extremely volatile," and that the "challenging and uncertain" market environment was "expected to persist," and it predicted "volatile valuations and illiquidity of certain financial assets and exposures" and "generally uncertain national and international economic conditions."  56.1 Stmt. ¶ 19.

forecast before the December 5 stockholder vote, it is undisputed that neither Mr. Price nor anyone else expressed any concerns about disclosure to the Board.

In fact, management had considered whether Merrill's forecasts warranted any additional disclosure and determined they did not.  On November 20, 2008, the day prior to the Board's last meeting before the stockholder vote on November 21, Messrs. Price and Mayopoulos, along with representatives from Wachtell, discussed the then-current forecast and collectively agreed that *no* further disclosure was necessary.  56.1 Stmt. ¶¶ 36-43.  That determination was not raised during the November 21 Board call because, as Mr. Mayopoulos testified, "there was nothing for the board to do."  *Id.* ¶ 45 (citing Ex. 25 at 238:4-13 (Mayopoulos DE Dep.)); *see also Howard v. SEC*, 376 F.3d 1136, 1148-49 (D.C. Cir. 2004) (where senior management seeks legal advice on an issue, it is "illogical and makes no sense whatsoever" that other executives would need to seek the same legal advice).[9]  Moreover, even if Mr. Mayopoulos had informed the Outside Directors of the determination, they had no basis to second guess that judgment.  Indeed, from the perspective of the Outside Directors, it would have been highly unusual for either BAC or Merrill to disclose interim results or share interim forecasts with the market.  *See* 56.1 Stmt. ¶ 35 (citing Ex. 11 at 186:9-187:8 (May Dep.) (neither BAC nor Merrill had a practice of "releas[ing] earnings between quarters" or providing forecasts to stockholders)).

The lack of any evidence that the Outside Directors knew or should have known Merrill's interim and forecasted results or had reason to be concerned that BAC's disclosures were deficient is fatal to Plaintiffs' negligence claim, and summary judgment should be granted.  *See Shanahan*, 646 F.3d at 547.

---

[9] On or about December 3, Mr. Price again raised the issue of disclosure with Mr. Mayopoulos in view of a revised Merrill forecast that predicted higher losses.  The revised forecast did not alter Mr. Mayopoulos's conclusion that no additional disclosure was necessary.  56.1 Stmt. ¶¶ 46-48.

### C.   There Is No Genuine Issue as to Whether the Outside Directors Were Negligent for the Nondisclosure of the Alleged Existence of a Material Adverse Change or Updated Accretion/Dilution Analysis

Plaintiffs have asserted in interrogatory responses that the Outside Directors are liable under Section 14(a) because BAC did not disclose (1) that Merrill had allegedly suffered a material adverse change in its financial condition ("MAC") prior to the stockholder vote; and (2) a December 2008 internal BAC forecast or "accretion/dilution" estimate of the effect of the Merger on the combined company's earnings per share.  Neither claim is pleaded in the Complaint, and thus neither is properly asserted.[10]  But even if they were, there is no evidence to support them that would defeat summary judgment for the Outside Directors.

*Alleged Material Adverse Change.*  The Outside Directors cannot be liable for any nondisclosure of a purported MAC because they had no reason to think prior to the stockholder vote that there was (or even might be) a material adverse change in Merrill's financial condition. As discussed above, the Outside Directors had not learned of any interim or forecasted Merrill results before the stockholder vote, nor had anyone raised any alarm about Merrill's fourth quarter performance much less suggested that there had been a material adverse change in its financial condition.  56.1 Stmt. ¶¶ 29-34.  Even after the vote, at the Board's December 9 meeting, no one suggested that there had been a MAC.  *Id.* ¶¶ 55, 57.  The first time anyone at BAC questioned whether grounds existed to assert that a MAC had occurred was on December 12, one week after the stockholder vote, *id.* ¶ 58, and the first time the Outside Directors learned about any such considerations was a week later, on December 19, *see id.* ¶ 59.  The undisputed

---

[10]   This Court previously dismissed the MAC claim on the ground that the initial complaint "fail[ed] to connect its allegations of a material adverse effect to the actual language of the MAC."  *See In re Bank of Am.*, 757 F. Supp. 2d at 307-08.  And the new Complaint no longer alleges that statements in the Proxy and Merger Agreement that purportedly attested to the "absence of material adverse changes" in Merrill's financial condition were misleading.  *See* Ex. 60 at 91-92 (striking allegation in ¶ 211 of original complaint).

record accordingly supplies no basis for a finding that the Outside Directors were negligent by not requiring disclosure that Merrill had purportedly sustained a MAC prior to the stockholder vote, and they are therefore entitled to summary judgment.

*December Accretion/Dilution Estimate.*  The evidence likewise supplies no basis on which a jury could conclude that the Outside Directors were negligent in not requiring disclosure of the December accretion/dilution estimate, which Plaintiffs contend was required because it differed from an illustrative estimate contained in the Proxy.

First, it is undisputed that the Board did not know of the December accretion/dilution estimate until after the stockholder vote. *Id.* ¶ 56.  As explained above, *see* pp. 14-16, *supra*, without knowledge or any reason to know about the information that purportedly should have been disclosed, the Outside Directors cannot be faulted as negligent for its nondisclosure.

Second, the nondisclosure of the December estimate did not violate Section 14(a), because there was no obligation to disclose that internal estimate.  Plaintiffs appear to contend that disclosure was necessary because the December estimate was less favorable than an accretion/dilution calculation made by the Bank's financial advisors that was included in the Proxy.  The Proxy explained, however, that the accretion/dilution calculations in the Proxy were "*illustrative* pro forma analyses of the potential financial impact of the merger *under certain assumptions*."  *Id.* ¶ 20 (emphasis added).  The Proxy stated that "*[b]ased on these assumptions*," the Merger would be 2.5% dilutive to *consensus analyst EPS estimates* in 2009, 0.3% accretive in 2010 and increasingly accretive thereafter.  *Id.* (emphasis added).  The Proxy also noted that the advisors' accretion-dilution analysis was based on earnings forecasts for BAC and Merrill "made by various third-party brokerage firms," not BAC or Merrill internal forecasts.  *Id.*  The inclusion of the advisors' illustrative calculations based on consensus analyst earnings estimates

did not obligate BAC to disclose its December accretion/dilution estimate based on Merrill's internal earnings forecasts.

Moreover, the Proxy cautioned that the assumptions underlying the financial advisors' analyses were "inherently subject to uncertainty" and that "[a]ny estimates contained in these analyses *were not and are not necessarily indicative of actual values or predictive of future results or values, which may be significantly more or less favorable than as set forth in these analyses*." *Id.* ¶ 21 (emphasis added).  The Proxy also stated that the advisors "assumed [no] responsibility for updating [their] opinion[s] based on circumstances or events occurring after the date thereof," *i.e.*, September 14, 2008, and cautioned that "actual results may differ materially from those expressed or implied by . . . forward-looking statements," and that BAC and Merrill expressly disclaimed any "obligation to update . . . to reflect events or circumstances after the date of this document," *i.e.*, October 31, 2008.  *Id.* ¶ 22.  Thus, even on Plaintiffs' theory, BAC had no duty to update the accretion/dilution calculations in the Proxy, and summary judgment for the Outside Directors is justified on that ground as well.  *See, e.g.*, *In re Bank of Am.*, 757 F. Supp. at 313-14 (no duty to update where statement was "qualified"); *In re Duane Reade Inc. Sec. Litig.*, 2003 WL 22801416, at *5, 7 (S.D.N.Y. Nov. 25, 2003) (no duty to update financial projections that were not worded as "guarantees").

## III.   THE OUTSIDE DIRECTORS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' "CONTROLLING PERSON" CLAIMS

Summary judgment should also be granted on Plaintiffs' claims for control person liability under Section 15 of the Securities Act and Section 20(a) of the Exchange Act.

The Outside Directors are entitled to summary judgment on the Section 15 claim because, as noted above, pp. 9-13, *supra*, the undisputed evidence establishes their statutory defense that they "had no knowledge of or reasonable ground to believe in the existence of" the Bonus Cap that

was allegedly not disclosed in the offering documents for the Secondary Offering, 15 U.S.C.

§ 77o(a).  *See, e.g.*, *Demarco v. Edens*, 390 F.2d 836, 841-42 (2d Cir. 1968) (officers not liable

under Section 15 where they neither knew nor should have known allegedly undisclosed

information); *Hamilton Bank & Trust Co. v. Holliday*, 469 F. Supp. 1229, 1242-43 (N.D. Ga.

1979) (outside directors entitled to summary judgment on Section 15 claim where they did not

know facts alleged to have been misrepresented or omitted).

With regard to Plaintiffs' Section 20(a) claims, the Outside Directors are entitled to

summary judgment because there is no evidence that any of them was "in some meaningful

sense, a culpable participant" in the alleged failure to disclose the Bonus Cap or Merrill's alleged

fourth-quarter losses in the Proxy.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108

(2d Cir. 2007).  Moreover, there is no genuine basis to dispute that the Outside Directors are

entitled to the statutory defense that they acted in "good faith and did not . . . induce" the alleged

Section 14(a) violations.  15 U.S.C. § 78t(a).

As explained above, the Outside Directors met regularly during the relevant period to

stay informed of material developments in BAC's business and the Merger transition, were not

aware prior to the stockholder vote of the Bonus Cap or of any specific interim results or

forecasts for Merrill's fourth quarter, properly delegated to the appropriate BAC officers the

tasks of finalizing the Merger Agreement and the Proxy and all other filings relating to the

Merger and had no reason to believe that the Proxy disclosures were in any way deficient.  *See*

pp. 10-11, 15, 16-18, *supra*.  On this record, there was no "meaningful" culpable participation by

the Outside Directors, and summary judgment accordingly should be granted.  *See, e.g.*, *In re*

*Bayer AG Sec. Litig.*, 2004 WL 2190357, at *16 (S.D.N.Y. Sept. 30, 2004) (dismissing claim for

failure to plead culpable participation, where defendants were not alleged to have knowledge that

24

would allow them to recognize the purported misrepresentation); *Kimmel v. Labenski*, 1988 WL

19229, at *2, 5 (S.D.N.Y. Feb. 10, 1988) (outside directors' membership on audit committee and

signing of Form 10-K reports was insufficient to plead culpable participation).  For substantially

the same reasons, the Outside Directors are entitled to summary judgment on their affirmative

defense of good faith and non-inducement.  *See Metge v. Baehler*, 577 F. Supp. 810, 816 (S.D.

Iowa 1984) ("[c]ulpability and good faith are two sides of the same issue"), *aff'd in relevant

part*, 762 F.2d 621 (8th Cir. 1985); *see also SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1473

(2d Cir. 1996) (good faith is established where defendants "maintained and enforced a

reasonable and proper system of supervision and internal control[s]" (citation omitted)).

## CONCLUSION

For the foregoing reasons, summary judgment should be granted in favor of the Outside

Directors on all claims in the Complaint, and the action should be dismissed with prejudice as to

them.

Dated:   New York, New York
      June 3, 2012

                    DAVIS POLK & WARDWELL LLP

                    /s  Lawrence Portnoy
                    Lawrence Portnoy (lawrence.portnoy@davispolk.com)
                    Charles S. Duggan (charles.duggan@davispolk.com)
                    Brian M. Burnovski (brian.burnovski@davispolk.com)
                    450 Lexington Avenue
                    New York, NY  10017
                    Telephone: 212-450-4000
                    Fax: 212-701-5800

                    *Counsel for Defendants William Barnet, III, Frank P.
                    Bramble, Sr., John T. Collins, Gary L. Countryman,
                    Tommy R. Franks, Charles K. Gifford, Monica C.
                    Lozano, Walter E. Massey, Thomas J. May, Patricia E.
                    Mitchell, Thomas M. Ryan, O. Temple Sloan, Jr.,
                    Meredith R. Spangler, Robert L. Tillman and Jackie M.
                    Ward*