**FILED ELECTRONICALLY**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE BANK OF AMERICA CORP.                      :
SECURITIES, DERIVATIVE, AND                      :
EMPLOYEE RETIREMENT INCOME                       :
SECURITY ACT (ERISA) LITIGATION                  :
                                                 :
                                                 :   Master File No. 09 MD 2058 (PKC)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x   ECF Case
                                                 :
THIS DOCUMENT RELATES TO                         :
                                                 :
The Consolidated Securities Action               :
                                                 :
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## KENNETH D. LEWIS' MOTION FOR SUMMARY JUDGMENT

Mary Jo White
Andrew J. Ceresney
919 Third Avenue
New York, New York 10022
Phone: (212) 909-6000
Fax: (212) 909-6836
Email: ajceresn@debevoise.com

Colby A. Smith
555 13th Street N.W.
Washington, D.C. 20004
Phone: (202) 383-8000
Fax: (202) 383-8118
Email: casmith@debevoise.com

*Counsel for Defendant Kenneth D. Lewis*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................4

I.    Plaintiffs' Limited Allegations Against Mr. Lewis Relating to Merrill's Fourth-Quarter Losses. ..................................................................................5

II.    Undisputed Facts Relating to Merrill's Interim Fourth-Quarter Results and Forecasts Relevant to Mr. Lewis. ....................................................................6

III.    Undisputed Facts Relating to Merrill's Bonuses Relevant to Mr. Lewis. ..........................7

ARGUMENT ......................................................................................................9

I.    Legal Standard. .............................................................................................10

II.    Mr. Lewis Is Entitled to Summary Judgment on Plaintiffs' Loss Disclosure Claims Because the Undisputed Facts Show that Mr. Lewis Did Not Act Knowingly, Recklessly or Carelessly. ................................................................14

III.    Mr. Lewis Therefore Also Is Entitled to Summary Judgment on Plaintiffs' Section 20(a) Claims Related to Merrill's Fourth-Quarter Interim or Forecasted Losses.............18

IV.    Mr. Lewis Is Entitled to Summary Judgment on Plaintiffs' Bonus-Related Claims.........19

CONCLUSION..................................................................................................23

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ..................................13, 19

*Basset v. C.I.R.*, 67 F.3d 29 (2d. Cir. 1995)......................................................................................12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................................10

*Howard v. SEC*, 376 F.3d 1136 (D.C. Cir. 2004)..........................................3, 4, 14, 15, 17, 18, 22

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
    757 F. Supp. 2d 260 (S.D.N.Y. 2010)...............................................................................7, 14

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
    No. 09-md-2058, 2011 WL 3211472 (S.D.N.Y. July 29, 2011) ......................................10, 14

*In re John Alden Fin. Corp. Sec. Litig.*, 249 F. Supp. 2d 1273 (S.D. Fla. 2003)..........................16

*In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595 (S.D.N.Y. 2005)....................................12

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) ........................11

*In re N. Telecom, Ltd. Sec. Litig*, 116 F. Supp. 2d 446 (S.D.N.Y. 2000) ...........................10, 11,12

*In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007) ...............................................19

*In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202 (S.D. Cal. 2010)...........................12, 15, 18

*In re Smith & Wesson Holding Corp. Sec. Litig.*, 669 F.3d 68 (1st Cir. 2012) ............................12

*In re Tyson Foods Inc. Sec. Litig.*, 155 Fed. Appx. 53 (3d Cir. 2005) .............................11, 12, 15

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ..............................................................................10

*Mayer v. Oil Field Sys. Corp.*, 803 F.2d 749 (2d Cir. 1986) .........................................................11

*Meiri v. Dacon*, 759 F.2d 989 (2d Cir. 1985) .................................................................................11

*Miss. Pub. Emps.' Ret. Sys. v. Boston Scientific Corp.*, 649 F.3d 5 (1st Cir. 2011) .....................11

*Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38 (2d Cir. 1978)..................................................11

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996).....................................10, 11, 13, 19

*SEC v. Shanahan,* 646 F.3d 536 (8th Cir. 2011)...................................................................3, 15, 22

<u>**TABLE OF AUTHORITIES**</u>

(Continued)

Page(s)

*SEC v. Steadman*, 967 F.2d 636 (D.C. Cir. 1992) ........................................................16

*SEC v. Treadway*, 430 F. Supp. 2d 293 (S.D.N.Y. 2006)........................................10, 11

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 148 Fed. Appx. 66 (2d Cir. 2005) ......................11, 15

**STATUTES AND REGULATIONS**

15 U.S.C. § 77k(a) (Section 11(a) of the Securities Act) ...............................................9

15 U.S.C. § 77k(b)(3)(A) (Section 11(b)(3)(A) of the Securities Act) .................................10, 12

15 U.S.C. § 77k(c) (Section 11(c) of the Securities Act) .............................................13

15 U.S.C. § 77o(a) (Section 15(a) of the Securities Act) ...............................................9

15 U.S.C. § 78j(b) (Section 10(b) of the Exchange Act).................................................9

15 U.S.C. § 78n(a) (Section 14(a) of the Exchange Act) ...............................................9

15 U.S.C. § 78t(a) (Section 20(a) of the Exchange Act) ...........................................13, 19

17 C.F.R. § 230.176 ...............................................................................13, 21, 22

Fed. R. Civ. P. 56...................................................................................10

**OTHER AUTHORITIES**

SEC Release No. 6335, 1981 WL 31062 (Aug. 6, 1981) ..............................................13

## PRELIMINARY STATEMENT

Kenneth D. Lewis' motion for summary judgment on Plaintiffs' claims based on the nondisclosure of interim and forecasted fourth-quarter 2008 Merrill Lynch & Co., Inc. ("Merrill") losses presents this Court with a straightforward, critical and dispositive question: Setting all of the rhetorical and misleading flourishes in Plaintiffs' pleadings aside, can Plaintiffs demonstrate that Mr. Lewis, as Chief Executive Officer ("CEO") of Bank of America Corp. ("BAC"), knowingly, recklessly or carelessly violated the securities laws by failing to overrule the considered judgment of BAC's Chief Financial Officer ("CFO"), who had consulted with inside and outside counsel, that public disclosure of significant interim and forecasted losses at Merrill was not warranted?  On the record now developed in discovery, it is crystal clear that as a matter of law, the answer is a resounding "no."

There are no relevant facts in dispute for a fact-finder to decide.  It would blink reality and require ignoring the established law to hold otherwise where, as here, the undisputed facts unique to Mr. Lewis show that he did precisely what the CEO of a large enterprise should have done when faced with the prospect of large interim and forecasted losses at Merrill:  he engaged on the question of disclosure with BAC's CFO and received reports from BAC's CFO that the question of disclosure had been vetted proactively with expert counsel on two occasions and that counsel had concluded that disclosure was not warranted.  Mr. Lewis, who, like most CEOs, is a non-lawyer not steeped in the securities laws, did not overrule that determination and had absolutely no basis for doing so.  Under such circumstances, Plaintiffs cannot sustain their burden of showing that Mr. Lewis knowingly, recklessly or even carelessly violated the U.S. securities laws.  Indeed, to hold Mr. Lewis liable in these circumstances would set a novel and very troubling precedent, exposing CEOs to liability when they follow the reasonable judgments

1

of their subordinates who opine and consult with counsel on complicated legal issues instead of imposing their own, less-informed will.

Here are the only relevant and undisputed facts on which this motion for summary judgment is based:

- Prior to the shareholder vote on BAC's merger with Merrill, Mr. Lewis was advised on two occasions about Merrill's interim fourth-quarter results and forecasts – once in mid-November and again on or about December 3, less than two days before the shareholder vote on the merger.

- Mr. Lewis was informed by BAC's CFO that he had consulted with legal counsel, including BAC's General Counsel and the outside firm of Wachtell, Lipton, Rosen & Katz ("Wachtell"), and had been told that no disclosure of these interim results or forecasts was warranted – a conclusion with which the CFO concurred.

- Mr. Lewis was further told that several factors led to this conclusion:  BAC's proxy statement seeking approval of the issuance of additional shares in support of the merger (the "Merger Proxy") did not contain any predictions about Merrill's fourth-quarter performance that had to be updated; existing disclosures warned that Merrill's performance could be negatively impacted by the economic downturn; the losses, though large, were not out of line with losses Merrill had experienced in prior quarters; and investors were well aware that banks were sustaining significant losses as the economy deteriorated.

- These factors seemed undeniably reasonable, and Mr. Lewis was aware of no red flags suggesting the considered judgment of these professionals was incorrect, based on inadequate information or should be questioned for any reason.

2

Based on these facts, there was no basis at all for Mr. Lewis, a non-lawyer, to reject the clear conclusion of those much more steeped in prior disclosures and the securities laws, including BAC's CFO and counsel.

The law is clear that Mr. Lewis' decision to defer to the analysis and conclusion of BAC's CFO and counsel – particularly on complicated disclosure questions governed by the securities laws – completely negates both scienter and negligence. *See, e.g.*, *Howard v. SEC*, 376 F.3d 1136, 1147-48 (D.C. Cir. 2004) (executive's actions did not amount to "an extreme departure from the standards of ordinary care" when executive was told of counsel's advice and followed it, which suggests "good faith" (internal quotations omitted)); *SEC v. Shanahan,* 646 F.3d 536, 546-47 (8th Cir. 2011) (the Securities and Exchange Commission (the "SEC") failed to present sufficient evidence of negligence where defendant lacked expertise in complex accounting and securities issues and those issues were handled by the company's finance and accounting professionals, with the involvement of inside and outside counsel).[1]

In denying Mr. Lewis' motion to dismiss, this Court accepted Plaintiffs' allegation – as it was required to do on that motion – that Mr. Lewis was informed of Merrill's interim losses and forecasts, but took no action to review or ensure compliance with BAC's disclosure obligations. Second Amended Complaint (the "SAC") ¶ 249.  The undisputed facts established through discovery, however, have shown that this allegation was simply wrong.  Mr. Lewis engaged on the issue and was informed that the issue of disclosure had been reviewed by experts and that the

---

[1]   Mr. Lewis is not asserting an affirmative defense of advice of counsel.  Rather, he is relying on the fact that professional advisors were consulted on this issue and on the recommendation from BAC's CFO, which Mr. Lewis understood was informed by advice that the CFO received from internal and external counsel, to rebut Plaintiffs' claims of scienter and negligence as to Mr. Lewis. *See, e.g.*, *Howard*, 376 F.3d at 1147-48.  Indeed, the actual advice that was provided by counsel to BAC's CFO is irrelevant to this motion, as it is Mr. Lewis' understanding of what BAC's CFO was told by counsel, as conveyed by the CFO to Mr. Lewis, that is relevant to Mr. Lewis' state of mind.

consensus was that disclosure was not warranted.  Summary judgment for Mr. Lewis is therefore required with respect to all of Plaintiffs' claims arising from Merrill's interim fourth-quarter results and forecasts.

Mr. Lewis also moves for summary judgment on the bonus-related claims raised in the SAC.  In connection with Merrill's 2008 bonuses, the undisputed facts demonstrate that at some point prior to the shareholder vote, Mr. Lewis learned of a $5.8 billion bonus cap that had been negotiated with Merrill (the "Bonus Cap").  He also reviewed the Merger Proxy before it was filed.  In signing the Merger Proxy, Mr. Lewis, as he was entitled to do, also relied on the fact that it had been prepared through a lengthy process involving skilled internal and external counsel who were familiar with the Bonus Cap and who had a deep understanding of the legal requirements for proxy disclosure.  *See Howard*, 376 F.3d at 1147-48.  He had no reason to believe that all required disclosures, including disclosures relating to compensation and the Bonus Cap, were not being made.  There is absolutely no rational basis for finding that Mr. Lewis acted with scienter or was negligent in connection with the disclosure of the Bonus Cap in the Form 8-K filing of the merger agreement with Merrill ("the Merger Agreement") in September or in the Merger Proxy filing in November.  There is, thus, no basis on which to allow any of Plaintiffs' bonus-based claims to go forward as to Mr. Lewis.

## STATEMENT OF FACTS

After the Court's ruling on Defendants' motion to dismiss, the claims against Mr. Lewis fall into two general categories:  (*i*) claims related to the disclosure of Merrill's interim fourth-quarter results and forecasts under Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (Counts I, III, V and VI of the SAC); and (*ii*) claims related to the disclosure of Merrill's payment of bonuses under Sections 10(b) and 14(a) of the Exchange Act

and Sections 11 and 15(a) of the Securities Act of 1933 (the "Securities Act") (Counts I, III, V, VI, VII and IX of the SAC).  This motion seeks summary judgment on all of these remaining claims.  Mr. Lewis also joins in the motions for summary judgment filed by BAC, as well as by former Merrill CEO John A. Thain, which provide further support for dismissing the claims against Mr. Lewis.

## I.  Plaintiffs' Limited Allegations Against Mr. Lewis Relating to Merrill's Fourth-Quarter Losses.

Very few of the allegations in Plaintiffs' 396-paragraph SAC address conduct by Mr. Lewis in connection with Merrill's fourth-quarter losses.  The relevant allegations in the SAC relating to Mr. Lewis essentially boil down to the following:  (*i*) Mr. Lewis spoke with BAC's CFO, Joe Price, on a range of issues "all the time" (SAC ¶ 247); (*ii*) Mr. Lewis "knew of Merrill's losses as they occurred" based on his regular updates from Neil Cotty, BAC's Chief Accounting Officer, who "acted as a direct liaison" between Merrill and Messrs. Lewis and Price (SAC ¶¶ 95, 241, 246); (*iii*) Mr. Lewis attended a December 3 meeting where Merrill's losses, which Plaintiffs allege then stood at $15 billion pre-tax, were discussed (SAC ¶ 248); and (*iv*) Mr. Lewis took no steps to determine whether Merrill's losses should be disclosed (SAC ¶ 249).

There are other allegations in the SAC relating to Merrill's interim results and forecasts, including allegations relating to the nature of Merrill's losses, the various forecasts over time and consultations between BAC internal counsel and Wachtell in November 2008 relating to the question of disclosure.  *See, e.g.*, SAC ¶¶ 7, 102-10, 114-15, 126-27.  There also has been extensive discovery taken of BAC employees and other individuals relating to these issues.  And the discovery record has confirmed that Mr. Lewis did not have any knowledge or involvement in these facts.  There is no evidence that he was aware of the specific components of Merrill's

fourth-quarter losses over time or of the nature of the back and forth between internal BAC counsel and Wachtell in November 2008.  Those facts, therefore, are irrelevant to this summary judgment motion against Mr. Lewis, as they cannot have any bearing on his state of mind relating to the disclosure of Merrill's interim results or forecasts.

## II. Undisputed Facts Relating to Merrill's Interim Fourth-Quarter Loss Results and Forecasts Relevant to Mr. Lewis.

Although Mr. Lewis does not agree with Plaintiffs' allegations in the SAC as to him, and would contest a number of them at trial, for purposes of the current motion only, he assumes the correctness of Plaintiffs' assertions, except for their unsupported claim that Mr. Lewis took no steps to determine whether Merrill's losses should be disclosed.  SAC ¶ 249.  Discovery has confirmed that the undisputed facts simply do not bear out this assertion or any assertion that Mr. Lewis failed to pay appropriate attention to the issue of disclosing Merrill's interim results or forecasts.

Mr. Lewis first learned of particular results or forecasts for Merrill's fourth quarter in mid-to-late November 2008.  Kenneth D. Lewis' Statement of Undisputed Facts ("SUF") ¶ 15.  Mr. Price told Mr. Lewis that Merrill was then projecting a loss of $5 billion (after tax) for the quarter.  *Id.*  Mr. Price advised Mr. Lewis that legal counsel, including General Counsel Timothy Mayopoulos and Wachtell, had considered whether Merrill's losses needed to be disclosed and had concluded that disclosure was not warranted.  *Id.*  In the context of that discussion, Mr. Price advised Mr. Lewis of some of the factors that had prompted the lawyers to reach that conclusion.  SUF ¶ 16.  As Mr. Lewis testified:

> I remember him saying that, number one, there was acknowledgement there was huge volatility in the marketplace, that the proxy described volatile instruments subject to change in market value, the fact that Merrill had had larger losses than that in the past, the fact that there had been no predictions publicly of any profits or losses in the fourth quarter.

*Id.*

On December 3, 2008, just two days before the shareholder vote on the merger, Mr. Lewis attended a meeting with Mr. Thain, Mr. Price and Mr. Cotty.[2]  SUF ¶ 18.  At that meeting, Mr. Lewis learned of a Merrill fourth-quarter forecast that anticipated losses of roughly $7 billion after tax.  *Id.*  After Mr. Lewis pressed Mr. Cotty to consider the possibility of additional losses at Merrill during the remainder of the quarter, an additional $2 billion after tax contingency was added to the projection to take account of additional possible downside risks. Mr. Cotty termed this additional loss contingency a "wild ass guess."  SUF ¶ 19.  Soon after this meeting, Mr. Price informed Mr. Lewis that he had gone "through the same process" of consulting with counsel that he had pursued in November.  SUF ¶ 20.  Mr. Price reported to Mr. Lewis that the "same answer came back":  that the lawyers still held the view that disclosure was not warranted for the reasons previously stated.  *Id.*

Thus, on two occasions prior to the shareholder vote, Mr. Lewis was advised by BAC's CFO that the issue of disclosure had been considered by the CFO and counsel, and on both occasions, they had concluded that no disclosure was warranted.

### III.   Undisputed Facts Relating to Merrill's Bonuses Relevant to Mr. Lewis.

In denying Mr. Lewis' motion to dismiss on the bonus-related claims, the Court noted that Plaintiffs' complaint alleged that Mr. Lewis was aware of the bonus arrangement memorialized in the disclosure schedule attached to the Merger Agreement (the "Disclosure Schedule"), "which was concealed [from] BofA shareholders" and "contradictory to representations in the Merger Agreement and the Joint Proxy."  *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 757 F. Supp. 2d 260, 323 (S.D.N.Y. 2010).  The Court found these

---

[2]     Contrary to Plaintiffs' allegations (*see* SAC ¶¶ 95, 241, 246), this meeting is the only time that Mr. Cotty spoke with Mr. Lewis about losses at Merrill.  SUF ¶ 18.

allegations sufficient to allege scienter and negligence on a motion to dismiss.  However, undisputed facts obtained through discovery refute any inference of scienter or negligence in connection with Mr. Lewis' role in the disclosures related to Merrill's bonuses:

- Although he was not involved in the negotiation of the Bonus Cap, Mr. Lewis learned about the agreement with Merrill on the Bonus Cap.  SUF ¶ 6.

- The September 18, 2008 SEC filing on Form 8-K, which attached the Merger Agreement and was later incorporated by reference into the Merger Proxy, was prepared by counsel.  SUF ¶¶ 7**,** 7 n.2**.**  That filing was not signed by Mr. Lewis. *Id.* There is no evidence that Mr. Lewis was involved in its filing.

- At the time of the September 18, 2008 Form 8-K filing, the memorialization of the Bonus Cap in the Disclosure Schedule still was being negotiated between BAC's outside counsel at Wachtell and Merrill's outside counsel at Shearman & Sterling LLP ("Shearman").  SUF ¶¶ 8-9.

- The November 3, 2008 Merger Proxy was drafted by BAC's outside counsel, Wachtell, with the participation of Merrill's outside counsel, Shearman. SUF ¶¶ 10-11.

- Mr. Lewis understood that internal BAC counsel and Wachtell had responsibility for drafting the Merger Proxy, and that the team engaged in writing the Merger Proxy had extensive experience with transactions and with disclosures relating to merger transactions.  That team also was aware of the Bonus Cap and the Disclosure Schedule.  SUF ¶¶ 12-13.

- The Merger Proxy did not attach the Disclosure Schedule, which referenced the Bonus Cap among other items, because Wachtell and Shearman had concluded

that it did not need to be disclosed.  SUF ¶¶ 10-12.  In any event, there is no evidence that Mr. Lewis was ever shown the Disclosure Schedule after it had been drafted by counsel for the parties.

- Mr. Lewis reviewed the Merger Proxy before filing, but was aware that the deal team, including counsel, had signed off on the Merger Proxy prior to his review; he was not alerted to any issues relating to the Merger Proxy's disclosure relating to bonuses and did not believe that there were any.  SUF ¶¶ 7 n.2, 13.

These facts therefore confirm that, while Mr. Lewis was aware of the agreement on the Bonus Cap – a fact he does not dispute – he had delegated the preparation of merger-related documents, including the Merger Agreement and the Merger Proxy, to the deal team and BAC's inside and outside counsel.  In reviewing the Merger Agreement and the Merger Proxy, he was aware of the extensive role of those experienced businesspersons and lawyers, and the facts do not show that he had any reason to doubt their decisions about what did or did not need to be included in those documents.

## ARGUMENT

Mr. Lewis is entitled to summary judgment because discovery has confirmed that, with respect to both the loss- and the bonus-related claims, Plaintiffs cannot show that he acted knowingly or recklessly in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), or negligently in violation of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a).  Mr. Lewis also is entitled to summary judgment on Plaintiffs' bonus-related claims arising under Section 11(a) of the Securities Act, 15 U.S.C. § 77k(a), and Section 15(a) of the Securities Act, 15 U.S.C. § 77o(a), because he had reasonable grounds to believe and did believe that the

disclosures related to the payment of bonuses were true and that nothing that warranted disclosure had been omitted. 15 U.S.C. § 77k(b)(3)(A).

## I.   Legal Standard.

Summary judgment is appropriate as to any claim on which "there is no genuine issue as to any material fact" and on which "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). Where, as here, Plaintiffs have had more than "adequate time for discovery" and bear the burden of proof at trial, their failure to "establish the existence of an element essential to [their] case" "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

Plaintiffs' principal claims against Mr. Lewis rest on Section 10(b) of the Exchange Act, for which scienter is an essential element. *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001). To avoid summary judgment on their Section 10(b) claims, Plaintiffs must therefore provide: (*i*) evidence that Mr. Lewis had both motive and opportunity to commit fraud; or (*ii*) other evidence of conscious misbehavior or recklessness. *SEC v. Treadway*, 430 F. Supp. 2d 293, 331 (S.D.N.Y. 2006) (citing *Kalnit*, 264 F.3d at 138). Ultimately, the issue is "whether the evidence, taken as a whole, could support a finding by a reasonable juror that defendants acted with the intent to deceive, manipulate, or defraud investors." *In re N. Telecom, Ltd. Sec. Litig*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000); *see also SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996).

The Court already has ruled that the SAC "fails to raise a strong inference that the defendants had a motive to commit securities fraud." *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, No. 09-md-2058, 2011 WL 3211472, at * 4 (S.D.N.Y. July 29, 2011). Discovery has done nothing to undermine that conclusion. Absent such a

motive, a plaintiff must prove that a defendant acted with "intent to deceive, manipulate, or defraud, or at least knowing misconduct." *First Jersey*, 101 F.3d at 1467 (internal citations omitted).  A court may grant summary judgment on the issue of scienter if there is an absence of evidence "from which a reasonable factfinder could find that the defendant had the requisite state of mind." *Mayer v. Oil Field Sys. Corp.*, 803 F.2d 749, 756 (2d Cir. 1986).  "[T]he mere incantation of intent or state of mind" cannot "operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

Recklessness is defined as, "at the least, conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *In re N. Telecom*, 116 F. Supp. 2d at 464 (quoting *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir. 1978)).  The conduct must "rise to the level of 'highly unreasonable or extreme misconduct, rather than simply to mere deviations from standards of ordinary care.'" *Treadway*, 430 F. Supp. 2d at 332 (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 422 (S.D.N.Y. 2001)).  If the record fails to raise a genuine issue of fact that could support a claim of scienter, and therefore of fraud, summary judgment should be granted. *See, e.g.*, *Miss. Pub. Emps.' Ret. Sys. v. Boston Scientific Corp.*, 649 F.3d 5, 28-30 (1st Cir. 2011) (affirming summary judgment for defendants on scienter grounds where plaintiffs could point to no evidence that defendants intentionally or recklessly misled public about risks in company's product); *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 148 Fed. Appx. 66, 69 (2d Cir. 2005) (affirming summary judgment where originator of mortgage loans did not act with scienter where it relied on standard industry method); *In re Tyson Foods Inc. Sec. Litig.*, 155 Fed. Appx.

53, 57 (3d Cir. 2005) (granting summary judgment for general counsel where he reasonably relied on opinions of outside counsel); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1239-51 (S.D. Cal. 2010) (granting summary judgment where evidence did not support inference that CEO acted with scienter when he reasonably relied on work conducted by CFO and accounting department regarding complex goodwill impairment issue); *In re N. Telecom*, 116 F. Supp. 2d at 462-63 (granting summary judgment where plaintiffs failed to show that optimistic statements were made recklessly when neither corporation nor officers derived any benefit from statements); *see also In re Smith & Wesson Holding Corp. Sec. Litig.*, 669 F.3d 68, 77 (1st Cir. 2012) (granting summary judgment on scienter grounds where no evidence existed that defendants recklessly or intentionally failed to disclose certain financial information).

With regard to Plaintiffs' claims under Section 14(a) of the Exchange Act, Mr. Lewis can only be found liable if Plaintiffs present evidence suggesting that he acted negligently in failing to ensure that the Merger Proxy did not contain a material misstatement or omission. *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005). Negligent conduct is "the failure to do what a reasonable and ordinarily prudent person would do under the circumstances." *Basset v. C.I.R.*, 67 F.3d 29, 31 (2d. Cir. 1995).

With regard to Plaintiffs' claim under Section 11 of the Securities Act for nondisclosure of the Bonus Cap, the "due diligence" standard of the statutory defense under Section 11(b)(3)(A) protects an officer from liability upon a showing that:

> he had, after reasonable investigation, reasonable ground to believe and did believe, at the time such part of the registration statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

15 U.S.C. § 77k(b)(3)(A). Section 11(c) states that for purposes of Section 11(b)(3), "the standard of reasonableness shall be that required of a prudent man in the management of his own

12

property." *Id.* § 77k(c).  The SEC has stated that the reasonableness of a defendant's conduct under Section 11(c) should be judged according to the "relevant circumstances," including, among others:

- "The office held when a person is an officer"

- "Reasonable reliance on officers, employees, and others whose duties should have given them knowledge of the particular facts (*in the light of the functions and responsibilities of the particular person with respect to the issuer and the filing*)"

- "Whether, *with respect to a fact or document incorporated by reference*, the particular person had any responsibility for the fact or document at the time of filing from which it was incorporated"

17 C.F.R. § 230.176 (emphasis added).  In its release promulgating § 230.176, the SEC added:

Delegation to others of the performance of acts which it is unreasonable to require that the fiduciary shall personally perform is permissible.  Especially is this true where the character of the acts involves professional skill or facilities not possessed by the fiduciary himself.  In such cases reliance by the fiduciary, if his reliance is reasonable in the light of all the circumstances, is a full discharge of his responsibilities.

SEC Release No. 6335, 1981 WL 31062, at *14 (Aug. 6, 1981).

Finally, Plaintiffs' control-person claim under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), can only survive if Plaintiffs establish:  (*i*) a primary violation by the controlled person; (*ii*) control of the primary violator by the defendant; and (*iii*) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's purported fraud.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (citing *First Jersey,* 101 F.3d at 1472).

Plaintiffs have failed to make any of the requisite showings necessary to survive Mr. Lewis' motion for summary judgment.

**II.  Mr. Lewis Is Entitled to Summary Judgment on Plaintiffs' Loss Disclosure Claims Because the Undisputed Facts Show that Mr. Lewis Did Not Act Knowingly, Recklessly or Carelessly.**

The SAC alleges that Mr. Lewis "knew [of] or recklessly disregarded" Merrill's increasing losses during the fourth quarter of 2008 and then acted "extremely reckless[ly]" by failing to "consult with counsel – or any other advisor – regarding BAC's disclosure responsibilities."  SAC ¶¶ 248-249.  The Court relied on this allegation of Mr. Lewis' purported "inaction" in holding that the SAC adequately raised a strong inference of scienter, after previously ruling that Plaintiffs' initial complaint failed to do so.  *Compare In re Bank of Am.*, 757 F. Supp. 2d at 325 (First Amended Complaint "does not sufficiently allege how the failure to disclose the losses was '*highly* unreasonable' and 'represent[ed] an *extreme departure* from standards of ordinary care . . . .'" (emphasis in original)), *with In re Bank of Am.*, 2011 WL 3211472, at *9-10 ("The [Second Amended] Complaint adequately alleges that, by virtue of his position within BofA and his awareness of Merrill's losses, Lewis's inaction on the disclosure issue raises a strong inference of recklessness").  But, now, with the benefit of a complete factual record, the undisputed facts demonstrate that Mr. Lewis was not guilty of inaction or disengaged from the disclosure process.  To the contrary, the record unambiguously shows that, on two occasions prior to the shareholder vote, Mr. Lewis engaged with BAC's CFO and was informed that the CFO had engaged in a process that involved experienced legal counsel to determine whether Merrill's losses should be disclosed, and that the consensus on both occasions was that disclosure was not warranted.

The law is clear that a CEO is entitled to rely on the involvement and approval of experts, including counsel and finance personnel, in making corporate decisions.  The court in *Howard*, for example, held that it was reasonable for a senior corporate executive to rely on the expertise of internal and external counsel, as well as the company's corporate finance department, in

preparing documents for and approving a transaction.  376 F.3d at 1147.  Noting that the involvement of these internal and external counsel was a "green" flag for the defendant, the court held that the defendant's reasonable reliance on the expertise of competent internal and external counsel could not be deemed to constitute "an extreme departure from the standards of ordinary care."  *Id.* at 1147-48.  At issue in *Howard* was the interpretation of SEC Rule 10b-9, which did not, on its face, prohibit the conduct at issue, and which was certainly a subject on which, as here, legal expertise was highly relevant and necessary.  *Id.* at 1146.

Similarly, in *In re REMEC,* a case involving a goodwill impairment, the court granted summary judgment under Section 10(b), holding that the evidence affirmatively established that the CEO did *not* act with scienter when he relied in good faith on the accounting decisions made by the company's CFO and accounting department.  702 F. Supp. 2d at 1239-41.  *In re REMEC* also involved an issue of complexity calling for the expertise of accountants and finance personnel, *i.e.*, when goodwill has been impaired and what forecasts should be used in making such determinations.  *See id.*

Other courts have similarly held that deference to experts in corporate decision-making on issues that require expertise, including disclosure determinations under the securities laws, negates both scienter and negligence.  *See, e.g.*, *Shanahan,* 646 F.3d at 543-47 (concluding that SEC did not present sufficient evidence of scienter or negligence when defendant relied on finance and accounting professionals, counsel and auditors to ensure that proper disclosures were made); *Steed Fin.*, 148 Fed. Appx. at 69 (originator of mortgage loans did not act with scienter required to support securities-fraud claim where originator relied on expertise of counsel to determine whether loans in question met industry standards); *In re Tyson Foods*, 155 Fed. Appx. at 57 (holding that general counsel who participated in drafting of press release and letter that

were allegedly misleading lacked scienter because, among other things, he reasonably relied on opinions of outside counsel); *SEC v. Steadman*, 967 F.2d 636, 642-43 (D.C. Cir. 1992) (evidence did not support finding that defendant knew opinion he received from legal counsel was wrong or that he was reckless in following that advice); *In re John Alden Fin. Corp. Sec. Litig.*, 249 F. Supp. 2d 1273, 1279 (S.D. Fla. 2003) (granting summary judgment on scienter where allegedly false medical claims reserve figures were derived from calculations of loss ratios that had been "expressly endorsed" by company's auditors).

Here, the undisputed facts show that Mr. Lewis understood that the CFO and counsel had reached a reasoned conclusion regarding whether to disclose Merrill's interim and forecasted fourth-quarter losses.[3]  In connection with the November loss forecast, Mr. Lewis was advised by Mr. Price of the consensus of the group, which included both the General Counsel and Wachtell, that no additional disclosure was warranted.  SUF ¶¶ 14-16.  Mr. Price also provided Mr. Lewis with a summary of the analysis underpinning that conclusion:

- First, the public filings "acknowledge[ed] there was huge volatility in the marketplace."

- Second, "the proxy described volatile instruments subject to change in the market volatility" and "the fact that Merrill had had larger losses than [the November interim, projected losses] in the past."

- Third, "there had been no predictions publicly of any profits or losses in the fourth quarter."

---

[3]   Although the SAC and Plaintiffs' discovery responses point to other conversations that Mr. Lewis held with Mr. Price, Mr. Thain and others, *see* SAC ¶¶ 95, 241, 246; Ex. 32, Lead Plaintiffs' Responses to Lewis' First Set of Interrogatories No. 2 (May 14, 2012), nothing in the record suggests that, prior to the December 5, 2008 shareholder vote, Mr. Lewis learned about Merrill's interim or projected losses on any occasion other than the two discussed above.  In any event, even if there were a disputed issue of fact as to how often Mr. Lewis learned of the interim or projected losses prior to the shareholder vote (and there is no basis in the record for such a claim), his awareness of the conclusions reached by his CFO and legal counsel renders the issue irrelevant for purposes of this motion.

16

SUF ¶ 16.

Then, after the December 3 meeting, Mr. Price and Mr. Lewis discussed that Mr. Price had gone "through the same process" and that the "same answer came back"—*i.e.*, "it was not a disclosable item."  SUF ¶ 20.  Mr. Lewis reasonably concluded that "the experts" had looked into the issue – meaning the key individuals in finance and legal – and BAC would "follow [their] advice."  SUF ¶ 21.

As CEO, Mr. Lewis did not absent himself or ignore the question of whether Merrill's interim or forecasted fourth-quarter losses should be disclosed.  Rather, he was updated by the CFO on the process that was followed to determine whether disclosure should be made and was informed of the conclusion arising from that process.  The case law set forth above permitted Mr. Lewis to delegate these sorts of determinations to the experts and certainly did not require him to overrule their considered judgment on complex legal and financial matters.  Indeed, such a proposition would be directly counter to the value, as recognized in the law, of seeking and relying upon such expertise. *See, e.g.*, *Howard*, 376 F.3d at 1148 n.20.

There were absolutely no red flags that should have raised concerns about this conclusion or that otherwise should have led Mr. Lewis to reject the recommendation of his CFO, General Counsel and outside counsel, all of whom had reliably handled many mergers and acquisitions for BAC in the past (SUF ¶ 4) and all of whom, Mr. Lewis knew, had proactively focused on the question of disclosure in the few weeks before the shareholder vote.  A proper resolution of the disclosure question clearly required the exercise of professional judgment by those steeped in the complex requirements of the federal securities laws – *i.e.*, Mr. Price, Mr. Mayopoulos and the attorneys at Wachtell.  Mr. Lewis had no reason to believe that the finance team or legal counsel had failed to discharge their responsibilities or somehow reached a wrong conclusion on what the

law required.  Indeed, Mr. Lewis would rightly have been subject to immense criticism had he

overruled the assessment of the experts.

Plaintiffs may argue that Mr. Lewis should have personally consulted with

Mr. Mayopoulos or other counsel regarding disclosure.  However, the fact that Mr. Lewis, as

CEO of a large company with extensive operations that also required his attention during the

financial crisis, was not directly involved in the deliberations regarding disclosure was neither

unusual nor improper, and was neither a departure from standards of ordinary care nor

unreasonable.  *See In re REMEC*, 702 F. Supp. 2d at 1239-41 (reasonable for CEO to delegate

analysis of accounting issue to CFO and accounting department); *Howard*, 376 F.3d at 1148-49

(where corporation designates certain officers to seek legal advice, requiring other corporate

officers to seek same advice directly from counsel would be "illogical and make[] no sense

whatsoever" because it "not only would run up the legal bills, but it would be impractical and

highly inefficient").  This is not a case where a CEO was utterly absent or totally disengaged

from the process; rather, it is a case where the CEO of a large enterprise acted precisely as he

should have.

Accordingly, summary judgment is appropriate on the claims against Mr. Lewis relating

to the disclosure of Merrill's forecasted fourth-quarter losses.

## III.   Mr. Lewis Therefore Also Is Entitled to Summary Judgment on Plaintiffs' Section 20(a) Claims Related to Merrill's Fourth-Quarter Interim or Forecasted Losses.

These same facts also require summary judgment on Plaintiffs' "control person" claim

against Mr. Lewis under Section 20(a) of the Exchange Act as it relates to the disclosure of

Merrill's forecasted losses.  A plaintiff bringing a Section 20(a) claim must demonstrate:  (*i*) a

primary violation by the controlled person; (*ii*) control of the primary violator by the defendant;

and (*iii*) that the defendant was, in some meaningful sense, a culpable participant in the

controlled person's fraud.  *ATSI Commc'ns*, 493 F.3d at 108 (citing *First Jersey*, 101 F.3d at

1472).  Section 20(a)'s culpable participation requirement is "similar to the scienter requirement

of Section 10(b)" and requires that "the controlling person knew or should have known that the

primary violator . . . was engaging in fraudulent conduct."  *In re Refco, Inc. Sec. Litig.*, 503 F.

Supp. 2d 611, 661 (S.D.N.Y. 2007).  Even if a plaintiff adequately pleads Section 20(a) liability,

the defendant may demonstrate that he acted in good faith, and that he "did not directly or

indirectly induce the act or acts constituting the violation." 15 U.S.C. § 78t(a); *First Jersey*, 101

F.3d at 1473.  Without reaching the question of whether Mr. Lewis was, in fact, a control person

for these purposes, for the reasons set forth above, Plaintiffs cannot demonstrate that Mr. Lewis

was a culpable participant in any violation and, to the contrary, the discovery record shows that

Mr. Lewis acted in good faith in adhering to the conclusions of BAC's CFO and counsel.

Therefore, Plaintiffs' loss-related Section 20(a) claim fails as well, and summary judgment

should be granted to Mr. Lewis.

**IV.    Mr. Lewis Is Entitled to Summary Judgment on Plaintiffs' Bonus-Related Claims.**

Plaintiffs assert that Mr. Lewis should be held responsible for alleged misstatements and

omissions related to the payment of bonuses by Merrill.  Those claims arise under Sections 10(b)

and 14(a) of the Exchange Act and Sections 11 and 15(a) of the Securities Act.  SAC ¶¶ 297-

309, 319-25, 339-65, 373-83, 392-96.  For the reasons articulated by BAC in its motion for

summary judgment, including the absence of any evidence supporting the element of loss

causation on the bonus-related claims, this Court should grant summary judgment to all

defendants on the bonus-related claims, including Mr. Lewis, who has joined in that motion.

Beyond the issues raised in BAC's motion, there is an additional reason why the bonus-

related claims should be dismissed as to Mr. Lewis:  there is no basis for any fact-finder to

conclude, based on the undisputed facts, that Mr. Lewis acted with scienter or was negligent in

connection with disclosures relating to Merrill's bonuses.  As noted above, courts have held that deference to experts on corporate decision-making on issues that require expertise, including disclosure determinations under the securities laws, negates both scienter and negligence.  *See supra* at pp. 14-16.

The undisputed facts here show that Mr. Lewis appropriately delegated the preparation of the Merger Agreement and the Merger Proxy to experienced and reliable merger specialists and legal advisors.  SUF ¶¶ 3-4, 13.  Mr. Lewis expected the team of executives and lawyers to disclose publicly the appropriate parts of the Merger Agreement and to incorporate the Merger Agreement into the Merger Proxy in the manner required by law.  *Id.*  Those very lawyers have acknowledged in testimony that it was their responsibility to make sure that the Merger Agreement and the Merger Proxy contained the required disclosures and were in compliance with the law.  SUF ¶¶ 8, 10-12.

The same lawyers also have acknowledged that they were fully aware of the agreement on a Bonus Cap as they prepared those documents.  SUF ¶ 12.  Those lawyers have testified that they made a judgment that the Bonus Cap did not need to be disclosed in either the Merger Agreement or the Merger Proxy.  Nicholas Demmo, a Wachtell corporate partner who worked on the transaction, also testified that exceptions to negative covenants are "typically" contained in a Disclosure Schedule that is not publicly filed with the Merger Agreement.  *Id.* (Wachtell determined that the Disclosure Schedule "wasn't something that needed to be disclosed").

The undisputed facts show that Mr. Lewis participated in only one public filing relevant to Plaintiffs' bonus-related claim – the November 3 filing of the Merger Proxy in which the

20

Merger Agreement is summarized and to which a copy of the Merger Agreement is appended.[4] In reviewing that filing, Mr. Lewis had no reason to think or suspect that anyone had failed to address the necessary legal requirements.  There is no indication that, in reviewing the Merger Proxy, he focused particularly on the disclosures relating to the bonuses or that there is any reason he should have.  No red flags were available to alert him to any issue with the disclosures. Indeed, it sets an unreasonable and unrealistic bar not required by the law to have expected Mr. Lewis to have waded through over 200 pages of securities filings to determine whether the deal team had failed to include a Disclosure Schedule that he had never seen and that might have discussed BAC's grant of permission to Merrill to pay bonuses.  This is especially true where Mr. Lewis was aware that the documents had been prepared by experienced counsel and where no one had suggested to him that the decisions made by the deal team and counsel about disclosure had been controversial or the subject of any internal debate or otherwise required additional attention from him.  Nor did Mr. Lewis have the expertise necessary to discern, on his own, whether all of the legally required disclosures were included.  Particularly when the attorneys who were advising BAC had determined there was no requirement that the information be disclosed, it would be an erroneous reading of the law to hold a lay corporate executive to a standard that required him to overrule their conclusion and impose his own in order to avoid liability under U.S. securities laws.

---

[4]   The registration statement for the October 2008 public offering by BAC incorporated by reference the September 18, 2008 filing of the Merger Agreement on Form 8-K.  Ex. 33, Bank of America's Form 424(b)(5) (Oct. 9, 2008).  Although Mr. Lewis had signed the Merger Agreement, there is no evidence that he participated in the September 18 filing.  The record is clear, moreover, that as of September 18, the memorialization of the Bonus Cap in the Disclosure Schedule had not been completed and still was under discussion among the lawyers for both sides.  SUF ¶ 9.  As a result, there can be no doubt that Plaintiffs' Section 11 claim against Mr. Lewis is unfounded.  *See* 17 C.F.R. § 230.176(h) (whether individual participated in a filing incorporated by reference is a factor in weighing reasonableness of due diligence under Section 11(b)(3)(A)).

The bottom line from the undisputed facts is that Mr. Lewis cannot be found to have knowingly, recklessly or carelessly approved those documents and the disclosures they contained.  *See Howard*, 376 F.3d at 1148-49; *Shanahan*, 646 F.3d at 546-47.  For the same reasons, Mr. Lewis' diligence in connection with BAC's public offering in October 2008 also should be deemed sufficient as a matter of law.  17 C.F.R. § 230.176.  Mr. Lewis also joins in the arguments made by Mr. Thain in his brief seeking summary judgment on the bonus-related claims.

Mr. Lewis therefore is entitled to summary judgment on the bonus-related claims arising under Sections 10(b) and 14(a) of the Exchange Act, and Sections 11 and 15(a) of the Securities Act.

## CONCLUSION

For the foregoing reasons, Mr. Lewis respectfully requests that summary judgment be entered in his favor as to all claims.

Dated: New York, New York
       June 3, 2012

                                    Respectfully submitted,

                                    DEBEVOISE & PLIMPTON LLP


                                        /s/Andrew J. Ceresney
                                    Mary Jo White
                                    Andrew J. Ceresney
                                    919 Third Avenue
                                    New York, New York 10022
                                    Phone: (212) 909-6000
                                    Fax: (212) 909-6836
                                    Email: ajceresn@debevoise.com

                                    -and-

                                    Colby A. Smith
                                    555 13th Street N.W.
                                    Washington, D.C. 20004
                                    Phone: (202) 383-8000
                                    Fax: (202) 383-8118
                                    Email: casmith@debevoise.com

                                    *Counsel for Defendant Kenneth D. Lewis*