**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
          :

IN RE BANK OF AMERICA CORP.        :   Master File No. 09 MD 2058 (PKC)
SECURITIES, DERIVATIVE, AND       :
EMPLOYEE RETIREMENT INCOME     :   ECF CASE
SECURITY ACT (ERISA) LITIGATION    :
          :
          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
          :

THIS DOCUMENT RELATES TO:        :
          :

The Consolidated Securities Action      :
          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.  Introduction ............................................................................................................... 1

II.  Plaintiffs Are Entitled To Summary Judgment As To The Falsity Of Defendants'
Statements Concerning The Accretion/Dilution Calculation .................................... 3

    A.  Because Defendants' Accretion/Dilution Statements Were Statements Of
Fact, Not Opinion, Plaintiffs Are Not Required To Establish "Subjective
Falsity" .......................................................................................................... 3

    B.  Even Assuming That Defendants' Misstatements Were "Opinions,"
Plaintiffs Have Established Subjective Falsity ............................................. 5

        1.  Defendants Mischaracterize Lewis's Testimony ............................... 7

        2.  The Evidence Defendants Submit Regarding The Accretion/Dilution
Calculation Does Not Establish A Genuine Factual Dispute ....................... 10

    C.  Even If The Court Finds A Genuine Factual Dispute As To Subjective
Falsity, Summary Judgment Should Be Granted As To Objective Falsity ............... 13

    D.  Defendants Had A Duty To Update The Admittedly False
Accretion/Dilution Calculation .................................................................. 13

III.  Plaintiffs Are Entitled To Summary Judgment As To The Materiality Of
Defendants' Statements Concerning The Accretion/Dilution Calculation ............. 17

IV.  Plaintiffs Are Entitled To Pursue Claims Based On The Accretion/Dilution
Misrepresentations Exposed During Discovery .................................................... 21

    A.  Second Circuit Law Explicitly Recognizes That Plaintiffs Have The Right
To Seek Summary Judgment Based On Misstatements Uncovered In
Discovery .................................................................................................... 21

    B.  Defendants' Assertions Of Prejudice Are Baseless ................................... 24

V.  Conclusion ............................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
  512 F.3d 46 (1st Cir. 2008) .................................................................. 5, 29

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
  404 F.3d 566 (2d Cir. 2005) ................................................................ 3, 22

*Ansam Assoc., Inc. v. Cola Petroleum Ltd.*,
  760 F.2d 442 (2d Cir. 1985) ................................................................... 25

*Asher v. Baxter Int'l, Inc.*,
  377 F.3d 727 (7th Cir. 2004) .................................................................. 20

*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir. 1993) ................................................................... 22

*Carlisle Ventures, Inc. v. Banco Espanol De Credito, S.A.*,
  1996 WL 680265 (S.D.N.Y. Nov. 25, 1996) ........................................... 18

*Clomon v. Jackson*,
  988 F.2d 1314 (2d Cir. 1993) ................................................................. 22

*Cruz v. Coach Stores, Inc.*,
  202 F.3d 560 (2d Cir. 2000) ................................................................... 22

*D'Amico v. City of New York*,
  132 F.3d 145 (2d Cir. 1998) ..................................................................... 8

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ................................................................ 29

*Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*,
  353 F.3d 1125 (9th Cir. 2004) ................................................................ 12

*Fait v. Regions Fin. Corp.*,
  655 F.3d 105 (2d Cir. 2011) .............................................................. *passim*

*Fed. Hous. Fin. Agency v. UBS Americas, Inc.*,
  -- F. Supp. 2d --, 2012 WL 1570856 (S.D.N.Y. May 4, 2012) ............... 12

*Freudenberg v. E*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010) ..................................................... 30

*Friedman v. Mohasco Corp.*,
  929 F.2d 77 (2d Cir. 1991) ....................................................................... 5

*Gerstle v. Gamble-Skogmo, Inc.*,
    478 F.2d 1281 (2d Cir. 1973)........................................................................ 14

*Grossman v. Novell, Inc.*,
    120 F.3d 1112 (10th Cir. 1997).................................................................... 20

*Hanlin v. Mitchelson*,
    794 F.2d 834 (2d Cir. 1986).......................................................................... 25

*Heller v. Goldin Restructuring Fund, L.P.*,
    590 F. Supp. 2d 603 (S.D.N.Y. 2008)......................................................... 20

*Ideal Steel Supply Corp. v. Anza*,
    652 F.3d 310 (2d Cir. 2011).......................................................................... 22

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
    2012 WL 370278 (S.D.N.Y. Feb. 6, 2012) ................................................ 30

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
    757 F. Supp. 2d 260 (S.D.N.Y. 2010)............................................... *passim*

*In re Bristol-Myers Squibb Sec. Litig.*,
    228 F.R.D. 221 (D.N.J. 2005)....................................................................... 29

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)....................................................................... 15

*In re Charles Schwab Corp. Sec. Litig.*,
    2009 WL 3429742 (N.D. Cal. Oct. 22, 2009)............................................ 23

*In re Credit Suisse First Boston Corp.*,
    431 F.3d 36 (1st Cir. 2005)............................................................................. 5

*In re Duane Reade Sec. Litig.*,
    2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003) ........................................ 15

*In re Gen. Elec. Co. Sec. Litig.*,
    -- F. Supp. 2d --, 2012 WL 1371016 (S.D.N.Y. Apr. 18, 2012)............... 4

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    725 F. Supp. 712 (S.D.N.Y. 1989).............................................................. 15

*In re JDS Uniphase Corp. Sec. Litig.*,
    2007 WL 2429593 (N.D. Cal. Aug. 24, 2007).......................................27, 28, 29

*In re Lehman Bros. Sec. & ERISA Litig.*,
    799 F. Supp. 2d 258 (S.D.N.Y. 2011)......................................................... 30

*In re Nash Finch Co.*,
    502 F. Supp. 2d 861 (D. Minn. 2007) ................................................................. 20

*In re NovaGold Resources Inc. Sec. Litig.*,
    629 F. Supp. 2d 272 (S.D.N.Y. 2009) ............................................................. 4, 15

*In re Retek Inc. Sec. Litig.*,
    2007 WL 14352 (D. Minn. Jan. 3, 2007) ............................................................. 29

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993) ........................................................................... 6, 14, 15

*In re Veeco Instruments, Inc. Sec. Litig*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ......................................................................... 21

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011) ..................................................... 23, 27, 29

*In re WorldCom, Inc. Sec. Litig.*,
    346 F. Supp. 2d 628 (S.D.N.Y. 2004) ................................................................. 18

*Inst. Investors Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ................................................................................. 20

*Kemp v. Universal Am. Fin. Corp.*,
    2007 WL 86942 (S.D.N.Y. Jan. 10, 2007) ........................................................... 20

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) ............................................................................... 12

*Margel v. E.G.L. Gem Lab Ltd.*,
    2010 WL 445192 (S.D.N.Y. Feb. 8, 2010) ..................................................... 22, 25

*Michalek v. Amplify Sports and Entm't. LLC*,
    2012 WL 2357414 (S.D.N.Y. June 20, 2012) ...................................................... 25

*P. Stolz Family P'Ship L.P. v. Daum*,
    355 F.3d 92 (2d Cir. 2004) ................................................................................... 20

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    617 F. Supp. 2d 216 (S.D.N.Y. 2009) ................................................................. 23

*Podany v. Robertson Stephens, Inc.*,
    318 F. Supp. 2d 146 (S.D.N.Y. 2004) ................................................................... 5

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*,
    46 F.3d 230 (2d Cir. 1995) ................................................................................... 22

*City of Omaha, Neb. Civilian Emps. Ret. Sys. v. CBS Corp.*,
   679 F.3d 64 (2d Cir. 2012)....................................................................................... 5, 6

*SEC v. ICP Asset Mgmt., LLC*,
   2012 WL 2359830 (S.D.N.Y. June 21, 2012)...................................................... 22

*Slayton v. American Express Co.*,
   604 F.3d 758 (2d Cir. 2010)...................................................................................... 20

*Stokes v. Goord*,
   2008 WL 268381 (N.D.N.Y. Jan. 30, 2008) ...................................................... 28

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
   531 F.3d 190 (2d Cir. 2008)...................................................................................... 12

*Trebor Sportswear Co., Inc. v. The Ltd. Stores, Inc.*,
   865 F.2d 506 (2d Cir. 1989)........................................................................................ 9

*Virginia Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991) ............................................................................................. 5, 20

*Zarlin v. Air France*,
   2007 WL 2585061 (S.D.N.Y. Sept. 6, 2007) ........................................................ 8

## STATUTES/RULES

17 C.F.R. § 240.14a-9 .................................................................................................. 14

Fed. R. Civ. P. 16 ......................................................................................................... 23

Fed. R. Civ. P. 32 ........................................................................................................... 9

Fed. R. Civ. P. 56 ..................................................................................................... 1, 13

Plaintiffs respectfully submit this reply memorandum in further support of their Motion pursuant to Federal Rule of Civil Procedure 56 seeking partial summary judgment as to the elements of falsity and materiality under Sections 14(a) and 10(b) of the Exchange Act with respect to Defendants' statements concerning the accretion/dilution calculation identified in Plaintiffs' Notice of Motion (ECF No. 589).[1]

## I.   Introduction

While Defendants raise various arguments as to why their statements to BoA shareholders regarding the accretion/dilution calculation were not false, they admit the key facts that support a judgment for Plaintiffs on this issue.  Specifically, Defendants concede that Defendant Lewis "acknowledged" at his deposition that the calculation "regarding accretion and dilution [set forth in the Proxy] 'had changed' as of the date of the shareholder meeting on December 5, 2008" to the calculation set forth in the December 9 Board presentation.  BoA Mem. at 18; *see also id.* at 9. Defendants also do not dispute that this change was both "significant" and "dramatic."  Pl. 56.1 ¶¶ 94-98.  Nothing more is needed to establish falsity for the purposes of Plaintiffs' summary judgment motion.

Unable to dispute the unequivocal testimony of the Bank's former CEO, Defendants assert instead that Plaintiffs must prove far more than the law actually requires to show falsity, that Lewis did not mean what he clearly testified to, and that they had no duty to update admittedly inaccurate statements in the Proxy.  *See* BoA Mem. at 1-3, 14-26.  As explained below, Defendants' arguments misstate the law and the factual record.

Defendants' principal argument is that the accretion/dilution calculation is an "opinion," which cannot be false unless Plaintiffs establish that Lewis knew that the calculation had become

---

[1] Capitalized terms have the same meaning as set forth in Plaintiffs' opening brief (ECF No. 590) and Plaintiffs' omnibus opposition to Defendants' motions for summary judgment (ECF No. 654).  All emphasis is added unless otherwise noted.

inaccurate as of the vote. Defendants then argue that Plaintiffs cannot establish such knowledge because Lewis supposedly testified that he only learned of the material change in the accretion/dilution calculation "in hindsight," one business day after the vote. *See* BoA Mem. at 1-3, 10-20. Both of these contentions are incorrect. First, the fact that the accretion/dilution calculation set forth in the Proxy had changed prior to the vote is not an opinion, but an "objectively determinable" fact. *See Fait v. Regions Fin. Corp.*, 655 F.3d 105, 109 (2d Cir. 2011). Second, Lewis did not testify that the accretion/dilution calculation became false only in hindsight, or that he only learned of that fact after the vote. To the contrary, Lewis testified without any qualification or reservation that the accretion/dilution calculation included in the Proxy was false as of the date of the vote. Pl. 56.1 ¶¶ 94-98. Lewis could only testify that the Proxy was false as of the vote if he knew at that time that the accretion/dilution calculation was no longer accurate.

Defendants also assert that the accretion/dilution calculation was not material. *See* BoA Mem. at 3, 26-33. However, Defendants cannot run from their own words. The Proxy identified the accretion/dilution calculation as a "material factor" in the Board's solicitation of shareholder approval of the deal. Moreover, Defendant Lewis testified that the accretion/dilution calculation was so "important" that he refused to agree to the Merger until he received the favorable calculation that was reported in the Proxy. Pl. 56.1 ¶¶ 9-21. These undisputed facts are sufficient to eliminate any genuine dispute as to the materiality of the accretion/dilution calculation.

Finally, Defendants resort to blaming Plaintiffs for developing evidence in support of their claims during discovery, claiming that it is "unfair" for Plaintiffs to seek summary judgment as to misrepresentations not pled in the Complaint. *See* BoA Mem. at 3-4, 33-39. However, Second Circuit law is clear that it is appropriate for a plaintiff to conform the pleadings to the evidence at summary judgment, and to seek summary judgment based on facts developed during discovery so

long as defendants cannot establish undue prejudice. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603 (2d Cir. 2005) (per curiam). The record establishes beyond question that there is no prejudice to Defendants here. The accretion/dilution misrepresentations arise directly out of the core transaction pled in the Complaint, namely, Defendants' failure to disclose Merrill's massive fourth quarter losses. Further, the accretion/dilution calculation was the subject of extensive fact and expert discovery. Indeed, numerous witnesses were questioned during discovery regarding the accretion/dilution calculation, and three of Defendants' own experts opined as to the materiality or falsity of that calculation – facts that completely belie Defendants' claims of unfair surprise.

For the reasons set forth more fully below, Plaintiffs' motion should be granted.

**II.    Plaintiffs Are Entitled To Summary Judgment As To The Falsity Of Defendants' Statements Concerning The Accretion/Dilution Calculation**

**A.    Because Defendants' Accretion/Dilution Statements Were Statements Of Fact, Not Opinion, Plaintiffs Are Not Required To Establish "Subjective Falsity"**

Defendants first contend that their misstatements concerning accretion/dilution were misstatements of "opinion," which are not "false" unless "the statement was both objectively false" and Defendants knew it was false at the time (*i.e.*, the statement was also "subjectively false"). *See* BoA Mem. at 1-3, 14-18. In particular, relying principally on *Fait*, Defendants contend that the misstatements at issue here must be considered opinions because they were "estimates" and "projections" about the Merger's impact on BoA. *See* BoA Mem. at 15-18. Defendants are wrong.

In *Fait*, the Second Circuit considered whether a complaint adequately alleged misstatements regarding the valuation of goodwill and loan loss reserves. The court held that the alleged misstatements were "opinions" because the complaint contained no allegation that the company's valuation of goodwill or loan loss reserves were "objectively determinable" or could

be measured by "any objective standard." *Fait*, 655 F.3d at 109, 110. Thus, as Judge Cote recently held, *Fait* instructs that the dividing line between fact and opinion is whether the subject of the misstatement is "objectively determinable." *See In re Gen. Elec. Co. Sec. Litig.*, -- F. Supp. 2d --, 2012 WL 1371016, at *5 (S.D.N.Y. Apr. 18, 2012) (explaining that *Fait* holds that a representation is an opinion when it consists of "subjective statements" that "are not objectively determinable").[2]

There can be no genuine dispute that the misstatements at issue here were objectively determinable. First, unlike the plaintiffs in *Fait*, Plaintiffs are not challenging the accuracy of an estimate or valuation. Rather, Plaintiffs have established that, prior to the vote, the accretion/dilution calculation in the Proxy had materially changed, and therefore the Proxy was no longer accurate as of the vote. Accordingly, the change in the accretion/dilution calculation was a then-current, "objectively determinable" fact that Defendants were required to disclose to shareholders voting on the Merger. This objective fact – the dramatic change for the worse in BoA's accretion/dilution calculation – is precisely the sort of information that is "objectively determinable" and factual in nature under *Fait*.

Second, the accretion/dilution calculation was the product of a straightforward, mechanical formula based on quantitative inputs determined by BoA. *See* Enzer Decl. Ex. 20 at BAC-ML-NYAG70312505 (listing inputs to accretion/dilution calculation). Courts recognize that similar quantitative analyses – even those concerning "estimated" or "projected" results – are factual in nature, and not opinions. For example, in *In re NovaGold Resources Inc. Securities Litigation*, 629 F. Supp. 2d 272, 301-02 (S.D.N.Y. 2009), defendants sought dismissal of certain forward-looking statements concerning the anticipated benefits of a mining project, including statements

---

[2] Defendants incorrectly suggest that this Court held that "forecasts" are opinions. *See* BoA Mem. at 15. Contrary to Defendants' suggestion, the Court merely held that Defendants' statements concerning their due diligence were opinions. *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 757 F. Supp. 2d 260, 310-11 (S.D.N.Y. 2010).

concerning the project's "[c]ost estimates, a forecast that the Project will be commercially viable, [and] a comment that the Project's budget and construction schedule are unchanged."  In rejecting Defendants' argument, Judge Cote held that such statements were not opinions, but facts, because "[t]he commercial viability determination is the result of a cost/revenue analysis that may be assessed using quantitative data."  *Id.* at 302, n.21; *see also In re Credit Suisse First Boston Corp.*, 431 F.3d 36, 47, n.3 (1st Cir. 2005) (explaining that while analysts' general "buy" and "sell" stock ratings were opinions, "some ratings, such as those mechanically derived through input data, would be subject to a different taxonomy" and categorized as facts).[3]  As explained above, the same is true here: the accretion/dilution calculation was an objective, mechanical calculation based on quantitative inputs determined by BoA.  Notably, Defendants have failed to cite a single case holding that an accretion/dilution calculation is an "opinion" and not a statement of fact.[4]

In sum, the accretion/dilution calculation was a statement of fact, and because it was "objectively false" as of the vote, Plaintiffs are entitled to summary judgment as to falsity.

## B.   Even Assuming That Defendants' Misstatements Were "Opinions," Plaintiffs Have Established Subjective Falsity

Even assuming *arguendo* that the change in Defendants' accretion/dilution calculation was an opinion, there can be no genuine dispute that Defendants' misstatements were subjectively

---

[3] *See also ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 61, n.11 (1st Cir. 2008) (rejecting argument "that any representations as to the college's 'plans,' 'goals,' and beliefs about the future are not actionable as forward-looking optimistic opinions," and explaining that "statements of opinions or estimates may qualify as false or misleading statements of fact").

[4] The cases on which Defendants rely did not involve an accretion/dilution calculation or similar computation, or an admission that the company's statements were false.  *See* BoA Mem. at 15-18.  Instead, Defendants' cases involved challenges to statements that were subjective and unverifiable (and in many instances constituted puffery), were made by third parties, and/or were explicitly identified as "opinions," not fact.  *See Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090 (1991) (statement that board approved merger "because it provides an opportunity for the Bank's public shareholders to achieve a high value for their shares" contained "indefinite and unverifiable expressions" of intent and belief); *City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*, 679 F.3d 64 (2d Cir. 2012) (per curiam) (complaint failed to allege that highly subjective valuation of goodwill was factual); *Friedman v. Mohasco Corp.*, 929 F.2d 77 (2d Cir. 1991) (challenged statement was made by a third-party financial advisor, concerned the expected market value of a company's securities, and was specifically disclosed as the advisor's "opinion"); *Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146,152 (S.D.N.Y. 2004) (challenged statements were the "buy" recommendations of a third-party analyst).

false.  Defendants contend that Plaintiffs have failed to establish "subjective falsity" because they purportedly have not shown that Lewis knew that the accretion/dilution calculation had changed as of the date of the vote.  *See* BoA Mem. at 18-21.  Specifically, Defendants claim that Defendant Lewis supposedly testified that it was only "in hindsight" that he and BoA learned that the accretion/dilution calculation had changed as of the vote.  BoA Mem. at 18-21; *see id.* at 1-2, 11-13.  Defendants' argument misstates the law, mischaracterizes Lewis's testimony, and contradicts a plethora of other evidence in this case.

To start, Defendants misstate the standard for showing subjective falsity.  *Fait* held that a plaintiff need not demonstrate that an opinion was knowingly false when issued.  Specifically, *Fait* held that "the standard [of subjective falsity] applied here does <u>not</u> amount to a requirement of scienter," and approvingly cited prior Second Circuit law holding that a plaintiff could demonstrate subjective falsity by showing "'that the favorable opinions were without a basis in fact.'"  655 F.3d at 112 & n.5 (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 266 (2d Cir. 1993)).  Prior to *Fait*, this Court recognized that there was a split of authority in this District as to whether a plaintiff must show scienter to establish subjective falsity, and held that "in false statement of opinion cases . . . the falsity and scienter requirements are essentially identical." *Bank of Am.*, 757 F. Supp. 2d at 311 (internal quotation marks omitted).  However, as noted above, *Fait* clarified that, even assuming that Defendants' statements regarding accretion and dilution were opinions, Plaintiffs are only required to show that they were made "without a basis in fact" – a standard that is easily met here.[5]  Indeed, as set forth below, even if Plaintiffs were required to show that Defendants' misrepresentations were "knowingly false," the evidence

---

[5] The dictum on which Defendants rely from *City of Omaha*, 679 F.3d 64, is not to the contrary.  There, the court held that subjective falsity was not pled because the complaint's allegations "do not plausibly demonstrate that defendants knew, <u>nor even had reason to know</u>" that their statements were false, and thus, the complaint was "<u>devoid of even conclusory allegations</u> that defendants did not believe in their statements of opinion."  *Id.* at 69, 70.

satisfies this requirement.

1.   <u>Defendants Mischaracterize Lewis's Testimony</u>

While Defendants acknowledge that Lewis admitted that the accretion/dilution calculation set forth in the Proxy was false as of the date of the vote, Defendants now attempt to rewrite Lewis's testimony by asserting that he purportedly testified that he only learned of the change in the accretion/dilution calculation one business day after the vote, when BoA finalized a December 9 Board presentation.  BoA Mem. at 2-3, 11-13, 18-21.  This is not true.  As reflected in the video clip that Plaintiffs provided to the Court, Lewis unequivocally testified that, by the date of the vote, the accretion/dilution calculation in the Proxy had changed "dramatically" to the specific calculation set forth in the December 9 Board presentation, and thus, the calculation in the Proxy was "no longer accurate."  Pl. 56.1 ¶¶ 94-98.  By definition, the only way Lewis could have testified that the Proxy was false "as of December 5, 2008" is if he knew that the calculation had changed as of that time.  Pl. 56.1 ¶ 94.  Lewis never stated, or even suggested, that the new accretion/dilution figures were uncertain or unknown as of the vote.  Nor did Lewis state that he and BoA only became aware of the change in the accretion/dilution figures after the vote.  Indeed, Lewis did not qualify his testimony on this topic in any fashion.  Had Lewis truly only learned that the calculation had changed after the vote, he undoubtedly would have testified that way, and disputed any suggestion that the Proxy was false as of December 5.  He did <u>neither</u>.

In response, Defendants complain about Plaintiffs' choice of questions at Lewis's deposition – undoubtedly because Plaintiffs successfully elicited Lewis's admission that the Proxy was false as of the vote.  Such complaints are unfounded.  No fewer than <u>eight</u> defense lawyers from <u>six</u> experienced defense firms attended Lewis's deposition.[6]  Not one of these defense

---

[6] Lewis was represented by partners from both Debevoise & Plimpton LLP and Wyatt & Blake LLP; BoA was represented by a partner from Cleary Gottlieb Steen & Hamilton LLP; Defendant Price was represented by a partner from Baker Botts LLP; and Defendants Merrill and Thain were represented by attorneys from Shearman & Sterling

attorneys objected to Plaintiffs' questioning concerning accretion/dilution, and not one sought to "clarify" Lewis's testimony following Plaintiffs' direct examination.  If Lewis truly meant to testify that he and BoA did not know that the accretion/dilution figures had changed until after the vote, or if his clear testimony in response to Plaintiffs' questioning was otherwise incomplete or mistaken, these attorneys had ample opportunity to clarify the record – yet none did so.  Having failed to lodge a single objection to this line of questioning, or to ask a single question of Lewis, Defendants cannot now avoid summary judgment by re-writing Lewis's testimony and claiming that Lewis really meant to say something different from his sworn testimony.  *See, e.g.*, *Zarlin v. Air France*, 2007 WL 2585061, at *2 (S.D.N.Y. Sept. 6, 2007) ("To avoid summary judgment, the non-moving party must offer 'some hard evidence' of its version of the facts, not merely rely on conclusory allegations or speculation.") (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)).

Indeed, implicitly recognizing that Defendant Lewis's testimony in this case establishes that the Proxy's accretion/dilution calculation was false as of the date of the vote, Defendants ask the Court to rely on Lewis's testimony from another case – the separate Delaware derivative action (as Defendants have repeatedly done in connection with summary judgment briefing).  *See* BoA Mem. at 2, 11-12.  According to Defendants, Lewis testified in the Delaware action that he did not know that the accretion/dilution calculation had changed as of the date of the vote.  *Id.* Again, Defendants' argument fails on the law and the facts.

First, Lewis's testimony in the Delaware action cannot be used against Plaintiffs in this action.  Defendants' use of Lewis's Delaware transcript violates Defendants' own agreement in this case "on behalf of Defendants in both actions . . . that any testimony elicited solely in the Delaware Derivative Action . . . will not be admissible in the Consolidated Securities Action."

LLP and Dechert LLP, respectively.

Ross Decl. Ex. 172 at 2.  Moreover, Defendants' reliance on Lewis's Delaware testimony violates Federal Rule of Civil Procedure 32(a), which specifically prohibits Defendants from using that testimony against Plaintiffs at a hearing or trial in this case.[7]  Defendants cannot create a genuine factual dispute based on testimony in another case that as a matter of law cannot be used against Plaintiffs here.  *See, e.g.*, *Trebor Sportswear Co., Inc. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989) (non-movant must "identify sufficient <u>admissible</u> evidence . . . so as to demonstrate that there existed a genuine issue of material fact").

<u>Second</u>, even if considered, Lewis's Delaware testimony does not support Defendants' position.  In his Delaware deposition, Lewis admitted that, at the time he made his misleading statements at the December 5 shareholder meeting, he was in possession of a profit plan which showed that, for 2009, Merrill was expected to earn "far below" the income that the Proxy's accretion/dilution calculation relied on.  Ross Reply Decl. Ex. 1 at 250:24 – 252:5.  When asked why he nevertheless made his false statements at the December 5 meeting, Lewis did <u>not</u> testify that he believed the calculation set forth in the Proxy remained accurate.  Rather, he testified that he affirmed the materially inaccurate calculation because it was the only one he could recall BoA making, and that (despite the information he personally knew) he did not want to contradict BoA's public statements, stating, "that was what I recalled – that's what I recalled about the – as much as I could say about the presentation, and that was the only thing we had said publicly."  *Id.* at 251:24 – 252:5.  Far from exculpating himself, Lewis essentially admitted that he repeated the false accretion/dilution figures because he did not want to contradict the then-incorrect accretion/dilution calculation in the Proxy.

---

[7] As the Court is aware, discovery in these two cases was not coordinated, and thus, Plaintiffs had no reason to waste resources and attend Lewis's deposition in the Delaware action.

2.    <u>The Evidence Defendants Submit Regarding The Accretion/Dilution Calculation Does Not Establish A Genuine Factual Dispute</u>

In support of their assertion that they did not know that the accretion/dilution calculation had changed as of the date of the vote, Defendants submit a series of documents, which they claim show that, days before the vote, Defendant Price and other senior BoA executives were actively revising the accretion/dilution calculation represented in the Proxy. *See, e.g.*, Enzer Decl. Ex. 20 at BAC-ML-NYAG70312456 ("most current" revised calculation as of morning of vote). According to Defendants, these documents establish that Defendants had no idea that the accretion/dilution calculation had changed prior to the vote. *See* BoA Mem. at 2, 10-13, 18-20. Defendants' argument misses the mark, and the documents on which they rely establish the opposite of what they contend.

<u>First</u>, these documents are irrelevant. Defendant Lewis unequivocally testified that, as of the vote, the accretion/dilution calculation in the Proxy had changed to the specific calculation in the December 9 Board presentation, and thus, the Proxy was "no longer accurate." In light of this sworn admission from the Bank's former CEO, Plaintiffs do not need to rely on any document to establish that the Proxy was materially false and misleading.

<u>Second</u>, the documents actually <u>corroborate</u> Lewis's testimony that the accretion/dilution calculation in the Proxy was false as of the vote. Indeed, each of the revised calculations cited by Defendants unambiguously showed that the accretion/dilution calculation in the Proxy had changed materially for the worse. For example, the "most current" revised calculation sent to Defendant Price before the vote reflected that, for 2009, the Merger would be 20.9% dilutive, rather than 3% dilutive as disclosed in the Proxy, and that for 2010, the Merger would be 6.7% dilutive, rather than "breakeven" as disclosed in the Proxy. *See* Enzer Decl. Ex. 20 at BAC-ML-NYAG70312505; *see also* Ross Reply Decl. Ex. 2 (revised calculation sent to Price showing

deterioration as of December 1, 2008); Ross Reply Decl. Ex. 3 (revised calculation showing deterioration as of December 4); Singer Decl. Ex. 41 (December 4 email from Treasurer Brown stating that "dilutive impacts" of debt offerings will "hurt" the "numbers").  In sum, far from exonerating BoA, the documents indisputably establish that BoA knew before the vote that the accretion/dilution calculation had materially changed for the worse.

Third, the record is replete with additional evidence establishing that numerous senior executives at BoA and Merrill – including Defendants Lewis, Price, Thain and Cotty – knew or should have known that expected earnings for the combined company, which was the primary driver of the accretion/dilution calculation, had materially worsened prior to the vote.  For example, as detailed in Plaintiffs' opening brief, Defendants knew prior to the vote that Merrill would suffer catastrophic losses of more than $16 billion in the fourth quarter of 2008.  Pl. 56.1 ¶¶ 81-88.  Defendants Lewis, Price, Thain and Cotty further knew that, as a result of these losses, BoA was forced to: (i) order Merrill to reduce its balance sheet by hundreds of billions of dollars, which reduced Merrill's expected income by at least $1 billion per year (*id*. ¶¶ 53-64, 124), and (ii) conduct $20 billion of debt offerings in the fourth quarter of 2008, including a "mammoth" $9 billion offering before the vote, which reduced Merrill's expected income by an additional $525 million per year (*id*. ¶¶ 75-80, 129).[8]

Defendants also suggest that the only way for Plaintiffs to show subjective falsity is to establish that Lewis personally – as opposed to BoA as a company – knew that the accretion/dilution calculation had changed as of December 5.  *See* BoA Mem. at 18-19 & n.7.  However, Plaintiffs are not required to establish subjective falsity as to each Defendant so long as

---

[8] For these reasons, Merrill's and Thain's contention that they were unaware of the change in the accretion/dilution calculation (ECF No. 651 at 1-2) fails.  Merrill and Thain also incorrectly contend that, based on the Court's decision on the first motion to dismiss, they cannot be liable under Section 10(b) for the Proxy's misstatements related to accretion/dilution.  The Court held that Plaintiffs can assert Section 10(b) claims against these Defendants for the affirmative misstatements in the Proxy (*see Bank of Am.*, 757 F. Supp. 2d at 288), and by the time of the vote, the Proxy contained affirmative misstatements related to the accretion/dilution calculation.

they show subjective falsity for the <u>originator</u> of the opinion.  As Judge Cote recently held in the context of a Securities Act claim, "*Fait* requires a showing of 'subjective falsity' <u>only on the part of the originator of an opinion</u>," and "does <u>not</u> require a defendant-specific showing of subjective falsity in order to impose liability for opinion statements."  *Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, -- F. Supp. 2d --, 2012 WL 1570856, at \*14-15 (S.D.N.Y. May 4, 2012).[9]

In this case, the originator of any opinion concerning accretion/dilution was BoA.  The Second Circuit has held that a corporation's state of mind can be established by looking to whether an agent of the company was "sufficiently knowledgeable about the company to know that the [statement] was false."  *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195-96 (2d Cir. 2008) (internal quotation marks omitted).  Based on the evidence summarized above, there is no genuine dispute that BoA's most senior executives knew that the accretion/dilution calculation had changed prior to the vote, and that BoA was actively preparing new calculations to take account of the material deterioration in that calculation.  Such evidence more than suffices to establish the subjective falsity of BoA's accretion/dilution calculation as of the vote.[10]  In any event, as set forth above, Lewis knew or should have known that the previously disclosed accretion/dilution calculation was no longer accurate as of the date of the vote.

In sum, even assuming that the statements at issue are opinions, Plaintiffs have established that there is no genuine factual dispute as to subjective falsity.

---

[9] For the purposes of Plaintiffs' Section 10(b) claims, Plaintiffs must separately establish the element of scienter for each Defendant, which Plaintiffs will do at trial.  Further, for the reasons set forth above, whether or not Merrill or Thain had "control" over Lewis's December 5 statements (ECF No. 651 at 2) is irrelevant to this motion.

[10] Defendants' reliance on *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008) (*see* BoA Mem. at 19, n.7), is misplaced, as that case held that "it <u>is</u> possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and disseminated the fraud."  Further, in *Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1134-35 (9th Cir. 2004), the court merely held that plaintiffs had failed to allege that any senior officer knew facts indicating that the CFO's statements were false.

C.     **Even If The Court Finds A Genuine Factual Dispute As To Subjective Falsity, Summary Judgment Should Be Granted As To Objective Falsity**

Even if the Court determines that there is an issue of fact as to subjective falsity, Plaintiffs are still entitled to summary judgment as to the <u>objective</u> falsity component of their claims. Federal Rule of Civil Procedure 56(g) specifically provides that, "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." As noted above, there is no genuine dispute – and Defendants concede – that, as of the date of the vote, BoA's accretion/dilution calculation had changed significantly for the worse, and thus, the calculation in the Proxy was "no longer accurate." Based on this admitted fact, at a minimum, summary judgment as to objective falsity is appropriate.

D.     **Defendants Had A Duty To Update The Admittedly False Accretion/Dilution Calculation**

Defendants next assert that, even though the accretion/dilution calculation was admittedly false as of the date of the vote, as a matter of law they had no duty to update it and provide accurate information to shareholders voting on the Merger. *See* BoA Mem. at 21-26. Defendants are wrong.

To start, Defendants' arguments concerning the duty to update are irrelevant as to Lewis's statement on December 5, which was materially false when made. As set forth in Plaintiffs' opening brief, in response to a shareholder's question at the December 5 shareholder meeting, Lewis assured investors that BoA still expected the Merger to be just 2.8 percent dilutive in 2009 and breakeven in 2010. Pl. 56.1 ¶¶ 92-93. There is no dispute that this statement was false at the time Lewis made it. Further, based on all the evidence summarized above, Lewis knew or should have known that his December 5 statement was false. Nothing more is required to establish a violation of the securities laws.

13

Moreover, Defendants' arguments that they had no duty to update their statements made before December 5 are wrong as a matter of law. Defendants first claim that there is no duty to update "forecasts" "under Section 10(b)," because they supposedly are "not the sort of statements that remain alive in the minds of investors as a continuing representation." BoA Mem. at 21. This argument ignores the duty to update under Section 14(a) and misstates the law under Section 10(b).

The duty to update under Section 14(a) and Rule 14a-9 is broad and unambiguous. As Defendants acknowledge, Rule 14a-9 specifically provides that a duty to update arises whenever it is "necessary to correct <u>any statement</u> in <u>any earlier communication</u> with respect to the solicitation of a proxy for the same meeting or subject matter <u>which has become false or misleading</u>." 17 C.F.R. § 240.14a-9(a) (quoted in BoA Mem. at 21, n.9). As this language establishes, "any" statement that has become false or misleading must be updated; there is no exception for "forecasts." *See Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1297, n.15 (2d Cir. 1973) ("[W]e cannot suppose that management can lawfully sit by and allow shareholders to approve corporate action on the basis of a proxy statement without disclosing facts arising since its dissemination if these are so significant as to make it materially misleading.").[11] Further, the duty to update applies with special force to the accretion/dilution calculation here because the Proxy specifically identified it as a "<u>material</u> factor" to the Board's solicitation of shareholder approval of the Merger.

While Defendants claim that there is no duty to update forecasts "under Section 10(b)," the Second Circuit has held otherwise. Defendants conspicuously ignore the Second Circuit's holding

---

[11] Defendants wrongly attempt to distinguish *Gerstle* on the ground that it supposedly concerned the misstatement of a historical, rather than forward-looking, fact. *See* BoA Mem. at 23, n.11. In *Gerstle*, Judge Friendly concluded that the proxy was misleading because it failed to disclose the issuer's <u>intention</u> to take an action (selling plants) <u>in the future</u> – a clear forward-looking statement. *See Gerstle*, 478 F.2d at 1295 ("We rest our decision on the point that . . . the Proxy Statement must be faulted, on traditional grounds . . . as failing adequately to disclose that, upon completion of the merger, Skogmo intended to pursue aggressively the policy of selling GOA's plants[.]").

in *Time Warner*, 9 F.3d at 267, that "[w]e agree that a duty to update opinions and projections may arise if the original opinions or projections have become misleading as the result of intervening events." Similarly, this Court has held that "'[w]hen objectively verifiable factors cause a significant change in a party's attitude toward a merger – a 'sharp break from . . . prior public positions,' <u>the securities laws may require that previously disclosed intentions be corrected</u>.'" *Bank of Am.*, 757 F. Supp. 2d at 313 (quoting *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 748 (S.D.N.Y. 1989)); *see also NovaGold*, 629 F. Supp. 2d at 301 (rejecting argument "that forecasts need not be disclosed even if they render previously issued forward-looking statements incorrect," and holding that company had a "duty to update" its previously-disclosed forecast of cost estimates).

The only limitation on the duty to update projections under Section 10(b) is that the projection at issue must contain some "sort of definite positive projections that might require later correction." *Time Warner*, 9 F.3d at 267. This standard is easily met here. As explained above, the accretion/dilution calculation was a specific, quantitative calculation that purported to show the favorable impact of the Merger on BoA's earnings per share, and was specifically identified in the Proxy as a "material factor" to the Board's solicitation of shareholder approval. Such a "hard" and key fact is the quintessential sort of representation that remains "alive" in the minds of investors voting on the Merger. Further, since the accretion/dilution calculation had changed "significantly" for the worse by the time of the vote, Section 10(b)'s duty to update applies.[12]

---

[12] The authorities on which Defendants rely are inapposite. *See* BoA Mem. at 22. None involved a merger, a Section 14(a) claim, an accretion/dilution calculation, or an admission that the company's statements had become false by the time of a shareholder vote. The only case Defendants cite from this Circuit – *In re Duane Reade Securities Litigation*, 2003 WL 22801416, at *7 (S.D.N.Y. Nov. 25, 2003) – merely held that there was no duty to update "statements that were not material in the first place." Given that the Proxy identified the accretion/dilution calculation as "material," this holding has no application here. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1432 (3d Cir. 1997), on which Defendants heavily rely, held that the company had no duty to update the CFO's statement that he was "comfortable with analyst projections" of the company's performance – a far cry from the specific quantitative statements here.

Defendants next suggest that, because projections can be "volatile," enforcement of the duty to update would, as a "practical" matter, "require[] virtually constant statements by [the company] in order to not mislead investors."  BoA Mem. at 22.  Defendants' hyperbole should be rejected.  Plaintiffs are not contending that Defendants were required to update the Proxy each time there was a small change in the accretion/dilution calculation.  Rather, Plaintiffs assert that Defendants were required to update the Proxy before the vote to disclose that the accretion/dilution calculation – a "material factor" in the Board's decision to recommend shareholder approval of the Merger – had significantly changed for the worse.  As this Court recognized in rejecting a similar argument at the pleading stage, enforcing the duty to disclose accurate information as of the vote "is not, as the defendants assert, tantamount to an obligation that a company issue continuous updates of its financial condition.  It is instead a recognition that Section 14(a) and Rule 14a-9 apply even in a moment of significant 'turbulence' and 'turmoil.'"  *Bank of Am.*, 757 F. Supp. 2d at 306.[13]

Defendants next contend that they had no duty to update as a matter of law because the Proxy and the September 15 presentation purportedly warned investors that the accretion/dilution figures "spoke only as of September 14, 2008 and would not be updated."  BoA Mem. at 21-22.  However, this contention misstates what Defendants' own purported disclaimers actually said.  Although Defendants conveniently omit this language from their brief, the very disclaimer in the Proxy on which they rely specifically represented that Defendants <u>would</u> update the Proxy's forward-looking statements "<u>to the extent required by applicable law or regulation</u>."  Ross Reply Decl. Ex. 4 at 22.  Accordingly, Defendants did <u>not</u> disclaim their obligation under the federal

---

[13] Defendants' argument that they had no duty to update because they supposedly did not have "any reliable updated forecast to provide" is wrong.  BoA Mem. at 26.  As noted above, this assertion contradicts Lewis's testimony. Further, even if BoA had not finalized its revised accretion/dilution calculation as of December 5, the evidence is uncontroverted that, prior to the vote, senior BoA executives knew that the calculation had materially changed for the worse.  Nothing more is required to trigger the duty to update.

securities laws to provide accurate information as of the date of the vote – nor could they disclaim their responsibility to comply with the law.[14]

Similarly, none of the other purported disclaimers in the Proxy on which Defendants rely stated that the accretion/dilution calculation spoke "only" as of September 14 and would not be updated by BoA.  These statements related solely to whether the Bank's third-party financial advisors would update their fairness opinions as to the adequacy of the exchange ratio – an issue not germane to this case – and did not address BoA's duty to update its accretion/dilution calculation.  Specifically, these statements represented that "[e]ach [fairness] opinion addresses only the fairness to Bank of America, from a financial point of view, of the exchange ratio . . . as of September 14, 2008, the date of each opinion. . . .  Neither FPK nor J.C. Flowers has assumed any responsibility for updating or revising its opinion based on circumstances or events occurring after the date thereof."  Ross Reply Decl. Ex. 4 at 8.  In short, these disclaimers had nothing to do with the Bank's duty to update its accretion/dilution calculation.[15]

### III. Plaintiffs Are Entitled To Summary Judgment As To The Materiality Of Defendants' Statements Concerning The Accretion/Dilution Calculation

Defendants' contention that the accretion/dilution calculation was not material – even though Defendants represented it was "material" – is not sufficient to create a genuine factual dispute.  As noted above, the Proxy identified the accretion/dilution calculation as a "material factor" on which the Board based its solicitation of shareholder approval of the Merger.  While

---

[14] As for the statements in the September 15 press release and slide presentation, both of these documents "urge[d] investors and security holders to read the joint proxy statement/prospectus regarding the proposed merger . . . because it contains important information."  Singer Decl. Ex. 12 at BAC-ML-NYAG 10069119; Singer Decl. Ex. 13 at BAC-SEC-LIT 00177203.  In turn, as noted above, the Proxy represented that Defendants would update any forward-looking statements as "required by applicable law."

[15] Defendants also incorrectly suggest that they were not required to update the accretion/dilution calculation, and that it was not material, because the initial calculation employed analysts' estimates.  *See* BoA Mem. at 6, 31.  Whether the initial calculation employed analysts' estimates is irrelevant.  Defendants specifically identified that calculation as material in the Proxy, and the law is clear that they had a duty to update it when they were in possession of information showing that it had changed significantly for the worse.

this fact alone is sufficient to establish materiality under Sections 14(a) and 10(b), Plaintiffs have provided additional evidence establishing materiality.  Lewis testified that the accretion/dilution calculation was "important" to his decision to agree to the Merger, that he initially rejected the Merger based on his review of the first accretion/dilution calculation, and that he only approved the deal when he received the more favorable accretion/dilution calculation later provided to shareholders in the Proxy.  Pl. 56.1 ¶¶ 9-21.  Further, considering that shareholders specifically asked about the accretion/dilution calculation at the December 5 shareholder vote, Plaintiffs also demonstrated that shareholders were directly focused on the dilutive effect of the Merger on their holdings as of the vote.  Pl. 56.1 ¶¶ 92-93.  Under these circumstances, there can be no genuine dispute that the accretion/dilution calculation in the Proxy was material to shareholders.  *See Carlisle Ventures, Inc. v. Banco Espanol De Credito, S.A.*, 1996 WL 680265, at *8 (S.D.N.Y. Nov. 25, 1996) (Sotomayor, J.) (granting plaintiff's motion for summary judgment where "the only reasonable conclusion a trier of fact could draw is that [the] deception was material"); *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 661 (S.D.N.Y. 2004) (granting partial summary judgment on materiality).

Remarkably, Defendants assert that when they used the word "material" in the Proxy to describe the accretion/dilution calculation, they did not really mean it.  BoA Mem. at 26-33. Defendants contend that because certain Board members <u>may</u> have placed varying degrees of importance on the items they listed in the Proxy as "material factors" in soliciting approval of the Merger, the accretion/dilution calculation was not material.  *Id.* at 32-33.  This makes no sense. The Proxy specifically represented that it was a "material factor" for the Board as a whole. Merely because certain Board members <u>may</u> have considered the accretion/dilution calculation as more or less material than other "material factors" listed in the Proxy is irrelevant, and obviously

does not render the accretion/dilution calculation immaterial.[16]

Similarly, Defendants contend that, even if the accretion/dilution calculation was material to shareholders in September 2008, deteriorating market conditions may have rendered the calculation immaterial by the date of the vote. BoA Mem. at 30-31. Citing virtually no evidence to support this hypothetical shift in investors' priorities, Defendants have failed to create a genuine dispute of fact by this assertion. Moreover, this argument is nonsensical. Defendants' expectations about how much the Merger would decrease earnings per share going forward – the heart of the accretion/dilution calculation – could only have become more material to investors as the economic climate deteriorated. Indeed, shareholders focused on this calculation until the vote, specifically questioning Lewis about the dilutive effect of the Merger, and prompting his false representation.[17]

Finally, Defendants argue that the accretion/dilution calculation was accompanied by sufficient risk warnings to render those statements immaterial to shareholders pursuant to the "bespeaks caution" doctrine or the PSLRA's safe harbor provisions. BoA Mem. at 27-30. Defendants are wrong. The Proxy's general warnings of, for example, "less favorable than expected" economic conditions failed to disclose the fact that, as of the vote, BoA expected dramatically worse dilution to BoA shareholders following the Merger. As this Court has held, vague warnings of some hypothetical future harm cannot immunize Defendants from liability for

---

[16] As set forth in Plaintiffs' opening brief, Director Defendant Gifford testified in this Action that accretion/dilution was one of the "principal four issues" he focused on in any proposed merger, and he was "very satis[fied]" with the accretion/dilution calculation of the Merger he received in September 2008. While Defendants claim that this is contradicted by Gifford's and Defendant May's testimony in the Delaware derivative action (BoA Mem. at 32, n.15) – which, as set forth above, cannot be used against Plaintiffs in this Action – they are incorrect. Gifford testified in the Delaware action that he received a changed accretion/dilution calculation on December 9, which was "obviously after the fact. So I was not in position after this fact to say is this still a good deal. I've already voted for it, the shareholders already voted for it, we had a contract to buy Merrill Lynch." Enzer Decl. Ex. 73 at 294:19 – 295:15.

[17] For this reason, the single item of evidence relied upon by Defendants – the purported decline in the absolute cost of the Merger to BoA because of the decline in BoA's stock price (BoA Mem. at 31) – does not support their argument.

the failure to disclose existing, material facts.  *See Bank of Am.*, 757 F. Supp. 2d at 305-06; *see also Heller v. Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603, 618 (S.D.N.Y. 2008) (securities laws provide "no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away"); *see also In re Nash Finch Co.*, 502 F. Supp. 2d 861 (D. Minn. 2007) (statements that defendant expected acquisition to be accretive were not accompanied by meaningful risk warnings where the company's officers had reason to believe that the acquisition would not be accretive).[18]

Moreover, Defendants have failed to demonstrate that the generic warnings in the Proxy, such as those concerning possible "changes in economic conditions" (BoA Mem. at 28-29), were specifically "tailored" to the accretion/dilution calculation.  As the Second Circuit held in rejecting this argument in *Slayton*:

> Cautionary language must be extensive and specific. A vague or blanket (boilerplate) disclaimer which merely warns the reader that the investment has risks will ordinarily be inadequate to prevent misinformation. To suffice, the cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions in the prospectus which the plaintiffs challenge.

604 F.3d at 772 (quoting *Inst. Investors Group v. Avaya, Inc.*, 564 F.3d 242, 256 (3d Cir. 2009)); *see also Va. Bankshares*, 501 U.S. at 1097 (accompanying statements must "discredit the [misleading statement] so obviously that the risk of real deception drops to nil").  Thus, the

---

[18] Defendants rely on the Second Circuit's decision in *Slayton v. American Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010), for the proposition that they cannot be held liable for "forward-looking statements accompanied by sufficient cautions . . . regardless of the speaker's belief in the accuracy of the statements."  BoA Mem. at 28.  However, in *Slayton*, the Second Circuit held that risk warnings that are directly belied by the defendants' actual knowledge are not "meaningful" and do not fall within the PSLRA's safe harbor provision.  Defendants' other cited cases (*see id*. at 29-30) fail to support their arguments for the same reason.  *See Kemp v. Universal Am. Fin. Corp*., 2007 WL 86942 (S.D.N.Y. Jan. 10, 2007) (safe harbor protected forward-looking statements where defendant had no reason to believe projection was inaccurate); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1123 (10th Cir. 1997) (same); *Asher v. Baxter Int'l, Inc.*, 377 F.3d 727 (7th Cir. 2004) (same); *P. Stolz Family P'Ship L.P. v. Daum*, 355 F.3d 92 (2d Cir. 2004) (same).

Proxy's broad and general warnings were inadequate to provide sufficient warnings to investors.[19] They did not warn, for example, that Merrill had been forced to materially reduce its balance sheet or that BoA had been forced to issue billions in new debt, thereby lowering the combined company's expected earnings per share and dramatically changing BoA's accretion/dilution calculation. In sum, neither the bespeaks caution doctrine nor the PSLRA's safe harbor provisions immunize Defendants from liability here.

## IV.    Plaintiffs Are Entitled To Pursue Claims Based On The Accretion/Dilution Misrepresentations Exposed During Discovery

Unable to avoid their former CEO's sworn admissions and their own identification of the accretion/dilution calculation as a "material factor" in the shareholder solicitation effort, Defendants attempt to blame Plaintiffs' counsel. According to Defendants, Plaintiffs' counsel has acted "improperly and unfairly" by moving for summary judgment based on the accretion/dilution misstatements because they were not identified in the October 2010 Complaint. *See* BoA Mem. at 33. This argument fails.

### A.    Second Circuit Law Explicitly Recognizes That Plaintiffs Have The Right To Seek Summary Judgment Based On Misstatements Uncovered In Discovery

Defendants assert that, as a legal matter, Plaintiffs cannot use at summary judgment or trial facts learned in discovery to supplement the allegations in the Complaint. *See* BoA Mem. at 33-34. However, the Second Circuit recognizes that the purpose of discovery is to allow a plaintiff to develop facts in support of its claims, and specifically instructs district courts to conform pleadings to facts developed during discovery by liberally "constru[ing] a summary judgment

---

[19] *In re Veeco Instruments, Inc. Securities Litigation*, 235 F.R.D. 220 (S.D.N.Y. 2006) is inapposite. The challenge in *Veeco* to an accretion calculation rested on the allegation that post-closing results did not meet pre-vote expectations. *See id*. at 235. This is nothing like this case, where the CEO has admitted that the accretion/dilution calculation in the Proxy was inaccurate as of the date of the vote. Moreover, according to the *Veeco* court, the company "could not conceivably have contained more specific warnings" – which is not the case here. *Id*. at 236.

motion as a motion for leave to amend." *Aetna*, 404 F.3d at 603.[20]   The Second Circuit further instructs that "amendment should normally be permitted, and . . . refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'" *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. 1995).  Indeed, it is well-established that, "even at trial, '[t]he court should freely permit an amendment' to conform the pleadings to the proof, unless the objecting party can show prejudice." *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 325 (2d Cir. 2011).[21]

In evaluating whether a defendant would be unduly prejudiced by conforming the complaint to the facts at summary judgment or trial, the key inquiry is "whether a party has had prior notice of a claim and whether the claim arises from the same transaction as claims in the original pleading." *Margel v. E.G.L. Gem Lab Ltd.*, 2010 WL 445192, at *11 (S.D.N.Y. Feb. 8, 2010).  An "amendment should not be denied simply because it 'may add another issue to the case[.]' [A]bsent 'specific and compelling allegations of prejudice, such as some undue disadvantage in the presentation of a defense to the claims sought to be asserted,'" leave to amend should be granted.  *Id.* (citation omitted).

Consistent with these principles, courts in this District routinely allow plaintiffs in securities actions to assert misrepresentations identified during discovery that were not specifically referenced in the complaint, as Plaintiffs seek to do here.  *See, e.g.*, *SEC v. ICP Asset Mgmt., LLC*, 2012 WL 2359830, at *4 (S.D.N.Y. June 21, 2012) (Kaplan, J.) (rejecting defendants' argument at summary judgment that plaintiff could not proceed based on unpled misrepresentations and

---

[20] *See also Clomon v. Jackson*, 988 F.2d 1314, 1323 (2d Cir. 1993) ("Undisputed facts as presented on [a] summary judgment motion serve[] as a basis to deem the complaint amended to conform with the proof[.]"); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (affirming summary judgment order that "construed [movant's] summary judgment motion also as a motion to amend").

[21] *Accord Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000) ("the district court was correct in considering [plaintiff's] . . . claim on the merits" because "a district court may consider claims outside those raised in the pleadings so long as doing so does not cause prejudice").

omissions first "outlined by [plaintiff] in its response to interrogatories" at the "close of discovery"); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 579 (S.D.N.Y. 2011) (Holwell, J.) (misrepresentations added at trial); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 617 F. Supp. 2d 216, 224 & n.37 (S.D.N.Y. 2009) (Scheindlin, J.) (misrepresentations added at summary judgment).

In an effort to sidestep this law, Defendants contend that the Court's September 16, 2010 Order (the "September 2010 Order") limited Plaintiffs to the facts set forth in the Complaint at trial and summary judgment. *See* BoA Mem. at 34. This is not true. The September 2010 Order specifically stated that the Court was "<u>not</u> in a position to rule on a motion to amend that is not presently before it." September 2010 Order at 1. The Court did not fashion a rule that it could not consider at summary judgment evidence developed during discovery to support Plaintiffs' claims. *Id*. Nor would such a rule make any sense. As of the date of the September 2010 Order, not a single deposition had been taken in this Action, and neither Plaintiffs nor the Court knew (or could reasonably know) that Defendant Lewis would testify 15 months later that the accretion/dilution calculation was false as of the date of the shareholder vote. Under these circumstances, the September 2010 Order is no safe harbor for Defendants' admission that representations in the Proxy were false as of the shareholder vote, and does not alter the well-settled rule that a plaintiff may seek summary judgment based on facts developed during discovery that were not known at the time it drafted the complaint.[22] Moreover, as set forth below, Defendants have failed to show any prejudice – let alone a "specific and compelling" showing of "undue" prejudice – from permitting Plaintiffs to pursue misrepresentations related to the accretion/dilution calculation.

---

[22] Defendants argue that Federal Rule of Civil Procedure 16(b)(4), and not Rule 15, should apply in assessing whether the Court should conform the Complaint to the evidence. Defendants' argument, however, fares no better under either rule. For the same reasons set forth herein, ample good cause exists to allow Plaintiffs to assert their existing claims based on the facts discovered through discovery. *See, e.g.*, *In re Charles Schwab Corp. Sec. Litig.*, 2009 WL 3429742, at *2-3 (N.D. Cal. Oct. 22, 2009) (rejecting argument that complaint could not be amended to include additional misrepresentations identified "during discovery after the case management amendment deadline").

B.      **Defendants' Assertions Of Prejudice Are Baseless**

Defendants contend that they will be unduly prejudiced if Plaintiffs are permitted to seek summary judgment as to Defendants' admittedly false statements concerning accretion/dilution. *See* BoA Mem. at 33-38.  This argument fails for numerous reasons.

First, while Defendants accuse Plaintiffs' counsel of a "complete lack of diligence" in failing to identify the accretion/dilution misstatements in their October 22, 2010 Complaint (BoA Mem. at 34-36), Plaintiffs acted precisely as they should have in developing the facts related to these misrepresentations.  When the Complaint was filed, Plaintiffs properly focused their loss-related allegations on what the evidence showed: that Defendants' failure to disclose Merrill's massive fourth quarter 2008 losses violated the securities laws.  As contemplated by the Federal Rules, throughout discovery, Plaintiffs then explored the consequences of Merrill's undisclosed losses on Merrill and the combined company.

It was only through depositions that Plaintiffs established that Merrill's fourth quarter losses caused the change in the accretion/dilution calculation.  In particular, Plaintiffs learned through the depositions of Wachtell Lipton partners and senior BoA executives, including former Treasurer Jeff Brown, that Merrill's losses reduced the combined company's earnings ability – the primary driver of the accretion/dilution calculation – because the losses forced BoA to: (1) order Merrill to reduce its balance sheet, decreasing the company's income by at least $1 billion per year; and (2) conduct $20 billion in offerings during December 2008, reducing the company's income by another $525 million per year.

Significantly, it was only on March 27, 2012, when Plaintiffs deposed Lewis, that Plaintiffs established that the accretion/dilution calculation set forth in the Proxy was materially false as of December 5, 2008.  Lewis's admission was new.  Indeed, neither the SEC, NYAG, nor Congress meaningfully explored the topic, much less uncovered evidence showing that the

accretion/dilution calculation was false by the vote.  In sum, far from engaging in delay, Plaintiffs did exactly what they were supposed to do: they diligently pursued their claims in discovery, and developed evidence indisputably demonstrating that Defendants made material misstatements concerning the Merger's impact on BoA's shareholders.[23]  While it is undoubtedly unpleasant for Defendants that Plaintiffs have appropriately used the discovery process to develop powerful evidence in support of their claims, it does not constitute prejudice to Defendants.

Second, the accretion/dilution misstatements "arise[] from the same transaction as claims in the original pleading."  *Margel*, 2010 WL 445192, at *11.  Given that the misstatements concerning accretion/dilution are directly related to the core facts pled in the Complaint, Defendants cannot claim undue prejudice.  *See Michalek v. Amplify Sports and Entm't. LLC*, 2012 WL 2357414, at *5 (S.D.N.Y. June 20, 2012) (no prejudice even when "the discovery deadline has since passed, where the proposed amendment arises from the same set of operative facts as the original claims, or from events closely related to those originally pleaded") (internal quotation marks omitted).[24]

Third, the accretion/dilution calculation has been the subject of extensive discovery for several months, including both fact and expert discovery.  *See Margel*, 2010 WL 445192, at *11 (no prejudice where defendants had "prior notice of [the] claim").  In the course of discovery,

---

[23] Tellingly, as their supposed proof of Plaintiffs' lack of diligence, Defendants assert that one document within the 2.1 million pages of documents they produced before October 2010 showed a different accretion/dilution calculation. *See* BoA Mem. at 35.  However, this document was dated after the shareholder vote and did not state whether Defendants' accretion/dilution calculation was false as of the vote.  *See* Enzer Decl. ¶ 33; Singer Decl. Ex. 47.

[24] Defendants' authorities do not suggest a different result.  For example, Defendants rely on *Ansam Assoc., Inc. v. Cola Petroleum Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985), in which the court confirmed that "generally leave to file an amended pleading 'shall be freely given.'"  In *Ansam*, the court refused to conform the complaint to the facts developed during discovery because plaintiff asserted at summary judgment <u>entirely different causes of action</u> that "concerned a different period of time and were derived from a different statute."  *Id*. at 446.  Indeed, in distinguishing *Ansam*, the Second Circuit held that a district court's failure to allow an amendment of the complaint, even where discovery is complete, was improper where "the new claims are merely variations on the original theme of [the existing claims], arising from the same set of operative facts as the original complaint."  *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986).  The other cases cited by Defendants (*see* BoA Mem. at 33-34) are similarly inapposite because they also involve a plaintiff asserting a completely new cause of action not pled in the complaint.

Plaintiffs requested – and Defendants produced – documents relating to the accretion/dilution calculation and, as set forth above, Plaintiffs questioned a significant number of fact witnesses about the impact of Merrill's balance sheet reduction and debt offerings on the earnings power of the combined company, and the Bank's accretion/dilution calculation. *See* Ross Reply Decl. Exs. 5-8; Singer Decl. Exs. 4-5.

Moreover, contrary to the assertion in Defendants' brief (*see* BoA Mem. at 37), the issue of the accretion/dilution calculation was extensively addressed by the parties in expert discovery, and multiple experts <u>for both sides</u> opined on this issue. In particular, Plaintiffs' expert Bernard Katz discussed in his March 16, 2012 expert report the record evidence showing that "by late November/early December 2008, BAC was aware that its acquisition of ML was going to be substantially less accretive and more dilutive than BAC had previously expected" (although it was not until Plaintiffs elicited Lewis's admission that Mr. Katz was able to conclude that the Proxy's accretion/dilution calculation was false as of the date of the vote). Ross Reply Decl. Ex. 9 at 18; Ex. 10. Two of Plaintiffs' other experts, former SEC Chairman Harvey Pitt and J.T. Atkins, also opined as to the accretion/dilution calculation. *See* Ross Reply Decl. Exs. 11-12. In response, no fewer than <u>three of Defendants' experts</u> – Rene Stulz, Anil Shivdasani and Charles Porten – submitted expert reports concerning the issues of the falsity and/or materiality of Defendants' accretion/dilution calculation in the Proxy, and two of them specifically testified on these issues. *See* Ross Reply Decl. Exs. 13-17. Indeed, Mr. Stulz opined on the issue of whether, "by December 5, 2008, 'the merger was substantially less accretive and more dilutive to BAC than originally projected.'" Ross Reply Decl. Ex. 13 at ¶ 224. Given that expert discovery "clearly put defendants on notice that plaintiffs believed these . . . statements to be misleading," there can be

no prejudice to Defendants.  *Vivendi*, 765 F. Supp. 2d at 578.[25]  In fact, Defendants have received such ample notice of Plaintiffs' claims that they have affirmatively moved for summary judgment as to the accretion/dilution statements at issue here – a scenario that hardly smacks of unfair "surprise."  *See* ECF No. 598 at 21-23; *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 2429593, at *5 (N.D. Cal. Aug. 24, 2007) (no prejudice from the addition of misrepresentations identified during discovery where defendants cross-moved for summary judgment).

Fourth, Defendants cannot feign a lack of notice of Plaintiffs' claims because Plaintiffs specifically identified the accretion/dilution misstatements at issue on this Motion in their responses to Defendants' contention interrogatories, which Plaintiffs exchanged on May 14, 2012. *See* Ross Reply Decl. Exs. 18-19.  Courts in this District and elsewhere recognize that it is proper for plaintiffs in securities actions to identify any additionally discovered misrepresentations that support their claims in response to contention interrogatories at the close of discovery.  *See, e.g.*, *Vivendi*, 765 F. Supp. 2d at 578 (defendants' claim of surprise and prejudice were a "gross exaggeration," when plaintiff identified the additional misstatements in response to a contention interrogatory); *JDS Uniphase*, 2007 WL 2429593, at *5 (same).  While Defendants complain about the timing of Plaintiffs' interrogatory responses (BoA Mem. at 35), they fail to inform the Court that the parties <u>exchanged their responses on a mutually agreed-upon date</u>, and that Defendants asked for a courtesy extension to accommodate their change in counsel.

Fifth, Defendants' conclusory assertion that they may have deposed or questioned additional witnesses concerning the impact of Merrill's losses on BoA's accretion/dilution

---

[25] While Defendants assert that one of Plaintiffs' experts, Chad Coffman, does not address BoA's accretion/dilution misstatements in his report (BoA Mem. at 37), they conveniently overlook the fact that they deposed Mr. Coffman well <u>after</u> Plaintiffs identified the accretion/dilution misstatements in their interrogatory responses, and chose not to ask Mr. Coffman a single question on the subject.  In addition, contrary to Defendants' assumption, Mr. Coffman's loss causation opinions concerning Merrill's losses apply equally to Defendants' accretion/dilution misstatements.  As discussed further below, this is because the falsity of BoA's accretion/dilution calculation was revealed through the disclosures of Merrill's losses and their impact on the combined company.  *See infra* at 29-30.

calculation (BoA Mem. at 36) is belied by their conduct in this Action.  As the Court is aware, back in September 2011, Defendants identified to the Court 15 individuals whose depositions they would supposedly take.  However, Defendants did not take <u>any</u> of the depositions they claimed they would take (and, other than cross-noticing certain depositions, took exactly one fact deposition).  Moreover, until this Motion, Defendants never objected to the scope of Plaintiffs' discovery about BoA's accretion/dilution calculation, and never requested additional discovery in order to dispute the record Plaintiffs were developing.   In sum, Defendants had ample opportunity to conduct discovery on any issue they wanted.  Given that they willingly punted on conducting any real discovery, let alone discovery regarding accretion/dilution, any purported prejudice to Defendants is of their own making.  *See JDS Uniphase*, 2007 WL 2429593, at *5 (no undue prejudice where defendants "did not seek additional discovery; nor did they seek to strike the interrogatory responses" identifying the additional misrepresentations).

Additionally, the two witnesses that Defendants claim that they would have deposed had they only "known" about these misrepresentations – former BoA executives Jeff Brown and Greg Curl – were both questioned extensively by Plaintiffs about the areas of evidence that Defendants belatedly assert a need for testimony.  *See* Singer Decl. Exs. 4-5; Ross Reply Decl. Ex. 8.  No fewer than <u>eight defense attorneys</u> attended both Mr. Brown's and Mr. Curl's depositions.  This cadre of defense attorneys had a full opportunity to ask these witnesses any questions they wanted, but consciously chose not to ask any questions about accretion/dilution.  Even now, Defendants do not identify a single question that they would have asked these two witnesses.  *See Stokes v. Goord*, 2008 WL 268381, at *4 (N.D.N.Y. Jan. 30, 2008) (rejecting "conclusory allegation" of prejudice where defendants "fail[ed] to proffer any specific information that must be generated through discovery to defend the claim properly").  Having declined the opportunity to develop their own evidence on accretion/dilution, Defendants cannot now claim that they are prejudiced by

Plaintiffs' pursuit of these claims.

Defendants' remaining arguments can be swiftly dispatched. Defendants' suggestion that the PSLRA supposedly prohibits Plaintiffs from conforming the Complaint to the evidence (*see* BoA Mem. at 37) misstates the law. The Second Circuit has never held this way, and courts have held that "adherence to [the principle of 'liberal' grants of leave to amend] is especially important in the context of the PSLRA" because the PSLRA limits discovery during the pendency of a motion to dismiss. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also In re Retek Inc. Sec. Litig.*, 2007 WL 14352, at *3 (D. Minn. Jan. 3, 2007) ("[A]llowing plaintiffs to use the information produced to amend their complaint does not frustrate the" PSLRA); *Vivendi*, 765 F. Supp. 2d at 579 (PSLRA did not bar addition of misrepresentations at trial); *JDS Uniphase*, 2007 WL 2429593, at *5 (same at summary judgment).[26]

While Defendants suggest that they have not had an opportunity to test Plaintiffs' claims under the PSLRA's requirements (*see* BoA Mem. at 37), this argument ignores the fact that Defendants have affirmatively moved for summary judgment as to the statements at issue on this motion, and that the evidence developed through discovery satisfies any pleading requirement. As set forth above, discovery has revealed undisputed evidence that the Proxy's accretion/dilution calculation was materially false as of the vote, and that Defendants knew or should have known that this calculation had materially deteriorated by that time. *See supra* at 1, 7, 10-12.

Finally, Defendants' argument that Plaintiffs "cannot establish loss causation" for their accretion/dilution misstatements (BoA Mem. at 38) fails. Because Plaintiffs are not seeking summary judgment on loss causation, Defendants' argument is irrelevant for the purposes of this

---

[26] Defendants' reliance on *In re Bristol-Myers Squibb Securities Litigation*, 228 F.R.D. 221 (D.N.J. 2005), is misplaced. That decision has been rejected by the First Circuit and other courts, which hold that "the PSLRA does not itself modify the liberal amendment policy of Rule 15(a)." *ACA Fin. Corp.*, 512 F.3d at 56-57. Moreover, unlike Plaintiffs here, the plaintiffs in *Bristol-Myers* sought to include in a pre-trial conference order a litany of additional false statements that plaintiffs had identified after summary judgment had been filed and on the eve of trial.

29

Motion.  Moreover, to show loss causation, Plaintiffs are not required to establish that there was a public disclosure of the revised accretion/dilution calculation.  *See Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010) (there is no requirement that the corrective disclosure be the "'mirror image[]'" of the alleged  misstatements).  Plaintiffs are required only to demonstrate that the decline in BoA's stock price resulted from a disclosure that falls "within the zone of risk *concealed* by the misrepresentations and omissions."  *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 304-05 (S.D.N.Y. 2011) (emphasis in original).  Plaintiffs can easily satisfy this standard at trial by demonstrating that Merrill's losses caused the accretion/dilution calculation to change for the worse, and that the disclosure of those losses caused the stock price to decline.[27]

## V.    Conclusion

For the above reasons, Plaintiffs' motion for partial summary judgment should be granted.

---

[27] Defendants also assert that Plaintiffs cannot satisfy Rule 23's class certification requirements because "Plaintiffs have not shown that Mr. Lewis's statements at the shareholder meeting became public or that any class representative attended the shareholder meeting."  BoA Mem. at 38.  However, the shareholder meeting was attended by the media and reported in articles published that day.  *See* Ross Reply Decl. Exs. 20-21.  Moreover, there is no requirement that a class representative attend the meeting.  Even if the shareholder meeting was not well attended, Lewis's statements at the shareholder meeting, by definition, were public, and the presumption of reliance applies.  *See In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 2012 WL 370278, at \*7 (S.D.N.Y. Feb. 6, 2012) ("*Basic* observed that 'common sense,' 'probability' and '[r]ecent empirical studies' support a conclusion that 'well-developed markets reflect all publicly available information, and, hence, any material misrepresentations.'").  Finally, Defendants cite no authority for the proposition (nor is there any) that, in order to obtain class certification, the Court must certify the class on a statement-by-statement basis.  The Class remains the same as that certified by the Court in its February 6, 2012 Order.

Dated: July 17, 2012
New York, New York

**KAPLAN FOX & KILSHEIMER LLP**


By:     */s/ Fred S. Fox*
Robert N. Kaplan
Frederic S. Fox
850 Third Avenue, 14th Floor
New York, NY  10022
Tel:  (212) 687-1980
Fax:  (212) 687-7714

*Attorneys for Plaintiffs*
*and the Class*

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**


By:     */s/ Steven B. Singer*
Max W. Berger
Steven B. Singer
1285 Avenue of the Americas
New York, NY  10019
Tel:  (212) 554-1400
Fax:  (212) 554-1444

*Attorneys for Plaintiffs*
*and the Class*

**KESSLER TOPAZ MELTZER
& CHECK, LLP**


By:     */s/ David Kessler*
David Kessler
Gregory M. Castaldo
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056

*Attorneys for Plaintiffs*
*and the Class*