# EXHIBIT 1

Page 1

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

C.A. No. 4307-CS

IN RE: BANK OF AMERICA

CORPORATION STOCKHOLDER

DERIVATIVE LITIGATION,


\*\*\* CONFIDENTIAL \*\*\*


VIDEOTAPED DEPOSITION OF KENNETH D. LEWIS

Taken on Behalf of the Plaintiffs

DATE TAKEN:    MARCH 6, 2012

TIME:          8:59 a.m. - 6:26 p.m.

PLACE:         LA PLAYA BEACH & GOLF RESORT
               9891 GULF SHORE DRIVE
               NAPLES, FLORIDA 34108


Examination of the witness taken before:

Joan L. Pitt
Registered Merit Reporter
Certified Realtime Reporter
Florida Professional Reporter

HUDSON REPORTING & VIDEO                    1-800-310-1769

Confidential                                          BAC-ML-CL00730871

Page 250

1    Q.  Was the best information you had at the time of
2  the stockholders meeting the information that was
3  included in the proxy statement?
4    A.  It was the -- I didn't -- I would not have
5  known at that point whether it was any better than the
6  information that I was going to receive from the profit
7  plan.
8    Q.  That's your testimony?
9    A.  Yeah.  I mean, this is a profit plan, not --
10 not an estimate of earnings.
11   Q.  Well, when Mr. Price presented that profit plan
12 to the board, didn't he --
13   A.  Yeah, at that point he called it a forecast,
14 yes.
15   Q.  And he compared it with the dilution-accretion
16 numbers that were used at the time of the approval,
17 right?
18   A.  Right.
19   Q.  So where's the disconnect?  What am I missing
20 about the analogy?
21   A.  Well, because -- well, because profit plans,
22 you can call them forecasts, but they can be -- they can
23 be very different.
24   Q.  Okay.  You knew then -- fair enough.  You knew
25 that the profit plan that you had in your -- as of the

Page 251

1  time of the stockholder meeting called for far less than
2  $4 billion in income from Merrill for 2009, correct?
3    A.  I had a -- I either had a profit plan that was
4  the first pass or I had the second one.  I don't recall
5  which one.  If I had the second one, then I would have
6  had a -- had a profit plan that was less than -- than
7  the estimate of the analysts.
8    Q.  And the first one also, correct?  You said you
9  had a profit plan -- I'm sorry.
10     MR. KRINER:  Can you read back the answer?
11     (The answer was read by the reporter.)
12   Q.  The first cut was even less than that, wasn't
13 it?
14   A.  Yeah, but again, that was not credible, because
15 it was the first pass.
16   Q.  But it was -- that information that was in your
17 possession was -- was significantly below $4 billion,
18 correct?
19   A.  But not credible at that point.
20   Q.  Okay.  But fair enough that number was far
21 below $4 billion?
22   A.  That number was far below $4 billion, but not
23 credible at that point.
24   Q.  So why did you repeat the information from the
25 proxy statement and from the analyst conference to the

Page 252

1  stockholder asking about dilution?
2    A.  Because that was what I recalled -- that's what
3  I recalled about the -- as much as I could say about the
4  presentation, and that was the only thing that we had
5  said publicly.
6    Q.  Okay.  And do you think that transcript's
7  accurate?
8    A.  I don't have any reason to believe that it's
9  not.
10     MR. KRINER:  Can we cue up?  We'll mark this as
11 an exhibit, which is the DVD produced.  38.
12     (Lewis Exhibit No. 38 was marked for
13 identification.)
14             * * * * *
15     (The following excerpt of the DVD was played.)
16     CHAIRMAN LEWIS:  And, finally, is there any
17 discussion on Item 4, approval and adjournment of
18 the special meeting?
19     JOHN BURKE:  Excuse me, Mr. Lewis.
20     CHAIRMAN LEWIS:  I'm going to let you speak.
21     JOHN BURKE:  I'm still back on 3.  You didn't
22 respond to the lady's comment.  This will dilute our
23 shares, will it not, yes or no, not in the future
24 some day, but this afternoon?
25     CHAIRMAN LEWIS:  We have said that the -- as I

Page 253

1  recall in the presentation, that we will have
2  dilution in the first year, breakeven in the second,
3  and then accretion in the third.
4      JOHN BURKE:  Oh, good, okay.  I'm going to let
5  you put a little skin in the game, if you will.
6  We'll have dilution the first year.  If we don't
7  have breakeven in the second year, will you and the
8  board of directors out of your own personal ownings,
9  including your homes and your investments, will you
10 compensate the stockholders for that lack of
11 accretion?
12     CHAIRMAN LEWIS:  We will --
13     JOHN BURKE:  I didn't think so.
14     CHAIRMAN LEWIS:  We will deal with the issues
15 when --
16     JOHN BURKE:  I didn't think you would.  We have
17 skin in the game.  You all don't.
18     CHAIRMAN LEWIS:  Do you think we're not
19 stockholders?  My God.
20     MR. BURKE:  Yeah, you're stockholders.  But
21 your stock, as I recall, was at least in part as
22 part of your compensation, which is quite healthy.
23     CHAIRMAN LEWIS:  It is part of my compensation.
24 You're correct.
25     JOHN BURKE:  Yes, it is.  So we're paying -- we

64 (Pages 250 to 253)

Confidential                                                                    BAC-ML-CL00730934