# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BANK OF AMERICA CORP. SECURITIES, DERIVATIVE, AND EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION | Master File No. 09 MDL 2058 (PKC) ECF CASE |

THIS DOCUMENT RELATES TO:

Consolidated Securities Action

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement dated as of November 30, 2012 (the "Stipulation") is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to the approval of the Court, this Stipulation is entered into, by and through their respective undersigned counsel, and embodies the terms and conditions of the settlement between (a) the State Teachers Retirement System of Ohio; the Ohio Public Employees Retirement System; the Teacher Retirement System of Texas; Stichting Pensioenfonds Zorg en Welzijn, represented by PGGM Vermogensbeheer B.V.; and Fjärde AP-Fonden (collectively, "Lead Plaintiffs"), on behalf of the Court-certified Class (defined below); and (b) Bank of America Corporation ("BoA"), Merrill Lynch & Co., Inc. ("Merrill"), Kenneth D. Lewis, John A. Thain, Joe L. Price, Neil A. Cotty, Banc of America Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, and the BoA Board[1] (collectively, the "Defendants").[2] Subject to the approval of

---

[1]The "BoA Board" consists of: William Barnet III, Frank P. Bramble, Sr., John T. Collins, Gary L. Countryman, Tommy R. Franks, Charles K. Gifford, Monica C. Lozano, Walter E. Massey, Thomas J. May, Patricia E. Mitchell, Thomas M. Ryan, O. Temple Sloan, Jr., Meredith R. Spangler, Robert L. Tillman, and Jackie M. Ward.

[2]All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in paragraph 1 herein.

the Court and the terms and conditions expressly provided herein, this Stipulation is intended by the Parties hereto to fully, finally and forever compromise, settle, release, resolve, relinquish, waive, discharge and dismiss with prejudice, the above-captioned consolidated securities class action (the "Action") and all claims asserted against all Defendants therein, and all Released Claims (defined below) as against the Releasees (defined below).

WHEREAS:

A.      On September 15, 2008, BoA agreed to acquire Merrill in a stock-for-stock transaction in which shares of Merrill common stock would be exchanged for 0.8595 shares of BoA common stock (the "Merger").  BoA and Merrill issued a Definitive Joint Proxy Statement to shareholders on or about November 3, 2008, and on December 5, 2008, BoA shareholders voted in favor of the issuance of additional shares of BoA stock in connection with the Merger and Merrill shareholders voted to approve the Merger.  The Merger was consummated on January 1, 2009.

B.      On October 7, 2008, BoA sold 455,000,000 shares of BoA common stock at $22 per share for net proceeds of $9.9 billion pursuant to the Registration Statement and Prospectus (the "Secondary Offering").

C.      Beginning in January 2009, numerous putative securities class actions were filed against BoA, Merrill, and certain officers and directors of both companies related to the Merger.

D.      By Memorandum Opinion and Order dated June 30, 2009 (the "Consolidation Order"), Judge Denny Chin consolidated the federal securities actions and appointed the Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  In the same Order, the Court also approved Lead Plaintiffs' selection of Bernstein Litowitz Berger & Grossmann LLP, Kaplan Fox & Kilsheimer LLP, and Kessler Topaz Meltzer & Check, LLP

(f/k/a Barroway Topaz Kessler Meltzer & Check, LLP) as lead counsel for the Class ("Co-Lead Counsel").

E.      On September 25, 2009, Lead Plaintiffs filed their Consolidated Amended Class Action Complaint (the "First Amended Complaint"), which asserted that Defendants had violated federal securities laws and alleged claims on behalf of all persons who: (i) purchased or acquired BoA shares between September 15, 2008 and January 21, 2009, inclusive; (ii) held BoA stock as of October 10, 2008 and were entitled to vote on the Merger; or (iii) purchased BoA common stock in the Secondary Offering, and were damaged thereby.

F.      The First Amended Complaint alleged that Defendants violated the federal securities laws by failing to disclose or update prior to the shareholder vote approving the issuance of additional shares in connection with the Merger, facts about (i) Merrill's billions of dollars of losses during the fourth quarter of 2008 (including, but not limited to, Merrill's goodwill impairment); (ii) BoA's agreement to allow Merrill to pay up to $5.8 billion in bonuses to its employees before the Merger closed, notwithstanding those substantial losses; (iii) the circumstances surrounding the negotiation of the Merger (including the inadequacy of due diligence and pressure from federal regulators); (iv) the purported benefits of the Merger; and (v) BoA's own deteriorating financial condition.  The First Amended Complaint also alleged that Defendants made materially false and misleading statements about these topics.  The First Amended Complaint alleged that these actions deceived the investing public in violation of the federal securities laws, artificially inflated the price of BoA stock, and caused putative Class Members to purchase BoA stock at artificially inflated prices.

G.      The First Amended Complaint alleged that BoA shareholders voted to issue additional shares while unaware of these material facts.  The First Amended Complaint further

alleged that BoA continued to make some of these misstatements and omissions, or failed to update them, following the shareholder vote.

H.      The First Amended Complaint further alleged that the Secondary Offering Registration Statement contained untrue statements of material facts and omitted material facts required to be stated in order to make the statements contained therein not misleading.  The First Amended Complaint alleged that putative Class Members who purchased BoA common stock pursuant to the Secondary Offering Registration Statement suffered substantial damages as a result of the untrue statements and omissions of material facts in the Secondary Offering Registration Statement, as they either sold these shares at prices below the Secondary Offering price or still held shares as of the date of the initial complaint containing claims under the Securities Act when the price of BoA common stock was below the Secondary Offering price.

I.      The First Amended Complaint further alleged that, following the shareholder vote, but before the Merger closed on January 1, 2009, (i) BoA decided that it had grounds to terminate the Merger because of the magnitude of Merrill's losses and BoA's own deteriorating financial condition, and (ii) in order to consummate the Merger and absorb Merrill's fourth quarter losses, BoA obtained a $138 billion bailout from the Federal Government to prevent BoA's own collapse.  The First Amended Complaint alleged that facts related to these events were not disclosed to investors before the Merger closed.

J.      The First Amended Complaint further alleged that the truth about Merrill's financial condition was not revealed until mid-January 2009, when several alleged corrective disclosures revealed, according to the First Amended Complaint, that Merrill had suffered a pre-tax loss of more than $21 billion during the fourth quarter of 2008 and, as a result, BoA had sought and obtained $138 billion of additional government assistance.  The First Amended

4

Complaint also alleged that on January 21, 2009, it was further reported that, despite Merrill's losses, BoA had allowed Merrill to pay $3 to $4 billion in bonuses before the Merger closed, and that, as these facts became known, the price of BoA common stock declined causing damage to putative Class Members.  Lead Plaintiffs sought damages for all of their claims based solely on the amount that the price of BoA's securities allegedly dropped as a result of alleged corrective disclosures during January 2009.

      K.     Based on the facts set forth above, the First Amended Complaint alleged that Defendants violated Sections 14(a), 10(b), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act").   In addition to BoA and Merrill, the First Amended Complaint named as defendants Kenneth D. Lewis, John A. Thain, Joe L. Price, Neil A. Cotty, Banc of America Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, and the BoA Board.

      L.     On October 6, 2009, Lead Plaintiffs requested a partial modification of the PSLRA discovery stay in order to obtain (1) documents that Defendants produced to various government agencies (including, but not limited to, the Securities and Exchange Commission ("SEC"), Congress and the New York Attorney General) in connection with those agencies' investigations into the Merger, and (2) transcripts of any testimony given in connection with those investigations.   On November 16, 2009, Judge Chin issued an Order granting Lead Plaintiffs' request.

      M.    On March 8, 2010, Defendants requested permission to file a motion to certify to the Delaware Supreme Court the question of whether Lead Plaintiffs' Section 14(a) claims could be maintained directly.   Judge Chin granted Defendants' request on March 11, 2010, and Defendants filed their motion, which Lead Plaintiffs opposed, on March 25, 2010.

N.      On April 28, 2010, upon Judge Chin's appointment to the United States Court of Appeals for the Second Circuit, this matter was reassigned to the Honorable P. Kevin Castel.

O.      All Defendants moved to dismiss the First Amended Complaint.  The motions were fully briefed by January 26, 2010, and on June 4, 2010, following a conference with the Court, the Parties submitted supplemental letter briefs to the Court concerning the measure of recoverable damages for Lead Plaintiffs' Section 14(a) claims.

P.      On August 27, 2010, the Court issued a Memorandum and Order that granted in part, and denied in part, Defendants' motions to dismiss the First Amended Complaint. Specifically, the Court sustained: (1) Lead Plaintiffs' Section 14(a) claim regarding (i) Merrill's ability to pay bonuses to its employees for fiscal year 2008 prior to the Merger closing, and (ii) Merrill's fourth quarter 2008 losses; (2) Lead Plaintiffs' Section 10(b) claims regarding Merrill's ability to pay bonuses to its employees for fiscal year 2008 prior to the Merger closing; (3) Lead Plaintiffs' Section 20(a) claims for control person liability; and (4) Lead Plaintiffs' Securities Act claims.  The Court dismissed Lead Plaintiffs' remaining claims, including Lead Plaintiffs' Section 10(b) claims regarding Defendants' failure to disclose Merrill's fourth quarter 2008 losses and held that allegations relating to events post-dating the December 5, 2008 shareholder vote cannot form the basis of a Section 14(a) claim.  In connection with the Court's August 27, 2010 Memorandum and Order regarding Defendants' motions to dismiss, Judge Castel denied Defendants' motion to certify a question to the Delaware Supreme Court.

Q.      On September 10, 2010, Defendants filed motions seeking certification for interlocutory appeal or, in the alternative, for reconsideration, of multiple issues decided by Judge Castel in his August 27, 2010 Memorandum and Order related to Defendants' motions to

dismiss.  On October 8, 2010, after another full round of briefing, Judge Castel denied all of Defendants' motions.

R.       On October 22, 2010, Lead Plaintiffs filed a Consolidated Second Amended Class Action Complaint (the "Second Amended Complaint"), which contained additional allegations in support of Lead Plaintiffs' Section 10(b) claims against Defendants Lewis, Price and BoA related to these Defendants' alleged failure to disclose Merrill's fourth quarter losses and BoA's receipt of the taxpayer bailout.   The Second Amended Complaint contained additional allegations bearing on the scienter of BoA, Lewis and Price, including, *inter alia*, allegations that BoA's former General Counsel was not advised of the full extent of Merrill's losses prior to the December 5, 2008 shareholder vote.

S.       Defendants moved to dismiss the Second Amended Complaint.  After full briefing on Defendants' motions to dismiss the Second Amended Complaint, by Memorandum and Order dated July 29, 2011, the Court sustained Lead Plaintiffs' Section 10(b) claims regarding Defendants' failure to disclose Merrill's fourth quarter losses, but granted Defendants' motion to dismiss Lead Plaintiffs' claims related to Defendants' failure to disclose the taxpayer bailout. Although the Court sustained Lead Plaintiffs' Section 10(b) claims regarding BoA's, Lewis's and Price's alleged failure to disclose Merrill's fourth quarter losses, the Court rejected Lead Plaintiffs' theory that Lewis's and Price's scienter could be established by allegations that they were motivated to commit fraud in order to obtain a favorable result in the shareholder vote or to ensure that the Merger closed.

T.       On August 31, 2011, Defendants answered the Second Amended Complaint. Defendants denied Lead Plaintiffs' claims and asserted a number of defenses to liability.

U.      On October 17, 2011, Lead Plaintiffs filed their Motion for Class Certification and Appointment of Class Representatives and Class Counsel.  After class certification discovery and a full round of briefing, on February 6, 2012, the Court issued a Memorandum and Order granting Lead Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel.  Among other things, the Court ruled that while the Lead Plaintiffs had to prove that the alleged omissions were material, they were not obligated to prove that the Class relied on the alleged omissions in making their investment decisions.  The Court further ruled that no individualized inquiry was required to determine whether the Proxy materials violated the Class Members' right to vote on the Merger under Section 14(a).

V.      On February 21, 2012, Defendants filed with the United States Court of Appeals for the Second Circuit a Petition Pursuant To Fed. R. Civ. P. 23(f) For Leave To Appeal From The District Court's Order Granting Class Certification.  After full briefing, on July 23, 2012 the Court of Appeals issued an Order denying Defendants' petition.

W.      On February 29, 2012, the Court approved the Class Notice, which was sent to putative Class Members beginning on March 21, 2012.  Pursuant to the Court's February 29, 2012 Order, the Class Notice provided these putative Class Members with the opportunity to request exclusion from the Class.  The Class Notice explained Class Members' right to request exclusion and set forth the procedure for doing so.  To date, 864 requests for exclusion were received pursuant to the Class Notice.

X.      Discovery concluded on May 18, 2012.  During the course of the litigation, the Parties conducted approximately 60 depositions and produced, reviewed and/or analyzed almost 4.75 million pages of documents.  Additionally, in a forty-five day period between March 16,

2012 and April 30, 2012, the Parties exchanged 17 opening and rebuttal reports from 11 different experts accompanied by thousands of pages of exhibits.

Y.      On June 3, 2012, Lead Plaintiffs and Defendants filed cross-motions for summary judgment, each of which included briefing, statements of undisputed facts pursuant to Local Civil Rule 56.1, supporting exhibits and expert reports.  On June 29, 2012, the Parties filed opposition briefs, counterstatements of facts, responses to statements of undisputed facts and accompanying exhibits.  Briefing on the Parties' summary judgment motions was completed on July 17, 2012, when reply briefs were filed, along with accompanying exhibits.  The Parties had prepared and submitted well over 700 pages of briefing, statements of undisputed facts, and counterstatements of facts, in addition to approximately 500 exhibits in connection with summary judgment.  These summary judgment motions were pending at the time the settlement in principle was reached.

Z.      Lead Plaintiffs' motion for summary judgment sought partial summary judgment as to the alleged falsity and materiality of statements related to the projected accretive/dilutive impact of the Merger.  The motion focused on statements that Lewis made at BoA's December 5, 2008 shareholder meeting relating to BoA's accretion/dilution forecast, as well as statements that Defendants made about this forecast on September 15, 2008 and in the November 3, 2008 Proxy.  In responding to this motion, Defendants argued that the statements at issue were not false, that there was no duty to update them, that they were immaterial as a matter of law, that the individuals who made the alleged statements lacked scienter, that plaintiffs failed to meet the burden necessary to obtain summary judgment on these claims, and that Lead Plaintiffs could not obtain summary judgment on purported misstatements that had not previously been pleaded in the Second Amended Complaint.

AA.    Defendants sought summary judgment as to Lead Plaintiffs' Section 14(a) claims on the ground that Lead Plaintiffs failed to adduce evidence that members of the Section 14(a) class sustained any compensable injury or actual damages.  Lead Plaintiffs' opposition to this motion articulated Lead Plaintiffs' theory of direct harm to the Class through stock-drop damages as opposed to any injury to BoA itself.  In addition, Defendants sought summary judgment as to Lead Plaintiffs' claims under the Exchange Act related to Merrill's bonus payments, as well as to Lead Plaintiffs' claims related to the alleged January 12, 2009 and January 13, 2009 corrective disclosures related to Merrill's fourth quarter losses, on the ground that Lead Plaintiffs failed to establish loss causation for these claims.  Defendants also sought summary judgment as to Lead Plaintiffs' bonus-related claims under the Securities Act asserting that they had met their burden of negating causation with respect to these claims.

BB.    In addition, Defendants Lewis, Price, Thain, Cotty, and the BoA Board each sought summary judgment on the Securities Act and/or the Exchange Act claims for reasons specific to their individual circumstances.  Lead Plaintiffs opposed all such motions.

CC.    From August 17, 2012 through September 7, 2012, in preparation for trial, the Parties exchanged preliminary witness lists, exhibit lists, preliminary statements of claims and defenses, and deposition designations and counter-designations for those witnesses that would be unavailable at trial, a joint pretrial report, jury verdict form, stipulated statement of facts, jury instructions, voir dire questions and initial jury remarks, eight *Daubert* motions and 32 separate motions *in limine*.

DD.    Between September 11, 2012 and September 18, 2012, the Parties conducted multiple in-person and telephonic meetings in an effort to reach agreement regarding their proposed pretrial submissions to the Court.

EE.     The trial in this Action was scheduled by the Court to begin at 10:00 a.m. on October 22, 2012.

FF.     At the suggestion of the Court, commencing in August 2010, the Parties first began discussing a potential resolution of the Action in a private mediation.  The mediation was conducted by the Honorable Layn R. Phillips, a former federal district court judge in the United States District Court for the Western District of Oklahoma.  Although the Parties met several times in person over the course of the next several years, a resolution was not achieved.

GG.     The Parties' mediation efforts included several rounds of in-person and telephonic mediation while discovery was ongoing, but the Parties remained no closer to a resolution as fact and expert discovery wound down in the spring of 2012.

HH.     With the October 22, 2012 trial date set, the Parties made a final push to bridge the substantial gap between them.  With the assistance of Judge Phillips, on September 20, 2012, counsel for BoA and Co-Lead Counsel, on behalf of the Lead Plaintiffs, agreed to enter into a term sheet (the "Term Sheet") to settle and release all claims asserted against all Defendants for $2,425,000,000 in cash, plus certain Corporate Governance Enhancements to be adopted or continued by BoA, to be subsequently negotiated and agreed upon by the Parties, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

II.     On September 27, 2012, BoA and Lead Plaintiffs completed their negotiations on Corporate Governance Enhancements to be implemented or continued by BoA and executed a supplemental term sheet containing those terms.

JJ.     On September 28, 2012, in light of the proposed Settlement, the Parties orally requested the adjournment of the trial date, all pre-trial submissions, the final pre-trial conference

and the rendering of the Court's decision on summary judgment, which adjournments were granted by the Court.

KK.    This Stipulation (together with the exhibits hereto) has been duly executed by the undersigned signatories on behalf of their respective clients, and reflects the final and binding agreement between the Parties.

LL.    This Stipulation constitutes a compromise of matters that are in dispute between the Parties.  Defendants are entering into this Stipulation solely to eliminate the uncertainty, burden and expense of further protracted litigation.   Each of the Defendants denies any wrongdoing, and this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants, or any other of the Defendants' Releasees (defined below), with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have, or could have, asserted.  The Defendants expressly deny that Lead Plaintiffs have asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing or damages whatsoever.  Similarly, this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Lead Plaintiff of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of the Defendants' affirmative defenses to liability had any merit.  Each of the Parties recognizes and acknowledges, however, that the Action has been initiated, filed and prosecuted by Lead Plaintiffs in good faith and defended by the Defendants in good faith, that the Action is being voluntarily settled with the advice of counsel, and that the terms of the Settlement are fair, adequate and reasonable.

MM.   Based upon their investigation, prosecution and mediation of the case, Co-Lead Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to the Lead Plaintiffs and the other members of the Class, and in their best interests. Based on Lead Plaintiffs' direct oversight of the prosecution of this matter and with the advice of their counsel, each of the Lead Plaintiffs has agreed to settle the claims raised in the Action pursuant to the terms and provisions of this Stipulation, after considering (a) the very substantial financial benefit that Lead Plaintiffs and the other members of the Class will receive under the proposed Settlement, (b) the significant Corporate Governance Enhancements that BoA will implement or continue as a result of the proposed Settlement, (c) the significant risks of continued litigation and trial, and (d) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

NOW THEREFORE, without any admission or concession whatsoever on the part of Lead Plaintiffs, or any other members of the Class, or Co-Lead Counsel of any lack of merit in any aspect of the claims asserted in the Action, and without any admission or concession whatsoever on the part of the Defendants, or any other of the Defendants' Releasees, or Defendants' Counsel (defined below) of any liability or wrongdoing or of any lack of merit in the defenses Defendants asserted to the claims alleged in this Action, it is hereby STIPULATED AND AGREED, by and among Lead Plaintiffs (individually and on behalf of the Class) and the Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the PSLRA, that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Claims as against all Releasees shall be fully, finally and forever compromised, settled, released, resolved,

relinquished, waived, discharged and dismissed with prejudice in accordance with and subject to the terms and conditions set forth below.

## I.  DEFINITIONS

1.      As used in this Stipulation, and any exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings:

(a)      "Action" means the consolidated securities action in the matter styled *In re Bank of America Corp. Securities, Derivative and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09 MDL 2058 (PKC) (S.D.N.Y.), and includes all actions consolidated therein pursuant to the Court's Consolidation Order.

(b)      "Alternative Judgment" means a form of final judgment that may be entered by the Court herein but in a form other than the form of Judgment provided for in this Stipulation.

(c)      "Authorized Claimant" means a Class Member who submits a timely and valid Proof of Claim Form to the Claims Administrator, in accordance with the requirements established by the Court, that is approved for payment from the Net Settlement Fund.

(d)      "BoA" means Bank of America Corporation.

(e)      "BoA January 2011 Call Options" means January 22, 2011 call options referencing BoA common stock with the following strike prices:  $2.50, $5.00, $7.50, $10.00, $12.50, $15.00, $17.50, $20.00, $22.50, $25.00, $30.00, $35.00, $40.00, $45.00, $50.00, $55.00 and $60.00.

(f)      "Claim" means a Proof of Claim Form submitted to the Claims Administrator.

(g)      "Claim Form" or "Proof of Claim Form" means the form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, that a Claimant or Class Member must

14

complete and submit should that Claimant or Class Member seek to share in a distribution of the Net Settlement Fund.

(h)     "Claimant" means a Person that submits a Claim Form to the Claims Administrator seeking to share in the proceeds of the Settlement Fund.

(i)     "Claims Administrator" means the administrator, GCG, Inc., retained by Co-Lead Counsel on behalf of the Class and approved by the Court in connection with the distribution of the Class Notice, to provide all notices approved by the Court to potential Class Members and to administer the Settlement.

(j)     "Class" means the class certified by Order of the Court dated February 6, 2012, consisting of:

> (i) As to claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), all persons and entities who held BoA common stock as of October 10, 2008, and were entitled to vote on the merger between BoA and Merrill, and were damaged thereby; and (ii) as to claims under Sections 10(b) and 20(a) of the Exchange Act, all persons and entities who purchased or otherwise acquired BoA common stock during the period from September 18, 2008 through January 21, 2009, inclusive, excluding shares of BoA common stock acquired by exchanging stock of Merrill for BoA stock through the merger between the two companies consummated on January 1, 2009, and were damaged thereby; and (iii) as to claims under Sections 10(b) and 20(a) of the Exchange Act, all persons and entities who purchased or otherwise acquired January 2011 call options of BoA from September 18, 2008 through January 21, 2009, inclusive, and were damaged thereby; and (iv) as to claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), all persons and entities who purchased BoA common stock issued under the Registration Statement and Prospectus for the BoA common stock offering that occurred on or about October 7, 2008, and were damaged thereby.

Excluded from the Class by definition are: Defendants, present or former executive officers of BoA and Merrill, present or former members of Merrill's and BoA's Board of Directors and their immediate family members (as defined in 17 C.F.R. § 229.404, Instructions).  Also excluded from the Class are any Persons who previously submitted a request for exclusion as set forth on Appendix 1 hereto who do not opt back into the Class.  If and only if the Court permits a second

15

opportunity for Class Members to request exclusion from the Class, also excluded from the Class shall be any Persons who exclude themselves by submitting a request for exclusion in connection with the Settlement Notice who do not withdraw their requests for exclusion and whose requests are accepted by the Court.

(k)     "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

(l)     "Class Member" means a Person that is a member of the Class.

(m)     "Class Notice" means the notice previously authorized by Order of the Court dated February 29, 2012, which was sent to Class Members in accordance with that Order.

(n)     "Class Period" means the time period from September 18, 2008, through January 21, 2009, inclusive.

(o)     "Class Representatives" means Lead Plaintiffs and named plaintiff Grant Mitchell who was certified as the representative of purchasers of BoA January 2011 call options on BoA common stock during the period from September 18, 2008 through January 21, 2009, inclusive.

(p)     "Co-Lead Counsel" mean the law firms appointed by the Court, Bernstein Litowitz Berger & Grossmann LLP, Kaplan Fox & Kilsheimer LLP, and Kessler Topaz Meltzer & Check, LLP (f/k/a Barroway Topaz Kessler Meltzer & Check, LLP).

(q)     "Complete Bar Order" means the bar order, the text of which is set forth in ¶ 33 below, to be proposed to the Court as part of the Judgment, or Alternative Judgment if applicable.

(r)     "Corporate Governance Enhancements" means those governance provisions which are required to be implemented or maintained by BoA as set forth in ¶¶ 36-38 below.

(s)     "Court" means the United States District Court for the Southern District of New York.

(t)     "Defendants" means Bank of America Corporation, Merrill Lynch & Co., Inc., Kenneth D. Lewis, John A. Thain, Joe L. Price, Neil A. Cotty, Banc of America Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, William Barnet III, Frank P. Bramble, Sr., John T. Collins, Gary L. Countryman, Tommy R. Franks, Charles K. Gifford, Monica C. Lozano, Walter E. Massey, Thomas J. May, Patricia E. Mitchell, Thomas M. Ryan, O. Temple Sloan, Jr., Meredith R. Spangler, Robert L. Tillman, and Jackie M. Ward.

(u)     "Defendants' Counsel" means Paul, Weiss, Rifkind, Wharton & Garrison LLP; Cleary Gottlieb Steen & Hamilton LLP; Wachtell, Lipton, Rosen & Katz; Shearman & Sterling LLP; Davis Polk & Wardwell LLP; Debevoise & Plimpton LLP; Baker Botts L.L.P.; Dechert LLP; Cohen & Gresser LLP; and Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP.

(v)     "Defendants' Releasees" means the Defendants and their respective present and former parents, subsidiaries, divisions and affiliates and the respective present and former employees, members, partners, principals, officers, directors, attorneys, advisors, accountants, auditors, and insurers of each of them; and the predecessors, successors, estates, heirs, executors, trusts, trustees, administrators, agents, representatives and assigns of each of them, in their capacity as such.

(w)     "Effective Date," with respect to the Settlement, shall occur upon the occurrence or waiver of all of the conditions set forth in ¶ 39, below.

(x)     "Escrow Account" means an account maintained at one or more of the following institutions: The Huntington National Bank, Fifth Third Bank and KeyBank National Association to hold the Settlement Fund, which account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds therein are paid out as provided for in this Stipulation, and wherein the Settlement Amount shall be deposited and held in escrow.

(y)     "Escrow Agent" means the institutions named in subparagraph (x) above at which an Escrow Account is maintained.

(z)     "Escrow Agreement" means the agreement between Co-Lead Counsel, BoA and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

(aa)     "Final," with respect to the Judgment, or Alternative Judgment, if applicable, means: (a) if no appeal is filed, the expiration date of the time provided for filing or noticing of any appeal under the Federal Rules of Civil Procedure, i.e., thirty (30) days after entry of the Judgment, or Alternative Judgment, if applicable; or (b) if there is an appeal from the Judgment, or Alternative Judgment, if applicable, the date of (i) final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise to review the Judgment, or Alternative Judgment, if applicable, or (ii) the date the Judgment, or Alternative Judgment, if applicable, is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review of the Judgment, or Alternative Judgment, if applicable, and, if certiorari or

other form of review is granted, the date of final affirmance of the Judgment, or Alternative Judgment, if applicable, following review pursuant to that grant.   However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs or expenses, or (ii) the plan of allocation (as submitted or subsequently modified), shall not in any way delay or preclude the Judgment or Alternative Judgment, if applicable, from becoming Final.

(bb)    "First Amended Complaint" means the Consolidated Amended Class Action Complaint filed by Lead Plaintiffs on September 25, 2009.

(cc)    "Immediate Family" means, as set forth in 17 C.F.R. § 229.404, Instructions, children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law.

(dd)    "Individual Defendants" means Kenneth D. Lewis, John A. Thain, Joe L. Price, Neil A. Cotty, William Barnet III, Frank P. Bramble, Sr., John T. Collins, Gary L. Countryman, Tommy R. Franks, Charles K. Gifford, Monica C. Lozano, Walter E. Massey, Thomas J. May, Patricia E. Mitchell, Thomas M. Ryan, O. Temple Sloan, Jr., Meredith R. Spangler, Robert L. Tillman, and Jackie M. Ward.

(ee)    "Insurers" means any and all of the Defendants' insurance carriers who may contribute to the payment of the Settlement Amount.

(ff)    "Judgment" means the final judgment and order, substantially in the form attached hereto as Exhibit B, to be entered by the Court approving the Settlement.

(gg)    "Lead Plaintiffs" means the State Teachers Retirement System of Ohio; the Ohio Public Employees Retirement System; the Teacher Retirement System of Texas;

Stichting Pensioenfonds Zorg en Welzijn, represented by PGGM Vermogensbeheer B.V.; and Fjärde AP-Fonden.

(hh) "Lead Plaintiffs' Releasees" means the Lead Plaintiffs, the Class Representatives, and all other Class Members, Plaintiffs' Counsel, including Co-Lead Counsel, and each of the respective present and former parents, subsidiaries, divisions and affiliates and their respective present and former employees, members, partners, principals, officers, directors, attorneys, advisors, accountants, auditors, and insurers of each of them; and the predecessors, successors, estates, heirs, executors, trusts, trustees, administrators, agents, representatives and assigns of each of them, in their capacity as such.

(ii) "Litigation Expenses" means costs and expenses incurred in connection with commencing and prosecuting the Action (which may include the costs and expenses of Lead Plaintiffs directly related to their representation of the Class), for which Co-Lead Counsel intend to apply to the Court for reimbursement from the Settlement Fund.

(jj) "Merrill" or "Merrill Lynch" means Merrill Lynch & Co., Inc.

(kk) "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court.

(ll) "Notice and Administration Costs" means the costs, fees and expenses that are incurred by the Claims Administrator and Co-Lead Counsel in connection with (i) providing notice to the Class (including, but not limited to, the Class Notice and the Settlement Notice); and (ii) administering the Claims process as well as the costs, fees and expenses incurred in connection with the Escrow Account.

(mm)  "Parties"  means  the  Defendants  and  Lead  Plaintiffs,  on  behalf  of themselves and the Class Members.

(nn)  "Person"  means  an  individual,  corporation,  partnership,  limited partnership, limited liability partnership, limited liability corporation, association, affiliate, joint stock company, government and any political subdivision thereof, legal representative, trust, trustee, unincorporated association, or any business or legal entity.

(oo)  "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in the Settlement Notice.

(pp)  "Plaintiffs' Counsel" means Co-Lead Counsel and all other legal counsel who, at the direction and under the supervision of Co-Lead Counsel, performed services on behalf of or for the benefit of the Class.

(qq)  "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement and directing that notice of the Settlement be provided to the Class.

(rr)  "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq.*, as amended.

(ss)  "Released  Claims"  means  all  Released  Defendants'  Claims  and  all Released Lead Plaintiffs' Claims.

(tt)  "Released Defendants' Claims" means any and all claims and causes of action of every nature and description, including both known claims and Unknown Claims, whether based on federal, state, local or foreign statutory law or common law, rule or regulation, whether fixed or contingent, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, to the fullest extent permitted by law against each and any

of the Lead Plaintiffs' Releasees that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants in this Action, by Lead Plaintiffs, the Class and their counsel, including Co-Lead Counsel, except for claims relating to the enforcement of the Settlement.  Released Defendants' Claims do not include, release, bar or waive claims against: (i) any Person who previously submitted a request for exclusion from the Class as set forth on Appendix 1 hereto and who does not opt back into the Class; or (ii) if and only if the Court permits a second opportunity for Class Members to request exclusion from the Class, any Person who submits a request for exclusion from the Class in connection with the Settlement Notice who does not withdraw his, her or its request for exclusion and whose request is accepted by the Court.

(uu)    "Released Lead Plaintiffs' Claims" means any and all claims and causes of action of every nature and description, including both known claims and Unknown Claims, whether based on federal, state, local or foreign statutory law or common law, rule or regulation, whether fixed or contingent, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, to the fullest extent permitted by law that Lead Plaintiffs or any other member of the Class (a) asserted in the Action, or (b) could have asserted against any of the Defendants' Releasees in any forum that (i) arise out of, are based upon or are related to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the First Amended Complaint or Second Amended Complaint; and (ii) that either arise out of or are based upon (a) the purchase or other acquisition of BoA common stock or BoA January 2011 call options during the Class Period, or (b) the holding of BoA common stock that gives rise to a Section 14(a) or 20(a) claim arising out of the vote by record holders of BoA

common stock in connection with the Merger.  Released Lead Plaintiffs' Claims do not include, release, bar, or waive: (1) the derivative claims that are being prosecuted on behalf of BoA in the actions that have been coordinated for pretrial purposes with this Action under the caption *In re Bank of America Corp. Securities, Derivative and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09 MDL 2058 (PKC) (S.D.N.Y.), (the "Consolidated Derivative Action"), including *Pinsly* v. *Holliday*, 12-CV-4778 (S.D.N.Y.) and *Waber* v. *Lewis*, 12-CV-4568 (S.D.N.Y.); (2) the derivative claims that are being prosecuted on behalf of BoA in the action styled *In re Bank of Am. Corp. Stockholder Deriv. Litig.*, C.A. No. 4307-CS (Del. Ch. Ct.); (3) the derivative claims that are being prosecuted on behalf of BoA in the action styled *Cunniff* v. *Lewis, et al.*, No. 09 CVS 3978 (N.C. Sup. Ct.); (4) any claims (other than claims for relief predicated on an alleged misrepresentation or omission after September 14, 2008 or claims released pursuant to the Order and Final Judgment in the action captioned, *County of York Employees Retirement Plan v. Merrill Lynch & Co., Inc. et al.*, C.A. No. 4066-VCN (Del. Ch. Aug. 31, 2009)) against any current or former director, officer or employee of Merrill based on any alleged breach prior to January 2, 2009 of any alleged duty to Merrill or its stockholders that have been asserted in (i) the Verified Third Amended Shareholder Derivative and Class Action Complaint filed on July 27, 2009 in the action captioned, *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation*, No. 07 Civ. 9696 (S.D.N.Y.), which was dismissed and is on appeal before the United States Court of Appeals for the Second Circuit under the caption, *Sollins v. O'Neal et al.*, No. 11-1589, or (ii) the Amended Complaint filed on September 14, 2009 in the action captioned, *Lambrecht v. O'Neal et al.*, No 09 Civ. 8259 (S.D.N.Y.), which was dismissed and is on appeal before the United States Court of Appeals for the Second Circuit under the caption, *Lambrecht v. O'Neal et al.*, No. 11-1285; (5) any claims in the action under

the caption *State of New Jersey, Department of Treasury, Division of Investment, on behalf of Common Pension Fund A v. Merrill Lynch & Co., Inc. and Bank of America Corporation*, No. HUD-L-3855-09 (N.J. Sup. Ct.); (6) any claims of any person or entity that submitted a request for exclusion as set forth on Appendix 1 hereto and who does not opt back into the Class; or (7) if and only if the Court permits a second opportunity to request exclusion from the Class, any claims of any person or entity that submits a request for exclusion in connection with the Settlement Notice who does not withdraw his her or its request for exclusion and whose request is accepted by the Court (collectively, the "Excluded Claims").  For the sake of clarity, no claims are being released with respect to securities not covered by the Court-certified Class definition. Additionally, Released Lead Plaintiffs' Claims do not include claims relating to the enforcement of the Settlement.

(vv)　　"Releasee(s)" means each and any of Defendants' Releasees and Lead Plaintiffs' Releasees.

(ww)　　"Releases" means the releases set forth in ¶¶ 4-6 of this Stipulation.

(xx)　　"Second Amended Complaint" means the Consolidated Second Amended Class Action Complaint filed by Lead Plaintiffs on October 22, 2010.

(yy)　　"Settlement" means the settlement between Lead Plaintiffs and Defendants on the terms and conditions set forth in this Stipulation.

(zz)　　"Settlement Amount" means Two Billion Four Hundred Twenty Five Million Dollars ($2,425,000,000) in cash to be paid by or on behalf of the Defendants.

(aaa)　　"Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

(bbb)   "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

(ccc)   "Settlement Notice" means the Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit 1 to Exhibit A, which is to be sent to Class Members.

(ddd)   "Summary Notice" means the Summary Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit 3 to Exhibit A, to be published as set forth in the Preliminary Approval Order.

(eee)   "Taxes" means: (i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; (ii) the expenses and costs incurred by Co-Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants); and (iii) all taxes imposed on payments by the Settlement Fund, including withholding taxes.

(fff)   "Unknown Claims" means any Released Claims which Lead Plaintiffs or any other Class Member, each of the Defendants or any of the other Releasees, does not know or suspect to exist in his, her or its favor at the time of the release of each or any of the other Releasees, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to the Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiffs and each of the Defendants shall expressly waive, and each of the other Class Members and each of the other Releasees shall

be deemed to have waived, and by operation of the Judgment shall have expressly waived, any

and all provisions, rights, and benefits conferred by any law of any state or territory of the United

States, or principle of common law or foreign law, which is similar, comparable, or equivalent to

California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or
> suspect to exist in his or her favor at the time of executing the release, which if
> known by him or her must have materially affected his or her settlement with the
> debtor.

Lead Plaintiffs and each of the Defendants acknowledge, and each of the other Class Members

and each of the other Releasees shall be deemed by operation of law to have acknowledged, that

the foregoing waiver was separately bargained for and is a key element of the Settlement.

## II.   PRELIMINARY APPROVAL OF SETTLEMENT

2.      Promptly upon execution of this Stipulation, Lead Plaintiffs will move for

preliminary approval of the Settlement and for the scheduling of a hearing for consideration of

final approval of the Settlement.  Concurrently with the motion for preliminary Court approval,

Lead Plaintiffs shall apply to the Court for, and the Defendants shall agree to, entry of the

Preliminary Approval Order, substantially in the form attached hereto as Exhibit A.

3.      In connection with the motion for preliminary approval of the Settlement, the

Parties agree to request that the Court not permit a second opportunity for Class Members to

request exclusion from the Class.

## III.   RELEASE OF CLAIMS

4.      The obligations incurred pursuant to this Stipulation shall be in full and final

disposition of the Action as against the Defendants and shall fully, finally and forever

compromise, settle, release, resolve, relinquish, waive, discharge and dismiss with prejudice, the

Action and any and all Released Claims against each and all of the Releasees upon the occurrence of the Effective Date.  This Stipulation does not release the Excluded Claims.

5.      Pursuant to the Judgment, or the Alternative Judgment if applicable, without further action by anyone, upon the Effective Date of the Settlement, Lead Plaintiffs, Class Representatives, and each of the other Class Members, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, affiliates and assigns, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, discharged and dismissed each and every Released Lead Plaintiffs' Claim against the Defendants and the other Defendants' Releasees and shall forever be enjoined from prosecuting any or all of the Released Lead Plaintiffs' Claims against any of Defendants' Releasees.  This Release shall not apply to: (i) any Person who previously submitted a request for exclusion from the Class in connection with the Class Notice as set forth on Appendix 1 hereto and who does not opt back into the Class in accordance with the provisions set forth in the Settlement Notice; or (ii) if and only if the Court permits a second opportunity for Class Members to request exclusion from the Class, any Person who submits a request for exclusion from the Class in connection with the Settlement Notice who does not withdraw his, her or its request for exclusion and whose request is accepted by the Court.

6.      Pursuant to the Judgment, or the Alternative Judgment if applicable, without further action by anyone, upon the Effective Date of the Settlement, each of the Defendants and each of the other Defendants' Releasees, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, affiliates and assigns, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever compromised, settled,

released, resolved, relinquished, waived, discharged and dismissed each and every Released Defendants' Claim against all of the Lead Plaintiffs' Releasees and shall forever be enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Lead Plaintiffs' Releasees.  This Release shall not apply to: (i) any Person who previously submitted a request for exclusion from the Class as set forth on Appendix 1 hereto and who does not opt back into the Class; or (ii) if and only if the Court permits a second opportunity for Class Members to request exclusion from the Class, any Person who submits a request for exclusion from the Class in connection with the Settlement Notice who does not withdraw his, her or its request for exclusion and whose request is accepted by the Court.

7.      Notwithstanding ¶¶ 4-6 above, nothing in the Judgment or the Alternative Judgment if applicable, shall bar any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the Judgment, or Alternative Judgment, if applicable.

8.      The Releases contained in this section were separately bargained for and are essential elements of the Settlement as embodied in this Stipulation.

9.      The Parties will seek to obtain from the Court a Judgment as further described in ¶ 33 below, to be entered simultaneously with or promptly after approval of the Settlement as embodied in this Stipulation.

## IV.  THE SETTLEMENT CONSIDERATION

10.     In consideration of the full and complete settlement of the Released Lead Plaintiffs' Claims against the Defendants and other Defendants' Releasees, BoA, on behalf of all Defendants and other Defendants' Releasees, shall pay the Settlement Amount into the Escrow Account.  Payment of the Settlement Amount by BoA in accordance with the terms of this Stipulation constitutes the entirety of Defendants' and Defendants' Releases' payment obligation with respect to this Stipulation.  BoA shall pay Five Million Dollars ($5,000,000) into the

Escrow Account within ten (10) business days of the Court's entry of an order preliminarily approving the Settlement.  This initial payment may be used for the purpose of notifying the Class of the Settlement as set forth below in ¶ 17 without further approval from Defendants or further order of the Court.  BoA shall pay the balance of the Settlement Amount of Two Billion Four Hundred Twenty Million Dollars ($2,420,000,000) into the Escrow Account no later than thirty (30) days after the Court's entry of an order preliminarily approving the Settlement.  With respect to the Corporate Governance Enhancement provisions set forth below in ¶¶ 36-38 hereof, these enhancements must be implemented or continued within forty-five (45) days following the Court's entry of the Judgment, or Alternative Judgment if applicable.

## V.  <u>USE OF SETTLEMENT FUND</u>

11.     The Settlement Fund shall be used to pay: (a) any Taxes, (b) any Notice and Administration Costs, (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court.  The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶ 21-32 below.

12.     Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date.  All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court.  The Escrow Agent shall invest any funds in the Escrow Account in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balances of less than $250,000.00 may be deposited in any account that is fully insured by the FDIC.  In the event that the yield on United States Treasury Bills is negative, in

lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in a non-interest bearing account that is fully insured by the FDIC.

13.     The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Co-Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund.  Such returns shall be consistent with this paragraph and in all events shall reflect that all Taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund as provided below.  Co-Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund.  The Defendants' Releasees shall not have any liability or responsibility for any such Taxes.  Upon written request, Defendants will provide to Co-Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e). Co-Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

14.     All Taxes shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without further order of the Court.  Any tax returns prepared for the Settlement Fund (as well

30

as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.  The Defendants' Releasees shall have no responsibility or liability for the acts or omissions of Co-Lead Counsel or their agents with respect to the payment of Taxes, as described herein.

15.     The Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, Insurer or any person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Proof of Claim Forms submitted, the collective amount of Recognized Claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

16.     The Claims Administrator shall discharge its duties under Co-Lead Counsel's supervision and subject to the jurisdiction of the Court.  Except as otherwise provided herein, the Defendants' Releasees shall have no responsibility whatsoever for the administration of the Settlement, and shall have no liability whatsoever to any Person, including, but not limited to, the Class Members, in connection with any such administration.  Co-Lead Counsel shall cause the Claims Administrator to mail the Settlement Notice and Proof of Claim Form to those members of the Class at the address of each such Person who may be identified through reasonable effort.  Co-Lead Counsel will cause to be published the Summary Notice pursuant to the terms of the Preliminary Approval Order or in whatever other form or manner might be ordered by the Court.

17.     Prior to the Effective Date, Co-Lead Counsel may pay from the Settlement Fund, without further approval from the Defendants or further order of the Court, all Notice and Administration Costs actually and reasonably incurred, up to an aggregate amount of Five Million Dollars ($5,000,000).  Such costs and expenses shall include, without limitation, the actual costs of publication of the Summary Notice and printing and mailing the Settlement Notice, reimbursements to nominee owners for forwarding the Settlement Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims, and the fees, if any, of the Escrow Agent.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation (including the Supplemental Agreement), all Notice and Administration Costs reasonably paid or incurred, including any related fees, shall not be returned or repaid to BoA, any other Defendant, any of Defendants' Releasees, the Insurers, or any person or entity who or which paid any portion of the Settlement Amount.

## VI.   ATTORNEYS' FEES AND LITIGATION EXPENSES

18.     Co-Lead Counsel will apply to the Court for a collective award of attorneys' fees to Plaintiffs' Counsel to be paid from (and out of) the Settlement Fund.  Co-Lead Counsel also will apply to the Court for reimbursement of Litigation Expenses, which may include a request for reimbursement of Lead Plaintiffs' costs and expenses directly related to their representation of the Class to be paid from (and out of) the Settlement Fund.  Co-Lead Counsel's application for an award of attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Lead Plaintiffs other than what is set forth in this Stipulation.

19.     Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Co-Lead Counsel immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the

Settlement or any part thereof, subject to Co-Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or Litigation Expenses is reduced or reversed. Co-Lead Counsel shall make the appropriate refund or repayment in full no later than thirty (30) days after receiving from Defendants' Counsel or from a court of appropriate jurisdiction notice of the termination of the Settlement or notice of any reduction of the award of attorneys' fees and/or Litigation Expenses.  An award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein. Neither Lead Plaintiffs nor Co-Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses.

20.     Co-Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution and settlement of the Action.  Defendants' Releasees shall have no responsibility for or liability whatsoever with respect to the allocation or award of attorneys' fees or Litigation Expenses.  The attorneys' fees and Litigation Expenses that are awarded to Co-Lead Counsel shall be payable solely from the Escrow Account.

## VII.  CLAIMS ADMINISTRATOR

21.     The Claims Administrator shall administer the process of receiving, reviewing and approving or denying Claims subject to the jurisdiction of the Court.  None of the Defendants, nor any other Defendants' Releasees, shall have any responsibility whatsoever for the administration of the Settlement or the claims process and shall have no liability whatsoever

to any Person, including, but not limited to, Lead Plaintiffs, any other Class Members or Co-Lead Counsel in connection with such administration.  Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

22.     The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Settlement Notice attached hereto as Exhibit 1 to Exhibit A, or in such other plan of allocation as the Court approves).

23.     The Plan of Allocation proposed in the Settlement Notice is not a necessary term of the Settlement or of this Stipulation, and it is not a condition of the Settlement or this Stipulation that any particular plan of allocation be approved by the Court.  Lead Plaintiffs and Co-Lead Counsel may not cancel or terminate the Settlement (or the Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in this Action.  No Defendant, nor any other Defendants' Releasees, shall have any involvement in or responsibility or liability whatsoever for the Plan of Allocation or the allocation of the Net Settlement Fund.

24.     Any Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund but will otherwise be bound by all of the terms of this Stipulation, including the terms of the Judgment or Alternative Judgment, if applicable, to be entered in the Action and the Releases provided for herein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any

kind against the Releasees with respect to the Released Claims in the event that the Effective Date occurs with respect to the Settlement.

25.     Co-Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund subject to Court approval.   No Defendant, or any other Defendants' Releasees, shall have any liability, obligation or responsibility whatsoever for the administration of the Settlement or disbursement of the Net Settlement Fund.   No Defendant, or any other Defendants' Releasees, shall be permitted to review, contest or object to any Claim Form, or any decision of the Claims Administrator or Co-Lead Counsel with respect to accepting or rejecting any Claim for payment by a Class Member. Co-Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

26.     For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)     Each Class Member shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Co-Lead Counsel, in their discretion, may deem acceptable;

(b)     All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice.  Any Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Class Member's Claim Form is accepted), but shall in all other respects be bound by all of the terms of

this Stipulation and the Settlement, including the terms of the Judgment or Alternative Judgment, if applicable, and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Defendants' Releasees concerning any Released Lead Plaintiffs' Claim.   Provided that it is mailed by the claim-submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.   In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

(c)      Each Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Co-Lead Counsel, who shall determine in accordance with this Stipulation and the plan of allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d)      Claim Forms that do not meet the submission requirements may be rejected.   Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.   The Claims Administrator, under supervision of Co-Lead Counsel, shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)     If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Co-Lead Counsel shall thereafter present the request for review to the Court.

27.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Class Member and the validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claim Forms.

28.     Co-Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account, and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

29.     Payment pursuant to the Class Distribution Order shall be final and conclusive against all Class Members.  All Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the

terms of the Judgment or Alternative Judgment, if applicable, to be entered in this Action and the Releases provided for therein, and will be permanently barred and enjoined from bringing any action against any and all Releasees concerning any and all of the Released Claims.

30.    No Person shall have any claim against Lead Plaintiffs, Plaintiffs' Counsel, the Claims Administrator or any other agent designated by Co-Lead Counsel, or the Defendants' Releasees and/or their respective counsel, arising from distributions made substantially in accordance with the Stipulation, the plan of allocation, or any order of the Court.  Lead Plaintiffs and the Defendants, and their respective counsel, and Lead Plaintiffs' damages expert and all other Defendants' Releasees shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund, the Plan of Allocation, or the determination, administration, calculation, or payment of any claim or nonperformance of the Claims Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

31.    All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.  All Class Members and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

32.    To the extent that any monies remain in the Net Settlement Fund after the Claims Administrator has caused distributions to be made to all Authorized Claimants whether by reason of un-cashed distributions or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their distributions, any balance

remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be re-distributed to Authorized Claimants who have cashed their initial distributions and who would receive at least $20.00 from such re-distribution, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution.   Additional re-distributions to Authorized Claimants who have cashed their prior distribution checks and who would receive at least $20.00 on such additional re-distributions may occur thereafter if Co-Lead Counsel, in consultation with the Claims Administrator, determine that additional re-distributions, after the deduction of any additional fees and expenses that would be incurred with respect to such re-distributions, would be cost-effective.   At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance in the Net Settlement Fund shall be contributed to non-sectarian, not-for-profit 501(c)(3) organization(s), to be recommended by Co-Lead Counsel and approved by the Court.

## VIII.   TERMS OF THE JUDGMENT

33.     If the Settlement embodied in this Stipulation is approved by the Court, Co-Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form annexed hereto as Exhibit B which shall, among other things, contain a provision providing for a Complete Bar Order in the Action, as follows in subparagraphs (a) – (d):

(a)     Any and all Persons are permanently barred, enjoined and restrained, to the fullest extent permitted by applicable law, from commencing, prosecuting or asserting any claim for indemnity or contribution against any Defendants' Releasees (or any other claim against any Defendants' Releasees where the alleged injury to such Person is that Person's actual or threatened liability to the Class or a Class Member in the Action), based upon, arising out of or related to the Released Lead Plaintiffs' Claims, whether arising under state, federal or foreign law, as claims, cross-claims, counterclaims, or third-party claims, whether asserted in the

Action, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere.  However, with respect to any judgment that the Class or a Class Member may obtain against such Person based upon, arising out of or relating to any Released Lead Plaintiffs' Claim belonging to the Class or a Class Member, that Person shall be entitled to a credit of the greater of (i) an amount that corresponds to the percentage of responsibility of the Defendants for the loss to the Class or the Class Member or (ii) the amount paid by or on behalf of the Defendants to the Class or the Class Member for common damages.

(b)      Except as provided in ¶ 35 below, each and every one of Defendants' Releasees is hereby permanently barred, enjoined and restrained, to the fullest extent permitted by applicable law, from commencing, prosecuting or asserting any claim for indemnity or contribution against any Person (or any other claim against any such Person where the alleged injury to such Defendants' Releasee is that Defendants' Releasee's actual or threatened liability to the Class or a Class Member in the Action), based upon, arising out of or related to the Released Lead Plaintiffs' Claims, whether arising under state, federal, or foreign law, as claims, cross-claims, counterclaims, or third-party claims, whether asserted in the Action, in this Court, in any other federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere.

(c)      Nothing in this Complete Bar Order shall prevent the following Persons from pursuing any Released Lead Plaintiffs' Claim against any Defendants' Releasees: (i) any Person who previously submitted a request for exclusion from the Class as set forth on Appendix 1 hereto and who has not opted back into the Class in accordance with the provisions set forth in the Settlement Notice; or (ii) if and only if the Court permits a second opportunity for Class

Members to request exclusion from the Class, a Person who submits a request for exclusion from the Class in connection with the Settlement Notice who does not withdraw his, her or its request for exclusion and whose request is accepted by the Court.  If any such Person pursues any such Released Lead Plaintiffs' Claim against any Defendants' Releasees, nothing in this Complete Bar Order or in this Stipulation shall operate to preclude such Defendants' Releasees from asserting any claim of any kind against such Person, including any Released Defendants' Claims (or seeking contribution or indemnity from any Person, including any co-Defendant in the Action, in respect of the claim of such Class Member who is excluded from the Class pursuant to request and who does not opt-back into the Class).

(d)      If any provision of this Complete Bar Order is subsequently held to be unenforceable or modified, the Parties shall propose to the Court alternative terms so as to afford all of the Defendants' Releasees the fullest protection permitted by law consistent with the Court's view.

34.      The Parties agree that the terms of this Stipulation shall be satisfied if either (a) the Complete Bar Order set forth in ¶ 33 above, or (b) a bar order to the fullest extent allowable under the PSLRA, is included in the Judgment (or in the Alternative Judgment, if applicable) that is entered by the Court.  Should the Court enter a bar order other than that referenced in (a) or (b) of the preceding sentence (or if a bar order referenced in (a) or (b) of the preceding sentence is entered but its terms are materially modified on appeal, or is vacated on appeal and not subsequently reinstated), and if a dispute arises as to whether the failure to obtain entry of a bar order referenced in (a) or (b) of the preceding sentence provides a basis for BoA to terminate the Settlement, then the relevant Parties shall submit the dispute to the Court.

35.     Notwithstanding anything herein, nothing in this Stipulation shall operate to (a) preclude the Defendants' Releasees from asserting any claims against their own insurers; or (b) preclude the Defendants or any other Person from asserting any claims, including claims for contribution or indemnity, against any Person, including any Defendants in this Action, in connection with or arising out of the Excluded Claims.

## IX. <u>CORPORATE GOVERNANCE</u>

36.     BoA will, within forty-five (45) days following the Court's entry of the Judgment, or Alternative Judgment if applicable, implement the following Corporate Governance Enhancements, and will maintain such Corporate Governance Enhancements through the later of January 1, 2015 or eighteen (18) months following the Court's entry of the Judgment, or Alternative Judgment if applicable:

A.      BoA will amend Section 3 of its Corporate Governance Guidelines to read, in relevant part, as follows:

> "***Majority Voting for Directors.***  In an uncontested election, a director who fails to receive the required number of votes for re-election in accordance with the Bylaws shall offer to resign. In addition, a director whose resignation is under consideration shall abstain from participating in any recommendation or decision regarding that resignation.  The Corporate Governance Committee shall make a recommendation to the Board as to whether to accept or reject the tendered resignation, or whether other action should be taken.  The Corporate Governance Committee and the Board, in making their decisions, may consider any factor or other information that they deem relevant.  The Board shall act on the tendered resignation, taking into account the Corporate Governance Committee's recommendation, and shall publicly disclose its decision regarding the resignation and the basis for the decision within ninety (90) days after the results of the election are certified.  If the resignation is not accepted, the director will continue to serve until the next annual meeting of stockholders and until the director's successor is elected and qualified.  The Board shall not permit the director to stand for election at the next annual meeting."

B.      BoA will amend Section 8 of its Corporate Governance Guidelines to read, in relevant part, as follows:

"***Minimum Stock Ownership by Executive Officers and Directors.***   In order to align the interests of the Company's executive officers and directors with those of the Company's stockholders, the Board has adopted the following minimum stock ownership requirements: (a) the Chief Executive Officer shall hold at least 500,000 shares of the Company's common stock and retain at least 50% of the net after-tax shares from future equity awards until retirement; (b) other executive officers shall hold at least 300,000 shares of the Company's common stock and retain at least 50% of the net after-tax shares from future equity awards until the ownership guideline is achieved; and (c) non-management directors are required to hold and cannot sell the restricted stock they receive as compensation (except as necessary to pay taxes upon vesting) until termination of their service.  The Company shall disclose in its annual proxy statement any failure of any director to comply with the stock ownership guidelines.  All full value shares and units beneficially owned by executive officers and directors are included in the calculation; performance contingent shares and units are included in the calculation when earned; and stock options are not included.  Newly appointed executive officers will have up to five years to achieve compliance."

C.       In connection with the establishment of the Corporate Development Committee BoA will amend the charter for the Corporate Development Committee to read, in relevant part, as follows:

"***Committee Authority and Responsibilities.***   In carrying out its oversight responsibilities as set forth above, the Committee shall oversee senior management's establishment of policies and guidelines, to be adopted by the Board, establishing appropriate systems (including policies, procedures and/or management committees) to ensure that Applicable Transactions are vetted carefully and that adequate due diligence is performed prior to Board approval of any Applicable Transaction.  Among other things, the Committee shall ensure that the Chief Executive Officer and the Board are informed with respect to any bonus or incentive compensation agreements with an actual or estimated aggregate value exceeding 5% of the acquisition price at the time the Applicable Transaction is announced, which agreements have been negotiated in connection with an Applicable Transaction and are based on or otherwise related to such Applicable Transaction.  In connection with any Applicable Transaction to be submitted to the Board for approval, the Committee shall meet at least once, telephonically or in person, with members of senior management to review management's compliance with applicable policies and procedures related to the Company's consideration of the Applicable Transaction, prior to its presentation to the Board for approval."

37.      BoA will maintain the following corporate governance reforms (agreed to previously with the SEC) through January 1, 2015:

A.      that all compensation committee members be super-independent;

B.      that BoA publish on its website the incentive compensation principles and the requirement that it adhere to them;

C.      that BoA have its Chief Executive and Chief Financial Officers certify that they have reviewed all annual and merger proxy statements;

D.      that BoA maintain a consultant to the Compensation Committee who would report solely to the Compensation Committee and would be "independent" under all applicable NYSE rules and guidelines concerning compensation consultants; and

E.      that BoA provide shareholders with an annual non-binding "say on pay" with respect to executive compensation.

38.     The Court shall retain jurisdiction until the end-date of the Corporate Governance Enhancements on the later of January 1, 2015 or eighteen (18) months following the Court's entry of the Judgment (or Alternative Judgment if applicable) to enforce any of the conditions set forth in Section IX of this Stipulation.

## X.   CONDITIONS OF SETTLEMENT; EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

39.     If the Settlement is approved by the Court, the Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

(a)      the Court has entered the Preliminary Approval Order, substantially in the form set forth in Exhibit A annexed hereto, as required by ¶ 2 above;

(b)      BoA has fully paid the Settlement Amount as required above;

(c)      BoA has implemented or continued the Corporate Governance Enhancements, as required by ¶¶ 36-38 above;

(d)     BoA has not exercised its option to terminate the Settlement pursuant to the provisions of this Stipulation (including the Supplemental Agreement);

(e)     Lead Plaintiffs have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation;

(f)     the Court has approved the Settlement as described herein, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and entered the Judgment and the Judgment has become Final, or the Court has entered an Alternative Judgment and none of the Parties seek to terminate the Settlement and the Alternative Judgment has become Final.

40.     Upon the occurrence of all of the events referenced in ¶ 39 above, any and all remaining interest or right of the Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished and the Releases herein shall be effective.

41.     If (i) BoA exercises its right to terminate the Settlement as provided in this Stipulation; (ii) Lead Plaintiffs exercise their right to terminate this Settlement as provided in this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur, then:

(a)     The Settlement and the relevant portions of this Stipulation shall be canceled and terminated.

(b)     Lead Plaintiffs and the Defendants shall be restored to their respective positions in the Action immediately prior to September 20, 2012.

(c)     The terms and provisions of this Stipulation, with the exception of this ¶ 41 and ¶ 44, shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and any Judgment, Alternative

Judgment, or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

(d)      Within fourteen (14) business days after joint written notification of termination is sent by counsel for BoA and Co-Lead Counsel to the Escrow Agent pursuant to the terms of the Escrow Agreement, the Settlement Fund (including accrued interest thereon and any funds received by Co-Lead Counsel consistent with ¶ 19 above), less any expenses and any costs which have either been disbursed or incurred and chargeable to Notice and Administration Costs and less any Taxes paid or due or owing shall be refunded by the Escrow Agent to BoA. In the event that the funds received by Co-Lead Counsel consistent with ¶ 19 above have not been refunded to the Settlement Fund within the fourteen (14) business days specified in this paragraph, those funds shall be refunded by the Escrow Agent to BoA immediately upon their deposit into the Escrow Account consistent with ¶ 19 above.

(e)      Plaintiffs' counsel shall return any attorneys' fees, as set forth in ¶ 19 above.

42.      It is further stipulated and agreed that Lead Plaintiffs, provided they unanimously agree, and BoA shall each have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so ("Termination Notice") to the other Parties to this Stipulation within thirty (30) days of: (a) the Court's declining to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve the Settlement or any material part thereof; (c) the Court's declining to enter the Judgment in any material respect as to the Settlement; (d) the date upon which the Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Second Circuit or the United States Supreme Court; or (e) the date upon which an Alternative Judgment is modified or reversed in

any material respect by the United States Court of Appeals for the Second Circuit or the United States Supreme Court, and the provisions of ¶ 41 shall apply.   However, any decision or proceeding, whether in this Court or any appellate court, with respect to an application for attorneys' fees or Litigation Expenses, with respect to any plan of allocation, or with respect to whether Class Members should be afforded a second opportunity to opt out of the Class shall not be considered material to the Settlement, shall not affect the finality of any Judgment or Alternative Judgment, and shall not be grounds for termination of the Settlement.

43.     In addition to the grounds set forth in ¶ 42 above, in the event that the Court permits Class Members a second opportunity to exclude themselves from the Class in connection with this Settlement, BoA shall have the option to terminate the Settlement in the event that Class Members requesting exclusion from the Class meet the conditions set forth in its confidential supplemental agreement with Lead Plaintiffs (the "Supplemental Agreement"), in accordance with the terms of that agreement.   The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein and in the Settlement Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement) unless and until the Court otherwise directs or a dispute arises between Lead Plaintiffs and BoA concerning its interpretation or application.   If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, the applicable Parties will undertake to have the Supplemental Agreement submitted to the Court *in camera*.

## XI.  <u>NO ADMISSION OF WRONGDOING</u>

44.     Neither the Term Sheet, this Stipulation (whether or not consummated), nor its negotiation, nor and any proceedings taken pursuant to it:

(a)      shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Lead Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees;

(b)      shall be offered against any of the Lead Plaintiffs' Releasees, as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Lead Plaintiffs' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; provided, however, that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement;

(c)      shall be construed against any of Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

(d)      shall be construed against Lead Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Second Amended Complaint would not have exceeded the Settlement Amount.

## XII.  MISCELLANEOUS PROVISIONS

45.      All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, in the event that there exists a conflict or

inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail

46.     In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of BoA to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Lead Plaintiffs, the Lead Plaintiffs and Defendants shall jointly move the Court to vacate and set aside the Releases given and the Judgment or Alternative Judgment, if applicable, entered in favor of the Defendants and the other Releasees pursuant to this Stipulation, which releases and Judgment, or Alternative Judgment, shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in ¶ 41 herein and any cash amounts in the Settlement Fund (less any Taxes paid, due or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid or payable) shall be returned as provided in ¶ 41.

47.     The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Lead Plaintiffs, any other Class Members and their attorneys against all Defendants' Releasees with respect to all Released Lead Plaintiffs' Claims.  Accordingly, Lead Plaintiffs, their counsel and each Defendant and his, her or its counsel agree not to assert in any forum that this Action was brought by Lead Plaintiffs or defended by the Defendants in bad faith or without a reasonable basis.  No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of this Action.  The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by

the Parties, including through a mediation process supervised and conducted by Judge Phillips, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

48.     While retaining their right to deny that the claims asserted in the Action were meritorious, the Defendants and their counsel, in any statement made to any media representative (whether or not for attribution) will not assert that the Action was commenced or prosecuted in bad faith nor will they deny that the Action was commenced and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel.  In all events, Lead Plaintiffs and their counsel and Defendants and their counsel shall not make any accusations of wrongful or actionable conduct by either Party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

49.     The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived except by a writing signed on behalf of both Lead Plaintiffs and the Defendants (or their successors-in-interest).

50.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

51.     The administration and consummation of the Settlement as embodied in this Stipulation, shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Co-Lead Counsel and enforcing the terms of this Stipulation, including the implementation or

maintenance of the Corporate Governance Enhancements, the Plan of Allocation and the distribution of the Net Settlement Fund to Class Members.

52.     The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

53.     This Stipulation and its exhibits and the Supplemental Agreement constitute the entire agreement among Lead Plaintiffs and the Defendants concerning the Settlement and this Stipulation and its exhibits.  All Parties acknowledge that no other agreements, representations, warranties, or inducements have been made by any Party hereto concerning this Stipulation, its exhibits or the Supplemental Agreement other than those contained and memorialized in such documents.

54.     This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via email. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the signatories of this Stipulation shall exchange among themselves original signed counterparts.

55.     This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties, including any and all Releasees and any corporation, partnership, or other entity into or with any Party hereto may merge, consolidate or reorganize.

56.     The construction, interpretation, operation, effect and validity of this Stipulation, the Supplemental Agreement and all documents necessary to effectuate it shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

57.     Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in this Court.

58.     This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

59.     All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

60.     Co-Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

61.     If either Party is required to give notice to the other Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or facsimile transmission with confirmation of receipt.  Notice shall be provided as follows:

If to Lead Plaintiffs                       Bernstein Litowitz Berger & Grossmann LLP
or Co-Lead Counsel:                        Attn:  Steven B. Singer, Esq.
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 554-1400
Facsimile:   (212) 554-1444

Kaplan Fox & Kilsheimer LLP
Attn:  Robert N. Kaplan, Esq.
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

Kessler Topaz Meltzer & Check, LLP
Attn:  David Kessler, Esq.
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

If to Defendants:                            Paul, Weiss, Rifkind, Wharton & Garrison LLP
Attn:  Brad Karp, Esq.
Daniel J. Kramer, Esq.
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  212-373-3000
Facsimile:   212-757-3990

Cleary Gottlieb Steen & Hamilton LLP
Attn:  Mitchell A. Lowenthal, Esq.
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

Wachtell, Lipton, Rosen & Katz
Attn:  Peter C. Hein, Esq.
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

Shearman & Sterling LLP
Attn:  Adam S. Hakki, Esq.
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179


Davis Polk & Wardwell LLP
Attn:  Lawrence Portnoy, Esq.
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800


Debevoise & Plimpton LLP
Attn:  Andrew Ceresney, Esq.
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836


Baker Botts L.L.P.
Attn:  William H. Jeffress, Jr., Esq.
The Warner
1299 Pennsylvania Ave., NW
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890


Dechert LLP
Attn:  Andrew J. Levander, Esq.
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599


62.     Except as otherwise provided herein, each Party shall bear its own costs.

63.     Whether or not the Stipulation is approved by the Court and whether or not the

Stipulation is consummated, the Parties and their counsel shall use their best efforts to keep all

negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings in connection with the Stipulation confidential.

64.     All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

65.     No opinion or advice concerning the tax consequences of the proposed Settlement to individual Class Members is being given or will be given by the Parties to the Settlement or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation.  Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of November 30, 2012.

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

By: _Steven B. Singer_

Max W. Berger
Steven B. Singer
1285 Avenue of the Americas
New York, NY 10022
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

**KAPLAN FOX & KILSHEIMER LLP**

By: _____

Robert N. Kaplan
Frederic S. Fox
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

**KESSLER TOPAZ MELTZER & CHECK, LLP**

By: _____

Gregory M. Castaldo
David Kessler
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Lead Plaintiffs*

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of November 30, 2012.

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP

By: _____
Max W. Berger
Steven B. Singer
1285 Avenue of the Americas
New York, NY 10022
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

KAPLAN FOX & KILSHEIMER LLP

By: _____
Robert N. Kaplan
Frederic S. Fox
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

KESSLER TOPAZ MELTZER
& CHECK, LLP

By: _____
Gregory M. Castaldo
David Kessler
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Lead Plaintiffs*

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of November 30, 2012.

> **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
>
> By: _____
> Max W. Berger
> Steven B. Singer
> 1285 Avenue of the Americas
> New York, NY 10022
> Telephone: (212) 554-1400
> Facsimile: (212) 554-1444
>
> **KAPLAN FOX & KILSHEIMER LLP**
>
> By: _____
> Robert N. Kaplan
> Frederic S. Fox
> 850 Third Avenue, 14th Floor
> New York, NY 10022
> Telephone: (212) 687-1980
> Facsimile: (212) 687-7714
>
> **KESSLER TOPAZ MELTZER & CHECK, LLP**
>
> By: _____
> Gregory M. Castaldo
> David Kessler
> 280 King of Prussia Road
> Radnor, PA 19087
> Telephone: (610) 667-7706
> Facsimile: (610) 667-7056
>
> *Attorneys for Lead Plaintiffs*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By: _____

    Brad S. Karp
    Daniel J. Kramer
    Audra J. Soloway

    1285 Avenue of the Americas
    New York, NY 10019-6064
    Telephone: (212) 373-3000
    Facsimile: (212) 757-3990

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By: _____

    Mitchell A. Lowenthal
    Lewis J. Liman
    Jennifer Kennedy Park
    One Liberty Plaza
    New York, NY 10006
    Telephone: (212) 225-2000
    Facsimile: (212) 225-3999

WACHTELL, LIPTON, ROSEN & KATZ

By: _____

    Peter C. Hein
    Eric M. Roth
    51 West 52nd Street
    New York, NY 10019
    Telephone: (212) 403-1000
    Facsimile: (212) 403-2000

*Attorneys for Defendants Bank of America
Corporation, Banc of America Securities LLC
and Neil A. Cotty*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By: _____

    Brad S. Karp
    Daniel J. Kramer
    Audra J. Soloway

    1285 Avenue of the Americas
    New York, NY 10019-6064
    Telephone: (212) 373-3000
    Facsimile: (212) 757-3990

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By: _____

    Mitchell A. Lowenthal
    Lewis J. Liman
    Jennifer Kennedy Park
    One Liberty Plaza
    New York, NY 10006
    Telephone: (212) 225-2000
    Facsimile: (212) 225-3999

WACHTELL, LIPTON, ROSEN & KATZ

By: _____

    Peter C. Hein
    Eric M. Roth
    51 West 52nd Street
    New York, NY 10019
    Telephone: (212) 403-1000
    Facsimile: (212) 403-2000

*Attorneys for Defendants Bank of America
Corporation, Banc of America Securities LLC
and Neil A. Cotty*

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**

By: _____

    Brad S. Karp
    Daniel J. Kramer
    Audra J. Soloway

    1285 Avenue of the Americas
    New York, NY 10019-6064
    Telephone: (212) 373-3000
    Facsimile: (212) 757-3990

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**

By: _____

    Mitchell A. Lowenthal
    Lewis J. Liman
    Jennifer Kennedy Park
    One Liberty Plaza
    New York, NY 10006
    Telephone: (212) 225-2000
    Facsimile: (212) 225-3999

**WACHTELL, LIPTON, ROSEN & KATZ**

By: _____

    Peter C. Hein
    Eric M. Roth
    51 West 52nd Street
    New York, NY 10019
    Telephone: (212) 403-1000
    Facsimile: (212) 403-2000

*Attorneys for Defendants Bank of America
Corporation, Banc of America Securities LLC
and Neil A. Cotty*

**SHEARMAN & STERLING LLP**

By:  _Adam S. Hakki_

     Adam S. Hakki
     599 Lexington Avenue
     New York, NY 10022-6069
     Telephone: (212) 848-4000
     Facsimile: (212) 848-7179

*Attorneys for Defendants Merrill Lynch & Co.,*
*Inc. and Merrill Lynch, Pierce, Fenner &*
*Smith Incorporated*


**DAVIS POLK & WARDWELL LLP**

By:  _____

     Lawrence Portnoy
     Charles S. Duggan
     Brian M. Burnovski
     450 Lexington Avenue
     New York, NY 10017
     Telephone: (212) 450-4000
     Facsimile: (212) 701-5800

*Attorneys for Defendants William Barnet, III,*
*Frank P. Bramble, Sr., John T. Collins, Gary*
*L. Countryman, Tommy R. Franks, Charles K.*
*Gifford, Monica C. Lozano, Walter E. Massey,*
*Thomas J. May, Patricia E. Mitchell, Thomas*
*M. Ryan, O. Temple Sloan, Jr., Meredith R.*
*Spangler, Robert L. Tillman and Jackie M.*
*Ward*

**SHEARMAN & STERLING LLP**

By: _____

    Adam S. Hakki
    599 Lexington Avenue
    New York, NY 10022-6069
    Telephone: (212) 848-4000
    Facsimile: (212) 848-7179

*Attorneys for Defendants Merrill Lynch & Co.,
Inc. and Merrill Lynch, Pierce, Fenner &
Smith Incorporated*

**DAVIS POLK & WARDWELL LLP**

By: _____

    Lawrence Portnoy
    Charles S. Duggan
    Brian M. Burnovski
    450 Lexington Avenue
    New York, NY 10017
    Telephone: (212) 450-4000
    Facsimile: (212) 701-5800

*Attorneys for Defendants William Barnet, III,
Frank P. Bramble, Sr., John T. Collins, Gary
L. Countryman, Tommy R. Franks, Charles K.
Gifford, Monica C. Lozano, Walter E. Massey,
Thomas J. May, Patricia E. Mitchell, Thomas
M. Ryan, O. Temple Sloan, Jr., Meredith R.
Spangler, Robert L. Tillman and Jackie M.
Ward*

58

**DEBEVOISE & PLIMPTON LLP**

By: _____
Mary Jo White
Andrew J. Ceresney
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836

Colby A. Smith
555 13th Street, N.W.
Washington, DC
Telephone: (202) 383-8000
Facsimile: (202) 383-8118

*Attorneys for Defendant Kenneth D. Lewis*


**BAKER BOTTS L.L.P.**

By: _____
William H. Jeffress, Jr.
Julia Guttman
Jeremy Levin
The Warner
1299 Pennsylvania Ave., NW
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

*Attorneys for Defendant Joe L. Price*


**DECHERT LLP**

By: _____
Andrew J. Levander
David S. Hoffner
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599

*Attorneys for Defendant John A. Thain*

# 684761

**DEBEVOISE & PLIMPTON LLP**

By:  _____
       Mary Jo White
       Andrew J. Ceresney
       919 Third Avenue
       New York, NY 10022
       Telephone: (212) 909-6000
       Facsimile: (212) 909-6836

       Colby A. Smith
       555 13th Street, N.W.
       Washington, DC
       Telephone: (202) 383-8000
       Facsimile: (202) 383-8118

*Attorneys for Defendant Kenneth D. Lewis*


**BAKER BOTTS L.L.P.**

By:  _____
       William H. Jeffress, Jr.
       Julia Guttman
       Jeremy Levin
       The Warner
       1299 Pennsylvania Ave., NW
       Washington, DC 20004-2400
       Telephone: (202) 639-7700
       Facsimile: (202) 639-7890

*Attorneys for Defendant Joe L. Price*


**DECHERT LLP**

By:  _____
       Andrew J. Levander
       David S. Hoffner
       1095 Avenue of the Americas
       New York, NY 10036-6797
       Telephone:  (212) 698-3500
       Facsimile:  (212) 698-3599

*Attorneys for Defendant John A. Thain*

# 684761

**DEBEVOISE & PLIMPTON LLP**

By: _____

   Mary Jo White
   Andrew J. Ceresney
   919 Third Avenue
   New York, NY 10022
   Telephone: (212) 909-6000
   Facsimile: (212) 909-6836

   Colby A. Smith
   555 13th Street, N.W.
   Washington, DC
   Telephone: (202) 383-8000
   Facsimile: (202) 383-8118

*Attorneys for Defendant Kenneth D. Lewis*


**BAKER BOTTS L.L.P.**

By: _____

   William H. Jeffress, Jr.
   Julia Guttman
   Jeremy Levin
   The Warner
   1299 Pennsylvania Ave., NW
   Washington, DC 20004-2400
   Telephone: (202) 639-7700
   Facsimile: (202) 639-7890

*Attorneys for Defendant Joe L. Price*


**DECHERT LLP**

By: _____

   Andrew J. Levander
   David S. Hoffner
   1095 Avenue of the Americas
   New York, NY 10036-6797
   Telephone: (212) 698-3500
   Facsimile: (212) 698-3599

*Attorneys for Defendant John A. Thain*

# 684761

59

# Appendix 1

Requests for Exclusion Received in Connection with Notice of Pendency of Class Action

1. 1976 Real Estate Trust UTA DTD
   12/28/76 FBO Richard Finger
   Houston, TX

2. The 1991 Jeffrey R. Parker Family
   Trust
   Englewood, NJ

3. The 1994 Drew E. Parker Family
   Trust
   Englewood, NJ

4. The 1994 Julie P. Mantell Family
   Trust
   Memphis, TN

5. 2008 SRG Trust
   New York, NY

6. Benjamin and Caroline Abrams
   Educational Trust
   San Francisco, CA

7. Zachary Abrams
   San Francisco, CA

8. Martha B. Adair Revocable Trust,
   Barbara A. Roach, Trustee
   Boulder, CO

9. Melvin L. Adams
   Federalsburg, MD

10. John R. Agnew
    Fort Myers, FL

11. Harry J. and Patricia N. Agoff
    Tr UA 08-APR-97 Harry J. Agoff
    and Patricia N. Agoff Revocable
    Trust
    San Mateo, CA

12. Dene Miller Alden, Trustee
    The Dolores E. Miller Trust
    Cincinnati, OH

13. Peter P. Alessandro
    Clifton Park, NY

14. Darlene P. Allen (IRA)
    Clarksburg, MD

15. Srinivasa R. Allu
    Quincy, MA

16. Anita L. Altheide TTEE
    Charles R. Altheide TTEE
    Anita L. Altheide Living Trust U/A
    DTD 06/12/97
    Hannibal, MO

17. Ambassador Life Insurance
    Company
    Houston, TX

18. Amundi
    c/o DRRT
    Miami, FL

19. Ronald R. Anderson
    Lincoln, NE

20. Wilma Anderson
    Keosauqua, IA

21. Anne Duchess of Westminster's
    Charity
    Eccleston Chester, England

22. Michel G. Araman &
    Adele C. Araman
    Buena Park, CA

23. Donald Arkley
    Redwood City, CA

24. Robert Arndt
    TR UA 07/26/1990
    Redington Shores, FL

25. Margaret Arsenault;
    Margaret Arsenault &
    Edward Arsenault, JT TEN
    Stow, MA

26. Anna H. Ashby
    Churchville, VA

27. James C. Atkins & Leola T. Atkins
    Richmond, VA

28. Barbara H. Babcock &
    Arthur E. Babcock
    Carmel Valley, CA

29. Richard J. Babiars
    Auburn, NY

30. Robert J. Baldes, Sr.
    Albany, NY

31. William Proctor Ball
    Grifton, NC

32. Grace Louise Baltusnik
    Charlotte, NC

33. Banque Genevoise de Gestion SA
    On behalf of its clients
    Geneve, Switzerland

34. Barbara Barbaria
    San Francisco, CA

35. Brian Barbaria
    San Francisco, CA

36. Janet D. Barker
    Black Diamond, WA

37. Melvin K. Barneko &
    Alice M. Barneko, JT TEN
    Valparaiso, IN

38. John Baron and Etta Baron
    Newtown, PA

39. Doreen C. Barrows
    Leesburg, FL

40. Charles R. Bassett
    Newton Highlands, MA

41. Gerald D. Bastin &
    Wendy Bastin
    Arden, NC

42. Dorothy Anne Bayliss
    Charlotte, NC

43. F. James Becher, Jr.
    Greensboro, NC

44. Robert Beck
    Boothwyn, PA

45. Elizabeth Jeannette Beighau
    Temple City, CA

46. Fannie Bond Bellamy
    Windsor, NC

47. Merle Bellis
    Ellensburg, WA

48. Verna E. Belmer
    Citrus Heights, CA

Requests for Exclusion Received in Connection with Notice of Pendency of Class Action

49. Robert Faro Belport & Christine E.
    Belport JT TEN
    Green Bay, WI

50. Melvin Belsky
    Alamo, CA

51. James Thomas Benge & Elizabeth
    Benge TR
    UA Nov. 18, 1992
    The Benge Revocable Trust
    Pryor, OK

52. Joyce J. Berdal &
    Raymond J. Berdal JT TEN
    Madison, WI

53. Janet T. Berrier
    Groton, VT

54. Mark L. Bigelow
    Mifflintown, PA

55. James K. Biggs, Jr.
    Houston, TX

56. Edward M. Block, Trustee
    Edward M. Block Living Trust
    Las Vegas, NV

57. H. Paul Block, Trustee
    H. Paul Block Living Trust
    Las Vegas, NV

58. H. Paul Block, Successor Trustee
    Bernice Block Living Trust
    Las Vegas, NV

59. Bloody Forland, LP
    Palm City, FL

60. Emily Boell
    Corona, CA

61. Joan Elaine Boone
    Berkeley, CA

62. Joseph Borello
    New York, NY

63. Louise M. Botica
    Debary, FL

64. Merle Lee Bourn (Roth IRA)
    La Grange, IL

65.  Thomas David Bourne, MD
     Charlottesville, VA

66.  Margaret A. Bowden (Roth IRA)
     North Providence, RI

67.  Thomas H. Bowden
     North Providence, RI

68.  Donald C. Boyer
     Oakville, IA

69.  Jeannette Bragg
     Enfield, CT

70.  Anne M. Braisted, Trustee
     Paul W. Braisted Family Trust
     Columbia, MO

71.  James H. Brammer, Jr.
     Lynchburg, VA

72.  Preston R. Branksy &
     Zena Bransky
     Glencoe, IL

73.  Sherry Philippet Brewster
     Newport, WA

74.  Adelina M. Bride
     Portland, OR

75.  Iva H. Brown
     Nashville, TN

76.  Katherine Ann Brown
     Litchfield Park, AZ

77.  Margaret Brown
     Montrose, CO

78.  Donald Brunell
     Walnut Creek, CA

79.  Lillian F. Brunell
     Livingston, NJ

80.  Roy Lewis Bubb
     St. Petersburg, FL

81. Charles F. Buckland &
    Carol J. Buckland
    Alexander, NC

82. Robert W. Buckner
    Floral Park, NY

83. D. Landon Buffington
    Smyrna, GA

84. Ilya Burlak
    Marlboro, NJ

85. George A. Burton, Jr.
    Rocky Mount, NC

86. Estate of Robert D. Busch
    Sunnyvale, CA

87. John A. Bushong
    Arlington, VA

88. Jean Sueanne Butler
    Atlanta, GA

89. Martha Butterfield
    Chattanooga, TN

90. Michael A. Cahoon
    Engelhard, NC

91. Bartholomew Campanella &
    Virginia Campanella
    Paramus, NJ

92. Ronald Wayne Campbell
    Jackson, MI

93. J. Alex Canepari
    Memphis, TN

94. Giuseppe Caprio & Eva Caprio
    Bologna, Italy

95. Vincent Carlson
    Bloomington, IL

96. The Carnegie Family Trust
    U/A DTD 09/02/98
    James & Susan Carnegie TTEES
    Minden, NV

97. Hilda M. Carter & John M. Carter
(deceased)
Jackson, GA

98. Bill Sweeney Castillo Trust,
Willard S. Sweeney, Trustee
Roscommon, MI

99. Nancy A. Castleberry
Winton, CA

100. Marie G. Catanese
Estero, FL

101. Jane L. Caviglia
Visalia, CA

102. Shirley M. Cawley
Aurora, IL

103. Caroline Chan
Murrieta, CA

104. Carmen Chavez-Lopez
Pico Rivera, CA

105. Andrew Cheesman
Newburgh, NY

106. Frances R. Cherry TTEE
FBO Frances R. Cherry Trust
U/A/D 8/26/91
Spartanburg, SC

107. Chickasaw Foundation
Ada, OK

108. Hetty Chong &
Russell Chong
Oakland, CA

109. Razzakul H. Chowdhury
San Luis Obispo, CA

110. Lenore C. Christel
Manitowoc, WI

111. Josephine Ciufo
Greece, NY

112. Eleanor Clements, Trustee
UA 19-April-95 Eleanor Clements
Living Trust
Norwood, NJ

113. David R. Clinton
Bullhead City, AZ

114. Marguerite S. Cockey Dec'd TR
Marguerite S. Cockey Trust
Barbara C. Thompson, Executor
Modesto, CA

115. Cheryl Coddington
Jupiter, FL

116. Philip M. Comerford, Trustee
Trust U/A DTD 4/30/1926 by
Percival Smith Hill II
Naples, FL

117. John Consolo
Hawthorne, NJ

118. Frank B. Contratto
Aurora, IL

119. Glen Dale Conway &
Elvira Conway
St. Louis, MO

120. Robert P. Cook, Jr.
Lafayette, CA

121. Bruce Cook
Westwood, MA

122. Charlotte C. Cook (deceased)
Lafayette, CA

123. Vergie Cooper
Wilmington, DE

124. Wheirda M. Cooper
Magnolia, AR

125. J. Robert Corson
Cottonwood, AZ

126. Harold D. Cox &
Marilyn E. Fisher
Hubbard, OR

127. Charles K. Craig
Charlotte, NC

128. Ann Elizabeth Craven
North Wilkesboro, NC

129. Cyril E. Crawley
Glocester, RI

130. Crockett Living Trust
George B. & Dorothy M. Crockett
TR UA 24-MAY-96
The Bryan M. Wisherd Trust
Prescott Valley, AZ

131. Crockett Living Trust
George B. & Dorothy M. Crockett
TR UA 24-MAY-96
The Damon M. Wisherd Trust
Prescott Valley, AZ

132. Crockett Living Trust
George B. & Dorothy M. Crockett
TR UA 24-MAY-96
The Dana L. McKnight Trust
Prescott Valley, AZ

133. Crockett Living Trust
George B. & Dorothy M. Crockett
TR UA 24-MAY-96
The Darren D. Hewston Trust
Prescott Valley, AZ

134. Crockett Living Trust
George B. & Dorothy M. Crockett
TR UA 24-MAY-96
The Marc M. Hewston Trust
Prescott Valley, AZ

135. Crockett Living Trust
George B. & Dorothy M. Crockett
TR UA 24-MAY-96
The Rory E. McKnight Trust
Prescott Valley, AZ

136. Crockett Living Trust
George B. & Dorothy M. Crockett
TR UA 24-MAY-96
The Tammy T. Hewston Trust
Prescott Valley, AZ

137. George B. & Dorothy M. Crockett
TR UA 24-MAY-96
Crockett Living Trust
Prescott Valley, AZ

138. Ann Crossland
Pasadena, CA

139. Robert E. Crowder &
Dorothy A. Crowder
TR UA 5/29/91
Crowder Family Trust
Carson City, NV

140. Oscar E. Cruz
Pinole, CA

141. Thomas L. Curth
Indio, CA

142. Dade T. Curtis
Dunlap, IL

143. Deanna M. Dack
Oakley, CA

144. Marion E. Dalbey
Grover Beach, CA

145. Robert Daniel
Huntington Beach, CA

146. Darrow Family Bypass Trust
Elk Grove, CA

147. Leslie Lamont Darrow (deceased)
& H. Marie Darrow (deceased) &
their survivors
Elk Grove, CA

148. Brian L. Daves
Charlotte, NC

149. Gloria M. Davies
Bryans Road, MD

150. Dorothy M. Davis
Nanjemoy, MD

151. Kenneth J. Davis
San Diego, CA

152. Martha Ann Davis
Fresno, CA

153. Patricia R. Davis
Manchester, NH

154. Thomas Lee Davis
Seal Beach, CA

155. Bruck Dawit
Annandale, VA

156. Roy E. Day
Decatur, GA

157. Joyce Kathleen Debusk
Glade Spring, VA

158. Gary Deem
Glendale, CA

159. Anita Degreef
Sint-Pieters-Leeuw, Belgium

160. Deka International Luxemburg S.A.
Luxembourg

161. Deka Investment GmbH
Frankfurt, Germany

162. Ellen L. Del Mauro
Scotch Plains, NJ

163. John R. Del Mauro
Scotch Plains, NJ

164. Robert L. Deleeuw
Kalamazoo, MI

165. Estate of Mamie A. Delzell
Pawleys Island, SC

166. Frances A. White DeSear
Brandon, FL

167. Phoebe A. Dill
Roanoke, TX

168. Peter R. Disciascio &
Joyce M. Disciascio, JT WROS
Ocean City, NJ

169. Thelma D. Domenicone
San Fernando, CA

170. Betty P. Donohoe
Fairfax, VA

171. Taso E. Dontchos
Centennial, CO

172. Gertrude M. Doody
Arlington, MA

173. Kathleen L. Dooley Maley
Indian Trail, NC

174. William S. Dorsey
Owings Mills, MD

175. Laura Dawn Doscher
Rockville, MD

176. Helen M. Douglas
Fairport, NY

177. Dan C. Doyle
     Torrance, CA

178. Donie B. Driver
     Commerce, GA

179. Estate of Adeline A. Duecker
     Madison, WI

180. Dorothy A. Duffy
     Irmo, SC

181. Dorothy Dufner
     Sun Lakes, AZ

182. Walter Dufner
     Sun Lakes, AZ

183. Burl Duncan
     Linville, NC

184. Jason Dupuis
     Berlin, MD

185. John F. Duran, Jr. &
     Ruth M. Duran, JT TEN
     Woburn, MA

186. Elizabeth L. Dyer, TTEE
     Elizabeth L. Dyer Rev Trust
     UAD 4/27/07
     St. Paul, MO

187. Lisa F. Dylan & Gary F. David,
     Trustees, David Revocable
     Intervivos Trust
     Fred David (deceased)
     Sacramento, CA

188. Virgie L. Earl
     Sun City Center, FL

189. Alireza Ebrahim (aka Ali R.
     Ebrahimi) & Tahereh Jamshidi
     Falls Church, VA

190. Mary L. Edmonds
     Union City, CA

191. Carl Elkins
     Victor, CA

192. Robert Elkins
     New Glarus, WI

193. Wayne Ellithorpe, TTEE &
     Annette Marie Ellithorpe, TTEE
     Prescott, AZ

194. Marlyn S. Eltanal
     TR UA 07-OCT-82
     Eltanal Family Residual Trust
     Scottsdale, AZ

195. Joyce Empson
     Scio, NY

196. EOSCO (nominee partnership),
     by Margaret K. Gutmann,
     General Partner
     Middletown, CT

197. Irmgard Erickson
     Arlington, VA

198. Frances P. Eriksen
     Sun City West, AZ

199. Susan F. Evans &
     Nancy F. Henderek, Trustees
     Weston P. Figgins Trust
     U/A DTD 2/9/1989
     Peabody, MA

200. James L. Faircloth &
     MaeLynn Faircloth
     Statesville, NC

201. Estate of Lillian H. Falk
     Camp Hill, PA

202. Ernest Farmer &
     Caroline W. Farmer
     Silver Springs, FL

203. Alvin J. Faulkner
     Corinth, TX

204. Lorraine Ferrall
     Simi Valley, CA

205. Ann S. Ficatier
     Poissy, France

206. Jeremy Fineberg
     Cedarhurst, NY

207. Martin Fineberg
     Teaneck, NJ

208. Finger Interests Number One, Ltd.
     Houston, TX

209. Richard B. Finger
Houston, TX

210. Marie M. Fiorella
Glen Rock, NJ

211. Walter C. Fisch & Ann G. Fisch,
Joint Acct with Rights of
Survivorship
Savannah, GA

212. Estate of Louis H. Flanders
East Amherst, NY

213. Angela M. Flanery
Louisville, KY

214. Robert E. Fletcher,
Ramona I. Fletcher
Dixon, CA

215. Barbara C. Flowers
Wilson, NC

216. Lonnie L. Floyd, Jr. (deceased)
Forest, VA

217. Charles B. Flynn
Midland, NC

218. Judith M. Flynn
Corvallis, OR

219. Viola Fogg
North Berwick, ME

220. Dan B. Foland
Wilmington, OH

221. Bruce Forsberg
Escondido, CA

222. Robert L. Freeman
Allentown, NJ

223. Catherine French
Moorestown, NJ

224. Bonnie Friedman
Cherry Hill, NJ

225. Harvey M. Mitnick, as Executor of
     the Estate of Nathan A. Friedman;
     Nathan A. Friedman
     (Rollover IRA)
     Haddonfield, NJ

226. Nicholas Fung
     New York, NY

227. Linda Gaddini, Custodian for
     Gregory A. Gaddini
     San Francisco, CA

228. John M. Garrett
     Atlanta, GA

229. Estate of Mary Ann Gates
     Atlanta, GA

230. Mary H. Gault, Trustee
     Richard H. & Mary H. Gault Trust
     Vassar, MI

231. Medric Gay
     St. Charles, MO

232. Margaret L. Gear
     Sunnyvale, CA

233. Megan Gebhardt
     Lake Ozark, MO

234. Virginia L. Geck,
     St. Georgen, Germany

235. Elizabeth Geers Tr.
     Revocable Trust UA 12/21/01
     Concord, NH

236. Robert Gegnas
     Jupiter, FL

237. Radha Geismann MD Retirement
     Plan Trust Rahda Geismann,
     Trustee UTA Dated Jan. 1, 2005
     St. Louis, MO

238. Garit Gemeinhardt
     Waxhaw, NC

239. Dean Gentry
     St. Maries, ID

240. J. B. George
     Granbury, TX

241. Nancy Gerard
Minooka, IL

242. Karen Gerstein
Quebec, Canada

243. Bernard R. Gervais &
Margaret E. Gervais, Trustees
Yorktown, VA

244. Mary M. Gibbs
Cohasset, MA

245. Kenneth W. Gibson
Gretna, VA

246. Shirley S. Gibson
Gretna, VA

247. Deborah Hitchcock Gilbert
Merrimac, MA

248. Marvel S. Gill Revocable Trust
Marvel S. Gill, Trustee
Meredith Frenette, Secondary
Trustee
Essex, CT

249. Anita Giovannoni
Walnut Grove, CA

250. Arthur Glazer (Rollover IRA)
Sun City West, AZ

251. William A. Glenn &
Linda D. Glenn
Carlinville, IL

252. Patricia Glisson
Riverview, FL

253. Eugenia C. Glow
San Diego, CA

254. Jill Wender Goldstein
Suffern, NY

255. Antone R. Gonsalves
New Bedford, MA

256. Robert J. Goodwin
Rochester, NY

257. Government of Singapore
Investment Corporation Pte Ltd.
c/o DRRT
Miami, FL

258. Constance C. Govi, Trustee
Govi Residual Trust UA 9-8-06
San Rafael, CA

259. Constance C. Govi, Trustee
Govi Survivor Trust UA 9-8-06
San Rafael, CA

260. Steve Graber
New York, NY

261. Beverly Ann Gracia &
Elsie Souza JT TEN
New Bedford, MA

262. Charles R. Grady
Raleigh, NC

263. W. Curtis Graff &
Nancy Kerr Graff
Cape Coral, FL

264. Lloyd D. Graham
Knob Knob Noster, MO

265. William L. Graham
Davie, FL

266. Deanna L. Gratrix
Palmer, AK

267. John Green
Littleton, CO

268. Frank V. Grimaldi
Belmont, MA

269. Kristin I. Grimes &
Daniel E. Grimes
Las Vegas, NV

270. Jess Edward Grissom &
Betty Ann Grissom, JTWROS
Texarkana, TX

271. Louie Grob, Jr.
Williams, CA

272. Richard J. Groleau &
Rosa Lee M. Groleau, Trustees
Richard J. Groleau & Rosa Lee M.
Groleau Revocable Living Trust
Sallisaw, OK

273. Robin Poston Growley
Charlotte, NC

274. Charles J. Guenther
Egg Harbor City, NJ

275. Susan Jane Gustafson &
Paul Ellis Gustafson JT TEN
Mesa, AZ

276. Barbara T. Guthneck
Dallas, TX

277. Dian Gutierrez
Lake Villa, IL

278. Betty S. Hair
Chapin, SC

279. The Hamer Living Trust
Robert C. Hamer, TTEE
Lucerne S. Hamer, TTEE
Carpinteria, CA

280. Carl A. Hamill
Moon Township, PA

281. Jenny Hann
Hillsboro, OR

282. Helen S. Hansen
Pasadena, CA

283. Gary Joseph Hardegger
Salem, OR

284. Claudia J. Harewood
Mattapan, MA

285. Melvin A. Harkins
Bend, OR

286. Marcella Harris
Glendale, CA

287. George E. Harrison
Crossville, TN

288. Alice C. Harwick
Fort Worth, TX

289.  Eugene H. Hasenberg & Ruth E.
      Hasenberg Trust
      Palm Harbor, FL

290.  Tanya M. Hassell
      Fort Worth, TX

291.  Winfred K. Hassell
      Farmersville, TX

292.  Janice Hawkins &
      Norman Hawkins
      Sherman, TX

293.  Norma Louise Hayden Family
      Trust UA 22-NOV-88
      Norma Louise Hayden, Trustee
      Yorba Linda, CA

294.  Alice E. Haynes
      Medford, MA

295.  Steven J. Hays
      Kennewick, WA

296.  Steven J. Hays TR. UA 05/01/92
      Georgia Phillips Hays Irrevocable
      Trust
      Kennewick, WA

297.  Ernest Headrick
      Mira Loma, CA

298.  Linda Sue Headstream
      Katy, TX

299.  Gloria Jean Helms
      Chickasha, OK

300.  Harriette H. Hendrix
      Thomaston, GA

301.  Roy D. Henrichson & Helen M.
      Henrichson, Trustees
      Henrichson Trust
      Franklin, TX

302.  Kelly Dyan Hill (Roth IRA)
      Concord, NC

303.  Gwen F. Hintzen, aka
      Gwendolyn Hintzen
      Stockton, CA

304.  Leo Wesley Hoag (deceased)
      Salinas, CA

305. Lyle A. Hoefer &
Joan M. Hoefer, JTWROS
Littleton, CO

306. Lyle A. Hoefer TOD Joan M.
Hoefer
Littleton, CO

307. Wayne Hoelscher
Keller, TX

308. Darlene M. Holben
Highlands Ranch, CO

309. Estate of Harlan H. Holben
Highlands Ranch, CO

310. Nells S. Hoogendam
New Bern, NC

311. Louis Gordon Hooper
Tahoe City, CA

312. R. Hopewell
Riverdale, GA

313. Katherine A. Horvath
Hancock, MI

314. Ann B. Houx Trustee
Anne B. Houx Trust
TR UA 07-Nov-88
Atlanta, GA

315. Patrick J. Gillbride, Trustee of the
Mildred Mae Howell Trust
Burlingame, CA

316. Marcella T. Hoyt
Pennington, NJ

317. Doris Hrinda
Gwynedd Valley, PA

318. HSBC Trinkaus Investment
Managers S.A.
c/o DRRT
Miami, FL

319. HSBC Trustee (Singapore) Limited,
as trustee for OPC Executive
(FUS) Scheme
Singapore

320. Sarah Hudson
Tyringham, MA

321. Chase D. Hughes &
Cathy A. Hughes
Staunton, VA

322. Marmion Duane Hull
Pacific Palisades, CA

323. Jose Icasiano, Jr.
Vallejo, CA

324. Hiromu Iida
Burbank, CA

325. International Fund Management
S.A.
Luxembourg

326. Internationale
Kapitalanlagegesellschaft mbH
c/o DRRT
Miami, FL

327. Laura A. Iremonger
Pittsburg, CA

328. Shinichi Ishikawa & Myrna E.
Ishikawa JT TEN
Camden, AR

329. E. George Iversen (deceased)
Houston, TX

330. Roman & Tracey Iwanczuk TTEE
Iwanczuk Family Trust dated
10/29/1999
Cradley, United Kingdom

331. George T. Jackson &
Mildred V. Jackson, Trustees
TR UA March '98
The George and Mildred Jackson
Family Trust DTD 3/18/98
Spring Valley, CA

332. Jalenak Holdings Partnership
Memphis, TN

333. Leo R. Jalenak, Jr.
Memphis, TN

334. Peggy E. Jalenak
Memphis, TN

335. Preston and Beverley James TTEES
Davis, CA

336. Vivian L. Jamison
Yoe, PA

337. Jax II Inc.
Brooksville, FL

338. Richard Jazwin & Jan Jazwin
Phoenix, AZ

339. William H. Jeffress, Jr.
Washington, DC

340. Estate of Rebecca M. Jenkins
Rehoboth, DE

341. Peggy M. Jennings, TTEE
UA DTD 7/20/01
The Jennings Living Trust
Pollock Pines, CA

342. Norman Jernberg (deceased) &
Kayette C. Jernberg
Carson City, NV

343. Willy H. Jeromin (IRA)
New London, NH

344. Jerry E. Finger 1976 Childrens
Trust, FBO Walter G. Finger
Houston, TX

345. Jerry E. Finger Family Trust
DTD 12/22/89
FBO Walter G. Finger
Houston, TX

346. Jerry E. Finger Family Trust
UTA DTD 12/22/89
FBO Richard Finger
Houston, TX

347. Kenneth Alan Jewett, Trustee
Bruce Willits King Family Trust
Nevada City, CA

348. Clarence F. Johnson, Jr.
Harvest, AL

349. Averill Ann Johnson Walters
Corpus Christi, TX

350. Alphonse I. Johnson &
Veronica E. Johnson
Newark, IL

351. Lawrence W. Johnson, TTEE
UA DTD 2/5/03
Johnson Family Trust
Rocklin, CA

352. Michael D. Johnson
Leo, IN

353. Robert B. Johnson &
Portia J. Johnson
Wernersville, PA

354. Roy O. Johnson
Keene, NH

355. Cora M. Jones
Coeburn, VA

356. Cora M. Jones &
Herbert Donald Jones (deceased)
Coeburn, VA

357. Elise U. Jones
Mt. Pleasant, SC

358. Rotha J. Jones
Green Bay, VA

359. Leland D. Jungmeyer &
Betty M. Jungmeyer JT TEN
Lohman, MO

360. Carolyn Kachmann
Hilton Head, SC

361. Norman R. Kahant (deceased)
Lake Worth, FL

362. Geraldine Kalem
Altadena, CA

363. Patricia A. Karsten (Roth IRA)
Boerne, TX

364. Aaron Katz
New York, NY

365. Joel R. Katz, individually and as
Trustee for Margolin Family Trust
A, Margolin Family Trust B, and
Joel R. Katz Family Trust
New York, NY

366. David Hersholt Kauffman &
Ruth Kauffman, Trustees
Kauffman Family Trust
Dated July 20, 1994
Los Angeles, CA

367. Ellaneita Keenum TTEE
Bypass Trust w/ Keenum Family
Living Trust
Farmers Branch, TX

368. Gary Keierleber &
Beverly Keierleber
Camano Island, WA

369. Frederick C. Kemmerley
Elloree, SC

370. Peter J. Kennedy (deceased) &
Ethel V. Kennedy JT TEN
Sea Girt, NJ

371. Helen M. Kerbavaz
Richmons, CA

372. George A. Keyser
Ramona, CA

373. Dr. William J. Kinnard, Jr.
Baltimore, MD

374. James R. Klaus
Bristol, PA

375. Lisa Kleback (as beneficiary of
Ruth A. Nagy)
Gainesville, VA

376. Edward F. Kline, Jr.
La Mesa, CA

377. Anne P. Knecht
Emmaus, PA

378. Ken Koch &
Luretta Koch
Lawrenceburg, TN

379. Rebecca Koraska &
John T. Koraska (deceased)
Tyler, TX

380. Yolanda B. Korth
Cypress, TX

381. Andrew J. Kosinski & Margaret A.
Kosinski
TR UA 5/18/1998
Kosinski Trust
Winter Springs, FL

382. Loretta M. Kuhn
San Diego, CA

383. Michael Kurnitz Irrevocable
Living Trust
Harold Kurnitz, Trustee
New York, NY

384. Ruth Kurnitz Irrevocable Living
Trust, Harold Kurnitz, Trustee
New York, NY

385. Andrea Kutcher
N. Miami Beach, FL

386. Pamela Kyu
San Francisco, CA

387. Gloria C. Ladore
Laconia, NH

388. Mary Margaret Lamberson
Monett, MO

389. Argyle L. Landerville IRA
Mission Viejo, CA

390. Landerville "B" TR
Argyle L. Landerville TTEE
Mission Viejo, CA

391. Silas B. Langfitt III TTEE
Silas B. Langfitt III
Revocable Trust DTD January 27,
2000
Thomasville, NC

392. Lansdowne Developed Markets
Fund Ltd.
c/o DRRT
Miami, FL

393. Lansdowne Developed Markets
Fund, L.P.
c/o DRRT
Miami, FL

394. Lansdowne Global Financials Fund
Limited
c/o DRRT
Miami, FL

395. Lansdowne Global Financials
Fund, L.P.
c/o DRRT
Miami, FL

396. Linda M. LaPointe
Washington, UT

397. Robert H. Largey &
Marguerita Quinn Largey
Union, NJ

398. Charlotte L. Larrick
TR UA 2/25/1990 Charlotte Lee
Larrick Trust
Columbia, MO

399. John Laubach &
Marilyn Laubach
Shelton, WA

400. Jean K. Lauder &
W. B. Lauder, Jr. (deceased)
Weslaco, TX

401. Robert Jay Lee
Flushing, NY

402. The JK and MD Lehman Family
Trust, Jack Kiehl Lehman, TTEE
Lacey, WA

403. Derick Harry Leonard
Jacksonville, FL

404. Robert B. Leonard
Ontario, CA

405. Christine Levandusky
West Warwick, RI

406. Diane Lewis & Gregory W. Lewis
(deceased) IRA
Calabash, NC

407. Evelyn Ligon
New York, NY

408. F.A. Lingl, M.D.
Chagrin Falls, OH

409. Friedrich A. Lingl, Trustee
Friedrich A. Lingl Trust
Chagrin Falls, OH

410. Mildred S. Litt
Albuquerque, NM

411. Frances DeJuan Littell
Hugoton, KS

412. Elaine F. Lizzio &
Elaine F. Lizzio, Trustee
U/A DTD 04/10/02
Elaine F. Lizzio Trust
Pompano Beach, FL

413. Wallace M. Lodine
Medina, WA

414. Elizabeth R. Lohman &
Verne D. Lohman
Springfield, OR

415. Emilio M. Lontok
Las Vegas, NV

416. Lotte G. Lopez
TOD Carmen L. Bright
Melbourne, FL

417. Estate of Elsie E. Lore
State College, PA

418. Lynn Margaret Lovie
The Villages, FL

419. Robert John Lovie
The Villages, FL

420. Judith A. Lowe
Quebec, Canada

421. Alfred H. Lowen & Gertrude E.
Lowen JT TEN (both deceased)
Boca Raton, FL

422. Gloria J. Loyola
Antioch, CA

423. Ida Lu
Rohnert Park, CA

424. Louis Lubrano (Roth IRA)
Fairview, NJ

425. Ruth S. Lugar &
Nancy J. Dixon (both deceased)
JT TEN
Frederick, MD

426. Ruth S. Lugar (deceased) &
Linda M. Lugar JT TEN
Frederick, MD

427. Sylvia Luton
Hausville, WA

428. Virginia M. Lyons
Littleton, CO

429. Danois G. Madrid
Daly City, CA

430. Ray C. Magee and Barbara J.
Magee JT TEN
Shelburne, VT

431. Evan Magruder
New York, NY

432. Frances M. Maguire
Gainesville, GA

433. Rima Manookian
Northridge, CA

434. Donna Marchetti
Alameda, CA

435. Yanier Marrero & Circe Martinez
Las Vegas, NV

436. John G. Marshall &
Wanda M. Marshall
La Habra, CA

437. David L. Martin &
Lillian M. Martin JT TEN
Concord, VA

438. Ralph B. Martin, Jr.
Hanover, PA

439. Sebastien Masclet
Zellwood, FL

440. Laura Harris Mason
Pittsboro, NC

441. Patricia A. Mason &
H. Leslie Mason JT TEN
Bradenton, FL

442. John P. Mathews and Florence M.
Mathews, TTEES
The John and Florence Mathews
Family Trust
Tiffin, OH

443. Lottie E. Mathews TTEE
Carthage, MO

444. Melvin F. Matsumoto &
Lynne Reiko Matsumoto
(deceased), Trustees
Lynne Reiko & Melvin F.
Matsumoto Family Trust
U/A DTD 6/12/2001
San Jose, CA

445. Dorothy Mauro
Fremont, CA

446. Margaret J. Maxwell
Dallas, TX

447. Elizabeth A. May
Belen, NM

448. Elizabeth A. May, TTEE
U/A DTD 5/01/01
May Family Trust
Belen, NM

449. Nancy C. May, TTEE
The May Family Trust
Arcadia, CA

450. Patricia Ann Mayer
Grove City, OH

451. Marie Mazzaferro &
Frank Mazzaferro
Rome, NY

452. Marjorie B. McCann
Jericho, VT

453. Wilson C. McCarthy
Vienna, VA

454. Elizabeth C. McClees &
Carl McClees JT TEN
Kitty Hawk, NC

455. Edward P. McCool &
Barbara J. McCool, Trustees
McCool Rev Living Trust
UA 3/7/96
Wakefield, RI

456. Anne B. McCormick &
John Christopher Speakman
Corvallis, OR

457. Mary A. McCormick, Trustee
Mary A. McCormick
Revocable Trust
Raleigh, NC

458. Ramphan T. McCray
St. Paul, MN

459. Mary J. McCrindle
West Park, NY

460. F. Scott McDermott
New York, NY

461. Joy A. McElroy Tr.
UA 24-Mar-88
The McElroy Living Trust
Glendora, CA

462. Alice M. McFadden
Buford, GA

463. McGrew Family Revocable Trust,
U/A DTD 8/19/03, James A.
McGrew &
Mary L. McGrew, Trustees
Palatine, IL

464. Catherine Rae McHaffey
Colorado Springs, CO

465. Dale J. McKee
Greenwood, MS

466. Robert M. McKenzie &
Elaine S. McKenzie JT TEN
Joppatowne, MD

467. Audrey McQuay
Pacific Palisades, CA

468. The MD Lehman Irrevocable Trust,
Jack Kiehl Lehman, TTEE
Lacey, WA

469. Florence E. Mehrhoff &
Becky L. Lee, JTWROS
Carrollton, IL

470. Florence E. Mehrhoff &
Gary Reif, JTWROS
Carrollton, IL

471. Kathleen D. Mello
New Bedford, MA

472. Maria H. Mendes
Boston, MA

473. Joseph W. Mengel
Chapel Hill, NC

474. George C. Mertel, decendent
Estate of George C. Mertel,
James G. Mertel, Personal Rep., &
James G. Mertel, as remaining Joint
Tenant
Baltimore, MD

475. Neil Mesick
Willimantic, CT

476. Jean G. Mesropian
Scottsdale, AZ

477. Beatrice J. Michaels
Manorville, NY

478. William D. Michaely TTEE
Michaely Living Trust
U/A 9/22/04
Reno, NV

479. Joan Letitia Miller Living Trust,
Catherine M. Gray TTEE
UA DTD 7/14/1998
Marion, NC

480. Marie B. Miller
Tucson, AZ

481.  Phyllis Milleville
      Orchard Park, NY

482.  Ada Minneci &
      Charlene Guarino TTEE
      Ada Minneci LVG TR
      U/A/D 3-10-04
      Rockford, IL

483.  Karen K. Mizusaki
      Las Vegas, NV

484.  Laureen K. Mohn
      Detroit, MI

485.  MONTANCO (nominee
      partnership),
      by Margaret K. Gutmann,
      General Partner
      Middletown, CT

486.  Estate of Elizabeth F. Moore
      Pennington, NJ

487.  Ozella M. Moore
      St. Louis, MO

488.  James K. Moorman &
      Joan M. Moorman
      Batesville, IN

489.  Michael J. Moravan
      Fort Collins, CO

490.  Kenneth M. Morrison
      Needham Heights, MA

491.  Margaret Jane Mugisch
      Wyckoff, NJ

492.  Joel Munoz
      Encinitas, CA

493.  Susan L. Murray
      South Pasadena, CA

494.  Richard L. Muth
      Richard L. Muth Family Trust
      Mission Viejo, CA

495.  Maharaj Muthusamy
      St. Louis, MO

496.  David Nagy (as beneficiary of
      Ruth A. Nagy)
      Leesburg, VA

497. Ruth A. Nagy
Haymarket, VA

498. Edith Naiser
Houston, TX

499. Shirley Nakagawa & Richard M.
Nakagawa (deceased)
Fresno, CA

500. Donald M. Nash & Geraldine G.
LaBarbera
Tampa, FL

501. Albert C. Nassan
Vermontville, NY

502. Paul J. Nau
Pisgah Forest, NC

503. Vilma Nau
Pisgah Forest, NC

504. Mirna M. Neda
New York, NY

505. Catherine A. Nelson
Ballwin, MO

506. Kathy J. Nelson
Plainsboro, NJ

507. Tom E. Nelson III
Austin, TX

508. Elvira R. Neuendorf
Jacksonville, FL

509. Kristin E. Neufeld
Auburn, NY

510. New York State Common
Retirement Fund
Albany, NY

511. New York State Teachers'
Retirement System
Albany, NY

512. Angelin N. Newton (IRA)
Dothan, AL

513. Hoang N. Nguyen
Las Vegas, NV

514. Father Martin Nikodem
Trumbull, CT

515. Janet S. Nishimura
TR UA 29-Dec-92
Janet Shizue Nishimura Revocable
Trust
Honolulu, HI

516. Janet S. Nishimura
TR UA 29-Dec-92
Masayoshi Nishimura Revocable
Trust
Honolulu, HI

517. Elaine Noreck &
Bernard E. Noreck JT TEN
Shelby Township, MI

518. Mary Louise Novak
Seaford, DE

519. George A. Nurisso
Avon, CT

520. George A. Nurisso (Roth IRA)
Avon, CT

521. George A. Nurisso (Traditional
IRA)
Avon, CT

522. George A. Nurisso, Custodian for
George C. Nurisso, UTMA
Avon, CT

523. Beverly J. Obedzinski
Crystal River, FL

524. Eileen O'Brien TR
UA 5/06/98
Eileen O'Brien Revocable Trust
Homer Glen, IL

525. Estate of Evelyn Odlivak,
Barbara DeRosa (beneficiary)
New York, NY

526. William R. Oeding &
Barbara P. Oeding
Destin, FL

527. Susan J. Omlor
Sandusky, OH

528. Estate of John R. Orrick
Towson, MD

529. Ann M. O'Shaughnessy
Naples, FL

530. Ann M. O'Shaughnessy &
Joseph F. O'Shaughnessy
Naples, FL

531. Joseph F. O'Shaughnessy
Naples, FL

532. Alyce M. Othot
Nashua, NH

533. David R. Overfield
Independence, KS

534. Phyllis A. Overmier
Upper Sandusky, OH

535. Jeanne M. Overton &
Annette Papin
Anitoch, CA

536. William Owen, Jr. & Charity E.
Owen Family Trust
Charity E. Owen, Sole Trustee
William Brian Owen, POA
Yuba City, CA

537. Violet M. Oyama
Honolulu, HI

538. Richard J. Palicka
Lisle, IL

539. Donald M. Papa &
Cleo E. Papa, Trustees
Donald M. Papa & Cleo E. Papa
Trust TR UA 02-04-1993
Cypress, TX

540. The Parker Family
Investments LLC
Englewood, NJ

541. Drew E. Parker
Englewood, NJ

542. Jeffrey R. Parker
Englewood, NJ

543. Keith Parker
Memphis, TN

544. Michael A. Parker
Englewood, NJ

545. Carolynn P. Parr
Concord, NC

546. Charles E. Parramore, Jr.
Camilla, GA

547. Julius Passalacqua & Cecilia M.
Passalacqua, Trustees
UA 10/29/97
The Passalacqua Trust
Willoughby, OH

548. Frances Pastan
Silver Spring, MD

549. Anna Pateka
Baltimore, MD

550. Walter G. Paul &
Ruth E. Paul
Hines, OR

551. T. Jay Paxton &
Doris M. Paxton, TTEES
T. Jay and Doris Paxton Trust
Jackson, MI

552. Michael J. Peacock
& Kathy Peacock
Ponte Vedra Beach, FL

553. Dolores A. Pechette TR
UA 3-31-10 Dolores A. Pechette
Revocable Trust
Portland, OR

554. Rosemarie A. Pekarek
Toms River, NJ

555. Lester A. Pelkey
Essex, VT

556. Joady Boulware Perrett, Trustee
Joe Boulware Trust
U/T/A DTD 1/21/1987
Hendersonville, NC

557. Erik P. Perrin
Daphne, AL

558. Richard Petersen &
Mary Alice Petersen TTEE
2002 Petersen Family Trust
Castro Valley, CA

559. Nancy Beth Peterson
Egg Harbor, NJ

560. Ruth B. Phelps
Alhambra, CA

561. Clifford L. Phillips &
     Frances Phillips JT WROS
     Carbondale, IL

562. The Piccioni Family 2003 Trust,
     UA 10/17/03, Mario Anthony
     Piccioni & Marian Louise Piccioni
     TTEES
     Riverside, CA

563. Ingeborg Pierce &
     Ingeborg Pierce (IRA)
     Hallandale, FL

564. Leroy E. Pietzsch
     Roscoe, TX

565. Bernard E. Pile
     Tucson, AZ

566. Nadia Piskaty
     Mountain View, CA

567. James & Elaine Pitenis
     Daytona Beach, FL

568. Priscilla C. Piva & George Piva
     New Bedford, MA

569. Vincent Plotner
     Fayetteville, PA

570. Clyde M. Polichettie &
     Jo R. Polichetti
     Torrance, CA

571. Of Norman Portello Trust B,
     Jean G. Portello TTEE
     Lafayette, CA

572. Charles Porten, custodian for
     Mia Gussen
     Weston, CT

573. Charles Porten, custodian for
     Hanna Porten
     Weston, CT

574. Anna Posch Trust, John Posch,
     Jo Ann Posch & James H. Posch,
     Successor Trustees
     Morton Grove, IL

575. Anne Potts
     Neshanic Station, NJ

576. Susan Povak
     Brighton, MA

577. Barry S. Preis
Ellensburg, WA

578. Charles E. Preisig, Trustee
Charles E. Preisig & Julia M.
Preisig Living Trust
Fort Bragg, CA

579. Mildred L. Priest
Quitman, AR

580. Profitable Investment Club, by
Charlotte J. Burge, Treasurer
Lorain, OH

581. Public Employees' Retirement
Association of Colorado
Denver, CO

582. Donald D. Puett
Overland Park, KS

583. Arnold F. Punt, Sr. &
Johanna Punt TTEES
Arnold F. Punt Sr. Living Trust
UA 01-08-1999
Sioux Center, IA

584. Diana Pyeatt
Carrollton, TX

585. Robert L. Queener & Darlene M.
Queener
TR UA 02-Feb-00
Robert L. Queener Revocable
Living Trust
Port Charlotte, FL

586. Dorothy Rabb TR
UA 6/21/99 Dorothy Rabb
Revocable Living Trust
Winter Haven, FL

587. Joyce Radberg
London, England

588. Saroja B. Rajasekhara
Rajasekhara Family Trust
U/D/T DTD 9/1/2000
Glenwood, MD

589. Irene A. Randle
TR UA 24-APR-96
The Irene A. Randle Family Trust
Sacramento, CA

590. Branko Rapo (deceased)
Matulji, Croatia

591. Michael G. Rebar (deceased)
Des Moines, WA

592. Beverly Redgwick
Pacific Grove, CA

593. Fay Reece
Pampa, TX

594. Alice J. Reed
Holt, FL

595. John R. Reed
Holt, FL

596. Barbara J. Reel
Ankeny, IA

597. O. Gene Reising &
Mary L. Reising JTWROS
Evansville, IN

598. Monte D. & Loa I. Reynolds
Sun City, AZ

599. Joseph C. Ridenhour, TTEE
Joseph Ridenhour Revocable Trust
UA DTD 5-27-2008
Ft. Lauderdale, FL

600. Edwin H. Rider, Jr. TTEE
Gertrude A. Rider TTEE
FBO Rider Living Trust
Vancouver, WA

601. Flora Rigotti
Portland, OR

602. David L. Riley, Sr. &
Martina D. Riley
Sacramento, CA

603. Joseph G. Robert
East Providence, RI

604. Saleeta A. Roberts
Thomaston, GA

605. Paul W. Robey
Casey, IL

606. Clair A. Robison &
Grace Darlene Robison
San Jose, CA

607. Robert W. Robisch
Mt. Airy, MD

608. Michael S. Rodriguez
Tehachapi, CA

609. Wilbert G. Rohlfsen
Windom, MN

610. Janet Romanowicz
Avon, CT

611. Janet Romanowicz (Roth IRA)
Avon, CT

612. Janet Romanowicz
(Traditional IRA)
Avon, CT

613. Elizabeth Cleland Ross (deceased)
Eugene, OR

614. Nancy A. Rothbaum
New York, NY

615. Betty Rowell
Liberty, TX

616. Sandra Diane Royal
Washington, DC

617. Louis Ruffini &
Barbara H. Ruffini as TTEES,
92 Louis & Barbara Ruffini REV
TR UA DTD 4/30/92
Rocklin, CA

618. Eugene M. Salute
Encino, CA

619. Emilia B. Salvi & Alberto Salvi
San Francisco, CA

620. Mariann Sandberg
Addison, TX

621. Muriel Adams Sanford
Orono, ME

622. Jack J. Sapia &
Donna J. Sapia, JT TEN
Miami, FL

623. Sue Ann Sapiega
Clearwater, FL

624. Lisa B. Sapperstein
Washington, DC

625. Tim Sass
Wayne, PA

626. Edward J. Saylor & Lorraine M.
Saylor (deceased)
Puyallup, WA

627. Nancy H. Scharber
Winchester, TN

628. Ethel Maxine Scher
Enumclaw, WA

629. Ronald R. Schlemer
Denton, MD

630. Gary Schlierf
San Diego, CA

631. Anna L. Schoenly & Richard D.
Schoenly
Potomac, MD

632. William A. Schultes &
Patricia D. Schultes
Kerrville, TX

633. Lois G. Schumann
Maquoketa, IA

634. Schwab 1000 Index Fund
San Francisco, CA

635. Schwab Capital Trust
San Francisco, CA

636. Schwab Core Equity Fund
San Francisco, CA

637. Schwab Dividend Equity Fund
San Francisco, CA

638. Schwab Financial Services Fund
San Francisco, CA

639. Schwab Fundamental US Large
Company Index Fund
San Francisco, CA

640. Schwab Institutional Select S&P
500 Fund
San Francisco, CA

641. Schwab Investments
San Francisco, CA

642. Schwab MarketTrack Balanced
Portfolio
San Francisco, CA

643. Schwab MarketTrack Growth
Portfolio
San Francisco, CA

644. Schwab Premier Equity Fund
San Francisco, CA

645. Schwab S&P 500 Index Fund
San Francisco, CA

646. Schwab S&P 500 Index Portfolio
San Francisco, CA

647. Schwab Total Stock Market Index
Fund
San Francisco, CA

648. Larry E. Scott & Laurelee M. Scott
Goodyear, AZ

649. Otis T. Scott
Fort Myers, FL

650. Jean L. Scovell
York, PA

651. Dorothy C. Seaton
Dublin, GA

652. Estate of Richard Seidenberg
Cherry Hill, NJ

653. Helen E. Seim
Walnut Creek, CA

654. Select Investors Exchange Fund,
L.P.
Houston, TX

655. Michael Serko, Jr. &
Agnes Serko, JT TEN
Endwell, NY

656. Mary Jane Seth
Baltimore, MD

657.  William Doyle Shaffer
      Fremont, OH

658.  Steven L. Shapiro as Custodian for
      Stacy Shapiro UGMA and Marci
      Shapiro UGMA
      Cherry Hill, NJ

659.  Ruth Sharkey
      Watchung, NJ

660.  Thomas J. Sharkey, Jr.
      Watchung, NJ

661.  Thomas and Ruth Sharkey Family
      Foundation
      Cranford, NJ

662.  Robert J. Shaw
      Montreat, NC

663.  Mary L. Shay Revocable Living
      Trust UAD 11/21/02
      Mary L. Shay, TTEE
      Bradenton, FL

664.  Elizabeth Shuck
      Bridgeport, CT

665.  Ramon E. Shultz
      Bullhead City, AZ

666.  Carolyn H. Shumway
      Lighthouse Point, FL

667.  Sideliner Corporation
      Vero Beach, FL

668.  Harry D. Sigler (deceased)
      Mission Hills, CA

669.  Harry D. Sigler (deceased) &
      Bonnie L. Sigler JT TEN
      Mission Hills, CA

670.  Rita B. Sigman
      Tequesta, FL

671.  Patricia C. Simi TR
      UA 23-Dec-00
      Simi Exemption Trust
      Roseburg, OR

672.  Philip J. Sinrich
      Deborah A. Sinrich JTWROS
      Stoughton, MA

673. Linda D. Sinz
Elk Grove, CA

674. Anthony A. Sirco
Albuquerque, NM

675. Robert K. Skelding &
Patricia A. Skelding, TTEE
Skelding Family Trust
Cadillac, MI

676. Nicholas A. Skinner
Stowe, VT

677. Leigh Skipper
Willow Grove, PA

678. RuthAnn Harper Skowronek
Weed, CA

679. Roger L. Slakey &
Mari-Ellen Slakey
Roger L.B. Slakey Rev. Trust
McLean, VA

680. Leroy E. Slubar,
Eugene E. Slubar &
John E. Slubar, Sr., JTWROS
Brackettville, TX

681. Elaine W. S. Smith
C. Bradford Smothers  JT WROS
Hot Springs, AR

682. Elwin R. Smith
Jacksonville, FL

683. Joe J. Smith (deceased) & Teresa
Smith JT TEN
Belle Fourche, SD

684. Leonard Smith
Mt. Vernon, IL

685. Soreu Soe
San Jose, CA

686. Samuel M. Sokoloff
Long Beach, NY

687. Christian Solms-Baruth (IRA)
Leonardtown, MD

688. Melissa Solms-Baruth (IRA)
Leonardtown, MD

689. Julie Parker Sorin
Memphis, TN

690. Luka Sosic
Irvine, CA

691. Raymond A. Sozio &
Annette M. Sozio
Ft. Lauderdale, FL

692. Billie H. Spencer (Trust & IRA)
Laguna Woods, CA

693. Robert E. Spencer
Raleigh, NC

694. Marie J. Spirito
Providence, RI

695. N. Lavonne Spray
Moses Lake, WA

696. Nathaniel David Springer
Stillwater, OK

697. Philip Stadtler, Jr.
Hilmar, CA

698. Philip Alan Steed, TTEE
Natalie E. Steed Trust
San Diego, CA

699. Douglas W. Steele
Chapel Hill, NC

700. Dorothy M. Stenstrom
Medford, OR

701. Robert C. Stephens
Springfield, VA

702. B.V. Stephenson 06 Intervivos
Trust, UA Dated 11/1/06, Redfern
C. English, TTEE
Moraga, CA

703. Marvin F. Stevenson &
Lucille P. Stevenson (deceased)
McDonough, GA

704. Genevieve E. Stewart
Wayne, NY

Requests for Exclusion Received in Connection with Notice of Pendency of Class Action

705. Stichting Pensioenfonds ABP
Amsterdam, Netherlands

706. Howard Stinson
Aztec, NM

707. Earl J. Stitley (deceased)
Hanover, PA

708. Trudy Jo Stitt
Yacolt, WA

709. Paul H. Stofer &
Carol A. Stofer
Climax, MI

710. Gloria C. Stone
Pompton Plains, NJ

711. Palmer L. Stone & Lu Ann R.
Stone (deceased) TIC
Fort Myers, FL

712. Stratim Capital, LLC
San Francisco, CA

713. Stratim Partners, LLC
San Francisco, CA

714. Frank G. Straub
Fishkill, NY

715. Scott A. Strauss
Charlotte, NC

716. Cora M. Streit TTEE
Cora M. Streit Trust
U/A DTD Dec. 16, 1992
DeSoto, TX

717. Norma C. Struthers
Orange, CA

718. Wanda H. Swanson
Evans, GA

719. Kenneth D. Swartz &
Fran A. Swartz
Upper Sandusky, OH

720. Roger H. Swartz
Palatine Bridge, NY

721. Charlene R. Swiney
Lancaster, CA

722. Janet Pomeroy Swingler
Dayton, WA

723. Swiss & Global Asset Management
(Luxembourg) S.A.
c/o DRRT
Miami, FL

724. Swiss & Global Asset Management
Ltd.
c/o DRRT
Miami, FL

725. Swisscanto Asset Management AG
c/o DRRT
Miami, FL

726. Edwin Szumachowski
York, PA

727. Suzanne Talbott
Marietta, CA

728. Andrew Edward Tarling
Erith, United Kingdom

729. Carter Cover Taylor
Tacoma, WA

730. Cherry Taylor
Eugene, OR

731. Joan M. Taylor, Trustee
UA 5/26/98
The Joan M. Taylor Trust
Spring Hill, FL

732. Larry G. Taylor
Branson, MO

733. Nancy K. Taylor
Cedar Key, FL

734. Nancy Tempesta
East Hanover, NJ

735. Winnie Thein
Monterey Park, CA

736. Jeanne E. Thompson
Fair Oaks, CA

737. Ames B. Tillar &
Sudie D. Brothers JT TEN
Emporia, VA

738. Doris Myrl Tillis
Laguna Woods, CA

739. Theodore E. Tingley
Lewisburg, TN

740. Theodore E. Tingley &
Ellen E. Tingley
Lewisburg, TN

741. Catherine V. Toole
Mandeville, LA

742. Margarida L. Torchiana
Beverly Farms, MA

743. TOTAL S.A.
Courbevoie, France

744. Jana Lee Trebels Trust,
Dated January 19, 1998, Linda Lee
Trebels Fahey, Successor Trustee
Glenview, IL

745. Susan E. Trippet
Bloomington, IN

746. Leonard G. Trotter
Rockaway Beach, OR

747. David Tull
New Port Richey, FL

748. Fern Key Ulmer
Lodge, SC

749. T. Edward Umphres &
Lillian G. Umphres
St. Louis, MO

750. Matsuko Uyeda &
Wallace Ida (deceased)
Kapaa, Kauai, HI

751. Anthony Vaccaro and
Jean Vaccaro JTWROS
Fairfax, CA

752. Helen Valkosky
Wintersville, OH

753. Christopher C. Van Collie TTEE
FBO Ruth A. Van Collie Trust
U/A/D 12-09-1996
Bradenton, FL

754. Mary S. VanderLinde (including
TOD Scott. H. VanderLinde,
TOD Martha J. Hart,
TOD Kristin K. McKay)
Holland, MI

755. W. C. Vandiver, Jr.
Savannah, GA

756. Emilio A. Vazquez &
Migdalia Vazquez &
Emilio A. Vasquez, Jr. JT TEN
Miami, FL

757. Anna Vilkaitis &
Agnes Scott Foundation, Inc.
Avon Park, FL

758. Frederick Conrad Vonvoigt &
Frances Vonvoigt Tr.
UA 23-OCT-98,
The Vonvoigt Family Trust
Temecula, CA

759. Mary N. Wade, GP
Johnson Investors, LP
Franklin, TN

760. Leonard & Mildred
Walker Family Trust
U/A DTD 11/01/2005
Petersburg, MI

761. Robert D. Walker
Fulton, MS

762. Dale E. Wallace
Wichita, KS

763. Richard B. Wallace TTEE
Scottsdale, AZ

764. Barbara L. Walsh
Narragansett, RI

765. Lawrence J. Warns
Watsonville, CA

766. Paul Watkins
Wellesley, MA

767. Larry L. Watson (IRA)
Hagerstown, MD

768. Patricia A. Watson
South Windsor, CT

769. Lorraine S. Way
Charlotte, NC

770. Elizabeth Weekley, TTEE
Independence, MO

771. Don Weining
Newark, DE

772. Cornelius F. Weinrich
Ventura, CA

773. Jack Weiss & Barbara Weiss
Yonkers, NY

774. Sylvia Weissman
Teaneck, NJ

775. Elliot Wender
Memphis, TN

776. Mark D. Wender; individually and
as custodian for Brian Wender and
Rebecca Wender
Memphis, TN

777. Penina Wender
Memphis, TN

778. Razelle Wender
Memphis, TN

779. Stanley L. Wender
Memphis, TN

780. Joseph P. White &
Joseph P. White Sharetrust
Fredericksburg, VA

781. Joyce T. White
Columbia, TN

782. Rosalie A. Whitehead
Peekskill, NY

783. Michael Whitney
Boynton Beach, FL

784. Mary Jane Whitty &
Roxane Egan
Schroon Lake, NY

785. Harry A. Wicht &
     Joyce A. Wicht
     Culpeper, VA

786. Carolyn R. Wiedemeier
     St. Louis, MO

787. Linda Wilburn &
     Richard Wilburn, JT
     Long Creek, OR

788. Evangeline A. Wilcox
     Johnstown, NY

789. Cleo J. Wiley
     Bend, OR

790. Timothy J. Willard
     Fallbrook, CA

791. The William J. McGinnis,
     Residuary Trust UA 2/23/08
     Wilmington, DE

792. R. Joseph Williams, Jr.
     (Roth IRA)
     High Ridge, MO

793. Williamson Family Trust,
     Robert P. and Madeline M.
     Williamson, Trustees
     Rancho Mirage, CA

794. Michael Williamson &
     Margaret Williamson
     Salado, TX

795. Steven P. Williamson
     Temecula, CA

796. Harriet Wilshusen, TTEE
     HHW Family Trust
     Carefree, AZ

797. Jane R. Wilson
     Carmel Valley, CA

798. Thomas J. Wilson &
     Beth A. Wilson JT TEN
     Wentzville, MO

799. Carolyn K. Winter Tr.
     UA 6/23/05
     Winter Family Trust
     Coarsegold, CA

800. Justin D. Wolf
     Charlotte, NC

Requests for Exclusion Received in Connection with Notice of Pendency of Class Action

801. Jane B. Wollaston
La Jolla, CA

802. Women of the Uniontown
Presbyterian Church
Faunsdale, AL

803. The Women of the Uniontown
Presbyterian Church, First
Presbyterian Church
Faunsdale, AL

804. Margaret C. Wood
Lilburn, GA

805. Donni K. Woods &
Phillip J. Woods
Wichita, KS

806. W. J. J. Woolley &
C. R. Woolley (deceased)
Kent, United Kingdom

807. Donald B. Workman
La Crescenta, CA

808. Hazel P. Wright (fka Hazel L.
Pugh) & Roy L. Pugh, JTWROS
Jacksonville, FL

809. Peter C. Wyatt
Newburyport, MA

810. David P. Yaffe
Los Angeles, CA

811. Wanda L. Young
West Milton, OH

812. Arthur L. Youngblood &
Elizabeth E. Youngblood
Mobile, AL

813. Owen R. Zachritz
Faulkton, SD

814. Nancy A. Zidle &
Gerald S. Zidle JTWROS
Hooksett, NH

815. Judith A. Ziegert
Mason, OH

816. Doris A. Zimmer TTEE
Lionel N. Zimmer TTEE
The Doris A. Zimmer Rev Trust
U/A DTD 7/7/92
Richmond, VA

817.   Roger H. Zion, TTEE
        Otto Knauss Trust
        FBO Marjorie Zion
        UAD 12/29/1976
        Evansville, IN

818.   James E. Zlibin & Susan C. Zlibin
        TTEE, Zlibin Living Trust
        Minden, NV


819.   Cornelia Zoon
        Federal Way, WA

820. Phillip Bayarena
Ridgecrest, CA

821. Donna J. Baynes
(Roth IRA)
Belmont, CA

822. Donna T. Brimhall
Ogden, UT

823. Patricia P. Brown
Thomasville, GA

824. Jane Burr
Southport, CT

825. Julian R. Denison
Oldwick, NJ

826. Joseph F. Ferguson &
Agnes M. Ferguson
Gibsonia, PA

827. Beverly Gaines
Dallas, TX

828. Harry R. Gould
Nutley, NJ

829. Virginia Higgins & Drexel
Scott
Warren, OH

830. Julia A. Hoyle (deceased)
Sanford, NC

831. John D. Pruett and Penny Coull
TTEEs of John & Lucille Pruett
Intervivos Trust
Norristown, PA

832. Rodney J. Ross,
Brenda M. Ross, &
The Ross Family Trust
Gilbert, AZ

833. Mildred E. Ruff
Cupertino, CA

834. William J. Skeats &
Claire T. Skeats
Commack, NY

835. Leland S. Swanson &
Luella M. Swanson
Puyallup, WA

836. Charles E. Van Over
Montrose, CO

837. Benny M. Wade
Reno, NV

838. Melissa Abich-Espinoza
San Gabriel, CA

839. Susan C. Bauer
Garland, TX

840. Beryl & Marilyn Dickson
TRS
Bandon, OR

841. Michael Evan Eldridge
Spring Lake, MI

842. James A. Gibbs
Carson City, Nevada

843. Jerry Hackett
Macomb, MI

844. Fay Helmon
Issaquah, WA

845. Clarice Hogan Jones
Charlotte, NC

846. James H. & Mary V.
Nieuwenhuis Trust, UA 23-
Jun-86
Mary V. Nieuwenhuis,
Trustee
San Diego, CA

847. Marjorie M. Kelley
Westwood, MA

848. Elizabeth A. King TTEE
FBO King Family Trust
UA 07 27 92
Fullerton, CA

849. Estate of Julius H. Linkkila
Brooklyn, CT

850. Liane Lion
London, England

851. Thomas Loffland
Fort Worth, TX

852. Joe E. Maxwell
Nashville, TN

853. Thelma McClain (deceased)
Riverside, CA

854. Mosko Irrevocable Trust
UA 3 22 91
Frank Thomas Mosko,
Trustee
Bayfield, CO

855. Geena J. Oh
Los Angeles, CA

856.   Orlando Sabatini
       Whiting, NJ

857.   Michael F. Sands
       Tustin, CA

858.   George N. Scheller
       Tucson, AZ

859.   Francis R. Slattery IRA
       Norristown, PA

860.   Francis R. Slattery &
       Philomena C. Slattery JT TEN
       Norristown, PA

861.   Philomena C. Slattery &
       Francis R. Slattery JT TEN
       Norristown, PA

862.   Karen Glover Wilmoth, TRS
       FBO Wilmoth JT Grantors
       Trust
       Dallas, TX

863.   Channa Weeratunge
       Kinwood, TX

864.   Rotondo Family Trust
       Redmond, WA

# Exhibit A

Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Master File No. 09 MDL 2058 (PKC)

IN RE BANK OF AMERICA CORP.
SECURITIES, DERIVATIVE, AND
EMPLOYEE RETIREMENT INCOME
SECURITY ACT (ERISA) LITIGATION

ECF CASE

THIS DOCUMENT RELATES TO:

Consolidated Securities Action

**[PROPOSED] ORDER PRELIMINARILY APPROVING**
**PROPOSED SETTLEMENT AND PROVIDING FOR NOTICE**

WHEREAS, a consolidated securities action is pending in this Court entitled *In re Bank of America Corp. Securities, Derivative and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09 MDL 2058 (PKC) (S.D.N.Y.) (the "Action");

WHEREAS, by Memorandum and Order dated February 6, 2012, this Court certified the Action to proceed as a class action on behalf of a class of investors consisting of:  (i) as to claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), all persons and entities who held Bank of America Corporation ("BoA") common stock as of October 10, 2008, and were entitled to vote on the merger between BoA and Merrill Lynch & Co., Inc. ("Merrill"), and were damaged thereby; and (ii) as to claims under Sections 10(b) and 20(a) of the Exchange Act, all persons and entities who purchased or otherwise acquired BoA common stock during the period from September 18, 2008 through January 21, 2009, inclusive, excluding shares of BoA common stock acquired by exchanging stock of Merrill for BoA stock through the merger between the two companies consummated on January 1, 2009, and were damaged thereby; and (iii) as to claims under Sections 10(b) and 20(a) of the Exchange Act, all persons and entities who purchased or otherwise acquired January 2011 call options of BoA from

September 18, 2008 through January 21, 2009, inclusive, and were damaged thereby; and (iv) as

to claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"),

all persons and entities who purchased BoA common stock issued under the Registration

Statement and Prospectus for the BoA common stock offering that occurred on or about October

7, 2008, and were damaged thereby (the "Class");[1]

WHEREAS, pursuant to this Court's Order dated February 29, 2012, the Notice of

Pendency of Class Action (the "Class Notice") was mailed to potential members of the Class to

notify them of, among other things: (i) the Action pending against the Defendants; (ii) the

Court's certification of the Action to proceed as a class action on behalf of the Court-certified

Class; and (iii) their right to request to be excluded from the Class, the effect of remaining in the

Class or requesting exclusion, and the requirements for requesting exclusion; and 864 requests

for exclusion were received pursuant to the Class Notice;

WHEREAS, Lead Plaintiffs, the State Teachers Retirement System of Ohio; the Ohio

Public Employees Retirement System; the Teacher Retirement System of Texas; Stichting

Pensioenfonds Zorg en Welzijn, represented by PGGM Vermogensbeheer B.V.; and Fjärde AP-

Fonden, individually and on behalf of the Court-certified Class, and defendants BoA, Merrill,

Kenneth D. Lewis, John A. Thain, Joe L. Price, Neil A. Cotty, Banc of America Securities LLC,

Merrill Lynch, Pierce, Fenner & Smith Incorporated, William Barnet III, Frank P. Bramble, Sr.,

John T. Collins, Gary L. Countryman, Tommy R. Franks, Charles K. Gifford, Monica C.

---

[1]  Excluded from the Class by definition are: Defendants, present or former executive officers of
BoA and Merrill, present or former members of Merrill's and BoA's Board of Directors and their
immediate family members (as defined in 17 C.F.R. § 229.404, Instructions).  Also excluded
from the Class are any Persons who previously submitted a request for exclusion as set forth on
Appendix 1 to the Stipulation and Agreement of Settlement dated November 30, 2012 who do
not opt-back into the Class in accordance with the terms set forth herein and in the Notice of (I)
Proposed Settlement and Plan of Allocation; (II) Settlement Fairness Hearing; and (III) Motion
for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Settlement
Notice").

Lozano, Walter E. Massey, Thomas J. May, Patricia E. Mitchell, Thomas M. Ryan, O. Temple Sloan, Jr., Meredith R. Spangler, Robert L. Tillman, and Jackie M. Ward (collectively, the "Defendants" and, together with Lead Plaintiffs, the "Parties") have entered into a Stipulation and Agreement of Settlement dated November 30, 2012 (the "Stipulation"), which is approved by additional named plaintiff Grant Mitchell (together with Lead Plaintiffs, the "Class Representatives") and which is subject to review by the Court under Rule 23 of the Federal Rules of Civil Procedure, and which, together with the appendix and exhibits thereto, sets forth the terms and conditions of the Parties' proposed settlement of the Action (the "Settlement");

WHEREAS, Lead Plaintiffs have made an application, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order preliminarily approving the Settlement in accordance with the Stipulation and approving notice of the Settlement to the Class as more fully described herein;

WHEREAS, the Court having read and considered (i) Lead Plaintiffs' motion for preliminary approval of the Settlement and the papers filed and arguments made in connection therewith; and (ii) the Stipulation, Appendix 1 to the Stipulation setting forth all Persons who previously submitted requests for exclusion in connection with the Class Notice, and the exhibits to the Stipulation, including the proposed (a) Settlement Notice; (b) Proof of Claim Form; (c) Summary Notice; and (d) Judgment, and finding that substantial and sufficient grounds exist for entering this Order; and

WHEREAS, unless otherwise defined herein, all capitalized words contained herein shall have the same meanings as they have in the Stipulation;

NOW THEREFORE, IT IS HEREBY ORDERED:

1.      **Preliminary Approval of the Settlement** – The Court hereby preliminarily approves the Settlement, as embodied in the Stipulation, as being fair, reasonable and adequate, and in the best interests of Lead Plaintiffs and the other Class Members, subject to further consideration at the Settlement Hearing to be conducted as described below.

2.      **Settlement Hearing** – The Court will hold a settlement hearing (the "Settlement Hearing") on _____, 2013 at __:__ _.m. at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Courtroom 12C, New York, NY 10007-1312, for the following purposes: (a) to determine whether the proposed Settlement, on the terms and conditions provided for in the Stipulation, is fair, reasonable and adequate, and should be approved by the Court; (b) to determine whether a Judgment substantially in the form attached as Exhibit B to the Stipulation should be entered dismissing the Action with prejudice against Defendants; (c) to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable and should be approved; (d) to determine whether the motion by Co-Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement.  Notice of the Settlement and the Settlement Hearing shall be given to Class Members as set forth in paragraph 4 of this Order.

3.      The Court may adjourn the Settlement Hearing and approve the proposed Settlement with such modifications as the Parties may agree to, if appropriate, without further notice to the Class.

4.      **Retention of Claims Administrator and Manner of Notice** – The law firms of Bernstein Litowitz Berger & Grossmann LLP, Kaplan Fox & Kilsheimer LLP and Kessler Topaz

Meltzer & Check, LLP ("Co-Lead Counsel") are hereby authorized to retain The Garden City Group, Inc. (the "Claims Administrator" or "GCG"), which was previously approved by the Court to be the Notice Administrator, to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Claims as more fully set forth below.  Notice of the Settlement and the Settlement Hearing shall be given by Co-Lead Counsel as follows:

(a)      not later than twenty-one (21) calendar days after entry of this Order (the "Notice Date"), the Claims Administrator shall cause a copy of the Settlement Notice and the Proof of Claim Form, substantially in the forms attached hereto as Exhibits 1 and 2, respectively (the "Notice Packet"), to be mailed by first-class mail to those members of the Class at the address of each such Person who may be identified through reasonable effort;

(b)      contemporaneously with the mailing of the Notice Packet, the Claims Administrator shall cause copies of the Settlement Notice and the Proof of Claim Form to be posted on the website designated for this Action, www.boasecuritieslitigation.com, from which Class Members may download copies of the Settlement Notice and Proof of Claim Form;

(c)      not later than ten (10) calendar days after the Notice Date, the Claims Administrator shall cause the Summary Notice, substantially in the form attached hereto as Exhibit 3, to be published once in the national editions of *The Wall Street Journal* and *The New York Times* and once in the *Financial Times*, and to be transmitted once over the *PR Newswire*; and

(d)      not later than seven (7) calendar days prior to the Settlement Hearing, Co-Lead Counsel shall serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of such mailing and publication.

5.      **Approval of Form and Content of Notice** – The Court (a) approves, as to form and content, the  Settlement Notice, the Proof of Claim Form, and the Summary Notice, attached hereto as Exhibits 1, 2, and 3, respectively, and (b) finds that the mailing and distribution of the Settlement Notice and Proof of Claim Form and the publication of the Summary Notice in the manner and form set forth in paragraph 4 of this Order (i) is the best notice practicable under the circumstances, (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise Class Members of the proposed Settlement, of the effect of the proposed Settlement (including the Releases contained therein) and of their right to object to any aspect of the proposed Settlement, opt-back into the Class if they previously submitted a request for exclusion in connection with the Class Notice, and appear at the Settlement Hearing; (iii) constitutes due, adequate and sufficient notice to all Persons entitled to receive notice of the proposed Settlement; and (iv) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), 15 U.S.C. § 77z-1(a)(7), and all other applicable law and rules.  The date and time of the Settlement Hearing shall be included in the Settlement Notice and Summary Notice before they are mailed and published, respectively.

6.      **Nominee Procedures** – In the previously disseminated Class Notice, brokers and other nominees ("Nominees") were advised that, if, for the beneficial interest of any person or entity other than themselves, they (1) held BoA common stock as of October 10, 2008, for a person or entity that was entitled to vote on the merger between BoA and Merrill, (2) purchased or otherwise acquired the common stock of BoA during the period from September 18, 2008 through January 21, 2009, inclusive, excluding shares of BoA common stock acquired by exchanging Merrill common stock for BoA common stock through the merger between the two

companies that was consummated on January 1, 2009; (3) purchased or otherwise acquired January 2011 call options on BoA common stock from September 18, 2008 through January 21, 2009, inclusive; or (4) purchased BoA common stock issued under the Registration Statement and Prospectus for the BoA common stock offering that occurred on or about October 7, 2008, they must either: (a) within seven (7) calendar days of receipt of the Class Notice, request from GCG sufficient copies of the Class Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of the copies of the Class Notice forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of the Class Notice provide a list of the names and addresses of all such beneficial owners to *In re Bank of America Corp. Securities Litigation*, c/o The Garden City Group, Inc., P.O. Box 9876, Dublin, Ohio 43017-5776.

(a)     For Nominees who chose the first option (*i.e.*, elected to mail the Class Notice directly to beneficial owners), GCG shall forward the same number of Notice Packets to such Nominees, and the Nominees shall, within seven (7) calendar days of receipt of the Notice Packets, mail the Notice Packets to their beneficial owners;

(b)     For Nominees who chose the second option (*i.e.*, provided a list of names and addresses of beneficial holders to GCG), GCG shall promptly mail a copy of the Notice Packet to each of the beneficial owners whose names and addresses the Nominee previously supplied. Unless the Nominee purchased or acquired any of the relevant securities for beneficial owners whose names and addresses were not previously provided to GCG, such Nominees need not take any further action;

(c)     For Nominees that purchased or acquired any of the relevant securities for beneficial owners whose names and addresses were not previously provided to GCG, such

Nominees shall within seven (7) calendar days of receipt of the Notice, provide a list of the names and addresses of all such beneficial owners to GCG, or shall request from GCG sufficient copies of the Notice Packet to forward to all such beneficial owners which the Nominee shall, within seven (7) calendar days of receipt of the Notice Packets from GCG, mail to the beneficial owners; and

(d)     Upon full compliance with this Order, Nominees who mail the Notice Packets to beneficial owners may seek reimbursement of their reasonable expenses actually incurred in complying with this Order by providing GCG with proper documentation supporting the expenses for which reimbursement is sought.  Such properly documented expenses incurred by Nominees in compliance with the terms of this Order shall be paid from the Settlement Fund, with any disputes as to the reasonableness or documentation of expenses incurred subject to review by the Court.

7.     **Participation in the Settlement** – Class Members who wish to participate in the Settlement and to be eligible to receive a distribution from the Net Settlement Fund must complete and submit a Proof of Claim Form in accordance with the instructions contained therein.  Unless the Court orders otherwise, all Proof of Claim Forms must be postmarked no later than one hundred and twenty (120) calendar days after the Notice Date.  Notwithstanding the foregoing, Co-Lead Counsel may, at their discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Class.  By submitting a Claim, a Person shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her or its Claim and the subject matter of the Settlement.

8.     Each Proof of Claim Form submitted must satisfy the following conditions: (i) it must be properly completed, signed and submitted in a timely manner in accordance with the

provisions of the preceding paragraph; (ii) it must be accompanied by adequate supporting documentation for the transactions reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such other documentation as is deemed adequate by Co-Lead Counsel or the Claims Administrator; (iii) if the person executing the Proof of Claim Form is acting in a representative capacity, a certification of his, her or its current authority to act on behalf of the Class Member must be included in the Proof of Claim Form to the satisfaction of Co-Lead Counsel or the Claims Administrator; and (iv) the Proof of Claim Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

9.      Any Class Member that does not timely and validly submit a Proof of Claim Form or whose Claim is not otherwise approved by the Court: (a) shall be deemed to have waived his, her or its right to share in the Net Settlement Fund; (b) shall forever be barred from participating in any distributions therefrom; (c) shall be bound by the provisions of the Stipulation and the Settlement and all proceedings, determinations, orders and judgments in the Action relating thereto, including, without limitation, the Judgment or Alternative Judgment, if applicable, and the Releases provided for therein, whether favorable or unfavorable to the Class; and (d) will be barred from commencing, maintaining or prosecuting any of the Released Lead Plaintiffs' Claims against each and all of the Defendants' Releasees, as more fully described in the Stipulation and Settlement Notice.  Notwithstanding the foregoing, late Proof of Claim Forms may be accepted for processing as set forth in paragraph 7 above.

10.     **Opting-Back into the Class** – Any Person that previously submitted a request for exclusion as set forth in Appendix 1 to the Stipulation, may elect to opt-back into the Class.  By

opting back into the Class, such Person, subject to the requirement applicable to all Persons that he, she or it establish membership in the Class, shall be eligible to receive a payment from the Net Settlement Fund.  Any Person set forth on Appendix 1 to the Stipulation who wishes to opt-back into the Class must either, individually or through counsel, request to opt-back into the Class in writing within the time and in the manner set forth in the Settlement Notice, which provides that any such request to opt-back into the Class must be mailed or delivered such that it is received no later than thirty-one (31) calendar days prior to the Settlement Hearing, to GCG at the address set forth in the Settlement Notice.  Each request to opt-back into the Class must (a) state the name, address and telephone number of the person or entity requesting to opt-back into the Class; (b) state that such person or entity "requests to opt-back into the Class in the *In re Bank of America Corp. Securities Litigation*, Master File No. 09 MDL 2058 (PKC)"; and (c) be signed by the person or entity requesting to opt-back into the Class or an authorized representative.  A Person may not opt-back into the Class for the purpose of objecting to any aspect of the Settlement, the Plan of Allocation, or Co-Lead Counsel's request for attorneys' fees and reimbursement of Litigation Expenses.

11.     Any Person that previously submitted a request for exclusion from the Class as set forth on Appendix 1 to the Stipulation and that does not opt-back into the Class in accordance with the requirements set forth in this Order and the Settlement Notice, shall remain excluded from the Class; such Person shall not be a Class Member, shall not be bound by the terms of the Settlement or the Stipulation, or of any other orders or judgments in the Action, and shall have no right to receive any payment out of the Net Settlement Fund.

12.     **No Second Opportunity to Request Exclusion From the Class** – In light of the extensive notice program undertaken in connection with class certification and the ample

opportunity provided to Class Members to request exclusion from the Class at that time, the Court is exercising its discretion in accordance with Second Circuit precedent (*see, e.g.*, *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) and *Wal-Mart Stores, Inc.* v. *Visa U.S.A., Inc.*, 396 F.3d 96, 114-15 (2d Cir. 2005)) to preclude Class Members from having a second opportunity to exclude themselves from the Class in connection with the Settlement proceedings.

      13.    **<u>Appearance and Objections at Settlement Hearing</u>** – Any Class Member who did not previously submit a request for exclusion from the Class as set forth on Appendix 1 to the Stipulation may enter an appearance in the Action, at his, her or its own expense, individually or through counsel of his, her or its own choice, by filing with the Clerk of Court and delivering a notice of appearance to Co-Lead Counsel and Representative Defendants' Counsel, at the addresses set forth in paragraph 14 below, such that it is received no later than thirty-one (31) calendar days prior to the Settlement Hearing, or as the Court may otherwise direct.  Any Class Member who does not enter an appearance will be represented by Co-Lead Counsel.

      14.    Any Class Member who did not previously submit a request for exclusion from the Class as set forth on Appendix 1 to the Stipulation may file a written objection to any aspect of the proposed Settlement, the proposed Plan of Allocation, and/or Co-Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and appear and show cause, if he, she or it has any cause, why the proposed Settlement, the proposed Plan of Allocation and/or Co-Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses should not be approved; *provided, however*, that no Class Member shall be heard or entitled to contest the approval of the terms and conditions of any aspect of the proposed Settlement, the proposed Plan of Allocation, and/or the motion for attorneys' fees and

reimbursement of Litigation Expenses unless that Person has filed a written objection with the

Court and served copies of such objection on Co-Lead Counsel and Representative Defendants'

Counsel at the addresses set forth below such that they are received no later than thirty-one (31)

calendar days prior to the Settlement Hearing.

|  |  |
|---|---|
| **Co-Lead Counsel for the Class** | **Representative Defendants' Counsel** |
| **Bernstein Litowitz Berger & Grossmann LLP** | Paul, Weiss, Rifkind, Wharton & Garrison LLP |
| Max W. Berger, Esq. | Brad Karp, Esq. |
| Steven B. Singer, Esq. | Daniel J. Kramer, Esq. |
| 1285 Avenue of the Americas | Audra J. Soloway, Esq. |
| New York, NY  10022 | 1285 Avenue of the Americas |
|  | New York, NY 10019-6064 |
| **Kaplan Fox & Kilsheimer LLP** | |
| Robert N. Kaplan, Esq. | |
| Frederic S. Fox, Esq. | |
| 850 Third Avenue | |
| 14th Floor | |
| New York, NY 10022 | |
| **Kessler Topaz Meltzer & Check, LLP** | |
| David Kessler, Esq. | |
| Gregory M. Castaldo, Esq. | |
| 280 King of Prussia Road | |
| Radnor, PA 19087 | |

15.     Any objections, filings and other submissions by the objecting Class Member

(a) must state the name, address and telephone number of the person or entity objecting and must

be signed by the objector; (b) must contain a statement of the Class Member's objection or

objections, and the specific reasons for each objection, including any legal and evidentiary

support the Class Member wishes to bring to the Court's attention; and (c) must include

documents sufficient to prove the objector's membership in the Class such as the number of

shares of BoA common stock and the number of January 2011 call options on BoA common

stock that the objecting Class Member purchased, otherwise acquired, held and/or sold during the relevant periods as well as the dates and prices of each such purchase, acquisition and/or sale, or the objector's holdings in BoA common stock as of October 10, 2008.

16. Any Class Member who does not make his, her or its objection in the manner provided herein shall be deemed to have waived his, her or its right to object to any aspect of the proposed Settlement, the proposed Plan of Allocation, and Co-Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses and shall forever be barred and foreclosed from objecting to the fairness, reasonableness or adequacy of the Settlement, the Plan of Allocation or the requested attorneys' fees and Litigation Expenses, or from otherwise being heard concerning the Settlement, the Plan of Allocation or the requested attorneys' fees and Litigation Expenses in this or any other proceeding.

17. **Stay** – Until otherwise ordered by the Court, the Court shall continue to stay all proceedings in the Action other than proceedings necessary to carry out or enforce the terms and conditions of the Stipulation.  Pending final determination of whether the Settlement should be approved, the Court enjoins Lead Plaintiffs and all other Class Members from commencing or prosecuting any and all of the Released Lead Plaintiffs' Claims against each and all of the Defendants' Releasees.

18. **Settlement Administration Fees and Expenses** – All reasonable costs incurred in notifying Class Members of the Settlement as well as administering the Settlement shall be paid as set forth in the Stipulation.

19. **Settlement Fund** – The contents of the Settlement Fund held by one or more of the following institutions: The Huntington National Bank, Fifth Third Bank and KeyBank National Association (which the Court approves as the Escrow Agent) as determined by Lead

Plaintiffs, shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as they shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

20. **Taxes** – Co-Lead Counsel are authorized and directed to prepare any tax returns and any other tax reporting form for or in respect of the Settlement Fund, to pay from the Settlement Fund any Taxes owed with respect to the Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof without further order of the Court in a manner consistent with the provisions of the Stipulation.

21. **Termination** – If the Stipulation is terminated, the Settlement is not approved, or the Effective Date of the Settlement does not occur, this Order shall become null and void and be without prejudice to the rights of Lead Plaintiffs, the other Class Members and Defendants, and the Parties shall be deemed to have reverted to their respective status in this Action immediately prior to September 20, 2012, as provided in the Stipulation. Within fourteen (14) business days after joint written notification of termination is sent by counsel for BoA and Co-Lead Counsel to the Escrow Agent pursuant to the terms of the Escrow Agreement, the Settlement Fund (including accrued interest thereon and any funds received by Co-Lead Counsel consistent with ¶ 19 of the Stipulation), less any expenses and any costs which have either been disbursed or incurred and chargeable to Notice and Administration Costs and less any Taxes paid or due or owing shall be refunded by the Escrow Agent to BoA. In the event that the funds received by Co-Lead Counsel consistent with ¶ 19 of the Stipulation have not been refunded to the Settlement Fund within the fourteen (14) business days specified in this paragraph, those funds shall be refunded by the Escrow Agent to BoA immediately upon their deposit into the Escrow Account consistent with ¶ 19 of the Stipulation.

22.   **Use of this Order** – Neither this Order, the Term Sheet, the Stipulation (whether or not consummated), nor its negotiation, nor any proceedings taken pursuant to it (i) shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Lead Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees; (ii) shall be offered against any of the Lead Plaintiffs' Releasees, as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Lead Plaintiffs' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; provided, however, that if the Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement; (iii) shall be construed against any of Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and (iv) shall be construed against Lead Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Second Amended Complaint would not have exceeded the Settlement Amount.

23.   **Supporting Papers** – Co-Lead Counsel shall file and serve papers in support of the proposed Settlement, the Plan of Allocation, and Co-Lead Counsel's motion for an award of

attorneys' fees and reimbursement of Litigation Expenses no later than forty-five (45) calendar days prior to the Settlement Hearing; and reply papers, if any, shall be filed and served no later than seven (7) calendar days prior to the Settlement Hearing.

24.     The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.


SO ORDERED this _____ day of _____, 2012.


_____
                          The Honorable P. Kevin Castel
                          United States District Judge

# 686666

# Exhibit A-1

**Exhibit A-1**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BANK OF AMERICA CORP. SECURITIES, DERIVATIVE, AND EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION | Master File No. 09 MDL 2058 (PKC)  ECF CASE |
| THIS DOCUMENT RELATES TO:  Consolidated Securities Action | |

**NOTICE OF (I) PROPOSED SETTLEMENT AND PLAN OF ALLOCATION;**
**(II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF**
**ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TO:  ALL PERSONS AND ENTITIES WHO ARE MEMBERS OF THE CERTIFIED CLASS IN THIS**
**ACTION.  (See definition of the Class set forth in paragraph 1 below).**

*A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

**NOTICE OF SETTLEMENT:**  Please be advised that the Court-appointed Lead Plaintiffs, the State Teachers Retirement System of Ohio; the Ohio Public Employees Retirement System; the Teacher Retirement System of Texas; Stichting Pensioenfonds Zorg en Welzijn, represented by PGGM Vermogensbeheer B.V.; and Fjärde AP-Fonden (collectively, "Lead Plaintiffs"), on behalf of themselves and the Court-certified Class (as defined below), have reached a proposed settlement of the above-captioned securities class action lawsuit ("Action") for a total of $2,425,000,000.00 in cash and certain corporate governance enhancements to be implemented or continued by Bank of America Corporation ("BoA") that, if approved, will resolve all claims in the Action.[1]

**PLEASE READ THIS NOTICE CAREFULLY.  This Notice explains important rights you may have, including the possible receipt of cash from the Settlement.  If you are a Class Member, your legal rights will be affected whether or not you act.**

**If you have any questions about this Notice, the proposed Settlement, or your eligibility to participate in the Settlement, please DO NOT contact Bank of America Corporation.  All questions should be directed to Co-Lead Counsel or the Claims Administrator (*see* ¶124 below).**

---

[1]  All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated November 30, 2012 (the "Stipulation"), which is available on the website for the Action at www.boasecuritieslitigation.com.

1.      **Description of the Action and Class:**  This Notice relates to a proposed Settlement of claims in a pending securities class action lawsuit brought by investors alleging, among other things, that Defendants[2] violated the federal securities laws by failing to disclose or update prior to the December 5, 2008 shareholder vote approving the issuance of additional shares of BoA stock  in connection with BoA's acquisition of Merrill (the "Merger"), facts about (i) Merrill's  billions of dollars of losses during the fourth quarter of 2008 (including, but not limited to Merrill's goodwill impairment); (ii) BoA's agreement to allow Merrill to pay up to $5.8 billion in bonuses to its employees before the Merger closed, notwithstanding those substantial losses; (iii) the circumstances surrounding the negotiation of the Merger (including the inadequacy of due diligence and pressure from federal regulators); (iv) the purported benefits of the Merger; and (v) BoA's own deteriorating financial condition.   The claims being settled here also alleged that Defendants made materially false and misleading statements about these topics.   The proposed Settlement, if approved by the United States District Court for the Southern District of New York (the "Court"), will settle claims of the Class of persons and entities that was certified by the Court pursuant to a Memorandum and Order issued on February 6, 2012:

> **(i) As to claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), all persons and entities who held BoA common stock as of October 10, 2008, and were entitled to vote on the merger between BoA and Merrill, and were damaged thereby; and (ii) as to claims under Sections 10(b) and 20(a) of the Exchange Act, all persons and entities who purchased or otherwise acquired BoA common stock during the period from September 18, 2008 through January 21, 2009, inclusive (the "Class Period"), excluding shares of BoA common stock acquired by exchanging stock of Merrill for BoA stock through the merger between the two companies consummated on January 1, 2009, and were damaged thereby; and (iii) as to claims under Sections 10(b) and 20(a) of the Exchange Act, all persons and entities who purchased or otherwise acquired January 2011 call options of BoA from September 18, 2008 through January 21, 2009, inclusive, and were damaged thereby; and (iv) as to claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), all persons and entities who purchased BoA common stock issued under the Registration Statement and Prospectus for the BoA common stock offering that occurred on or about October 7, 2008, and were damaged thereby (the "Class").**

Excluded from the Class by definition are: Defendants, present or former executive officers of BoA and Merrill, present or former members of Merrill's and BoA's Board of Directors and their immediate family members (as defined in 17 C.F.R. § 229.404, Instructions, *i.e.*, children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law).   Also excluded from the Class are any Persons who submitted a request for exclusion in connection with the previously mailed Notice of Pendency of Class Action (the "Class Notice") as set forth on Appendix 1 to the Stipulation who do not opt-back into the Class (*see* ¶109 below).

2.      **Statement of Class's Recovery:**  Subject to Court approval, and as described more fully below, Lead Plaintiffs, on behalf of themselves and the Class, have agreed to settle all claims based on the purchase or

---

[2]  Defendants are BoA; Merrill Lynch & Co., Inc. ("Merrill"), Banc of America Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated and the individual defendants Kenneth D. Lewis, John A. Thain, Joe L. Price, Neil A. Cotty, William Barnet III, Frank P. Bramble, Sr., John T. Collins, Gary L. Countryman, Tommy R. Franks, Charles K. Gifford, Monica C. Lozano, Walter E. Massey, Thomas J. May, Patricia E. Mitchell, Thomas M. Ryan, O. Temple Sloan, Jr., Meredith R. Spangler, Robert L. Tillman, and Jackie M. Ward (collectively, the "Individual Defendants").

other acquisition of BoA common stock[3] or BoA January 2011 call options[4] during the Class Period that were or could have been asserted against Defendants in the Action or any Section 14(a) or 20(a) claims arising out of the vote by record holders of BoA common stock as of October 10, 2008, in connection with the Merger, in exchange for a settlement payment of $2,425,000,000 in cash (the "Settlement Amount") to be deposited into an interest-bearing escrow account.  Also, as part of the Settlement, BoA has agreed to implement or continue corporate governance changes that Lead Plaintiffs believe are significant, including amendments to its Corporate Governance Guidelines with respect to majority voting for directors and minimum stock ownership by executive officers and directors, and amendments to its charter for the Corporate Development Committee in order to provide for additional oversight of senior management (the "Corporate Governance Enhancements") (*see* ¶¶97-98 below).  The Net Settlement Fund (*i.e.*, the Settlement Amount plus any and all interest earned thereon (the "Settlement Fund") less (i) any Taxes, (ii) any Notice and Administration Costs, (iii) any Litigation Expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court) will be distributed in accordance with a plan of allocation that is approved by the Court, which will determine how the Net Settlement Fund shall be allocated among members of the Class.  The proposed plan of allocation (the "Plan of Allocation") is set forth on pages __ - __ below.

3.    **Estimate of Average Amount of Recovery Per Share:**  Lead Plaintiffs' damages expert estimates that approximately 2.076 billion shares of BoA common stock were purchased during the Class Period and held through a corrective disclosure and therefore were damaged pursuant to Section 10(b) of the Exchange Act.  In addition, Lead Plaintiffs' damages expert estimates that approximately 3.795 billion shares of BoA common stock were held by shareholders of record as of October 10, 2008 (making them eligible to vote on the Merger) and were held until at least January 12, 2009 (the date of the first alleged corrective disclosure) and therefore were damaged pursuant to Section 14(a) of the Exchange Act.  Under the federal securities laws, however, an investor is not entitled to multiple recoveries and thus, because there is overlap between the shares that were damaged pursuant to Sections 10(b) and 14(a), Lead Plaintiffs' damages expert has eliminated the overlap in his calculations of the estimated recovery per share.[5]  Lead Plaintiffs' damages expert estimates that, if valid claims for all damaged shares are submitted, the average recovery per damaged share of BoA common stock will be approximately $0.43 per share before deduction of attorneys' fees, costs and expenses awarded by the Court and the costs of providing notice and administering the Settlement.  **Class Members should note, however, that the foregoing average recovery per damaged share of BoA common stock is only an estimate**.  A Class Member's actual recovery will depend on several things, including: (1) the number of claims filed; (2) when Class Members purchased, acquired and/or held their BoA common stock during the Class Period; and (3) whether Class Members sold their shares of BoA common stock and, if so, when.  Distributions to Class Members will be made based on the Plan of Allocation set forth herein (*see* pages __-__ below) or such other plan of allocation as may be ordered by the Court.

4.    **Statement of Average Amount of Damages Per Share:**  The Parties do not agree on the average amount of damages per share that would be recoverable if Lead Plaintiffs were to prevail in the Action.

---

[3]  At all relevant times, shares of BoA common stock were actively traded on the New York Stock Exchange under the symbol "BAC."

[4]  "BoA January 2011 Call Options" means January 22, 2011 call options referencing BoA common stock with the following strike prices:  $2.50, $5.00, $7.50, $10.00, $12.50, $15.00, $17.50, $20.00, $22.50, $25.00, $30.00, $35.00, $40.00, $45.00, $50.00, $55.00 and $60.00.

[5]  The overlap applies only to those shares of BoA common stock that were purchased during the Class Period, held as of October 10, 2008, and were still held as of the close of trading on January 21, 2009.

Among other things, Defendants deny that any proxy solicitations contained materially false or misleading statements or omitted material information or that they had any duty to update these solicitation materials during the pendency of the 2008 fourth quarter. Defendants also assert that they were prepared to establish that the price of BoA common stock declined in value for reasons not related to the disclosure of any allegedly false or misleading statements. The Parties also disagree on the appropriate methodology for determining damages, if liability were established, particularly under Section 14(a), as Defendants have argued that Class Members seeking recovery under Section 14(a), who did not purchase or otherwise exchange any shares of their BoA common stock in connection with the Merger, failed to adduce evidence of a direct, compensable injury under Section 14(a). In sum, Defendants do not agree with the assertion that they engaged in any actionable misconduct under the federal securities laws or that any damages were suffered by any members of the Class as a result of their conduct.

5.     **Statement of Attorneys' Fees and Expenses Sought:**  Court-appointed Co-Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP, Kaplan Fox & Kilsheimer LLP and Kessler Topaz Meltzer & Check, LLP, which have been prosecuting the Action on a wholly contingent basis since its inception in 2009, have not received any payment of attorneys' fees for their representation of the Class and have advanced millions of dollars in expenses necessarily incurred in order to prosecute the Action. As set forth in greater detail below (*see* ¶¶14-47 below), Co-Lead Counsel have taken this case from inception to a trial that was scheduled to begin only a few weeks after the Settlement was reached. Among other things, Co-Lead Counsel were responsible for: (i) conducting an extensive investigation into the Class's claims; (ii) drafting two detailed amended complaints; (iii) successfully moving for a partial modification of the PSLRA discovery stay in order to obtain documents from Defendants; (iv) successfully opposing two rounds of multiple dismissal motions; (v) successfully opposing Defendants' motions seeking interlocutory appeal of multiple issues decided by the Court in connection with Defendants' first round of motions to dismiss; (vi) successfully briefing Lead Plaintiffs' motion for class certification and opposing Defendants' petition for leave to appeal the Court's order granting class certification; (vii) engaging in an extensive discovery program, including participating in approximately 60 depositions and reviewing more than 4 million pages of documents; (viii) briefing multiple motions for summary judgment, including Lead Plaintiffs' own motion for partial summary judgment; (ix) preparing for trial, including exchanging with Defendants *Daubert* motions, motions in *limine*, jury verdict forms, jury instructions, voir dire and pre-trial order preparation;[6] and (x) engaging in multiple in-person and telephonic meetings regarding a possible settlement of the Action before reaching an agreement in principle to settle just weeks before the trial of this Action was scheduled to begin on October 22, 2012.

At the outset of the Action, Co-Lead Counsel and Lead Plaintiffs entered into retainer agreements providing for attorneys' fees to be set by the Court and based upon the amount recovered and stage of the proceedings. Pursuant to those agreements, Co-Lead Counsel will ask the Court to award attorneys' fees in the amount of 6.56% of the Settlement Fund. Co-Lead Counsel also will apply for the reimbursement of Litigation Expenses paid or incurred in connection with the prosecution and resolution of the Action, in an amount not to exceed $17.5 million, which may include the reasonable costs and expenses of Class Representatives (as defined in ¶9 below) directly related to their representation of the Class. If the Court approves Co-Lead Counsel's fee and expense application, the average cost per affected share of BoA common stock will be approximately $0.03 per share.

---

[6]  A motion in *limine* is a motion made prior to the commencement of a trial requesting an order or ruling from the Court limiting or preventing certain evidence or information from being presented at trial. A *Daubert* motion is a specific type of motion in *limine* used to preclude or exclude the testimony of an expert witness.

6.      **Identification of Attorneys' Representatives:**   Lead Plaintiffs and the Class are being represented by: Steven B. Singer, Esq., Bernstein Litowitz Berger & Grossmann LLP, 1285 Avenue of the Americas, New York, New York 10019, (800) 380-8496, blbg@blbglaw.com; Robert N. Kaplan, Esq. and Frederic S. Fox, Esq., Kaplan Fox & Kilsheimer LLP, 850 Third Avenue, 14th Floor, New York, NY 10022, (800) 290-1952, mail@kaplanfox.com; and David Kessler, Esq., Kessler Topaz Meltzer & Check, LLP, 280 King of Prussia Road, Radnor, PA 19087, (610) 667-7706, info@ktmc.com.

7.      **Reasons for the Settlement:**   Lead Plaintiffs' principal reason for entering into the Settlement is the substantial cash benefit for the Class combined with the significant Corporate Governance Enhancements to be implemented or continued by BoA as a condition of the Settlement, without the risk or the delays inherent in further litigation.  Moreover, the substantial cash benefit provided under the Settlement must be considered against the significant risk that a smaller recovery – or, indeed, no recovery at all – might be achieved after a trial of the Action and the likely appeals that would follow a trial, a process that could last many months, or even years, into the future.  Defendants, who deny all allegations of wrongdoing or liability whatsoever, are entering into the Settlement solely to eliminate the uncertainty, burden and expense of further protracted litigation.

| **YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT:** | |
| --- | --- |
| **SUBMIT A CLAIM FORM BY _____, 2013** | This is the only way to be eligible to receive a payment from the Settlement.  If you are a Class Member, you will be bound by the Settlement as approved by the Court and you will give up any Released Lead Plaintiffs' Claims (as defined in ¶100 below) that you have against Defendants and the other Defendants' Releasees (defined in ¶101 below), so it is in your interest to submit a Claim Form. |
| **OPT-BACK INTO THE CLASS BY SUBMITTING A WRITTEN REQUEST TO WITHDRAW YOUR PREVIOUSLY SUBMITTED REQUEST FOR EXCLUSION SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2013.** | If you previously submitted a request for exclusion from the Class in connection with the Class Notice and now want to be part of the Class which would make you eligible to receive a payment from the Settlement Fund if you submit a valid Claim Form by the claim filing deadline, you must follow the steps for "Opting-Back Into the Class" as set forth in ¶109 below.  If you previously submitted a request for exclusion from the Class in connection with the Class Notice and wish to remain excluded from the Class, no further action is necessary. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2013.** | If you do not like the proposed Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses, you may write to the Court and explain why you do not like them.  You cannot object to the Settlement, the Plan of Allocation or the fee and expense request unless you are a Class Member and you did not previously submit a request for exclusion in connection with the Class Notice. |

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **GO TO THE HEARING ON _____, 2013 AT _:__ _.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2013.** | Filing a written objection and notice of intention to appear by _____, 2013 allows you to speak in Court at the discretion of the Court about the fairness of the proposed Settlement, the Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses.  If you submit a written objection, you may (but do not have to) attend the hearing and, at the discretion of the Court, speak to the Court about your objection. |
| **DO NOTHING.** | If you are a member of the Class and you do not submit a Claim Form by _____, 2013, you will not be eligible to receive any payment from the Settlement Fund.  You will, however, remain a member of the Class, which means that you give up your right to sue about the claims that are resolved by the Settlement and you will be bound by any judgments or orders entered by the Court in the Action. |

## WHAT THIS NOTICE CONTAINS

Why Did I Get This Notice?    Page __

What Is This Case About?    Page __

How Do I Know If I Am Affected By The Settlement?    Page __

What Are Lead Plaintiffs' Reasons For The Settlement?    Page __

What Might Happen If There Were No Settlement?    Page __

How Much Will My Payment Be?    Page __

What Corporate Governance Enhancement Measures Will BoA Implement or Continue As A Result Of The Settlement?    Page __

How Are Class Members Affected By The Action And The Settlement?    Page __

What Payment Are The Attorneys For The Class Seeking?  How Will The Lawyers Be Paid?    Page __

How Do I Participate In The Settlement?  What Do I Need To Do?    Page __

Opting-Back Into The Class - What If I Previously Requested Exclusion from the Class And Now Want To Be Eligible To Receive A Payment From The Settlement Fund?  How Do I Opt-Back Into The Class?    Page _

When And Where Will The Court Decide Whether To Approve The Settlement?  Do I Have To Come To The Hearing?  May I Speak At The Hearing If I Don't Like The Settlement?    Page __

What If I Bought Shares On Someone Else's Behalf?    Page __

Can I See The Court File?  Whom Should I Contact If I Have Questions?    Page __

| WHY DID I GET THIS NOTICE? |
|---|

8.      This Notice is being sent to you pursuant to an Order of the Court because you or someone in your family or an investment account for which you serve as custodian may have purchased or otherwise acquired BoA common stock or BoA January 2011 call options during the Class Period (*i.e.*, September 18, 2008 through January 21, 2009, inclusive) or held BoA common stock as of October 10, 2008 and were therefore eligible to vote on the Merger.  The Court has directed us to send you this Notice because, as a potential Class Member, you have a right to know about your options before the Court rules on the proposed Settlement of this case.  Additionally, you have the right to understand how a class action lawsuit may generally affect your legal rights.  If the Court approves the Settlement, The Garden City Group, Inc. ("GCG"), the claims administrator selected by Lead Plaintiffs and approved by the Court, will distribute payments pursuant to the Settlement after any objections and appeals are resolved.

9.      In a class action lawsuit, under a federal law governing lawsuits such as this one, the Court appoints one or more investors, known as class representatives, to oversee litigation brought on behalf of all investors with similar claims, commonly known as the class or the class members.  In this Action, the Court has appointed the State Teachers Retirement System of Ohio, the Ohio Public Employees Retirement System, the Teacher Retirement System of Texas, Stichting Pensioenfonds Zorg en Welzijn, represented by PGGM Vermogensbeheer B.V., and Fjärde AP-Fonden to serve as "Lead Plaintiffs" and has appointed the law firms of Bernstein Litowitz Berger & Grossmann LLP, Kaplan Fox & Kilsheimer LLP, and Kessler Topaz Meltzer & Check, LLP as Co-Lead Counsel for Lead Plaintiffs and the Class in the Action.  Pursuant to the Court's Memorandum and Order issued on February 6, 2012, Lead Plaintiffs, together with additional named plaintiff Grant Mitchell (who represents Persons who purchased or otherwise acquired during the Class Period January 2011 call options on BoA common stock), were certified as "Class Representatives" and Co-Lead Counsel were certified as "Class Counsel."  A class action is a type of lawsuit in which the claims of a number of individuals are resolved together, thus providing the class members with both consistency and efficiency.  Here, the Court has already certified the Class.  Accordingly, the Settlement, if approved by the Court, will resolve all issues on behalf of the Class Members, except for any Persons who previously submitted a request for exclusion in connection with the Class Notice who do not opt-back into the Class.

10.     The Court in charge of this case is the United States District Court for the Southern District of New York, and the case is known as *In re Bank of America Corp. Securities, Derivative and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09 MDL 2058 (PKC) (S.D.N.Y.).  The Judge presiding over this case is the Honorable P. Kevin Castel, United States District Judge.  The people who are suing are called plaintiffs, and those who are being sued are called defendants.  In this case, several of the named plaintiffs are referred to as the Lead Plaintiffs and they are suing on behalf of themselves and the Class, and the Defendants are BoA, Merrill, Banc of America Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, and the Individual Defendants (*see* fn. 2 above).  If the Settlement is approved, it will resolve all claims in the Action by Class Members against Defendants and will bring the Action to an end.

11.     This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.  The purpose of this Notice is to inform you that a settlement has been reached in this Action and how you might be affected.  It also is being sent to inform you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the proposed Settlement, the proposed Plan of Allocation, and the motion by Co-Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses (the "Settlement Fairness Hearing").

12.     The Settlement Fairness Hearing will be held on _____, 2013 at _:__ _.m., before the Honorable P. Kevin Castel, at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007, to determine:

(a)     whether the proposed Settlement is fair, reasonable, and adequate and should be approved by the Court;

(b)     whether the Action should be dismissed with prejudice against the Defendants as set forth in the Stipulation;

(c)     whether the proposed Plan of Allocation is fair and reasonable and should be approved by the Court;

(d)     whether Co-Lead Counsel's request for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved by the Court; and

(e)     any other relief the Court deems necessary to effectuate the terms of the Settlement.

13.     This Notice does not express any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement.  If the Court approves the Settlement, payments to Authorized Claimants will be made after any appeals are resolved, and after the completion of all claims processing.  As referenced above, there are several billion shares of BoA common stock as to which claims may be submitted and, thus, the claims process could take substantial time to complete fully and fairly.  Please be patient.

| WHAT IS THIS CASE ABOUT? |
|---|

**A.      Summary of Procedural History and Background on Lead Plaintiffs' Claims**

14.     On September 15, 2008, BoA agreed to acquire Merrill in a stock-for-stock transaction in which a share of Merrill common stock would be exchanged for 0.8595 shares of BoA common stock.  BoA and Merrill issued a Definitive Joint Proxy Statement to shareholders on or about November 3, 2008 (the "November 3 Proxy"), and on December 5, 2008, BoA shareholders voted in favor of the issuance of additional shares of BoA stock in connection with the Merger and Merrill shareholders voted to approve the Merger.  The Merger was consummated on January 1, 2009.

15.     On October 7, 2008, BoA sold 455,000,000 shares of BoA common stock at $22 per share for net proceeds of $9.9 billion (the "Secondary Offering") pursuant to the Registration Statement and Prospectus (the "Registration Statement").

16.     Beginning in January 2009, numerous putative securities fraud class actions were filed against BoA, Merrill, and certain officers and directors of both companies related to the Merger.

17.     By Memorandum Opinion and Order dated June 30, 2009, the Court consolidated the federal securities actions and appointed the State Teachers Retirement System of Ohio; the Ohio Public Employees Retirement System; the Teacher Retirement System of Texas; Stichting Pensioenfonds Zorg en Welzijn, represented by PGGM Vermogensbeheer B.V.; and Fjärde AP-Fonden as Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  In the same Order, the Court also approved Lead

Plaintiffs' selection of Bernstein Litowitz Berger & Grossmann LLP, Kaplan Fox & Kilsheimer LLP, and Kessler Topaz Meltzer & Check, LLP (f/k/a Barroway Topaz Kessler Meltzer & Check, LLP) as lead counsel for the Class.

18.     On September 25, 2009, Lead Plaintiffs filed their Consolidated Amended Class Action Complaint ("First Amended Complaint"), which asserted that Defendants had violated federal securities laws and alleged claims on behalf of all persons who: (i) purchased or acquired BoA shares between September 15, 2008 and January 21, 2009, inclusive; (ii) held BoA stock as of October 10, 2008 and were entitled to vote on the Merger; or (iii) purchased BoA common stock in the Secondary Offering, and were damaged thereby.

19.     The First Amended Complaint alleged that Defendants violated the federal securities laws by failing to disclose or update prior to the December 5, 2008 shareholder vote approving the issuance of additional shares in connection with the Merger, facts about (i) Merrill's billions of dollars of losses during the fourth quarter of 2008 (including, but not limited to, Merrill's goodwill impairment); (ii) BoA's agreement to allow Merrill to pay up to $5.8 billion in bonuses to its employees before the Merger closed, notwithstanding those substantial losses; (iii) the circumstances surrounding the negotiation of the Merger (including the inadequacy of due diligence and pressure from federal regulators); (iv) the purported benefits of the Merger; and (v) BoA's own deteriorating financial condition.   The First Amended Complaint also alleged that Defendants made materially false and misleading statements about these topics.   The First Amended Complaint alleged that these actions deceived the investing public in violation of the federal securities laws, artificially inflated the price of BoA stock, and caused putative Class Members to purchase BoA stock at artificially inflated prices.

20.     The First Amended Complaint alleged that BoA shareholders voted to issue additional shares while unaware of these material facts.   The First Amended Complaint further alleged that BoA continued to make some of these misstatements and omissions, or failed to update them, following the shareholder vote.

21.     The First Amended Complaint further alleged that the Registration Statement contained untrue statements of material facts and omitted material facts required to be stated in order to make the statements contained therein not misleading.   The First Amended Complaint further alleged that putative Class Members who purchased BoA common stock pursuant to the Secondary Offering suffered substantial damages as a result of the untrue statements and omissions of material facts in the Registration Statement, as they either sold these shares at prices below the Secondary Offering price or still held shares as of the date of the initial complaint containing claims under the Securities Act when the price of BoA common stock was below the Secondary Offering price.

22.     The First Amended Complaint alleged that, following the shareholder vote on December 5, 2008, but before the Merger closed on January 1, 2009, (i) BoA decided that it had grounds to terminate the Merger because of the magnitude of Merrill's losses and BoA's own deteriorating financial condition, and (ii) in order to consummate the Merger and absorb Merrill's fourth quarter losses, BoA obtained a $138 billion bailout from the Federal Government to prevent BoA's own collapse.   The First Amended Complaint alleged that facts related to these events were not disclosed to investors before the Merger closed.

23.     The First Amended Complaint further alleged that the truth about Merrill's financial condition was not revealed until mid-January 2009, when several alleged corrective disclosures revealed, according to the First Amended Complaint, that Merrill had suffered a pre-tax loss of more than $21 billion during the fourth quarter of 2008 and, as a result, BoA had sought and obtained $138 billion of additional government assistance. The First Amended Complaint also alleged that on January 21, 2009, it was further reported that, despite

Merrill's losses, BoA had allowed Merrill to pay $3 to $4 billion in bonuses before the Merger closed, and that, as these facts became known, the price of BoA common stock declined causing damage to putative Class Members.  Lead Plaintiffs sought damages for all of their claims based solely on the amounts that the price of BoA's securities allegedly dropped as a result of alleged corrective disclosures during January 2009.

24.     Based on the facts set forth above, the First Amended Complaint alleged that Defendants violated Sections 14(a), 10(b), and 20(a) of the Exchange Act, and Sections 11, 12(a)(2) and 15 of the Securities Act.  In addition to BoA and Merrill, the First Amended Complaint named Kenneth D. Lewis, John A. Thain, Joe L. Price, Neil A. Cotty, Banc of America Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, and the BoA Board as Defendants.

25.     On October 6, 2009, Lead Plaintiffs requested a partial modification of the PSLRA discovery stay in order to obtain (1) documents that Defendants produced to various government agencies (including, but not limited to, the Securities and Exchange Commission ("SEC"), the United States Congress and the New York State Attorney General) in connection with those agencies' investigations into the Merger, and (2) transcripts of any testimony given in connection with those investigations.  On November 16, 2009, the Court issued an order granting Lead Plaintiffs' request.

26.     All Defendants moved to dismiss the First Amended Complaint.  The motions were fully briefed by January 26, 2010, and on June 4, 2010, following a conference with the Court, the Parties submitted supplemental letter briefs to the Court concerning the measure of recoverable damages for Lead Plaintiffs' Section 14(a) claims.

27.     On August 27, 2010, the Court issued a Memorandum and Order that granted in part, and denied in part, Defendants' motions to dismiss.  Specifically, the Court sustained (1) Lead Plaintiffs' Section 14(a) claim regarding (i) Merrill's ability to pay bonuses to its employees for fiscal year 2008 prior to the Merger closing, and (ii) Merrill's fourth quarter 2008 losses; (2) Lead Plaintiffs' Section 10(b) claims regarding Merrill's ability to pay bonuses to its employees for fiscal year 2008 prior to the Merger closing; (3) Lead Plaintiffs' Section 20(a) claims for control person liability; and (4) Lead Plaintiffs' Securities Act claims.  The Court dismissed Lead Plaintiffs' remaining claims, including Lead Plaintiffs' Section 10(b) claims regarding Defendants' failure to disclose Merrill's fourth quarter 2008 losses and held that allegations relating to events post-dating the December 5, 2008 shareholder vote cannot form the basis of a Section 14(a) claim.

28.     On September 10, 2010, Defendants filed motions seeking certification for interlocutory appeal, or, in the alternative, for reconsideration, of multiple issues decided by Judge Castel in his August 27, 2010 Memorandum and Order related to Defendants' motions to dismiss.  On October 8, 2010, after another full round of briefing, Judge Castel denied Defendants' motions.

29.     On October 22, 2010, Lead Plaintiffs, along with additional named plaintiff Grant Mitchell, filed a Consolidated Second Amended Class Action Complaint (the "Second Amended Complaint"), which contained additional allegations in support of Lead Plaintiffs' Section 10(b) claims against Defendants Lewis, Price and BoA related to these Defendants' alleged failure to disclose Merrill's fourth quarter losses and BoA's receipt of the taxpayer bailout.  The Second Amended Complaint contained additional allegations bearing on the scienter of BoA, Lewis and Price, including, *inter alia*, allegations that BoA's former General Counsel was not advised of the full extent of Merrill's losses prior to the December 5, 2008 shareholder vote.

30.     Defendants moved to dismiss the Second Amended Complaint.  After full briefing on Defendants' motions to dismiss the Second Amended Complaint, by Memorandum and Order dated July 29,

2011, the Court sustained Lead Plaintiffs' Section 10(b) claims regarding Defendants' failure to disclose Merrill's fourth quarter losses, but granted Defendants' motion to dismiss Lead Plaintiffs' claims related to Defendants' failure to disclose the taxpayer bailout.  Although the Court sustained Lead Plaintiffs' Section 10(b) claims regarding BoA's, Lewis's and Price's alleged failure to disclose Merrill's fourth quarter losses, the Court rejected Lead Plaintiffs' theory that Lewis's and Price's scienter could be established by allegations that they were motivated to commit fraud in order to obtain a favorable result in the shareholder vote or to ensure that the Merger closed.

31.     On August 31, 2011, Defendants answered the Second Amended Complaint.  Defendants denied Lead Plaintiffs' claims and asserted a number of defenses to liability.

32.     On October 17, 2011, Lead Plaintiffs filed their Motion for Class Certification and Appointment of Class Representatives and Class Counsel.  After class certification discovery and a full round of briefing, on February 6, 2012, the Court issued a Memorandum and Order granting Lead Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel.  Among other things, the Court ruled that while Lead Plaintiffs had to prove that the alleged omissions were material, they were not obligated to prove that the Class relied on the alleged omissions in making their investment decisions.  The Court further ruled that no individualized inquiry was required to determine whether the November 3 Proxy violated the Class Members' right to vote on the Merger under Section 14(a).

33.     On February 21, 2012, Defendants filed with the United States Court of Appeals for the Second Circuit a Petition Pursuant To Fed. R. Civ. P. 23(f) For Leave To Appeal From The District Court's Order Granting Class Certification.  After full briefing, on July 23, 2012 the Court of Appeals issued an order denying Defendants' petition.

34.     On February 29, 2012, the Court approved the Class Notice, which was sent to putative Class Members beginning on March 21, 2012.  Pursuant to the Court's February 29, 2012 Order, the Class Notice provided these putative Class Members with the opportunity to request exclusion from the Class.  The Class Notice explained Class Members' right to request exclusion and set forth the procedure for doing so.

35.     The Parties and their counsel have vigorously pursued discovery in this case.  Fact discovery concluded on May 18, 2012.  During the course of the litigation, the Parties conducted approximately 60 depositions and produced, reviewed and/or analyzed almost 4.75 million pages of documents.  Additionally, in a forty-five day period between March 16, 2012 and April 30, 2012, the Parties exchanged 17 opening and rebuttal reports from 11 different experts accompanied by thousands of pages of exhibits.

36.     On June 3, 2012, Lead Plaintiffs and Defendants filed cross-motions for summary judgment, each of which included briefing, statements of undisputed facts, supporting exhibits and expert reports.  On June 29, 2012, the Parties filed opposition briefs, counterstatements of facts, responses to statements of undisputed facts and accompanying exhibits.  Briefing on the Parties' summary judgment motions was completed on July 17, 2012, when reply briefs were filed, along with accompanying exhibits.  The Parties prepared and submitted well over 700 pages of briefing, statements of undisputed facts, and counterstatements of facts, in addition to approximately 500 exhibits in connection with summary judgment.  These summary judgment motions were pending at the time the settlement in principle was reached.

37.     Lead Plaintiffs' motion for summary judgment sought partial summary judgment as to the alleged falsity and materiality of statements related to the projected accretive/dilutive impact of the Merger.  The motion focused on statements that Lewis made at BoA's December 5, 2008 shareholder meeting relating to

BoA's accretion/dilution forecast, as well as statements that Defendants made about this forecast on September 15, 2008 and in the November 3 Proxy.  In responding to this motion, Defendants argued that the statements at issue were not false, that there was no duty to update them, that they were immaterial as a matter of law, that the individuals who made the alleged statements lacked scienter, that plaintiffs failed to meet the burden necessary to obtain summary judgment on these claims, and that Lead Plaintiffs could not obtain summary judgment on purported misstatements that had not previously been pleaded in the Second Amended Complaint.

38.     Defendants sought summary judgment as to Lead Plaintiffs' Section 14(a) claims on the ground that Lead Plaintiffs failed to adduce evidence that members of the Section 14(a) class sustained any compensable injury or actual damages.  Lead Plaintiffs' opposition to this motion articulated Lead Plaintiffs' theory of direct harm to the Class through stock-drop damages as opposed to any injury to BoA itself.  In addition, Defendants sought summary judgment as to Lead Plaintiffs' claims under the Exchange Act related to Merrill's bonus payments, as well as to Lead Plaintiffs' claims related to the alleged January 12, 2009 and January 13, 2009 corrective disclosures related to Merrill's fourth quarter losses, on the ground that Lead Plaintiffs failed to establish loss causation for these claims.  Defendants also sought summary judgment as to Lead Plaintiffs' bonus-related claims under the Securities Act asserting that they had met their burden of negating causation with respect to these claims.

39.     In addition, Defendants Lewis, Price, Thain, Cotty, and the BoA Board each sought summary judgment on the Securities Act and/or the Exchange Act claims for reasons specific to their individual circumstances.

40.     Lead Plaintiffs opposed all of Defendants' summary judgment motions.

41.     From August 17, 2012 through September 7, 2012, in preparation for trial, the Parties exchanged preliminary witness lists, exhibit lists, preliminary statements of claims and defenses, and deposition designations and counter-designations for those witnesses that would be unavailable at trial, a joint pretrial report, jury verdict form, stipulated statement of facts, jury instructions, voir dire questions, initial jury remarks, 8 *Daubert* motions and 32 separate motions *in limine*.

42.     The trial in this Action was scheduled to begin at 10:00 a.m. on October 22, 2012.

**B.     The Parties' Settlement Negotiations**

43.     At the suggestion of the Court, commencing in August 2010, the Parties first began discussing a potential resolution of the Action in a private mediation.  The mediation was conducted by the Honorable Layn R. Phillips, a former federal district court judge in the United States District Court for the Western District of Oklahoma.  Although the Parties met several times in person over the course of the next several years, a resolution was not achieved.

44.      The Parties' mediation efforts included several rounds of in-person and telephonic mediation while discovery was ongoing, but the Parties remained no closer to a resolution as fact and expert discovery wound down in the spring of 2012.

45.     With the October 22, 2012 trial date set, the Parties made a final push to bridge the substantial gap between them.  With the assistance of Judge Phillips, on September 20, 2012, counsel for BoA and Co-Lead Counsel, on behalf of Lead Plaintiffs, executed a term sheet providing for the settlement and release of all claims asserted against the Defendants for $2,425,000,000 in cash, plus certain Corporate Governance Enhancements to be adopted or continued by BoA, to be subsequently negotiated and agreed upon by the

Parties, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

46.    On September 27, 2012, BoA and Lead Plaintiffs completed their negotiations on Corporate Governance Enhancements to be implemented or continued by BoA and executed a supplemental term sheet concerning those terms.

47.    On September 28, 2012, in light of the proposed Settlement, the Parties orally requested the adjournment of the trial date, all pre-trial submissions, the final pre-trial conference and the rendering of the Court's decision on summary judgment, which adjournments were granted by the Court.

48.    Based upon their investigation, prosecution and mediation of the case, Co-Lead Counsel have concluded that the terms and conditions of the Stipulation are fair, reasonable and adequate to the Lead Plaintiffs and the other members of the Class, and in their best interests.  Based on Lead Plaintiffs' direct oversight of the prosecution of this matter and with the advice of Co-Lead Counsel, each of the Lead Plaintiffs has agreed to settle the claims raised in the Action pursuant to the terms and provisions of the Stipulation, after considering (a) the very substantial financial benefit that Lead Plaintiffs and the other members of the Class will receive under the proposed Settlement, (b) the significant Corporate Governance Enhancements that BoA will implement or continue as a result of the proposed Settlement, (c) the significant risks of continued litigation and trial, and (d) the desirability of permitting the Settlement to be consummated as provided by the terms of the Stipulation.  The fact that Lead Plaintiffs have agreed to settle the Action shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Lead Plaintiff of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of Defendants' affirmative defenses to liability have any merit.

49.    Defendants are entering into the Stipulation solely to eliminate the uncertainty, burden and expense of further protracted litigation.  Each of the Defendants denies any wrongdoing, and the Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants, or any of the Defendants' Releasees (defined in ¶101 below), with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that Defendants have, or could have asserted.  The Defendants expressly deny that Lead Plaintiffs have asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing or damages whatsoever.

50.    On _____, 2012, the Court preliminarily approved the Settlement, authorized this Notice to be disseminated to potential Class Members, and scheduled the Settlement Fairness Hearing to consider whether to grant final approval to the Settlement.

| HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT? |
| --- |

51.    If you are a member of the Class, you are subject to the Settlement unless you are excluded from the Class as set forth below.  The Class consists of:

(i)    all persons and entities who held BoA common stock as of October 10, 2008, and were entitled to vote on the Merger between BoA and Merrill that was consummated on January 1, 2009, and were damaged thereby; and

(ii)    all persons and entities who purchased or otherwise acquired BoA common stock during the period from September 18, 2008 through January 21, 2009, inclusive, excluding shares of BoA common stock acquired by exchanging stock of Merrill for BoA stock through the Merger between the two companies consummated on January 1, 2009, and were damaged thereby; and

(iii)    all persons and entities who purchased or otherwise acquired January 2011 call options of BoA from September 18, 2008 through January 21, 2009, inclusive, and were damaged thereby; and

(iv)    all persons and entities who purchased BoA common stock issued under the Registration Statement in the Secondary Offering that occurred on or about October 7, 2008, and were damaged thereby.

**Excluded from the Class are**:  Defendants, present or former executive officers of BoA and Merrill, present or former members of Merrill's and BoA's Board of Directors and their immediate family members (as defined in 17 C.F.R. § 229.404, Instructions, *i.e.*, children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law).  Also excluded from the Class are any Persons who submitted a request for exclusion in connection with the Class Notice as set forth on Appendix 1 to the Stipulation who do not opt-back into the Class in accordance with the instructions set forth herein (*see* ¶109 below).

**PLEASE NOTE:  RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU ARE A CLASS MEMBER OR THAT YOU WILL BE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.  IF YOU ARE A CLASS MEMBER AND YOU WISH TO BE ELIGIBLE TO PARTICIPATE IN THE DISTRIBUTION OF PROCEEDS FROM THE SETTLEMENT, YOU ARE REQUIRED TO SUBMIT THE CLAIM FORM THAT IS BEING DISTRIBUTED WITH THIS NOTICE AND THE REQUIRED SUPPORTING DOCUMENTATION AS SET FORTH THEREIN POSTMARKED NO LATER THAN _____, 2013.**

| WHAT ARE LEAD PLAINTIFFS' REASONS FOR THE SETTLEMENT? |
|---|

52.    The principal reason for Lead Plaintiffs' consent to the Settlement is that it provides an immediate and substantial benefit to the Class, in the form of both a substantial monetary recovery as well as the Corporate Governance Enhancements to be implemented or continued by BoA (*see* ¶¶97-98 below).  The benefit of the present Settlement must be compared to the risk that no recovery might be achieved after a contested trial and likely appeals, possibly many months, or even years, into the future.

53.    But for the Settlement achieved on September 20, 2012, this Action would have proceeded to trial, which was scheduled to begin on October 22, 2012.  The claims advanced by the Class in this Action involve numerous complex legal and factual issues.  If the Action were to proceed to trial, Lead Plaintiffs would have to overcome significant defenses asserted by multiple defendants.  Among other things, the Parties disagree about (i) whether Lead Plaintiffs or the Class have suffered any damages, (ii) whether the price of BoA common stock was artificially inflated by reason of the alleged misrepresentations, omissions, or otherwise, and (iii) whether Lead Plaintiffs or the Class were harmed by the conduct alleged in the Second Amended Complaint.  The Parties also disagree on the appropriate methodology for determining damages, if liability were established, particularly under Section 14(a), as Defendants have argued that Class Members seeking recovery under Section 14(a), who did not purchase or otherwise exchange any shares of their BoA common stock in connection with the Merger, failed to adduce evidence of a direct, compensable injury under Section 14(a).

Even after an extensive investigation and substantial discovery, questions remain regarding the extent of Defendants' liability and the extent to which a jury might find them liable, if at all.  In addition, due to the novel issues surrounding damages under Section 14(a), Lead Plaintiffs are confident that even if a jury were to award damages in connection with a successful trial, Defendants would surely appeal such verdict and this could lead to further delays at best, and at worst, no recovery under Section 14(a).  This Settlement enables the Class to recover without incurring any additional risk or costs.

54.     Defendants have expressly denied and continue to deny all assertions of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action.  Defendants also continue to believe that the claims asserted against them in the Action are without merit.  Defendants have agreed to enter into the Settlement, as embodied in the Stipulation, solely to avoid the uncertainty, burden and expense of further protracted litigation.

55.     In light of the risks associated with a trial of this Action, the monetary amount of the Settlement and the immediacy of this recovery to the Class combined with the Corporate Governance Enhancements to be implemented or continued by BoA, Lead Plaintiffs and Co-Lead Counsel believe that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Class.  Lead Plaintiffs and Co-Lead Counsel believe that the Settlement provides a substantial benefit to the Class, namely $2.425 billion in cash (less the various deductions described in this Notice) and the Corporate Governance Enhancements (described below at ¶¶97-98), as compared to the risk that the claims in the Action would produce a smaller, or no, recovery after trial and appeals.

## WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

56.     If there were no Settlement and Lead Plaintiffs failed to establish any essential legal or factual element of their claims, neither Lead Plaintiffs nor the other members of the Class would recover anything from Defendants.  Also, if Defendants were successful in proving any of their defenses, either at summary judgment, at trial or on appeal, the Class likely would recover substantially less than the amount provided in the Settlement, or nothing at all.

## HOW MUCH WILL MY PAYMENT BE?

57.     At this time, it is not possible to make any determination as to how much any individual Class Member may receive from the Settlement.

58.     Pursuant to the Settlement, BoA, on behalf of all Defendants, has agreed to pay two billion four hundred and twenty five million dollars ($2,425,000,000) in cash.  The Settlement Amount will be deposited into an interest-bearing escrow account.  The Settlement Amount plus all interest earned thereon is referred to as the "Settlement Fund."  If the Settlement is approved by the Court and the Effective Date occurs, the "Net Settlement Fund" (that is, the Settlement Fund less (a) all federal, state and local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing Notice to Class Members and administering the Settlement on behalf of Class Members; and (c) any attorneys' fees and Litigation Expenses awarded by the Court) will be distributed to Class Members who submit valid Claim Forms, in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court may approve.

15

59.     The Net Settlement Fund will not be distributed until the Court has approved a plan of allocation and the Settlement, and the time for any petition for rehearing, appeal or review, whether by certiorari or otherwise, has expired.

60.     Neither Defendants nor any other person or entity that paid any portion of the Settlement Amount on their behalf are entitled to get back any portion of the Settlement Fund once the Court's order or judgment approving the Settlement becomes Final.   Defendants shall not have any liability, obligation or responsibility for the administration of the Settlement, the disbursement of the Net Settlement Fund or the plan of allocation.

61.     Approval of the Settlement is independent from approval of a plan of allocation.   Any determination with respect to a plan of allocation will not affect the Settlement, if approved.

62.     Only Class Members, *i.e.*, persons and entities who or which (i) held BoA common stock as of October 10, 2008, and were entitled to vote on the Merger between BoA and Merrill that was consummated on January 1, 2009, (ii) purchased or otherwise acquired BoA common stock during the period from September 18, 2008 through January 21, 2009, inclusive, excluding shares of BoA common stock acquired by exchanging stock of Merrill for BoA stock through the Merger between the two companies consummated on January 1, 2009, (iii) purchased or otherwise acquired January 2011 call options of BoA from September 18, 2008 through January 21, 2009, inclusive, and/or (iv) purchased BoA common stock issued under the Registration Statement in the Secondary Offering that occurred on or about October 7, 2008, and were damaged as a result of such holdings, purchases or acquisitions and who or which are not excluded from the Class, will be eligible to share in the distribution of the Net Settlement Fund.

63.     Each Class Member wishing to participate in the distribution must timely submit a valid Claim Form establishing membership in the Class, including all required documentation, postmarked on or before _____, 2013 to the address set forth in the Claim Form that accompanies this Notice.

64.     Unless the Court otherwise orders, any Class Member who fails to submit a Claim Form postmarked on or before _____, 2013 shall be fully and forever barred from receiving payments pursuant to the Settlement but will in all other respects remain a Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and the releases given.   This means that each Class Member releases the Released Lead Plaintiffs' Claims (as defined in ¶100 below) against the Defendants' Releasees (as defined in ¶101 below) and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Lead Plaintiffs' Claims against any of the Defendants' Releasees whether or not such Class Member submits a Claim Form.

65.     Information Required on the Claim Form:  Among other things, each Claim Form must state and provide sufficient documentation for the Claimant's position in BoA common stock and/or January 2011 call options as of the beginning of the Class Period, all transactions in BoA common stock and/or January 2011 call options during the Class Period, and the Claimant's closing position in BoA common stock and/or January 2011 call options on the date specified in the Claim Form.  The Claim Form must also state and provide sufficient documentation to demonstrate the Claimant's holding in BoA common stock as of October 10, 2008.

66.     Participants and beneficiaries in a retirement plan covered by Section 3(3) of ERISA, 29 U.S.C. § 1002(3), including the Bank of America 401(k) Plan, the Bank of America 401(k) Plan for Legacy Companies, the Merrill Lynch & Co., Inc. 401(k) Savings & Investment Plan, and the Merrill Lynch & Co., Inc. Retirement Accumulation Plan (collectively the "ERISA Plans"), should NOT include any information relating

to their transactions in BOA common stock held through the ERISA Plans in any Claim Form that they may submit in this Action.  They should include ONLY those shares that they purchased or acquired outside of the ERISA Plans.   Claims based on any ERISA Plan[s]' purchases of eligible BoA securities during the Class Period may be made by the Plan[s]' trustees.  To the extent any of the Defendants or any of the other persons or entities excluded from the Class are participants in the ERISA Plan[s], such persons or entities shall not receive, either directly or indirectly, any portion of the recovery that may be obtained from the Settlement by any ERISA Plan[s].

67.     The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Class Member.

68.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her or its Claim Form.

69.     Persons and entities that either are excluded from the Class by definition or whose names appear on Appendix 1 to the Stipulation because they previously submitted a request for exclusion in connection with the Class Notice who do not elect to opt-back into the Class, will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Claim Forms.

## PROPOSED PLAN OF ALLOCATION

70.     The objective of the Plan of Allocation is to equitably distribute the settlement proceeds to those Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  The Plan of Allocation generally measures the amount of loss that a Class Member can claim for purposes of making *pro rata* allocations of the Net Settlement Fund to Authorized Claimants.  The Plan of Allocation is not a formal damage analysis.  The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Class Members might have been able to recover after a trial.  Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement.  The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

71.     In developing the Plan of Allocation, Lead Plaintiffs' damages expert calculated the amount of estimated alleged artificial inflation in the per share closing prices of BoA common stock as well as January 2011 call options which purportedly was proximately caused by Defendants' alleged misrepresentations and material omissions.  In calculating the estimated alleged artificial inflation allegedly caused by Defendants' alleged misrepresentations and material omissions, Lead Plaintiffs' damages expert considered price changes in BoA common stock and January 2011 call options in reaction to certain public announcements regarding BoA in which such misrepresentations and material omissions were alleged to have been finally revealed to the market (which are termed "corrective disclosures"), adjusting for price changes that were attributable to market or industry forces, the allegations in the Complaint and the evidence developed in support thereof, as advised by Co-Lead Counsel.

72.     The alleged corrective disclosures that removed artificial inflation from the prices of BoA common stock and January 2011 call options are the January 12, 2009[7], January 13, 2009, January 15, 2009[8], January 16, 2009 and January 22, 2009[9] disclosures.

73.     Recognized Loss Amounts under Section 10(b) of the Exchange Act are based primarily on the change in the level of alleged artificial inflation in the prices of BoA common stock and January 2011 call options at the time of purchase or acquisition and at the time of sale.   Accordingly, in order to have a Recognized Loss Amount under Section 10(b), a Class Member who purchased his, her or its shares of BoA common stock or January 2011 call options prior to January 12, 2009 must have held his, her or its shares of BoA common stock or January 2011 call options through at least the opening of trading on January 12, 2009. With respect to shares of BoA common stock or January 2011 call options purchased on January 12, 2009 through the close of trading on January 21, 2009, those securities must have been held through at least one of the subsequent alleged corrective disclosures.

74.     In developing the Plan of Allocation for claims under Section 14(a) of the Exchange Act, Lead Plaintiffs' damages expert measured the decline in the price of BoA common stock proximately caused by the revelation of information that Lead Plaintiffs alleged was concealed from BoA's shareholders voting on the Merger, adjusting for price changes that were attributable to market or industry forces, the allegations in the Complaint and the evidence developed in support thereof, as advised by Co-Lead Counsel.   In order to have recoverable damages under Section 14(a), disclosure of the alleged misrepresentations and omissions must be the cause of the decline in the price of the stock.   Recognized Loss Amounts under Section 14(a) are based primarily on these observed price declines in BoA common stock on dates when such alleged corrective disclosures occurred.   As with Section 10(b), these disclosures occurred on January 12, 2009, January 13, 2009, January 15, 2009, January 16, 2009 and January 22, 2009.   In order to have a Recognized Loss Amount, a Class Member must have been a record holder of BoA common stock on October 10, 2008, the record date for the shareholder vote on the Merger, and have held those shares through at least the opening of trading on January 12, 2009, the first alleged corrective disclosure.

75.     As set forth above, in this Action claims were asserted under both Sections 10(b) and 14(a) of the Exchange Act.   BoA investors, however, can only receive a recovery under one of these sections of the Exchange Act with respect to the same share for the same violation, not both.   With respect to Class Members who purchased or otherwise acquired BoA shares of common stock on or after September 18, 2008 through and including October 10, 2008 as to which a claim can be stated with respect to both Sections 10(b) and 14(a), the Recognized Loss Amount calculated pursuant to the Section 14(a) calculations set forth below will be used for purposes of determining a Claimant's overall Recognized Claim as that amount will always be greater than the Recognized Loss Amount calculated pursuant to the Section 10(b) calculations set forth below.[10]

---

[7]  This disclosure occurred on Sunday, January 11, 2009, thereby impacting the market on January 12, 2009.  For ease of reference, this disclosure is referred to as the January 12, 2009 disclosure.

[8]  This disclosure occurred after the close of trading on January 14, 2009, thereby impacting the market on January 15, 2009.  For ease of reference, this disclosure is referred to as the January 15, 2009 disclosure.

[9]  This disclosure occurred after the close of trading on January 21, 2009, thereby impacting the market on January 22, 2009.  For ease of reference, this disclosure is referred to as the January 22, 2009 disclosure.

[10]  If the Section 10(b) calculation results in a Recognized Gain Amount, that amount will be used to offset other Section 10(b) losses but it will not reduce the Section 14(a) Recognized Loss Amount.

## CALCULATION OF RECOGNIZED LOSS OR GAIN AMOUNTS

76.    For purposes of determining whether a Claimant has a Recognized Claim, purchases, acquisitions and sales of like securities will first be matched on a First In/First Out Basis as set forth in ¶84 below.

## SECTION 10(b) CLAIMS

77.    With respect to shares of BoA common stock and January 2011 call options purchased or acquired during the Class Period, a "Recognized Loss Amount" or a "Recognized Gain Amount" will be calculated as set forth below for each purchase or other acquisition of BoA common stock or January 2011 call option from September 18, 2008 through and including January 21, 2009 that is listed in the Claim Form and for which adequate documentation is provided.[11]  To the extent that a calculation of a Recognized Loss Amount or a Recognized Gain Amount results in a negative number, that number shall be set to zero.

## COMMON STOCK CALCULATIONS

78.    For each share of BoA common stock purchased or otherwise acquired from  September 18, 2008 through and including January 21, 2009 and:

A.    sold before the opening of trading on January 12, 2009,

   (i)    the Recognized Loss Amount for each such share shall be zero; and

   (ii)    the Recognized Gain Amount for each such share shall be the dollar inflation applicable to each such share on the date of sale as set forth in Table 1 below *minus* the dollar inflation applicable to each such share on the date of purchase as set forth in Table 1 below.

B.    sold after the opening of trading on January 12, 2009 and before the close of trading on January 21, 2009,

---

Claimants who purchased BoA common stock in the secondary offering on October 8, 2008, were shareholders of record as of October 10, 2008 and therefore, were eligible to vote on the Merger.  As a result, such Claimants would also be entitled to have their Recognized Loss Amounts calculated under the Section 14(a) provisions of this Plan of Allocation.  Lead Plaintiffs' damages expert has submitted a report in this litigation which limits Section 11 damages to a maximum of $0.49 per share and the Claimant would have had to have held those shares through the entire Class Period to receive any damages award under Section 11.  If the Claimant held through the entirety of the Class Period, however, the Recognized Loss Amount calculation would always result in a greater amount under the Section 14(a) provisions of the plan ($4.74 per share).  Thus, there is no independent reason to provide for Recognized Loss Amounts calculated under Section 11.

[11]  As set forth above, shares of BoA common stock that were acquired from the exchange of Merrill shares in connection with the Merger, are not covered by the definition of the Class and, thus, those shares shall not be included in the calculation of a Claimant's Recognized Loss or Gain Amounts.  Please note, however, that those shares must be included in the Claim Form.  Those shares will be used for purposes of matching sales to acquisitions (*see* ¶84 below) and they are needed in order for the Claims Administrator to be able to balance the Claim.

(i)    the Recognized Loss Amount for each such share shall be the dollar inflation applicable to each such share on the date of purchase as set forth in Table 1 below *minus* the dollar inflation applicable to each such share on the date of sale as set forth in Table 1 below; and

(ii)    the Recognized Gain Amount for each such share shall be the dollar inflation applicable to each such share on the date of sale as set forth in Table 1 below *minus* the dollar inflation applicable to each such share on the date of purchase as set forth in Table 1 below.

C.    sold after the opening of trading on January 22, 2009 and before the close of trading on April 21, 2009,

(i)    the Recognized Loss Amount for each such share shall be ***the lesser of***:

(a)    the dollar inflation applicable to each such share on the date of purchase as set forth in Table 1 below; or

(b)    the actual purchase price of each such share (excluding all fees, taxes and commissions) *minus* the average closing price for the days following the last alleged corrective disclosure on January 22, 2009, ending on the date of sale as set forth in Table 2 below.

D.    held as of the close of trading on April 21, 2009,

(i)    the Recognized Loss Amount for each such share shall be ***the lesser of***:

(a)    the dollar inflation applicable to each such share on the date of purchase as set forth in Table 1 below; or

(b)    the actual purchase price of each such share (excluding all fees, taxes and commissions) *minus* $6.31.[12]

## **JANUARY 2011 CALL OPTIONS CALCULATIONS**

79.    For each January 2011 call option[13] purchased or otherwise acquired from September 18, 2008 through and including January 21, 2009 and:

---

[12]   Pursuant to Section 21(D)(e)(1) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day look-back period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market."  Consistent with the requirements of the PSLRA, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of BoA common stock during the 90-day look-back period.  The mean (average) closing price for BoA common stock during this 90-day look-back period was $6.31.

[13]   For purposes of these calculations, a call option refers to 1/100 of an option contract.

A.      sold or exercised before the opening of trading on January 12, 2009,

    (i)      the Recognized Loss Amount for each such call option shall be zero; and

    (ii)     the Recognized Gain Amount for each such call option shall be the dollar inflation applicable to each such option on the date of sale or exercise as set forth in Table 3 below *minus* the dollar inflation applicable to each such option on the date of purchase as set forth in Table 3 below.

B.      sold or exercised after the opening of trading on January 12, 2009 and before the close of trading on January 21, 2009,

    (i)      the Recognized Loss Amount for each such call option shall be ***the lesser of***:

        (a)     the dollar inflation applicable to each such call option on the date of purchase as set forth in Table 3 below *minus* the dollar inflation applicable to each such call option on the date of sale or exercise as set forth in Table 3 below; or

        (b)     the sum of inflation revealed on each of the following dates through which such call option was held as set forth in Table 4 below: January 12, 2009, January 13, 2009, January 15, 2009, and January 16, 2009; and

    (ii)     the Recognized Gain Amount for each such call option shall be the dollar inflation applicable to each such call option on the date of sale or exercise as set forth in Table 3 below *minus* the dollar inflation applicable to each such call option on the date of purchase as set forth in Table 3 below.

C.      sold or exercised after the opening of trading on January 22, 2009 and before close of trading on April 21, 2009,

    (i)      the Recognized Loss Amount for each such call option shall be ***the least of***:

        (a)     the dollar inflation applicable to each call option on the date of purchase as set forth in Table 3 below; or

        (b)     the sum of inflation revealed on each of the following dates through which such call option was held as set forth in Table 4 below: January 12, 2009, January 13, 2009, January 15, 2009, January 16, 2009, and January 22, 2009; or

        (c)     the actual purchase price per call option (excluding all fees, taxes and commissions) *minus* the average closing price for the days following the last alleged corrective disclosure on January 22, 2009, ending on the date of sale or exercise as set forth in Table 5 below.

D.      which was still held as of the close of trading on April 21, 2009,

    (i)      the Recognized Loss Amount for each such call option shall be ***the least of***:

(a)     the dollar inflation applicable to each call option on the date of purchase as set forth in Table 3 below; or

(b)     the sum of inflation revealed on each of the following dates through which such call option was held as set forth in Table 4 below: January 12, 2009, January 13, 2009, January 15, 2009, January 16, 2009, and January 22, 2009; or

(c)     the actual purchase price per call option (excluding all fees, taxes and commissions) *minus* the average closing price between the final alleged corrective disclosure on January 22, 2009 and April 21, 2009 as set forth in the last line of Table 5 below.

80.     Shares of BoA common stock acquired during the Class Period through the exercise of January 2011 call options shall be treated as a purchase of common stock on the date of exercise at a price per share equal to the exercise price of the call option, and any Recognized Loss or Gain Amount arising from such transaction shall be computed as provided for other purchases of BoA common stock as set forth herein.

81.     No Recognized Loss or Gain Amount shall be calculated based upon the sale or writing of any January 2011 call option that was subsequently repurchased.

## SECTION 14(a) CLAIMS – COMMON STOCK CALCULATIONS

82.     For each share of BoA common stock that was held as of October 10, 2008, the record date for the shareholder vote on the Merger, that was still held as of the opening of trading on January 12, 2009,[14] and:

A.     sold after the opening of trading on January 12, 2009, and before the close of trading on January 21, 2009, the Recognized Loss Amount for each such share shall be $4.74[15] per share *minus* the dollar inflation applicable to each share on the date of sale as set forth in Table 1 below;

B.     still held as of the opening of trading on January 22, 2009, the Recognized Loss Amount for each such share shall be $4.74 per share.

83.     A Claimant's Section 14(a) Claim shall be the total of the Recognized Loss Amounts calculated pursuant to ¶82.

## ADDITIONAL PROVISIONS

84.     **FIFO Matching:**  If a Class Member has more than one purchase/acquisition or sale of BoA common stock or January 2011 call options on BoA common stock during the Class Period, all purchases/acquisitions and sales of the like security[16] shall be matched on a First In, First Out ("FIFO") basis. Class Period sales will be matched first against any holdings at the beginning of the Class Period, and then

---

[14]   For shares that were sold before the opening of trading on January 12, 2009, the Recognized Loss Amount for each such share shall be zero.

[15]   $4.74 represents the total amount of decline in the price of BoA common stock calculated by Lead Plaintiffs' damages expert as being related to the disclosure of the alleged misrepresentations and omissions.

[16]   With respect to the January 2011 call options, the "like security" shall be options with the same strike price.

against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.

85.     **"Purchase/Sale" Dates:**  Purchases or acquisitions and sales of BoA common stock or January 2011 call options shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant by gift, inheritance or operation of law of BoA common stock or January 2011 call options during the Class Period shall not be deemed a purchase, acquisition or sale of these shares of BoA common stock or January 2011 call options for the calculation of a Claimant's Recognized Loss Amounts pursuant to the Section 10(b) calculations set forth above and such receipt or grant shall not be deemed an assignment of any claim relating to the purchase/acquisition of such shares of BoA common stock or January 2011 call options, unless (i) the donor or decedent purchased or otherwise acquired such shares of BoA common stock or January 2011 call options during the Class Period; (ii) the instrument of gift or assignment specifically provides that it is intended to transfer such rights; and (iii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares of BoA common stock or January 2011 call options.  For purposes of calculating a Claimant's Recognized Loss Amounts pursuant to the Section 14(a) calculations set forth above, the receipt or grant by gift, inheritance or operation of law of BoA common stock shall not be deemed an assignment of any claim relating to such shares of BoA common stock, unless (i) the instrument of gift or assignment specifically provides that it is intended to transfer such rights; and (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares of BoA common stock.

86.     **Short Sales:**  With respect to BoA common stock, the date of covering a "short sale" is deemed to be the date of purchase or acquisition of the stock.  The date of a "short sale" is deemed to be the date of sale of BoA common stock.  In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero.  In the event that a Claimant has an opening short position in BoA common stock, the earliest Class Period purchases or acquisitions shall be matched against such opening short position, and not be entitled to a recovery, until that short position is fully covered.  If a Class Member has "written" January 2011 call options, thereby having a short position in the options, the date of covering such a written position is deemed to be the date of purchase or acquisition of January 2011 call options.  The date on which the January 2011 call option was written is deemed to be the date of sale of the January 2011 call option. In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "written" January 2011 call options is zero. In the event that a Claimant has an opening written position in January 2011 call options, the earliest Class Period purchases or acquisitions of like January 2011 call options shall be matched against such opening written position, and not be entitled to a recovery, until that written position is fully covered.

87.     **Eligible Securities:**  BoA common stock and January 2011 call options are the only securities eligible for recovery under the Plan of Allocation.  Options other than January 2011 call options on BoA common stock are not securities eligible to participate in the Settlement.  With respect to BoA common stock purchased or sold through the exercise of an option, the purchase/sale date of the BoA common stock is the exercise date of the option and the purchase/sale price is the exercise price of the option.

88.     **Netting Gains and Losses**:  Gains and losses in stock and options trades will be netted for purposes of calculating whether a Claimant had an overall Section 10(b) gain or loss in his, her or its transactions.  The netting will occur both with respect to the Section 10(b) calculated Recognized Gain and Loss Amounts as set forth in ¶¶77-81 above as well as with respect to the Claimant's gains or losses based on his, her or its market transactions.

(a)    **Netting of Calculated Section 10(b) Gains and Losses**:  With respect to the calculations made pursuant to Section 10(b) Claim Calculations, the Claimant's Section 10(b) Recognized Stock and Options Losses will be totaled (the "Total Section 10(b) Loss") and the Claimant's Section 10(b) Recognized Stock and Options Gains will be totaled (the "Total Section 10(b) Gain").  If the Total Section 10(b) Loss _minus_ the Total Section 10(b) Gain is a positive number, that will be the Claimant's Section 10(b) Recognized Loss Amount; if the number is a negative number, that will be the Claimant's Section 10(b) Recognized Gain Amount.

(b)    **Netting of Market Gains and Losses:**  With respect to all shares of BoA common stock purchased or acquired during the Class Period (other than shares obtained in exchange for Merrill shares in the Merger) and all January 2011 call options purchased or acquired during the Class Period, the Claims Administrator will also determine if the Claimant had a Market Gain or a Market Loss with respect to his, her or its overall transactions during the Class Period in those shares and options.  For purposes of making this calculation, the Claims Administrator shall determine the difference between (i) the Total Purchase Amount[17] and (ii) the sum of the Sales Proceeds[18] and the Holding Value.[19]  This difference will be deemed a Claimant's Market Gain or Market Loss with respect to his, her or its overall Section 10(b) transactions in BoA common stock and January 2011 call options.

89.    If a Claimant has a Section 10(b) Recognized Gain Amount _**or**_ a Market Gain, the value of that Claimant's Section 10(b) Claim will be zero.  If the Claimant has a Section 10(b) Recognized Loss Amount _**and**_ a Market Loss, the value of the Claimant's Section 10(b) Claim will be the lesser of the two.

90.    **Determination of Recognized Claim:**  For purposes of calculating a Claimant's Recognized Claim, the Claimant's Section 10(b) Claim shall be added to his, her or its Section 14(a) Claim.

91.    If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its _pro rata_ share of the Net Settlement Fund.  The _pro rata_ share shall be the

---

[17]  The "Total Purchase Amount" is the total amount the Claimant paid (excluding all fees, taxes and commissions) for all BoA common stock (other than shares obtained in exchange for Merrill shares in the Merger) and for all January 2011 call options purchased or acquired during the Class Period.

[18]  The Claims Administrator shall match any sales of BoA common stock or January 2011 call options during the Class Period, first against the Claimant's opening position in the like security (the proceeds of those sales will not be considered for purposes of calculating market gains or losses).  The total amount received for sales of the remaining BoA common stock, other than those shares of BoA common stock acquired in exchange for shares of Merrill in the Merger, and January 2011 call options sold during the Class Period is the "Sales Proceeds."

[19]  The Claims Administrator shall ascribe a "Holding Value" to each share of BoA common stock and each January 2011 call option purchased or acquired during the Class Period that was still held as of the close of trading on January 21, 2009. With respect to shares of BoA common stock, the Holding Value will be $5.71 per share other than for those shares of BoA common stock acquired in exchange for shares of Merrill in the Merger.  As noted above, those shares are not included in the calculations and, to the extent that any of them are included in the shares still held at the close of the Class Period, a value of zero will be ascribed to them.  With respect to January 2011 call options, the Holding Values for options still held at the close of the Class Period are set forth in Table 6 below.  With respect to January 2011 call options that were exercised during the Class Period, a value of zero will be ascribed to them.

Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

92.     If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund shall be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

93.     The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment is $20.00 or greater.  If the prorated payment to any Authorized Claimant calculates to less than $20.00, it will not be included in the calculation (*i.e.*, the Recognized Claim will be deemed to be zero) and no distribution will be made to that Authorized Claimant.

94.     To the extent that any monies remain in the Net Settlement Fund after GCG has caused distributions to be made to all Authorized Claimants, whether by reason of un-cashed distributions or otherwise, then, after GCG has made reasonable and diligent efforts to have Authorized Claimants cash their distributions, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be re-distributed to Authorized Claimants who have cashed their initial distributions and who would receive at least $20.00 from such re-distribution, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution.  Additional re-distributions to Authorized Claimants who have cashed their prior distribution checks and who would receive at least $20.00 on such additional re-distributions may occur thereafter if Co-Lead Counsel, in consultation with GCG, determine that additional re-distributions, after the deduction of any additional fees and expenses that would be incurred with respect to such re-distributions, would be cost-effective.  At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance in the Net Settlement Fund shall be contributed to non-sectarian, not-for-profit 501(c)(3) organization(s), to be recommended by Co-Lead Counsel and approved by the Court.

95.     Payment pursuant to the Plan of Allocation, or such other plan as may be approved by the Court, shall be conclusive against all Authorized Claimants.  No person shall have any claim against Lead Plaintiffs, Plaintiffs' Counsel, Defendants, Defendants' Counsel or any of the other Releasees, or the claims administrator, GCG, or other agent designated by Co-Lead Counsel arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further orders of the Court. Lead Plaintiffs, Defendants, Defendants' Counsel, Lead Plaintiffs' damages expert, and all other Releasees shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation, or the determination, administration, calculation, or payment of any Claim or any actions taken (or not taken) by the claims administrator, GCG, the payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

96.     The Plan of Allocation set forth herein is the plan that is being proposed by Lead Plaintiffs and Co-Lead Counsel to the Court for approval.  The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Class.  Any orders regarding a modification of the Plan of Allocation will be posted to the website for this Action, www.boasecuritieslitigation.com.

<div style="border:1px solid black; padding:8px; background:#e8e8e8;">

**WHAT CORPORATE GOVERNANCE ENHANCEMENT MEASURES WILL BOA IMPLEMENT OR CONTINUE AS A RESULT OF THE SETTLEMENT?**

</div>

97.    BoA will, within forty-five (45) days following the Court's entry of the Judgment, or Alternative Judgment if applicable, implement the following Corporate Governance Enhancements, and will maintain such Corporate Governance Enhancements through the later of January 1, 2015 or eighteen (18) months following the Court's entry of the Judgment, or Alternative Judgment if applicable.:

A.    BoA will amend Section 3 of its Corporate Governance Guidelines to read, in relevant part, as follows:

"**_Majority Voting for Directors_**.  In an uncontested election, a director who fails to receive the required number of votes for re-election in accordance with the Bylaws shall offer to resign.  In addition, a director whose resignation is under consideration shall abstain from participating in any recommendation or decision regarding that resignation.  The Corporate Governance Committee shall make a recommendation to the Board as to whether to accept or reject the tendered resignation, or whether other action should be taken.  The Corporate Governance Committee and the Board, in making their decisions, may consider any factor or other information that they deem relevant.  The Board shall act on the tendered resignation, taking into account the Corporate Governance Committee's recommendation, and shall publicly disclose its decision regarding the resignation and the basis for the decision within ninety (90) days after the results of the election are certified.  If the resignation is not accepted, the director will continue to serve until the next annual meeting of stockholders and until the director's successor is elected and qualified.  The Board shall not permit the director to stand for election at the next annual meeting."

B.    BoA will amend Section 8 of its Corporate Governance Guidelines to read, in relevant part, as follows:

"**_Minimum Stock Ownership by Executive Officers and Directors_**.  In order to align the interests of the Company's executive officers and directors with those of the Company's stockholders, the Board has adopted the following minimum stock ownership requirements: (a) the Chief Executive Officer shall hold at least 500,000 shares of the Company's common stock and retain at least 50% of the net after-tax shares from future equity awards until retirement; (b) other executive officers shall hold at least 300,000 shares of the Company's common stock and retain at least 50% of the net after-tax shares from future equity awards until the ownership guideline is achieved; and (c) non-management directors are required to hold and cannot sell the restricted stock they receive as compensation (except as necessary to pay taxes upon vesting) until termination of their service.  The Company shall disclose in its annual proxy statement any failure of any director to comply with the stock ownership guidelines.  All full value shares and units beneficially owned by executive officers and directors are included in the calculation; performance contingent shares and units are included in the calculation when earned; and stock options are not included.  Newly appointed executive officers will have up to five years to achieve compliance."

C.    In connection with the establishment of the Corporate Development Committee BoA will amend the charter for the Corporate Development Committee to read, in relevant part, as follows:

"**Committee Authority and Responsibilities**.  In carrying out its oversight responsibilities as set forth above, the Committee shall oversee senior management's establishment of policies and guidelines, to be adopted by the Board, establishing appropriate systems (including policies, procedures and/or management committees) to ensure that Applicable Transactions are vetted carefully and that adequate due diligence is performed prior to Board approval of any Applicable Transaction.  Among other things, the Committee shall ensure that the Chief Executive Officer and the Board are informed with respect to any bonus or incentive compensation agreements with an actual or estimated aggregate value exceeding 5% of the acquisition price at the time the Applicable Transaction is announced, which agreements have been negotiated in connection with an Applicable Transaction and are based on or otherwise related to such Applicable Transaction.  In connection with any Applicable Transaction to be submitted to the Board for approval, the Committee shall meet at least once, telephonically or in person, with members of senior management to review management's compliance with applicable policies and procedures related to the Company's consideration of the Applicable Transaction, prior to its presentation to the Board for approval."

98.    BoA will maintain the following corporate governance reforms (agreed to previously with the SEC) through January 1, 2015:

(i)      that all compensation committee members be super-independent;

(ii)     that BoA publish on its website the incentive compensation principles and the requirement that it adhere to them;

(iii)    that BoA have its Chief Executive and Chief Financial Officers certify that they have reviewed all annual and merger proxy statements;

(iv)    that BoA maintain a consultant to the Compensation Committee who would report solely to the Compensation Committee and would be "independent" under all applicable NYSE rules and guidelines concerning compensation consultants; and

(v)     that BoA provide shareholders with an annual non-binding "say on pay" with respect to executive compensation.

## HOW ARE CLASS MEMBERS AFFECTED BY THE ACTION AND THE SETTLEMENT?

99.    If you are a Class Member, you will be bound by any orders issued by the Court.  If the Settlement is approved, the Court will enter a judgment (the "Judgment").  The Judgment will dismiss with prejudice the claims against Defendants and will provide that, upon the Effective Date of the Settlement, Lead Plaintiffs and all other Class Members, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, affiliates and assigns, will fully and finally release, to the fullest extent that the law permits their release in this Action, as against Defendants and the other Defendants' Releasees (as defined in ¶101 below), all Released Lead Plaintiffs' Claims (as defined in ¶100 below).

100.    "Released Lead Plaintiffs' Claims" means any and all claims and causes of action of every nature and description, including both known claims and Unknown Claims, whether based on federal, state,

local or foreign statutory law or common law, rule or regulation, whether fixed or contingent, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, to the fullest extent permitted by law that Lead Plaintiffs or any other member of the Class (a) asserted in the Action, or (b) could have asserted against any of the Defendants' Releasees in any forum that (i) arise out of, are based upon or are related to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the First Amended Complaint or Second Amended Complaint; and (ii) that either arise out of or are based upon (a) the purchase or other acquisition of BoA common stock or BoA January 2011 call options during the Class Period, or (b) the holding of BoA common stock that gives rise to a Section 14(a) or 20(a) claim arising out of the vote by record holders of BoA common stock in connection with the Merger. Released Lead Plaintiffs' Claims do not include, release, bar, or waive: (1) the derivative claims that are being prosecuted on behalf of BoA in the actions that have been coordinated for pretrial purposes with this Action under the caption *In re Bank of America Corp. Securities, Derivative and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09 MDL 2058 (PKC) (S.D.N.Y.), (the "Consolidated Derivative Action"), including *Pinsly* v. *Holliday*, 12-CV-4778 (S.D.N.Y.) and *Waber* v. *Lewis*, 12-CV-4568 (S.D.N.Y.); (2) the derivative claims that are being prosecuted on behalf of BoA in the action styled *In re Bank of Am. Corp. Stockholder Deriv. Litig.*, C.A. No. 4307-CS (Del. Ch. Ct.); (3) the derivative claims that are being prosecuted on behalf of BoA in the action styled *Cunniff* v. *Lewis, et al.*, No. 09 CVS 3978 (N.C. Sup. Ct.); (4) any claims (other than claims for relief predicated on an alleged misrepresentation or omission after September 14, 2008 or claims released pursuant to the Order and Final Judgment in the action captioned, *County of York Employees Retirement Plan v. Merrill Lynch & Co., Inc. et al.*, C.A. No. 4066-VCN (Del. Ch. Aug. 31, 2009)) against any current or former director, officer or employee of Merrill based on any alleged breach prior to January 2, 2009 of any alleged duty to Merrill or its stockholders that have been asserted in (i) the Verified Third Amended Shareholder Derivative and Class Action Complaint filed on July 27, 2009 in the action captioned, *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation*, No. 07 Civ. 9696 (S.D.N.Y.), which was dismissed and is on appeal before the United States Court of Appeals for the Second Circuit under the caption, *Sollins v. O'Neal et al.*, No. 11-1589, or (ii) the Amended Complaint filed on September 14, 2009 in the action captioned, *Lambrecht v. O'Neal et al.*, No 09 Civ. 8259 (S.D.N.Y.), which was dismissed and is on appeal before the United States Court of Appeals for the Second Circuit under the caption, *Lambrecht v. O'Neal et al.*, No. 11-1285; (5) any claims in the action under the caption *State of New Jersey, Department of Treasury, Division of Investment, on behalf of Common Pension Fund A v. Merrill Lynch & Co., Inc. and Bank of America Corporation*, No. HUD-L-3855-09 (N.J. Sup. Ct.); (6) any claims of any person or entity that submitted a request for exclusion as set forth on Appendix 1 hereto and who does not opt back into the Class; or (7) if and only if the Court permits a second opportunity to request exclusion from the Class, any claims of any person or entity that submits a request for exclusion in connection with the Settlement Notice who does not withdraw his her or its request for exclusion and whose request is accepted by the Court (collectively, the "Excluded Claims").[20]  For the sake of clarity, no claims are being released with respect to securities not covered by the Court-certified Class definition. Additionally, Released Lead Plaintiffs' Claims do not include claims relating to the enforcement of the Settlement.

101.    "Defendants' Releasees" means the Defendants and their respective present and former parents, subsidiaries, divisions and affiliates and the respective present and former employees, members, partners, principals, officers, directors, attorneys, advisors, accountants, auditors, and insurers of each of them; and the

---

[20]  Pursuant to its Order Preliminarily Approving Proposed Settlement and Providing for Notice dated _____, 2012, the Court is not permitting Class Members with a second opportunity to exclude themselves from the Class.

predecessors, successors, estates, heirs, executors, trusts, trustees, administrators, agents, representatives and assigns of each of them, in their capacity as such.

102. "Unknown Claims" means any Released Claims which Lead Plaintiffs or any other Class Member, each of the Defendants or any of the other Releasees, does not know or suspect to exist in his, her or its favor at the time of the release of each or any of the other Releasees, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to the Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiffs and each of the Defendants shall expressly waive, and each of the other Class Members and each of the other Releasees shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiffs and each of the Defendants acknowledge, and each of the other Class Members and each of the other Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement.

## WHAT PAYMENT ARE THE ATTORNEYS FOR THE CLASS SEEKING? HOW WILL THE LAWYERS BE PAID?

103. Co-Lead Counsel have not received any payment for their services in pursuing claims against the Defendants on behalf of the Class, nor have Co-Lead Counsel been reimbursed for their out-of-pocket expenses. Before final approval of the Settlement, Co-Lead Counsel will apply to the Court for an award of attorneys' fees from the Settlement Fund in the amount of 6.56% of the Settlement Fund.  At the same time, Co-Lead Counsel also intend to apply for the reimbursement of Litigation Expenses not to exceed $17.5 million, which may include an application for reimbursement of the reasonable costs and expenses incurred by Class Representatives directly related to their representation of the Class.  The Court will determine the amount of any award of attorneys' fees or reimbursement of Litigation Expenses.  Such sums as may be approved by the Court will be paid from the Settlement Fund.  Class Members are not personally liable for any such fees or expenses.

## HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO?

104. To be eligible for a payment from the proceeds of the Settlement, you must be a member of the Class and you must timely complete and return the Claim Form with adequate supporting documentation **postmarked no later than _____, 2013**.  A Claim Form is included with this Notice, or you may obtain one from the website for this Action, www.boasecuritieslitigation.com, or you may request that a Claim Form be mailed to you by calling the claims administrator, GCG, toll free at (855) 733-8308.  Please retain all records of your ownership of and transactions in BoA securities, as they may be needed to document your Claim.  If you are excluded from the Class by definition or you previously submitted a request for exclusion in connection with the Class Notice and do not opt-back into the Class in accordance with the instructions set forth in ¶109 below, or if you do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Fund.

105.    As a Class Member, you are represented by the Class Representatives and Co-Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense.  You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf and must serve copies of his or her notice of appearance on the attorneys listed in the section entitled, "When and Where Will the Court Decide Whether to Approve the Settlement?," below.

106.    If you are a Class Member who has not previously submitted a request for exclusion in connection with the Class Notice and you wish to object to the Settlement, the proposed Plan of Allocation, or Co-Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, you may present your objections by following the instructions in the section entitled, "When and Where Will the Court Decide Whether to Approve the Settlement?," below.

---

**"OPTING-BACK" INTO THE CLASS**
**WHAT IF I PREVIOUSLY REQUESTED EXCLUSION FROM THE CLASS AND NOW WANT TO BE ELIGIBLE TO RECEIVE A PAYMENT FROM THE SETTLEMENT FUND?**
**HOW DO I OPT-BACK INTO THE CLASS?**

---

107.    If you previously submitted a request for exclusion from the Class in connection with the Class Notice (*see* Appendix 1 to the Stipulation), you may elect to opt-back into the Class and be eligible to receive a payment from the Settlement.

108.    If you believe that you previously submitted a request for exclusion but your name does not appear on Appendix 1 to the Stipulation, you can contact the claims administrator, GCG, at (855) 733-8308 for assistance.

109.    In order to opt-back into the Class, you, individually or through counsel, must submit a written Request to Opt-Back Into the Class to GCG, addressed as follows: *In re Bank of America Corp. Securities Litigation*, c/o The Garden City Group, Inc., P.O. Box 9876, Dublin, Ohio 43017-5776.  This request must be *received* no later than _____, 2013.  Your Request to Opt-Back Into the Class must (a) state the name, address and telephone number of the person or entity requesting to opt-back into the Class; (b) state that such person or entity "requests to opt-back into the Class in the *In re Bank of America Corp. Securities Litigation*, Master File No. 09 MDL 2058 (PKC)"; and (c) be signed by the person or entity requesting to opt-back into the Class or an authorized representative.

110.    You may not opt-back into the Class for the purpose of objecting to any aspect of the Settlement, Plan of Allocation, or Co-Lead Counsel's request for attorneys' fees and reimbursement of Litigation Expenses.

111.    **PLEASE NOTE:  OPTING-BACK INTO THE CLASS IN ACCORDANCE WITH THE REQUIREMENTS SET FORTH ABOVE DOES NOT MEAN THAT YOU WILL AUTOMATICALLY BE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.  IF YOU OPT-BACK INTO THE CLASS AND YOU WISH TO BE ELIGIBLE TO PARTICIPATE IN THE DISTRIBUTION OF PROCEEDS FROM THE SETTLEMENT, YOU ARE ALSO REQUIRED TO SUBMIT THE CLAIM FORM THAT IS BEING DISTRIBUTED WITH THIS NOTICE AND THE REQUIRED SUPPORTING DOCUMENTATION AS SET FORTH THEREIN POSTMARKED NO LATER THAN _____, 2013.**

---

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?**
**DO I HAVE TO COME TO THE HEARING?**
**MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?**

---

112.    Class Members do not need to attend the Settlement Fairness Hearing.  The Court will consider any submission made in accordance with the provisions below even if a Class Member does not attend the hearing.  You can participate in the Settlement without attending the Settlement Fairness Hearing.

113.    The Settlement Fairness Hearing will be held on _____, 2013 at _:__ _ m. before the Honorable P. Kevin Castel, at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Courtroom 12C, New York, NY 10007.  The Court reserves the right to approve the Settlement, the Plan of Allocation, Co-Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and/or any other matter related to the Settlement at or after the Settlement Fairness Hearing without further notice to the members of the Class.

114.    Any Class Member who did not submit a request for exclusion from the Class in connection with the Class Notice may object to the proposed Settlement, the proposed Plan of Allocation, or Co-Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  Objections must be in writing.  You must file any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office of the Court at the address set forth below on or before _____, 2013.  You must also serve the papers on Co-Lead Counsel for the Class and Representative Defendants' Counsel at the addresses set forth below so that the papers are *received* on or before _____, 2013.

| **Clerk's Office** | **Co-Lead Counsel for the Class** | **Representative Defendants' Counsel** |
|:---:|:---:|:---:|
| United States District Court | **Bernstein Litowitz Berger &** | **Paul, Weiss, Rifkind,** |
| Southern District of New York | **Grossmann LLP** | **Wharton & Garrison LLP** |
| Clerk of the Court | Max W. Berger, Esq. | Brad Karp, Esq. |
| Daniel Patrick Moynihan | Steven B. Singer, Esq. | Daniel J. Kramer, Esq. |
| United States Courthouse | 1285 Avenue of the Americas | Audra J. Soloway, Esq. |
| 500 Pearl Street | New York, NY 10022 | 1285 Avenue of the Americas |
| New York, NY 10007-1312 | | New York, NY 10019-6064 |
| | **Kaplan Fox & Kilsheimer LLP** | |
| | Robert N. Kaplan, Esq. | |
| | Frederic S. Fox, Esq. | |
| | 850 Third Avenue | |
| | 14th Floor | |
| | New York, NY 10022 | |
| | **Kessler Topaz Meltzer &** | |
| | **Check, LLP** | |
| | David Kessler, Esq. | |
| | Gregory M. Castaldo, Esq. | |
| | 280 King of Prussia Road | |
| | Radnor, PA 19087 | |

115.    Any objection to the Settlement (a) must state the name, address and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove the objector's membership in the Class such as the number of shares of BoA common stock and the number of January 2011 call options on BoA common stock that the objecting Class Member purchased, otherwise acquired, held and/or sold during the relevant periods as well as the dates and prices of each such purchase, acquisition and/or sale, or the objector's holding in BoA common stock as of October 10, 2008.  You may not object to the Settlement, the Plan of Allocation or Co-Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses if you previously submitted a request for exclusion from the Class in connection with the Class Notice or if you are not a member of the Class.

116.    You may file a written objection without having to appear at the Settlement Fairness Hearing. You may not, however, appear at the Settlement Fairness Hearing to present your objection unless you first filed and served a written objection in accordance with the procedures described above, unless the Court orders otherwise.

117.    If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the Plan of Allocation, or Co-Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and if you file and serve a timely written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Co-Lead Counsel and Representative Defendants' Counsel at the addresses set forth above so that it is *received* on or before _____, 2013.  Persons who intend to object and desire to present evidence at the Settlement Fairness Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing.  Such persons may be heard orally at the discretion of the Court.

118.    You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Fairness Hearing.  However, if you decide to hire an attorney, it will be at your own expense, and that attorney must file a notice of appearance with the Court and serve it on Co-Lead Counsel and Representative Defendants' Counsel at the addresses set forth above so that the notice is *received* on or before _____, 2013.

119.    The Settlement Fairness Hearing may be adjourned by the Court without further written notice to the Class.  If you intend to attend the Settlement Fairness Hearing, you should confirm the date and time with Co-Lead Counsel.

120.    **Unless the Court orders otherwise, any Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation, or Co-Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  Class Members do not need to appear at the hearing or take any other action to indicate their approval.**

## WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF?

121.    In the Class Notice you were advised that, if, for the beneficial interest of any person or entity other than yourself, you (1) held BoA common stock as of October 10, 2008, for a person or entity that was entitled to vote on the merger between BoA and Merrill, (2) purchased or otherwise acquired the common stock

of BoA during the period from September 18, 2008 through January 21, 2009, inclusive, excluding shares of BoA common stock acquired by exchanging Merrill common stock for BoA common stock through the merger between the two companies that was consummated on January 1, 2009; (3) purchased or otherwise acquired January 2011 call options on BoA common stock from September 18, 2008 through January 21, 2009, inclusive; or (4) purchased BoA common stock issued under the Registration Statement for the Secondary Offering that occurred on or about October 7, 2008, you must either: (a) within seven (7) calendar days of receipt of the Class Notice, request from GCG sufficient copies of the Class Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of the copies of the Class Notice forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of the Class Notice, provide a list of the names and addresses of all such beneficial owners to *In re Bank of America Corp. Securities Litigation*, c/o The Garden City Group, Inc., P.O. Box 9876, Dublin, Ohio 43017-5776.

122.   If you chose the first option, *i.e.*, you elected to mail the Class Notice directly to beneficial owners, you were advised that you must retain the mailing records for BoA common stock for use in connection with any further notices that may be provided in the Action.  If you elected that option, GCG will forward the same number of this Notice and Claim Form (together, the "Notice Packet") to you to send to the beneficial owners.  If you require more copies than you previously requested, please contact GCG toll-free at (855) 733-8308 and let them know how many additional Notice Packets you require.  You must mail the Notice Packets to the beneficial owners within seven (7) calendar days of your receipt of the packets.  Upon mailing of the Notice Packets, you may seek reimbursement of your reasonable expenses actually incurred, by providing GCG with proper documentation supporting the expenses for which reimbursement is sought.

123.   If you chose the second option, GCG will send a copy of the Notice and the Claim Form to the beneficial owners whose names and addresses you previously supplied.  Unless you believe that you purchased or acquired any of the relevant securities for beneficial owners whose names you did not previously provide to GCG, you need do nothing further at this time.  If you believe that you did purchase or acquire any of the relevant securities for beneficial owners whose names you did not previously provide to GCG, you must within seven (7) calendar days of receipt of this Notice, provide a list of the names and addresses of all such beneficial owners to *In re Bank of America Corp. Securities Litigation*, c/o The Garden City Group, Inc., P.O. Box 9876, Dublin, Ohio 43017-5776.  Upon full compliance with these directions, you may seek reimbursement of your reasonable expenses actually incurred, by providing GCG with proper documentation supporting the expenses for which reimbursement is sought.  Copies of this Notice and the Claim Form may also be obtained from website for this Action, www.boasecuritieslitigation.com, or by calling the claims administrator, GCG, toll-free at (855) 733-8308.

| CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS? |
| --- |

124.   This Notice contains only a summary of the terms of the proposed Settlement.  For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Stipulation, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007.  Additionally, copies of the Stipulation and any related orders entered by the Court will be posted on the website for this Action, www.boasecuritieslitigation.com.  All inquiries concerning this Notice or the Claim Form should be directed to GCG or Co-Lead Counsel at:

*In re Bank of America Corp.*
*Securities Litigation,*
c/o The Garden City Group, Inc.
P.O. Box 9876
Dublin, Ohio 43017-5776
(855) 733-8308
www.boasecuritieslitigation.com

and/or

| **Bernstein Litowitz Berger & Grossmann LLP** | **Kaplan Fox & Kilsheimer LLP** | **Kessler Topaz Meltzer & Check, LLP** |
|---|---|---|
| Max W. Berger, Esq. | Robert N. Kaplan, Esq. | David Kessler, Esq. |
| Steven B. Singer, Esq. | Frederic S. Fox, Esq. | Gregory M. Castaldo, Esq. |
| 1285 Avenue of the Americas | 850 Third Avenue | 280 King of Prussia Road |
| New York, NY 10022 | 14th Floor | Radnor, PA 19087 |
| (800) 380-8496 | New York, NY 10022 | (610) 667-7706 |
| blbg@blbglaw.com | (800) 290-1952 | info@ktmc.com |
| | mail@kaplanfox.com | |

**DO NOT CALL OR WRITE THE COURT OR THE OFFICE OF THE CLERK OF COURT REGARDING THIS NOTICE.**
**DO NOT CALL OR WRITE BANK OF AMERICA CORPORATION REGARDING THIS NOTICE.**

Dated: _____, 2012

By Order of the Clerk of Court
United States District Court
for the Southern District of New York

# 689579

34

| Table 1. Common Stock Daily Inflation | |
|---|---|
| **Date** | **Daily Inflation** |
| 9/18/2008 | $0.49 |
| 9/19/2008 | $0.49 |
| 9/22/2008 | $0.49 |
| 9/23/2008 | $0.49 |
| 9/24/2008 | $0.49 |
| 9/25/2008 | $0.49 |
| 9/26/2008 | $0.49 |
| 9/29/2008 | $0.49 |
| 9/30/2008 | $0.49 |
| 10/1/2008 | $0.49 |
| 10/2/2008 | $0.49 |
| 10/3/2008 | $0.49 |
| 10/6/2008 | $0.49 |
| 10/7/2008 | $0.49 |
| 10/8/2008 | $0.49 |
| 10/9/2008 | $0.49 |
| 10/10/2008 | $0.49 |
| 10/13/2008 | $0.49 |
| 10/14/2008 | $0.49 |
| 10/15/2008 | $0.49 |
| 10/16/2008 | $0.49 |
| 10/17/2008 | $0.49 |
| 10/20/2008 | $0.49 |
| 10/21/2008 | $0.49 |
| 10/22/2008 | $0.49 |
| 10/23/2008 | $0.49 |
| 10/24/2008 | $0.49 |
| 10/27/2008 | $0.49 |
| 10/28/2008 | $0.49 |
| 10/29/2008 | $0.49 |
| 10/30/2008 | $0.49 |
| 10/31/2008 | $0.49 |
| 11/3/2008 | $1.37 |
| 11/4/2008 | $1.92 |
| 11/5/2008 | $2.03 |
| 11/6/2008 | $2.07 |
| 11/7/2008 | $2.08 |
| 11/10/2008 | $2.26 |
| 11/11/2008 | $2.26 |
| 11/12/2008 | $2.26 |

| Table 1. Common Stock Daily Inflation | |
|---|---|
| **Date** | **Daily Inflation** |
| 11/13/2008 | $2.25 |
| 11/14/2008 | $2.25 |
| 11/17/2008 | $2.25 |
| 11/18/2008 | $2.25 |
| 11/19/2008 | $2.27 |
| 11/20/2008 | $2.71 |
| 11/21/2008 | $2.45 |
| 11/24/2008 | $2.45 |
| 11/25/2008 | $2.45 |
| 11/26/2008 | $2.60 |
| 11/28/2008 | $2.93 |
| 12/1/2008 | $2.69 |
| 12/2/2008 | $2.95 |
| 12/3/2008 | $3.70 |
| 12/4/2008 | $3.69 |
| 12/5/2008 | $3.69 |
| 12/8/2008 | $4.10 |
| 12/9/2008 | $4.10 |
| 12/10/2008 | $4.50 |
| 12/11/2008 | $4.50 |
| 12/12/2008 | $4.50 |
| 12/15/2008 | $4.50 |
| 12/16/2008 | $4.66 |
| 12/17/2008 | $4.55 |
| 12/18/2008 | $4.55 |
| 12/19/2008 | $4.55 |
| 12/22/2008 | $4.74 |
| 12/23/2008 | $4.74 |
| 12/24/2008 | $4.74 |
| 12/26/2008 | $4.74 |
| 12/29/2008 | $4.64 |
| 12/30/2008 | $4.68 |
| 12/31/2008 | $4.74 |
| 1/2/2009 | $4.74 |
| 1/5/2009 | $4.74 |
| 1/6/2009 | $4.74 |
| 1/7/2009 | $4.74 |
| 1/8/2009 | $4.74 |
| 1/9/2009 | $4.74 |
| 1/12/2009 | $4.06 |
| 1/13/2009 | $3.32 |
| 1/14/2009 | $3.32 |

| Table 1. Common Stock Daily Inflation | |
|---|---|
| **Date** | **Daily Inflation** |
| 1/15/2009 | $1.59 |
| 1/16/2009 | $0.49 |
| 1/20/2009 | $0.49 |
| 1/21/2009 | $0.49 |
| 1/22/2009 | $0.00 |

| Table 2. Average 90 Day Look-Back Closing Prices ||
| Date | Average Price |
|---|---|
| 1/22/2009 | $5.71 |
| 1/23/2009 | $5.98 |
| 1/26/2009 | $5.98 |
| 1/27/2009 | $6.11 |
| 1/28/2009 | $6.37 |
| 1/29/2009 | $6.44 |
| 1/30/2009 | $6.46 |
| 2/2/2009 | $6.40 |
| 2/3/2009 | $6.28 |
| 2/4/2009 | $6.12 |
| 2/5/2009 | $6.00 |
| 2/6/2009 | $6.01 |
| 2/9/2009 | $6.08 |
| 2/10/2009 | $6.04 |
| 2/11/2009 | $6.05 |
| 2/12/2009 | $6.04 |
| 2/13/2009 | $6.01 |
| 2/17/2009 | $5.95 |
| 2/18/2009 | $5.87 |
| 2/19/2009 | $5.78 |
| 2/20/2009 | $5.68 |
| 2/23/2009 | $5.60 |
| 2/24/2009 | $5.56 |
| 2/25/2009 | $5.55 |
| 2/26/2009 | $5.54 |
| 2/27/2009 | $5.48 |
| 3/2/2009 | $5.41 |
| 3/3/2009 | $5.35 |
| 3/4/2009 | $5.28 |
| 3/5/2009 | $5.21 |
| 3/6/2009 | $5.15 |
| 3/9/2009 | $5.10 |
| 3/10/2009 | $5.09 |
| 3/11/2009 | $5.09 |
| 3/12/2009 | $5.11 |
| 3/13/2009 | $5.13 |
| 3/16/2009 | $5.16 |
| 3/17/2009 | $5.19 |
| 3/18/2009 | $5.25 |
| 3/19/2009 | $5.29 |
| 3/20/2009 | $5.31 |
| 3/23/2009 | $5.37 |

| Table 2. Average 90 Day Look-Back Closing Prices | |
| --- | --- |
| Date | Average Price |
| 3/24/2009 | $5.42 |
| 3/25/2009 | $5.47 |
| 3/26/2009 | $5.52 |
| 3/27/2009 | $5.56 |
| 3/30/2009 | $5.57 |
| 3/31/2009 | $5.59 |
| 4/1/2009 | $5.62 |
| 4/2/2009 | $5.65 |
| 4/3/2009 | $5.69 |
| 4/6/2009 | $5.73 |
| 4/7/2009 | $5.76 |
| 4/8/2009 | $5.78 |
| 4/9/2009 | $5.85 |
| 4/13/2009 | $5.94 |
| 4/14/2009 | $6.01 |
| 4/15/2009 | $6.09 |
| 4/16/2009 | $6.16 |
| 4/17/2009 | $6.24 |
| 4/20/2009 | $6.27 |
| 4/21/2009 | $6.31 |

| | Table 3. Inflation Per Option (Organized by Strike Price) | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Strike Price** | | | | | | | | | | | | | | | | |
| **Date** | **$2.50** | **$5.00** | **$7.50** | **$10** | **$12.50** | **$15** | **$17.50** | **$20** | **$22.50** | **$25** | **$30** | **$35** | **$40** | **$45** | **$50** | **$55** | **$60** |
| 9/18/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 9/19/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 9/22/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 9/23/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 9/24/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 9/25/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 9/26/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 9/29/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 9/30/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 10/1/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 10/2/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 10/3/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 10/6/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 10/7/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 10/8/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 10/9/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 10/10/2008 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 10/13/2008 | $ - | $ - | $ - | $ - | $ - | $0.39 | $ - | $0.35 | $ - | $0.32 | $0.27 | $0.24 | $0.20 | $ - | $ - | $ - | $ - |
| 10/14/2008 | $ - | $ - | $ - | $ - | $ - | $0.41 | $ - | $0.37 | $ - | $0.33 | $0.29 | $0.25 | $0.21 | $ - | $ - | $ - | $ - |
| 10/15/2008 | $ - | $ - | $ - | $ - | $ - | $0.40 | $ - | $0.35 | $ - | $0.31 | $0.27 | $0.23 | $0.19 | $ - | $ - | $ - | $ - |
| 10/16/2008 | $ - | $ - | $ - | $ - | $ - | $0.40 | $ - | $0.36 | $ - | $0.31 | $0.26 | $0.22 | $0.18 | $ - | $ - | $ - | $ - |
| 10/17/2008 | $ - | $ - | $ - | $ - | $ - | $0.39 | $ - | $0.35 | $ - | $0.30 | $0.25 | $0.21 | $0.17 | $ - | $ - | $ - | $ - |
| 10/20/2008 | $ - | $ - | $ - | $ - | $ - | $0.40 | $ - | $0.35 | $ - | $0.31 | $0.26 | $0.21 | $0.17 | $ - | $ - | $ - | $ - |
| 10/21/2008 | $ - | $ - | $ - | $ - | $ - | $0.40 | $ - | $0.35 | $ - | $0.30 | $0.25 | $0.20 | $0.16 | $ - | $ - | $ - | $ - |
| 10/22/2008 | $ - | $ - | $ - | $ - | $ - | $0.39 | $ - | $0.34 | $ - | $0.29 | $0.24 | $0.20 | $0.16 | $ - | $ - | $ - | $ - |
| 10/23/2008 | $ - | $ - | $ - | $ - | $ - | $0.39 | $ - | $0.34 | $ - | $0.29 | $0.24 | $0.20 | $0.15 | $0.12 | $ - | $ - | $ - |
| 10/24/2008 | $ - | $ - | $ - | $ - | $ - | $0.38 | $ - | $0.33 | $ - | $0.28 | $0.23 | $0.19 | $0.15 | $0.11 | $ - | $ - | $ - |
| 10/27/2008 | $ - | $ - | $ - | $ - | $ - | $0.37 | $ - | $0.32 | $ - | $0.27 | $0.22 | $0.18 | $0.14 | $0.11 | $ - | $ - | $ - |
| 10/28/2008 | $ - | $ - | $ - | $ - | $ - | $0.39 | $ - | $0.34 | $ - | $0.29 | $0.24 | $0.19 | $0.15 | $0.11 | $ - | $ - | $ - |
| 10/29/2008 | $ - | $ - | $ - | $ - | $ - | $0.38 | $ - | $0.33 | $ - | $0.28 | $0.24 | $0.19 | $0.15 | $0.11 | $ - | $ - | $ - |
| 10/30/2008 | $ - | $ - | $ - | $ - | $ - | $0.39 | $ - | $0.34 | $ - | $0.28 | $0.23 | $0.19 | $0.14 | $0.11 | $ - | $ - | $ - |
| 10/31/2008 | $ - | $ - | $ - | $ - | $ - | $0.40 | $ - | $0.35 | $ - | $0.29 | $0.24 | $0.20 | $0.15 | $0.11 | $ - | $ - | $ - |
| 11/3/2008 | $ - | $ - | $ - | $ - | $ - | $1.08 | $ - | $0.94 | $ - | $0.80 | $0.66 | $0.53 | $0.41 | $0.31 | $ - | $ - | $ - |
| 11/4/2008 | $ - | $ - | $ - | $ - | $ - | $1.53 | $ - | $1.34 | $ - | $1.13 | $0.92 | $0.73 | $0.55 | $0.41 | $ - | $ - | $ - |
| 11/5/2008 | $ - | $ - | $ - | $ - | $ - | $1.54 | $ - | $1.30 | $ - | $1.07 | $0.86 | $0.68 | $0.50 | $0.35 | $ - | $ - | $ - |

| | Table 3. Inflation Per Option (Organized by Strike Price) | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Strike Price** | | | | | | | | | | | | | | | |
| **Date** | **$2.50** | **$5.00** | **$7.50** | **$10** | **$12.50** | **$15** | **$17.50** | **$20** | **$22.50** | **$25** | **$30** | **$35** | **$40** | **$45** | **$50** | **$55** | **$60** |
| 11/6/2008 | $ - | $ - | $ - | $ - | $ - | $1.52 | $ - | $1.29 | $ - | $1.07 | $0.85 | $0.67 | $0.51 | $0.38 | $ - | $ - | $ - |
| 11/7/2008 | $ - | $ - | $ - | $ - | $ - | $1.54 | $ - | $1.31 | $ - | $1.09 | $0.87 | $0.70 | $0.52 | $0.39 | $ - | $ - | $ - |
| 11/10/2008 | $ - | $ - | $ - | $ - | $ - | $1.64 | $ - | $1.39 | $ - | $1.15 | $0.93 | $0.73 | $0.57 | $0.42 | $ - | $ - | $ - |
| 11/11/2008 | $ - | $ - | $ - | $ - | $ - | $1.61 | $ - | $1.36 | $ - | $1.11 | $0.89 | $0.70 | $0.54 | $0.42 | $ - | $ - | $ - |
| 11/12/2008 | $ - | $ - | $ - | $ - | $ - | $1.54 | $ - | $1.28 | $ - | $1.06 | $0.83 | $0.65 | $0.50 | $0.39 | $ - | $ - | $ - |
| 11/13/2008 | $ - | $ - | $ - | $ - | $ - | $1.56 | $ - | $1.30 | $ - | $1.07 | $0.86 | $0.68 | $0.53 | $0.41 | $ - | $ - | $ - |
| 11/14/2008 | $2.18 | $2.06 | $1.93 | $1.79 | $1.66 | $1.52 | $1.39 | $1.26 | $1.15 | $1.03 | $0.81 | $0.64 | $0.49 | $0.38 | $0.28 | $0.21 | $0.16 |
| 11/17/2008 | $2.17 | $2.03 | $1.88 | $1.74 | $1.60 | $1.46 | $1.32 | $1.19 | $1.07 | $0.95 | $0.74 | $0.57 | $0.42 | $0.31 | $0.23 | $0.17 | $0.12 |
| 11/18/2008 | $2.17 | $2.03 | $1.89 | $1.74 | $1.60 | $1.46 | $1.32 | $1.18 | $1.06 | $0.94 | $0.71 | $0.54 | $0.39 | $0.30 | $0.20 | $0.14 | $0.11 |
| 11/19/2008 | $2.16 | $1.99 | $1.84 | $1.68 | $1.53 | $1.38 | $1.25 | $1.12 | $0.98 | $0.86 | $0.66 | $0.50 | $0.37 | $0.28 | $0.18 | $0.13 | $0.10 |
| 11/20/2008 | $2.51 | $2.35 | $2.10 | $1.92 | $1.72 | $1.56 | $1.37 | $1.24 | $1.08 | $0.94 | $0.74 | $0.58 | $0.43 | $0.34 | $0.22 | $0.16 | $0.11 |
| 11/21/2008 | $2.28 | $2.11 | $1.93 | $1.74 | $1.57 | $1.41 | $1.26 | $1.07 | $0.95 | $0.84 | $0.60 | $0.44 | $0.33 | $0.25 | $0.18 | $0.13 | $0.11 |
| 11/24/2008 | $2.34 | $2.19 | $2.04 | $1.88 | $1.72 | $1.57 | $1.40 | $1.25 | $1.10 | $0.97 | $0.72 | $0.53 | $0.40 | $0.29 | $0.22 | $0.15 | $0.12 |
| 11/25/2008 | $2.35 | $2.20 | $2.05 | $1.90 | $1.74 | $1.57 | $1.42 | $1.27 | $1.10 | $0.98 | $0.73 | $0.55 | $0.37 | $0.29 | $0.20 | $0.14 | $0.12 |
| 11/26/2008 | $2.50 | $2.35 | $2.20 | $2.04 | $1.87 | $1.69 | $1.52 | $1.35 | $1.18 | $1.04 | $0.77 | $0.53 | $0.38 | $0.28 | $0.19 | $0.14 | $0.11 |
| 11/28/2008 | $2.82 | $2.67 | $2.50 | $2.32 | $2.14 | $1.95 | $1.73 | $1.54 | $1.30 | $1.19 | $0.87 | $0.58 | $0.40 | $0.30 | $0.20 | $0.13 | $0.12 |
| 12/1/2008 | $2.55 | $2.38 | $2.18 | $1.99 | $1.79 | $1.59 | $1.40 | $1.22 | $1.04 | $0.90 | $0.64 | $0.47 | $0.33 | $0.23 | $0.16 | $0.11 | $0.09 |
| 12/2/2008 | $2.81 | $2.62 | $2.44 | $2.23 | $2.03 | $1.83 | $1.63 | $1.41 | $1.23 | $1.05 | $0.76 | $0.53 | $0.36 | $0.27 | $0.18 | $0.11 | $0.09 |
| 12/3/2008 | $3.54 | $3.33 | $3.11 | $2.86 | $2.63 | $2.37 | $2.10 | $1.87 | $1.65 | $1.40 | $1.01 | $0.71 | $0.47 | $0.30 | $0.19 | $0.13 | $0.10 |
| 12/4/2008 | $3.52 | $3.29 | $3.05 | $2.81 | $2.56 | $2.30 | $2.04 | $1.79 | $1.57 | $1.34 | $0.96 | $0.66 | $0.45 | $0.31 | $0.21 | $0.13 | $0.11 |
| 12/5/2008 | $3.53 | $3.33 | $3.11 | $2.86 | $2.61 | $2.36 | $2.09 | $1.85 | $1.60 | $1.38 | $0.97 | $0.66 | $0.46 | $0.31 | $0.20 | $0.13 | $0.11 |
| 12/8/2008 | $3.98 | $3.77 | $3.55 | $3.32 | $3.07 | $2.81 | $2.55 | $2.28 | $2.01 | $1.76 | $1.30 | $0.90 | $0.59 | $0.39 | $0.26 | $0.17 | $0.11 |
| 12/9/2008 | $3.95 | $3.76 | $3.54 | $3.27 | $3.02 | $2.74 | $2.48 | $2.23 | $1.95 | $1.71 | $1.26 | $0.88 | $0.59 | $0.41 | $0.27 | $0.17 | $0.13 |
| 12/10/2008 | $4.34 | $4.09 | $3.83 | $3.56 | $3.26 | $2.97 | $2.66 | $2.39 | $2.08 | $1.80 | $1.31 | $0.91 | $0.62 | $0.41 | $0.27 | $0.18 | $0.14 |
| 12/11/2008 | $4.29 | $4.03 | $3.74 | $3.44 | $3.11 | $2.80 | $2.48 | $2.17 | $1.89 | $1.62 | $1.15 | $0.80 | $0.53 | $0.34 | $0.23 | $0.15 | $0.10 |
| 12/12/2008 | $4.29 | $4.02 | $3.74 | $3.42 | $3.10 | $2.79 | $2.47 | $2.16 | $1.89 | $1.62 | $1.17 | $0.81 | $0.55 | $0.38 | $0.25 | $0.16 | $0.11 |
| 12/15/2008 | $4.26 | $3.98 | $3.68 | $3.35 | $3.03 | $2.68 | $2.38 | $2.09 | $1.80 | $1.53 | $1.10 | $0.77 | $0.53 | $0.36 | $0.25 | $0.16 | $0.13 |
| 12/16/2008 | $4.45 | $4.16 | $3.86 | $3.53 | $3.18 | $2.86 | $2.55 | $2.20 | $1.90 | $1.63 | $1.15 | $0.80 | $0.52 | $0.36 | $0.23 | $0.15 | $0.11 |
| 12/17/2008 | $4.33 | $4.07 | $3.76 | $3.40 | $3.07 | $2.74 | $2.41 | $2.08 | $1.82 | $1.49 | $1.01 | $0.67 | $0.43 | $0.27 | $0.17 | $0.11 | $0.09 |
| 12/18/2008 | $4.31 | $4.01 | $3.68 | $3.34 | $2.97 | $2.62 | $2.28 | $1.98 | $1.68 | $1.39 | $0.94 | $0.62 | $0.40 | $0.26 | $0.17 | $0.10 | $0.09 |
| 12/19/2008 | $4.30 | $3.99 | $3.66 | $3.31 | $2.93 | $2.58 | $2.24 | $1.90 | $1.60 | $1.31 | $0.87 | $0.56 | $0.35 | $0.23 | $0.16 | $0.10 | $0.09 |
| 12/22/2008 | $4.56 | $4.20 | $3.83 | $3.45 | $3.06 | $2.66 | $2.30 | $1.96 | $1.66 | $1.38 | $0.93 | $0.62 | $0.40 | $0.26 | $0.18 | $0.12 | $0.10 |
| 12/23/2008 | $4.53 | $4.17 | $3.77 | $3.32 | $2.91 | $2.52 | $2.17 | $1.82 | $1.51 | $1.25 | $0.83 | $0.57 | $0.33 | $0.23 | $0.15 | $0.11 | $0.10 |
| 12/24/2008 | $4.56 | $4.17 | $3.82 | $3.42 | $2.98 | $2.63 | $2.27 | $1.92 | $1.61 | $1.33 | $0.88 | $0.60 | $0.38 | $0.26 | $0.16 | $0.12 | $0.10 |
| 12/26/2008 | $4.51 | $4.16 | $3.77 | $3.37 | $2.96 | $2.56 | $2.19 | $1.86 | $1.55 | $1.27 | $0.82 | $0.52 | $0.34 | $0.22 | $0.16 | $0.11 | $0.10 |

| | Table 3. Inflation Per Option (Organized by Strike Price) | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Strike Price | | | | | | | | | | | | | | | |
| **Date** | **$2.50** | **$5.00** | **$7.50** | **$10** | **$12.50** | **$15** | **$17.50** | **$20** | **$22.50** | **$25** | **$30** | **$35** | **$40** | **$45** | **$50** | **$55** | **$60** |
| 12/29/2008 | $4.35 | $4.00 | $3.62 | $3.22 | $2.84 | $2.45 | $2.09 | $1.75 | $1.45 | $1.19 | $0.77 | $0.49 | $0.32 | $0.19 | $0.14 | $0.10 | $0.09 |
| 12/30/2008 | $4.40 | $4.02 | $3.66 | $3.24 | $2.86 | $2.49 | $2.11 | $1.76 | $1.47 | $1.21 | $0.78 | $0.51 | $0.31 | $0.22 | $0.15 | $0.10 | $0.10 |
| 12/31/2008 | $4.49 | $4.14 | $3.77 | $3.38 | $2.99 | $2.61 | $2.23 | $1.88 | $1.57 | $1.28 | $0.82 | $0.52 | $0.30 | $0.21 | $0.14 | $0.10 | $0.08 |
| 1/2/2009 | $4.49 | $4.16 | $3.80 | $3.41 | $3.05 | $2.65 | $2.27 | $1.93 | $1.59 | $1.29 | $0.85 | $0.53 | $0.33 | $0.21 | $0.13 | $0.09 | $0.08 |
| 1/5/2009 | $4.49 | $4.14 | $3.77 | $3.36 | $2.97 | $2.58 | $2.24 | $1.89 | $1.55 | $1.27 | $0.83 | $0.54 | $0.33 | $0.22 | $0.15 | $0.11 | $0.08 |
| 1/6/2009 | $4.51 | $4.15 | $3.79 | $3.41 | $3.02 | $2.63 | $2.28 | $1.93 | $1.62 | $1.35 | $0.89 | $0.58 | $0.37 | $0.24 | $0.17 | $0.11 | $0.08 |
| 1/7/2009 | $4.47 | $4.11 | $3.73 | $3.34 | $2.92 | $2.54 | $2.17 | $1.84 | $1.55 | $1.27 | $0.84 | $0.54 | $0.35 | $0.23 | $0.16 | $0.10 | $0.00 |
| 1/8/2009 | $4.47 | $4.09 | $3.70 | $3.30 | $2.89 | $2.49 | $2.12 | $1.78 | $1.46 | $1.20 | $0.77 | $0.49 | $0.30 | $0.20 | $0.14 | $0.10 | $0.08 |
| 1/9/2009 | $4.44 | $4.04 | $3.64 | $3.22 | $2.80 | $2.40 | $2.01 | $1.68 | $1.36 | $1.11 | $0.71 | $0.44 | $0.27 | $0.18 | $0.13 | $0.10 | $0.00 |
| 1/12/2009 | $3.76 | $3.43 | $3.05 | $2.66 | $2.29 | $1.97 | $1.66 | $1.36 | $1.12 | $0.91 | $0.58 | $0.39 | $0.25 | $0.17 | $0.12 | $0.09 | $0.07 |
| 1/13/2009 | $3.06 | $2.79 | $2.47 | $2.15 | $1.87 | $1.59 | $1.34 | $1.11 | $0.89 | $0.74 | $0.47 | $0.31 | $0.20 | $0.14 | $0.11 | $0.08 | $0.06 |
| 1/14/2009 | $3.06 | $2.78 | $2.46 | $2.17 | $1.86 | $1.59 | $1.34 | $1.12 | $0.92 | $0.76 | $0.49 | $0.33 | $0.21 | $0.14 | $0.12 | $0.08 | $0.08 |
| 1/15/2009 | $1.51 | $1.39 | $1.25 | $1.11 | $0.98 | $0.85 | $0.73 | $0.62 | $0.51 | $0.43 | $0.30 | $0.21 | $0.14 | $0.10 | $0.07 | $0.06 | $0.05 |
| 1/16/2009 | $0.47 | $0.44 | $0.41 | $0.37 | $0.34 | $0.30 | $0.26 | $0.24 | $0.21 | $0.18 | $0.13 | $0.10 | $0.07 | $0.06 | $0.04 | $0.04 | $0.03 |
| 1/20/2009 | $0.48 | $0.45 | $0.41 | $0.38 | $0.34 | $0.31 | $0.28 | $0.25 | $0.23 | $0.20 | $0.16 | $0.13 | $0.11 | $0.09 | $0.08 | $0.07 | $0.06 |
| 1/21/2009 | $0.47 | $0.44 | $0.41 | $0.37 | $0.34 | $0.30 | $0.27 | $0.24 | $0.21 | $0.19 | $0.14 | $0.11 | $0.09 | $0.07 | $0.06 | $0.05 | $0.04 |

| Table 4. Inflation Per Option Revealed on Corrective Disclosure Events | | | | | | |
|---|---|---|---|---|---|---|
| **Strike** | **1/12/2009** | **1/13/2009** | **1/15/2009** | **1/16/2009** | **1/22/2009** | **Total** |
| $2.50 | $0.625 | $0.752 | $1.150 | $1.038 | $0.418 | $3.984 |
| $5.00 | $0.472 | $0.635 | $0.897 | $1.014 | $0.355 | $3.372 |
| $7.50 | $0.450 | $0.588 | $0.690 | $0.893 | $0.322 | $2.942 |
| $10.00 | $0.406 | $0.517 | $0.552 | $0.849 | $0.243 | $2.568 |
| $12.50 | $0.351 | $0.376 | $0.405 | $0.767 | $0.205 | $2.105 |
| $15.00 | $0.274 | $0.371 | $0.336 | $0.671 | $0.172 | $1.825 |
| $17.50 | $0.208 | $0.306 | $0.221 | $0.627 | $0.129 | $1.492 |
| $20.00 | $0.187 | $0.230 | $0.202 | $0.473 | $0.099 | $1.191 |
| $22.50 | $0.132 | $0.207 | $0.175 | $0.376 | $0.081 | $0.971 |
| $25.00 | $0.108 | $0.160 | $0.138 | $0.333 | $0.056 | $0.794 |
| $30.00 | $0.070 | $0.094 | $0.060 | $0.246 | $0.015 | $0.485 |
| $35.00 | $0.026 | $0.071 | $0.014 | $0.164 | $0.000 | $0.275 |
| $40.00 | $0.009 | $0.038 | $0.009 | $0.106 | $0.000 | $0.162 |
| $45.00 | $0.007 | $0.028 | $0.000 | $0.068 | $0.000 | $0.102 |
| $50.00 | $0.004 | $0.005 | $0.028 | $0.043 | $0.000 | $0.080 |
| $55.00 | $0.004 | $0.005 | $0.000 | $0.048 | $0.000 | $0.057 |
| $60.00 | $0.004 | $0.005 | $0.037 | $0.010 | $0.000 | $0.056 |

Note: "Total" column reflects differences in rounding.

| Table 5. Average 90 Day Lookback Price Per Option (Organized by Strike Price) | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Strike Price | | | | | | | | | | | | | | | |
| Date | $2.50 | $5.00 | $7.50 | $10 | $12.50 | $15 | $17.50 | $20 | $22.50 | $25 | $30 | $35 | $40 | $45 | $50 | $55 | $60 |
| 1/22/2009 | $4.30 | $3.38 | $2.67 | $2.11 | $1.67 | $1.35 | $1.08 | $0.86 | $0.69 | $0.57 | $0.38 | $0.29 | $0.19 | $0.14 | $0.13 | $0.12 | $0.08 |
| 1/23/2009 | $4.46 | $3.55 | $2.79 | $2.22 | $1.76 | $1.38 | $1.11 | $0.86 | $0.69 | $0.58 | $0.37 | $0.28 | $0.19 | $0.15 | $0.12 | $0.12 | $0.07 |
| 1/26/2009 | $4.52 | $3.58 | $2.81 | $2.23 | $1.77 | $1.40 | $1.12 | $0.88 | $0.70 | $0.58 | $0.37 | $0.27 | $0.19 | $0.14 | $0.12 | $0.11 | $0.08 |
| 1/27/2009 | $4.63 | $3.66 | $2.88 | $2.27 | $1.80 | $1.41 | $1.13 | $0.88 | $0.70 | $0.57 | $0.37 | $0.26 | $0.18 | $0.14 | $0.11 | $0.10 | $0.07 |
| 1/28/2009 | $4.86 | $3.85 | $3.05 | $2.43 | $1.94 | $1.52 | $1.22 | $0.95 | $0.77 | $0.62 | $0.40 | $0.28 | $0.20 | $0.15 | $0.11 | $0.11 | $0.08 |
| 1/29/2009 | $4.93 | $3.91 | $3.09 | $2.47 | $1.97 | $1.55 | $1.24 | $0.97 | $0.79 | $0.63 | $0.40 | $0.28 | $0.20 | $0.15 | $0.11 | $0.10 | $0.08 |
| 1/30/2009 | $4.94 | $3.93 | $3.11 | $2.48 | $1.97 | $1.55 | $1.24 | $0.97 | $0.79 | $0.63 | $0.40 | $0.28 | $0.19 | $0.14 | $0.11 | $0.10 | $0.08 |
| 2/2/2009 | $4.89 | $3.87 | $3.06 | $2.44 | $1.93 | $1.52 | $1.21 | $0.95 | $0.77 | $0.61 | $0.39 | $0.28 | $0.19 | $0.14 | $0.11 | $0.10 | $0.08 |
| 2/3/2009 | $4.78 | $3.76 | $2.96 | $2.35 | $1.86 | $1.45 | $1.16 | $0.91 | $0.73 | $0.58 | $0.37 | $0.26 | $0.18 | $0.14 | $0.11 | $0.09 | $0.07 |
| 2/4/2009 | $4.64 | $3.63 | $2.85 | $2.26 | $1.78 | $1.39 | $1.10 | $0.86 | $0.69 | $0.55 | $0.35 | $0.25 | $0.17 | $0.13 | $0.10 | $0.09 | $0.07 |
| 2/5/2009 | $4.55 | $3.55 | $2.79 | $2.21 | $1.74 | $1.36 | $1.08 | $0.85 | $0.68 | $0.54 | $0.34 | $0.24 | $0.17 | $0.13 | $0.10 | $0.09 | $0.07 |
| 2/6/2009 | $4.55 | $3.55 | $2.78 | $2.20 | $1.73 | $1.35 | $1.07 | $0.84 | $0.67 | $0.53 | $0.33 | $0.24 | $0.16 | $0.13 | $0.10 | $0.09 | $0.07 |
| 2/9/2009 | $4.60 | $3.59 | $2.82 | $2.22 | $1.76 | $1.36 | $1.09 | $0.84 | $0.68 | $0.54 | $0.34 | $0.24 | $0.17 | $0.13 | $0.10 | $0.09 | $0.07 |
| 2/10/2009 | $4.55 | $3.55 | $2.78 | $2.19 | $1.73 | $1.34 | $1.06 | $0.83 | $0.66 | $0.53 | $0.33 | $0.24 | $0.17 | $0.13 | $0.10 | $0.09 | $0.07 |
| 2/11/2009 | $4.55 | $3.54 | $2.76 | $2.17 | $1.71 | $1.32 | $1.05 | $0.81 | $0.65 | $0.52 | $0.33 | $0.24 | $0.16 | $0.13 | $0.10 | $0.08 | $0.07 |
| 2/12/2009 | $4.53 | $3.52 | $2.75 | $2.15 | $1.70 | $1.31 | $1.04 | $0.80 | $0.64 | $0.51 | $0.32 | $0.23 | $0.16 | $0.13 | $0.10 | $0.08 | $0.06 |
| 2/13/2009 | $4.50 | $3.49 | $2.72 | $2.13 | $1.67 | $1.29 | $1.02 | $0.79 | $0.63 | $0.50 | $0.32 | $0.23 | $0.16 | $0.12 | $0.10 | $0.08 | $0.06 |
| 2/17/2009 | $4.44 | $3.44 | $2.68 | $2.09 | $1.64 | $1.27 | $1.00 | $0.77 | $0.62 | $0.49 | $0.31 | $0.22 | $0.16 | $0.12 | $0.10 | $0.08 | $0.06 |
| 2/18/2009 | $4.38 | $3.39 | $2.63 | $2.05 | $1.61 | $1.24 | $0.98 | $0.76 | $0.61 | $0.48 | $0.30 | $0.22 | $0.15 | $0.12 | $0.09 | $0.08 | $0.06 |
| 2/19/2009 | $4.29 | $3.31 | $2.56 | $2.00 | $1.57 | $1.20 | $0.95 | $0.73 | $0.59 | $0.47 | $0.30 | $0.22 | $0.15 | $0.12 | $0.09 | $0.08 | $0.06 |
| 2/20/2009 | $4.21 | $3.25 | $2.52 | $1.97 | $1.54 | $1.18 | $0.94 | $0.72 | $0.58 | $0.46 | $0.30 | $0.22 | $0.15 | $0.12 | $0.09 | $0.08 | $0.06 |
| 2/23/2009 | $4.14 | $3.19 | $2.47 | $1.93 | $1.51 | $1.16 | $0.92 | $0.71 | $0.58 | $0.46 | $0.29 | $0.22 | $0.15 | $0.12 | $0.09 | $0.08 | $0.06 |
| 2/24/2009 | $4.10 | $3.16 | $2.45 | $1.91 | $1.50 | $1.15 | $0.92 | $0.71 | $0.57 | $0.46 | $0.29 | $0.22 | $0.15 | $0.12 | $0.09 | $0.08 | $0.06 |
| 2/25/2009 | $4.09 | $3.15 | $2.44 | $1.91 | $1.49 | $1.15 | $0.91 | $0.71 | $0.57 | $0.46 | $0.29 | $0.22 | $0.15 | $0.12 | $0.10 | $0.08 | $0.06 |
| 2/26/2009 | $4.07 | $3.14 | $2.43 | $1.90 | $1.49 | $1.15 | $0.92 | $0.71 | $0.58 | $0.46 | $0.29 | $0.22 | $0.16 | $0.12 | $0.10 | $0.08 | $0.06 |
| 2/27/2009 | $4.02 | $3.10 | $2.40 | $1.88 | $1.47 | $1.14 | $0.91 | $0.70 | $0.57 | $0.45 | $0.29 | $0.22 | $0.15 | $0.12 | $0.10 | $0.08 | $0.06 |
| 3/2/2009 | $3.96 | $3.05 | $2.36 | $1.85 | $1.45 | $1.12 | $0.89 | $0.69 | $0.56 | $0.45 | $0.29 | $0.22 | $0.15 | $0.12 | $0.10 | $0.08 | $0.06 |
| 3/3/2009 | $3.91 | $3.01 | $2.33 | $1.82 | $1.43 | $1.10 | $0.88 | $0.68 | $0.56 | $0.44 | $0.29 | $0.21 | $0.15 | $0.12 | $0.10 | $0.08 | $0.06 |
| 3/4/2009 | $3.86 | $2.96 | $2.29 | $1.79 | $1.41 | $1.08 | $0.87 | $0.67 | $0.55 | $0.44 | $0.28 | $0.21 | $0.15 | $0.12 | $0.10 | $0.08 | $0.06 |
| 3/5/2009 | $3.80 | $2.91 | $2.25 | $1.76 | $1.38 | $1.06 | $0.85 | $0.66 | $0.54 | $0.43 | $0.28 | $0.21 | $0.15 | $0.12 | $0.10 | $0.08 | $0.06 |
| 3/6/2009 | $3.74 | $2.87 | $2.22 | $1.73 | $1.36 | $1.05 | $0.84 | $0.65 | $0.53 | $0.42 | $0.28 | $0.21 | $0.15 | $0.12 | $0.09 | $0.08 | $0.06 |
| 3/9/2009 | $3.70 | $2.84 | $2.19 | $1.71 | $1.35 | $1.04 | $0.83 | $0.64 | $0.53 | $0.42 | $0.27 | $0.21 | $0.15 | $0.12 | $0.09 | $0.08 | $0.06 |
| 3/10/2009 | $3.69 | $2.83 | $2.19 | $1.71 | $1.35 | $1.04 | $0.83 | $0.65 | $0.53 | $0.43 | $0.28 | $0.21 | $0.15 | $0.12 | $0.10 | $0.08 | $0.07 |
| 3/11/2009 | $3.69 | $2.83 | $2.19 | $1.71 | $1.34 | $1.04 | $0.83 | $0.65 | $0.53 | $0.43 | $0.28 | $0.21 | $0.15 | $0.13 | $0.10 | $0.08 | $0.07 |
| 3/12/2009 | $3.70 | $2.84 | $2.20 | $1.72 | $1.36 | $1.05 | $0.84 | $0.66 | $0.54 | $0.44 | $0.29 | $0.22 | $0.16 | $0.13 | $0.10 | $0.09 | $0.07 |

| Date | \$2.50 | \$5.00 | \$7.50 | \$10 | \$12.50 | \$15 | \$17.50 | \$20 | \$22.50 | \$25 | \$30 | \$35 | \$40 | \$45 | \$50 | \$55 | \$60 |
|------|--------|--------|--------|------|---------|------|---------|------|---------|------|------|------|------|------|------|------|------|
| 3/13/2009 | \$3.72 | \$2.86 | \$2.21 | \$1.73 | \$1.37 | \$1.06 | \$0.85 | \$0.66 | \$0.55 | \$0.44 | \$0.29 | \$0.22 | \$0.16 | \$0.13 | \$0.10 | \$0.09 | \$0.07 |
| 3/16/2009 | \$3.74 | \$2.87 | \$2.23 | \$1.74 | \$1.38 | \$1.07 | \$0.86 | \$0.67 | \$0.55 | \$0.45 | \$0.29 | \$0.22 | \$0.16 | \$0.13 | \$0.10 | \$0.09 | \$0.07 |
| 3/17/2009 | \$3.76 | \$2.89 | \$2.24 | \$1.76 | \$1.39 | \$1.08 | \$0.87 | \$0.67 | \$0.56 | \$0.45 | \$0.30 | \$0.23 | \$0.16 | \$0.13 | \$0.10 | \$0.09 | \$0.07 |
| 3/18/2009 | \$3.81 | \$2.93 | \$2.28 | \$1.79 | \$1.42 | \$1.10 | \$0.89 | \$0.69 | \$0.58 | \$0.47 | \$0.31 | \$0.23 | \$0.17 | \$0.14 | \$0.11 | \$0.09 | \$0.07 |
| 3/19/2009 | \$3.84 | \$2.96 | \$2.31 | \$1.81 | \$1.44 | \$1.12 | \$0.91 | \$0.71 | \$0.59 | \$0.48 | \$0.32 | \$0.24 | \$0.17 | \$0.14 | \$0.11 | \$0.09 | \$0.07 |
| 3/20/2009 | \$3.86 | \$2.98 | \$2.32 | \$1.83 | \$1.45 | \$1.13 | \$0.92 | \$0.72 | \$0.60 | \$0.48 | \$0.32 | \$0.24 | \$0.18 | \$0.14 | \$0.11 | \$0.10 | \$0.07 |
| 3/23/2009 | \$3.91 | \$3.02 | \$2.36 | \$1.86 | \$1.48 | \$1.15 | \$0.94 | \$0.73 | \$0.61 | \$0.49 | \$0.33 | \$0.25 | \$0.18 | \$0.15 | \$0.11 | \$0.10 | \$0.07 |
| 3/24/2009 | \$3.94 | \$3.05 | \$2.39 | \$1.89 | \$1.50 | \$1.17 | \$0.95 | \$0.75 | \$0.62 | \$0.51 | \$0.34 | \$0.26 | \$0.19 | \$0.15 | \$0.12 | \$0.10 | \$0.08 |
| 3/25/2009 | \$3.99 | \$3.09 | \$2.43 | \$1.92 | \$1.53 | \$1.20 | \$0.97 | \$0.77 | \$0.64 | \$0.52 | \$0.35 | \$0.26 | \$0.19 | \$0.15 | \$0.12 | \$0.10 | \$0.08 |
| 3/26/2009 | \$4.03 | \$3.13 | \$2.46 | \$1.95 | \$1.56 | \$1.22 | \$0.99 | \$0.78 | \$0.65 | \$0.53 | \$0.35 | \$0.27 | \$0.19 | \$0.15 | \$0.12 | \$0.10 | \$0.08 |
| 3/27/2009 | \$4.06 | \$3.16 | \$2.49 | \$1.97 | \$1.58 | \$1.24 | \$1.01 | \$0.80 | \$0.66 | \$0.54 | \$0.36 | \$0.27 | \$0.20 | \$0.16 | \$0.12 | \$0.10 | \$0.08 |
| 3/30/2009 | \$4.07 | \$3.17 | \$2.50 | \$1.98 | \$1.59 | \$1.25 | \$1.02 | \$0.80 | \$0.67 | \$0.54 | \$0.36 | \$0.27 | \$0.20 | \$0.16 | \$0.12 | \$0.10 | \$0.08 |
| 3/31/2009 | \$4.10 | \$3.19 | \$2.52 | \$2.00 | \$1.61 | \$1.26 | \$1.03 | \$0.82 | \$0.68 | \$0.55 | \$0.37 | \$0.28 | \$0.20 | \$0.16 | \$0.12 | \$0.10 | \$0.08 |
| 4/1/2009 | \$4.12 | \$3.21 | \$2.54 | \$2.02 | \$1.62 | \$1.28 | \$1.04 | \$0.83 | \$0.69 | \$0.56 | \$0.38 | \$0.28 | \$0.20 | \$0.16 | \$0.12 | \$0.10 | \$0.08 |
| 4/2/2009 | \$4.15 | \$3.24 | \$2.57 | \$2.04 | \$1.64 | \$1.30 | \$1.06 | \$0.84 | \$0.70 | \$0.57 | \$0.38 | \$0.29 | \$0.21 | \$0.16 | \$0.13 | \$0.11 | \$0.08 |
| 4/3/2009 | \$4.18 | \$3.27 | \$2.59 | \$2.07 | \$1.66 | \$1.32 | \$1.07 | \$0.86 | \$0.71 | \$0.58 | \$0.39 | \$0.29 | \$0.21 | \$0.17 | \$0.13 | \$0.11 | \$0.08 |
| 4/6/2009 | \$4.20 | \$3.29 | \$2.62 | \$2.09 | \$1.68 | \$1.33 | \$1.09 | \$0.87 | \$0.72 | \$0.59 | \$0.40 | \$0.30 | \$0.22 | \$0.17 | \$0.13 | \$0.11 | \$0.08 |
| 4/7/2009 | \$4.23 | \$3.32 | \$2.64 | \$2.11 | \$1.70 | \$1.35 | \$1.10 | \$0.88 | \$0.73 | \$0.60 | \$0.40 | \$0.30 | \$0.22 | \$0.17 | \$0.13 | \$0.11 | \$0.08 |
| 4/8/2009 | \$4.25 | \$3.33 | \$2.65 | \$2.12 | \$1.71 | \$1.36 | \$1.11 | \$0.88 | \$0.74 | \$0.60 | \$0.41 | \$0.30 | \$0.22 | \$0.17 | \$0.13 | \$0.11 | \$0.09 |
| 4/9/2009 | \$4.31 | \$3.38 | \$2.70 | \$2.16 | \$1.75 | \$1.39 | \$1.14 | \$0.91 | \$0.76 | \$0.62 | \$0.42 | \$0.31 | \$0.23 | \$0.18 | \$0.13 | \$0.11 | \$0.09 |
| 4/13/2009 | \$4.38 | \$3.45 | \$2.76 | \$2.22 | \$1.79 | \$1.43 | \$1.17 | \$0.94 | \$0.79 | \$0.65 | \$0.44 | \$0.33 | \$0.24 | \$0.18 | \$0.14 | \$0.11 | \$0.09 |
| 4/14/2009 | \$4.45 | \$3.51 | \$2.81 | \$2.26 | \$1.83 | \$1.46 | \$1.20 | \$0.97 | \$0.81 | \$0.66 | \$0.45 | \$0.33 | \$0.24 | \$0.19 | \$0.14 | \$0.12 | \$0.09 |
| 4/15/2009 | \$4.51 | \$3.56 | \$2.86 | \$2.30 | \$1.87 | \$1.50 | \$1.23 | \$0.99 | \$0.83 | \$0.68 | \$0.46 | \$0.34 | \$0.25 | \$0.19 | \$0.15 | \$0.12 | \$0.09 |
| 4/16/2009 | \$4.57 | \$3.61 | \$2.90 | \$2.34 | \$1.91 | \$1.53 | \$1.26 | \$1.01 | \$0.84 | \$0.69 | \$0.47 | \$0.35 | \$0.25 | \$0.19 | \$0.15 | \$0.12 | \$0.09 |
| 4/17/2009 | \$4.63 | \$3.67 | \$2.95 | \$2.39 | \$1.94 | \$1.56 | \$1.28 | \$1.03 | \$0.86 | \$0.71 | \$0.48 | \$0.35 | \$0.25 | \$0.20 | \$0.15 | \$0.12 | \$0.09 |
| 4/20/2009 | \$4.66 | \$3.69 | \$2.97 | \$2.40 | \$1.95 | \$1.57 | \$1.29 | \$1.04 | \$0.87 | \$0.71 | \$0.48 | \$0.35 | \$0.25 | \$0.20 | \$0.15 | \$0.12 | \$0.09 |
| 4/21/2009 | \$4.69 | \$3.72 | \$2.99 | \$2.42 | \$1.97 | \$1.58 | \$1.30 | \$1.05 | \$0.87 | \$0.72 | \$0.49 | \$0.36 | \$0.26 | \$0.20 | \$0.15 | \$0.12 | \$0.09 |

Table 5. Average 90 Day Lookback Price Per Option (Organized by Strike Price) — Strike Price

| Table 6. Holding Value Per Option ||
| **Strike** | **Holding Value** |
|---|---|
| $2.50 | $4.30 |
| $5.00 | $3.38 |
| $7.50 | $2.67 |
| $10.00 | $2.11 |
| $12.50 | $1.67 |
| $15.00 | $1.35 |
| $17.50 | $1.08 |
| $20.00 | $0.86 |
| $22.50 | $0.69 |
| $25.00 | $0.57 |
| $30.00 | $0.38 |
| $35.00 | $0.29 |
| $40.00 | $0.19 |
| $45.00 | $0.14 |
| $50.00 | $0.13 |
| $55.00 | $0.12 |
| $60.00 | $0.08 |

# Exhibit A-2

EXHIBIT A-2

**In re Bank of America Corp. Securities Litigation**
**c/o The Garden City Group, Inc.**
**PO Box 9876**
**Dublin, Ohio 43017-5776**

# PROOF OF CLAIM AND RELEASE FORM

TO BE ELIGIBLE TO RECEIVE A SHARE OF THE NET SETTLEMENT FUND IN CONNECTION WITH THE SETTLEMENT OF THIS ACTION, YOU MUST COMPLETE AND SIGN THIS PROOF OF CLAIM AND RELEASE FORM ("CLAIM FORM") AND MAIL IT BY PREPAID, FIRST-CLASS MAIL TO THE ABOVE ADDRESS, **POSTMARKED NO LATER THAN _____, 2013**.

FAILURE TO SUBMIT YOUR CLAIM FORM BY THE DATE SPECIFIED WILL SUBJECT YOUR CLAIM TO REJECTION AND MAY PRECLUDE YOU FROM BEING ELIGIBLE TO RECOVER ANY MONEY IN CONNECTION WITH THE SETTLEMENT.

**DO NOT MAIL OR DELIVER YOUR CLAIM FORM TO THE COURT, THE PARTIES TO THIS ACTION, OR THEIR COUNSEL.  SUBMIT YOUR CLAIM FORM ONLY TO THE CLAIMS ADMINISTRATOR AT THE ADDRESS SET FORTH ABOVE.**

**TABLE OF CONTENTS**                                                      **PAGE #**

**PART I – GENERAL INSTRUCTIONS**

**PART II – CLAIMANT INFORMATION**

**PART III – SCHEDULES OF TRANSACTIONS IN ELIGIBLE BANK OF AMERICA SECURITIES**
       **A.  BoA COMMON STOCK**
       **B.  BoA JANUARY 2011 CALL OPTIONS**

**PART IV – RELEASE OF CLAIMS AND SIGNATURE**

Questions? Call 1-855-733-8308 or visit www.boasecuritieslitigation.com
**Do Not Call Bank of America Corporation with questions regarding**
**the Settlement or this Claim Form.**

## PART I – GENERAL INSTRUCTIONS

1.      It is important that you completely read and understand the Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Settlement Notice") that accompanies this Claim Form, including the Plan of Allocation of the Net Settlement Fund set forth in the Settlement Notice.  The Settlement Notice describes the proposed Settlement, how Class Members are affected by the Settlement, and the manner in which the Net Settlement Fund will be distributed if the Settlement and Plan of Allocation are approved by the Court.  The Settlement Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form.  By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Settlement Notice, including the terms of the releases described therein and provided for herein.

2.      This Claim Form is directed to the following persons and entities: (i) all persons and entities who held BoA common stock as of October 10, 2008, and were entitled to vote on the merger between BoA and Merrill, and were damaged thereby; (ii) all persons and entities who purchased or otherwise acquired BoA common stock during the period from September 18, 2008 through January 21, 2009, inclusive, excluding shares of BoA common stock acquired by exchanging stock of Merrill for BoA stock through the merger between the two companies consummated on January 1, 2009, and were damaged thereby; (iii) all persons and entities who purchased or otherwise acquired January 2011 call options of BoA from September 18, 2008 through January 21, 2009, inclusive, and were damaged thereby; and (iv) all persons and entities who purchased BoA common stock issued under the Registration Statement and Prospectus and October 7, 2008 Prospectus Supplement of BoA, in the common stock offering that occurred on or about October 7, 2008, and were damaged thereby (the "Class").

3.      Excluded from the Class by definition are:  Defendants, present or former executive officers of BoA and Merrill, present or former members of Merrill's and BoA's Board of Directors and their immediate family members (as defined in 17 C.F.R. § 229.404, Instructions, *i.e.*, children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law).  Also excluded from the Class are Persons that previously submitted a request for exclusion from the Class in connection with the previously disseminated Notice of Pendency of Class Action ("Class Notice"), as set forth on Appendix 1 to the Stipulation and Agreement of Settlement dated November 30, 2012 (the "Stipulation") (Appendix 1 to the Stipulation can be viewed at and downloaded from www.boasecuritieslitigaion.com), who do not opt-back into the Class in accordance with the provisions set forth in the Settlement Notice.  If you believe that you previously submitted a request for exclusion but your name does not appear on Appendix 1 to the Stipulation, you can contact the Claims Administrator at (855) 733-8308 for assistance.

4.      IF YOU ARE NOT A CLASS MEMBER, OR IF YOU, OR SOMEONE ACTING ON YOUR BEHALF, PREVIOUSLY SUBMITTED A REQUEST FOR EXCLUSION FROM THE CLASS IN CONNECTION WITH THE CLASS NOTICE AND YOU DO NOT OPT-BACK INTO THE CLASS IN ACCORDANCE WITH THE PROVISIONS SET FORTH IN THE SETTLEMENT NOTICE, DO NOT SUBMIT A CLAIM FORM.  **YOU MAY NOT, DIRECTLY OR INDIRECTLY, PARTICIPATE IN THE SETTLEMENT IF YOU ARE NOT A CLASS MEMBER**.  THUS, IF YOU ARE EXCLUDED FROM THE CLASS (AS SET FORTH IN PARAGRAPH 3 ABOVE), ANY CLAIM FORM THAT YOU SUBMIT, OR THAT MAY BE SUBMITTED ON YOUR BEHALF, WILL NOT BE ACCEPTED.

5.      If you are a Class Member, you will be bound by the terms of any judgments or orders

Page 2
Questions? Call 1-855-733-8308 or visit www.boasecuritieslitigation.com
**Do not call Bank of America Corporation with questions regarding the Settlement or this Claim Form.**

entered in the Action WHETHER OR NOT YOU SUBMIT A CLAIM FORM, unless you previously submitted a request for exclusion in accordance with the Class Notice and your name appears on Appendix 1 to the Stipulation and you do not opt-back into the Class.  As described in the Settlement Notice, the Judgment will release and enjoin the filing or continued prosecution of the Released Lead Plaintiffs' Claims against the Defendants' Releasees.

6.      You are eligible to participate in the distribution of the Net Settlement Fund only if you are a member of the Class and if you complete and return this form as specified below.  If you fail to submit a timely, properly addressed, and completed Claim Form, your claim may be rejected and you may be precluded from receiving any distribution from the Net Settlement Fund.

7.      **Submission of this Claim Form does not guarantee that you will share in the proceeds of the Settlement.**  The distribution of the Net Settlement Fund will be governed by the Plan of Allocation set forth in the Settlement Notice, if it is approved by the Court, or by such other plan of allocation as the Court approves.

8.      Use Section III of this Claim Form entitled "SCHEDULES OF TRANSACTIONS IN ELIGIBLE BANK OF AMERICA SECURITIES" to supply all required details of your transaction(s) (including free transfers) in and holdings of the BoA securities eligible to participate in the Settlement.  On these schedules, please provide *all* of the requested information with respect to your holdings, purchases, acquisitions and sales of BoA common stock and January 2011 call options, whether such transactions resulted in a profit or a loss.  **Failure to report all transaction and holding information during the requested time periods may result in the rejection of your claim.**

9.      **Please note**:  Only BoA common stock held as of October 10, 2008 (the record date for the shareholder vote on the merger between BoA and Merrill) and BoA common stock and January 2011 call options purchased/acquired during the Class Period (*i.e.*, September 18, 2008 through January 21, 2009, inclusive) are eligible under the Settlement.  However, under the "90 day lookback period" (described in the Plan of Allocation set forth in the Settlement Notice), your sales of BoA common stock and January 2011 call options during the period January 22, 2009 through April 21, 2009, inclusive, will be used for purposes of calculating your Section 10(b) Claim under the Plan of Allocation.  Therefore, in order for the Claims Administrator to be able to balance your claim, the requested purchase information during the 90 day lookback period must also be provided.  Additionally, while shares of BoA common stock acquired from the exchange of Merrill shares in connection with BoA's acquisition of Merrill on January 1, 2009 (the "Merger") are not covered by the definition of the Class and Section 10(b) losses will not be calculated with respect to the acquisition of those shares, those shares will be used for purposes of matching sales to acquisitions and must be included in this Claim Form.

10.     You are required to submit genuine and sufficient documentation for all of your transactions in and holdings of the BoA common stock and January 2011 call options set forth in the Schedules of Transactions in Part III of this form.  Documentation may consist of copies of brokerage confirmations or monthly statements.  The Parties and the Claims Administrator do not independently have information about your investments in BoA common stock or January 2011 call options.  IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OR EQUIVALENT CONTEMPORANEOUS DOCUMENTS FROM YOUR BROKER.  FAILURE TO SUPPLY THIS DOCUMENTATION MAY RESULT IN THE REJECTION OF YOUR CLAIM.  DO NOT SEND ORIGINAL DOCUMENTS.  **Please keep a copy of all documents that you send to the Claims Administrator.  Also, please do not highlight any portion of the Claim Form or any supporting documents.**

Page 3
Questions? Call 1-855-733-8308 or www.boasecuritieslitigation.com
**Do not call Bank of America Corporation with questions regarding the Settlement or this Claim Form.**

11.     If you are a participant in a retirement plan covered by Section 3(3) of ERISA, 29 U.S.C. §1002(3), including the Bank of America 401(k) Plan, the Bank of America 401(k) Plan for Legacy Companies, the Merrill Lynch & Co., Inc. 401(k) Savings & Investment Plan, and the Merrill Lynch & Co., Inc. Retirement Accumulation Plan, (the "ERISA Plan(s)") you should not include BoA shares held through the ERISA Plan(s) on your Claim Form.  Instead, you should include on your Claim Form ONLY those shares of BoA common stock that you purchased or acquired outside of the ERISA Plan(s) (*see* Settlement Notice at ¶66).  To the extent any of the Defendants or any of the other persons or entities excluded from the Class are participants in the ERISA Plan(s), such persons or entities shall not receive, either directly or indirectly, any portion of the recovery that may be obtained from the Settlement by any ERISA Plan(s).

12.     Separate Claim Forms should be submitted for each separate legal entity (*e.g.*, a claim from joint owners should not include separate transactions of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made solely in the individual's name).  Conversely, a single Claim Form should be submitted on behalf of one legal entity including all transactions made by that entity on one Claim Form, no matter how many separate accounts that entity has (*e.g.*, a corporation with multiple brokerage accounts should include all transactions made in all accounts on one Claim Form).

13.     All joint beneficial owners must each sign this Claim Form.  If you held, purchased or otherwise acquired BoA common stock or January 2011 call options during the relevant time periods and held the securities in your name, you are the beneficial owner as well as the record owner and you must sign this Claim Form to participate in the Settlement.  If, however, you held, purchased or otherwise acquired BoA common stock or January 2011 call options during the relevant time periods and the securities were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial owner of these securities, but the third party is the record owner.  The beneficial owner, not the record owner, must sign this Claim Form to be eligible to participate in the Settlement.

14.     Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

     (a)     expressly state the capacity in which they are acting;

     (b)     identify the name, account number, Social Security Number (or taxpayer identification number), address and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the BoA common stock and/or 2011 January call options; and

     (c)     furnish herewith evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting.  (Authority to complete and sign a Claim Form cannot be established by stockbrokers demonstrating only that they have discretionary authority to trade stock in another person's accounts.)

15.     By submitting a signed Claim Form, you will be swearing that you:

     (a)     own(ed) the BoA common stock and/or January 2011 call options you have listed in the Claim Form; or

     (b)     are expressly authorized to act on behalf of the owner thereof.

16.     By submitting a signed Claim Form, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury

Page 4
Questions? Call 1-855-733-8308 or visit www.boasecuritieslitigation.com
**Do not call Bank of America Corporation with questions regarding the Settlement or this Claim Form.**

under the laws of the United States of America.  The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your claim and may subject you to civil liability or criminal prosecution.

17.     NOTICE REGARDING ELECTRONIC FILES:  Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files.  To obtain the mandatory electronic filing requirements and file layout, you may visit the settlement website at www.boasecuritieslitigation.com or you may email the Claims Administrator's electronic filing department at _____@_____.com.  Any file not in accordance with the required electronic filing format will be subject to rejection.  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email after processing your file with your claim numbers and respective account information.  Do not assume that your file has been received or processed until you receive this email.  If you do not receive such an email within 10 days of your submission, you should contact the electronic filling department at _____@_____.com to inquire about your file and confirm it was received and acceptable.

18.     If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after any appeals are resolved, and after the completion of all claims processing.  As referenced in the Settlement Notice, there are several billion shares of BoA common stock as to which claims may be submitted and, thus, the claims process could take substantial time to complete fully and fairly.  Please be patient.

19.     **PLEASE NOTE**:  As set forth in the Plan of Allocation, each Authorized Claimant shall receive his/her/its *pro rata* share of the Net Settlement Fund.  If the prorated payment to any Authorized Claimant calculates to less than $20.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

20.     If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Settlement Notice, you may contact the Claims Administrator, The Garden City Group, Inc., at the above address or by toll-free phone at 1-855-733-8308, or you may download the documents from www.boasecuritieslitigation.com.

Page 5
Questions? Call 1-855-733-8308 or visit www.boasecuritieslitigation.com
**Do not call Bank of America Corporation with questions regarding the Settlement or this Claim Form.**

## PART II – CLAIMANT INFORMATION

LAST NAME (CLAIMANT)

FIRST NAME (CLAIMANT)

Last Name (Beneficial Owner if Different From Claimant)

First Name (Beneficial Owner)

Last Name (Co-Beneficial Owner)

First Name (Co-Beneficial Owner)

Company/Trust/Other Entity (If Claimant Is Not an Individual)

Contact Person (if Claimant is Not an Individual)

Trustee/Nominee/Other

Account Number (If Claimant Is Not an Individual)

Trust Date/Other Date (If Applicable)

Address Line 1

Address Line 2 (If Applicable)

City

State

Zip Code

-

Foreign Province

Foreign Country

Foreign Zip Code

Telephone Number (Day)

(          )          -

Telephone Number (Night)

(          )          -

Beneficial Owner's Employer Identification Number or Social Security Number [1]

Email Address (*Email address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim.*)

IDENTITY OF CLAIMANT(S) (check only one box)

○ Individual   ○ Joint Owners   ○ Estate   ○ Corporation   ○ Trust   ○ Partnership   ○ Private Pension Fund

○ IRA, Keogh, or other type of individual retirement plan (indicate type of plan, mailing address, and name of current custodian)   ○ Legal Representative   ○ Other (specify, describe on separate sheet)

---

[1] The taxpayer identification number (TIN), consisting of a valid Social Security number (SSN) for individuals or employer identification number (EIN) for business entities, trusts, estates, etc., and telephone number of the beneficial owner(s) may be used in verifying this claim.

Page 6
Questions? Call 1-855-733-8308 or visit www.boasecuritieslitigation.com
**Do not call Bank of America Corporation with questions regarding the Settlement or this Claim Form.**

**PART III – SCHEDULES OF TRANSACTIONS IN ELIGIBLE BANK OF AMERICA SECURITIES**

Failure to provide proof of all holdings, purchases, acquisitions, and sales information requested below will impede proper processing of your claim and may result in the rejection of your claim.  Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, Paragraph 10, above.

**A.     BoA Common Stock:** *Do not include information regarding securities other than BoA common stock.*

| | | | | |
|---|---|---|---|---|
| **1.  BEGINNING HOLDINGS** – State the total number of shares of BoA common stock held as of the opening of trading on September 18, 2008.  If none, write "0" or "Zero."  (Must be documented.)  _____ | | | | Proof of Holdings Enclosed <br> ○ Y   ○ N |
| **2.  PURCHASES/ACQUISITIONS DURING THE CLASS PERIOD** – Separately list each and every purchase/acquisition of BoA common stock from after the opening of trading on September 18, 2008 through and including the close of trading on January 22, 2009.  For BoA common stock purchased through the exercise of a call option, the purchase date is the date that the option was exercised and the purchase price per share is the exercise price of the option. (Must be documented.) | | | | **IF NONE, CHECK HERE** <br><br> ○ |
| Date of Purchase/Acquisition (List Chronologically) (Month/Day/Year) | Number of Shares Purchased/ Acquired | Purchase/Acquisition Price Per Share* <br><br> *If shares were acquired from the exchange of Merrill stock for BoA stock pursuant to the Merger write "Merger Shares" in the space below | Total Purchase/ Acquisition Price (excluding taxes, commissions and fees)* <br><br> *If shares were acquired from the exchange of Merrill stock for BoA stock pursuant to the Merger, write "Merger Shares" in the space below | Proof of Purchase/Acquisition Enclosed |
| /        / | | $ | $ | ○ Y   ○ N |
| /        / | | $ | $ | ○ Y   ○ N |
| /        / | | $ | $ | ○ Y   ○ N |
| /        / | | $ | $ | ○ Y   ○ N |
| **3.  PURCHASES/ACQUISITIONS DURING THE 90-DAY LOOKBACK PERIOD** – State the total number of shares of BoA common stock purchased/acquired from after the opening of trading on January 22, 2009 through and including the close of trading on April 21, 2009.  If none, write "0" or "Zero."  _____ | | | | |
| **4.  SALES DURING THE CLASS PERIOD AND DURING THE 90-DAY LOOKBACK PERIOD** – Separately list each and every sale/disposition of BoA common stock from after the opening of trading on September 18, 2008 through and including the close of trading on April 21, 2009.  (Must be documented.) | | | | **IF NONE, CHECK HERE** <br><br> ○ |
| Date of Sale (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions and fees) | Proof of Sale Enclosed |
| /        / | | $ | $ | ○ Y   ○ N |
| /        / | | $ | $ | ○ Y   ○ N |

Questions? Call 1-855-733-8308 or visit www.boasecuritieslitigation.com
**Do not call Bank of America Corporation with questions regarding the Settlement or this Claim Form.**

| | | | $ | $ | ○ Y   ○ N |
|---|---|---|---|---|---|
| / | / | | $ | $ | ○ Y   ○ N |

| | |
|---|---|
| **5.  ENDING HOLDINGS –** State the total number of shares of BoA common stock held as of the close of trading on April 21, 2009.  If none, write "0" or "Zero." (Must be documented.)  _____ | Proof of Holdings Enclosed  ○ Y    ○ N |

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST
PHOTOCOPY THIS PAGE AND CHECK THIS BOX** ☐
**IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL <u>NOT</u> BE REVIEWED**

Page 8
Questions? Call 1-855-733-8308 or visit www.boasecuritieslitigation.com
**Do not call Bank of America Corporation with questions regarding the Settlement or this Claim Form.**

### B.  BoA January 2011 Call Options:

The "BoA January 2011 Call Options" consist of the January 22, 2011 call options on BoA common stock with the following strike prices:  $2.50, $5.00, $7.50, $10.00, $12.50, $15.00, $17.50, $20.00, $22.50, $25.00, $30.00, $35.00, $40.00, $45.00, $50.00, $55.00 and $60.00.  *Do not include information regarding securities other than BoA January 11 Call Options.*

**1. BEGINNING HOLDINGS – For each of the following,** state the total number of BoA January 2011 call option contracts held as of the opening of trading on September 18, 2008.  If none, write "0" or "Zero."   If you wrote any January 2011 call options, thereby having a short position in the options, please state the total short position(s) as a negative number.  (Must be documented.)

| Strike Price of BoA January 2011 Call Option | Number of Call Option Contracts Held | Proof of Holdings Enclosed | Strike Price of BoA January 2011 Call Option | Number of Call Option Contracts Held | Proof of Holdings Enclosed |
|---|---|---|---|---|---|
| $2.50 | | ○ Y  ○ N | $25.00 | | ○ Y  ○ N |
| $5.00 | | ○ Y  ○ N | $30.00 | | ○ Y  ○ N |
| $7.50 | | ○ Y  ○ N | $35.00 | | ○ Y  ○ N |
| $10.00 | | ○ Y  ○ N | $40.00 | | ○ Y  ○ N |
| $12.50 | | ○ Y  ○ N | $45.00 | | ○ Y  ○ N |
| $15.00 | | ○ Y  ○ N | $50.00 | | ○ Y  ○ N |
| $17.50 | | ○ Y  ○ N | $55.00 | | ○ Y  ○ N |
| $20.00 | | ○ Y  ○ N | $60.00 | | ○ Y  ○ N |
| $22.50 | | ○ Y  ○ N | | | |

**2. PURCHASES/ACQUISITIONS DURING THE CLASS PERIOD** – Separately list each and every purchase/acquisition of BoA January 2011 call option contracts from after the opening of trading on September 18, 2008 through and including the close of trading on January 21, 2009.  (Must be documented.)

**IF NONE, CHECK HERE**  ○

| Date of Purchase/ Acquisition (List Chronologically)(Month/Day/Year) | Strike Price of BoA January 2011 Call Option | Number of Call Option contracts | Purchase/ Acquisition Price Per Call Option Contract | Total Purchase/ Acquisition Price (excluding taxes, commissions and fees) | Insert an "E" if Exercised | Exercise Date (Month/ Day/Year) | Proof of Purchase/ Acquisition Enclosed |
|---|---|---|---|---|---|---|---|
| /   / | $ | | $ | $ | | /   / | ○ Y  ○ N |
| /   / | $ | | $ | $ | | /   / | ○ Y  ○ N |
| /   / | $ | | $ | $ | | /   / | ○ Y  ○ N |
| /   / | $ | | $ | $ | | /   / | ○ Y  ○ N |
| /   / | $ | | $ | $ | | /   / | ○ Y  ○ N |
| /   / | $ | | $ | $ | | /   / | ○ Y  ○ N |
| /   / | $ | | $ | $ | | /   / | ○ Y  ○ N |
| /   / | $ | | $ | $ | | /   / | ○ Y  ○ N |

Page 9
Questions? Call 1-855-733-8308 or visit www.boasecuritieslitigation.com
**Do not call Bank of America Corporation with questions regarding the Settlement or this Claim Form.**

**3. PURCHASES/ACQUISITIONS DURING THE 90-DAY LOOKBACK PERIOD** – For each of the following, state the total number of BoA January 2011 call option contracts purchased/acquired from after the opening of trading on January 22, 2009 through and including the close of trading on April 21, 2009.  If none, write "0" or "Zero."

| Strike Price of BoA January 2011 Call Option | Number of Call Option Contracts Purchased/ Acquired | Proof of Purchase/ Acquisition Enclosed | Strike Price of BoA January 2011 Call Option | Number of Call Option Contracts Purchased/ Acquired | Proof of Purchase/ Acquisition Enclosed |
|---|---|---|---|---|---|
| $2.50 | | ○ Y   ○ N | $25.00 | | ○ Y   ○ N |
| $5.00 | | ○ Y   ○ N | $30.00 | | ○ Y   ○ N |
| $7.50 | | ○ Y   ○ N | $35.00 | | ○ Y   ○ N |
| $10.00 | | ○ Y   ○ N | $40.00 | | ○ Y   ○ N |
| $12.50 | | ○ Y   ○ N | $45.00 | | ○ Y   ○ N |
| $15.00 | | ○ Y   ○ N | $50.00 | | ○ Y   ○ N |
| $17.50 | | ○ Y   ○ N | $55.00 | | ○ Y   ○ N |
| $20.00 | | ○ Y   ○ N | $60.00 | | ○ Y   ○ N |
| $22.50 | | ○ Y   ○ N | | | |

**4. SALES DURING THE CLASS PERIOD AND DURING THE 90-DAY LOOKBACK PERIOD** – Separately list each and every sale of BoA January 2011 call option contracts from after the opening of trading on September 18, 2008 through and including the close of trading on April 21, 2009.  (Must be documented.)

**IF NONE, CHECK HERE** ○

| Date of Sale (List Chronologically) (Month/Day/Year) | Strike Price of BoA January 2011 Call Option | Number of Call Option Contracts | Sale Price Per Call Option Contract | Total Sale Price (excluding taxes, commissions and fees) | Proof of Sale Enclosed |
|---|---|---|---|---|---|
| /   / | $ | | $ | $ | ○ Y   ○ N |
| /   / | $ | | $ | $ | ○ Y   ○ N |
| /   / | $ | | $ | $ | ○ Y   ○ N |
| /   / | $ | | $ | $ | ○ Y   ○ N |

**5. ENDING HOLDINGS – For each of the following,** state the total number of BoA January 2011 call option contracts held as of the close of trading on April 21, 2009.  If none, write "0" or "Zero."  If you wrote any January 2011 call options, thereby having a short position in the options, please state the total short position(s) as a negative number.  (Must be documented.)

| Strike Price of BoA January 2011 Call Option | Number of Call Option Contracts Held | Proof of Holdings Enclosed | Strike Price of BoA January 2011 Call Option | Number of Call Option Contracts Held | Proof of Holdings Enclosed |
|---|---|---|---|---|---|
| $2.50 | | ○ Y   ○ N | $25.00 | | ○ Y   ○ N |
| $5.00 | | ○ Y   ○ N | $30.00 | | ○ Y   ○ N |
| $7.50 | | ○ Y   ○ N | $35.00 | | ○ Y   ○ N |
| $10.00 | | ○ Y   ○ N | $40.00 | | ○ Y   ○ N |
| $12.50 | | ○ Y   ○ N | $45.00 | | ○ Y   ○ N |

Questions? Call 1-855-733-8308 or visit www.boasecuritieslitigation.com
**Do not call Bank of America Corporation with questions regarding the Settlement or this Claim Form.**

| $15.00 | | ○ Y   ○ N | $50.00 | | ○ Y   ○ N |
|--------|--|-----------|--------|--|-----------|
| $17.50 | | ○ Y   ○ N | $55.00 | | ○ Y   ○ N |
| $20.00 | | ○ Y   ○ N | $60.00 | | ○ Y   ○ N |
| $22.50 | | ○ Y   ○ N | | | |

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS/HOLDINGS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX** ☐
**IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL <u>NOT</u> BE REVIEWED**

Page 11
Questions? Call 1-855-733-8308 or visit www.boasecuritieslitigation.com
**Do not call Bank of America Corporation with questions regarding the Settlement or this Claim Form.**

## PART IV - RELEASE OF CLAIMS AND SIGNATURE

**YOU MUST ALSO READ THE RELEASE AND CERTIFICATION BELOW AND SIGN ON PAGE __ OF THIS CLAIM FORM.**

I (we) hereby acknowledge that as of the Effective Date of the Settlement, pursuant to the terms set forth in the Stipulation, I (we), on behalf of myself (ourselves) and my (our) heirs, executors, administrators, predecessors, successors, affiliates, and assigns, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, discharged and dismissed each and every Released Lead Plaintiffs' Claim (as defined in the Stipulation) against the Defendants and the other Defendants' Releasees (as defined in the Stipulation), and shall forever be enjoined from prosecuting any or all of the Released Lead Plaintiffs' Claims against any of the Defendants' Releasees.

**CERTIFICATION**

By signing and submitting this Claim Form, the claimant(s) or the person(s) who represent(s) the claimant(s) certifies (certify), as follows:

1.    that I (we) have read and understand the contents of the Settlement Notice and this Claim Form, including the releases provided for in the Settlement and the terms of the Plan of Allocation;

2.    that the claimant(s) is a (are) Class Member(s), as defined in the Settlement Notice and in paragraph 2 on page __ of this Claim Form, and is (are) not excluded by definition from the Class as set forth in the Settlement Notice and in paragraph 3 on page __ of this Claim Form;

3.    that the claimant **did not** previously submit a request for exclusion from the Class in connection with the Class Notice as set forth on Appendix 1 to the Stipulation;

4.    that I (we) own(ed) the BoA securities identified in the Claim Form and have not assigned the claim against the Defendants' Releasees to another, or that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

5.    that the claimant(s) has (have) not submitted any other claim covering the same purchases/acquisitions, sales, or holdings of BoA securities and knows of no other person having done so on the claimant's (claimants') behalf;

6.    that the claimant(s) submit(s) to the jurisdiction of the Court with respect to claimant's (claimants') claim and for purposes of enforcing the releases set forth herein;

7.    that I (we) agree to furnish such additional information with respect to this Claim Form as Co-Lead Counsel, the Claims Administrator or the Court may require;

8.    that the claimant(s) waive(s) the right to trial by jury, to the extent it exists, and agree(s) to the Court's summary disposition of the determination of the validity or amount of the claim made by this Claim Form;

9.    that I (we) acknowledge that the claimant(s) will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

Page 12
Questions? Call 1-855-733-8308 or visit www.boasecuritieslitigation.com
**Do not call Bank of America Corporation with questions regarding the Settlement or this Claim Form.**

10.    that the claimant(s) is (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (a) the claimant(s) is (are) exempt from backup withholding or (b) the claimant(s) has (have) not been notified by the IRS that he/she/it is subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified the claimant(s) that he/she/it is no longer subject to backup withholding.  **If the IRS has notified the claimant(s) that he, she or he/she/it is subject to backup withholding, please strike out the language in the preceding sentence indicating that the claim is not subject to backup withholding in the certification above.**

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.

_____
Signature of claimant                                                                                              Date

_____
Print your name here

_____
Signature of joint claimant, if any                                                                          Date

_____
Print your name here

*If the claimant is other than an individual, or is not the person completing this form, the following also must be provided:*

_____
Signature of person signing on behalf of claimant                                              Date

_____
Print your name here

_____
Capacity of person signing on behalf of claimant, if other than an individual, e.g., executor, president, trustee, custodian, etc.  (Must provide evidence of authority to act on behalf of claimant – see paragraph 14 on page ____ of this Claim Form.)

Page 13
Questions? Call 1-855-733-8308 or visit www.boasecuritieslitigation.com
**Do not call Bank of America Corporation with questions regarding the Settlement or this Claim Form.**

THIS CLAIM FORM MUST BE MAILED TO THE CLAIMS ADMINISTRATOR BY PREPAID, FIRST-CLASS MAIL, **POSTMARKED NO LATER THAN _____, 2013**, ADDRESSED AS FOLLOWS:

<div align="center">

*In re Bank of America Corp. Securities Litigation*
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 9876
Dublin, Ohio 43017-5776

</div>

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if mailed by _____, 2013 and if a postmark is indicated on the envelope and it is mailed First Class, and addressed in accordance with the above instructions.  In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

You should be aware that it will take a significant amount of time to fully process all of the Claim Forms.  Please be patient and notify the Claims Administrator of any change of address.

<div align="center">

### REMINDER CHECKLIST:

</div>

1. Please sign the above release and certification.  If this Claim Form is being made on behalf of joint claimants, then both must sign.

2. Remember to attach only **copies** of acceptable supporting documentation as these documents will not be returned to you.

3. Please do not highlight any portion of the Claim Form or any supporting documents.

4. Do not send original stock certificates or documentation.  These items cannot be returned to you by the Claims Administrator.

5. Keep copies of the completed Claim Form and documentation for your own records.

6. The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days.  Your claim is not deemed filed until you receive an acknowledgement postcard.  If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator toll free at 1-855-733-8308.

7. If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, please send the Claims Administrator written notification of your new address.  If you change your name, please inform the Claims Administrator.

8. If you have any questions or concerns regarding your claim, please contact the Claims Administrator at the above address or toll-free at 1-855-733-8308, or visit www.boasecuritieslitigation.com.  Please DO NOT call Bank of America Corporation with questions regarding your claim.

Page 14
Questions? Call 1-855-733-8308 or visit www.boasecuritieslitigation.com
**Do not call Bank of America Corporation with questions regarding the Settlement or this Claim Form.**

# Exhibit A-3

**Exhibit A-3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BANK OF AMERICA CORP. SECURITIES, DERIVATIVE, AND EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION | Master File No. 09 MDL 2058 (PKC) ECF CASE |
| THIS DOCUMENT RELATES TO: Consolidated Securities Action | |

**SUMMARY NOTICE OF (I) PROPOSED SETTLEMENT AND PLAN OF ALLOCATION;
(II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

To:     **All persons and entities who (1) held Bank of America Corporation ("BoA") common stock
as of October 10, 2008, and were entitled to vote on the merger between BoA and Merrill
Lynch & Co., Inc. ("Merrill") that was consummated on January 1, 2009; (2) purchased or
otherwise acquired the common stock of BoA during the period from September 18, 2008
through January 21, 2009, inclusive, excluding shares of BoA common stock acquired by
exchanging Merrill common stock for BoA common stock through the merger between the
two companies; (3) purchased or otherwise acquired January 2011 call options on BoA
common stock during the period from September 18, 2008 through January 21, 2009,
inclusive; or (4) purchased BoA common stock issued under the Registration Statement
and Prospectus for the BoA common stock offering that occurred on or about October 7,
2008, and who were damaged thereby (the "Class").[1]**

**PLEASE READ THIS NOTICE CAREFULLY; YOUR RIGHTS WILL BE AFFECTED BY THE
SETTLEMENT OF A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE.
PLEASE DO NOT CONTACT BANK OF AMERICA CORPORATION REGARDING THIS NOTICE.

ALL QUESTIONS ABOUT THIS NOTICE, THE PROPOSED SETTLEMENT, OR YOUR ELIGIBILITY
TO PARTICIPATE IN THE SETTLEMENT SHOULD BE DIRECTED TO CO-LEAD COUNSEL OR THE
CLAIMS ADMINISTRATOR, WHOSE CONTACT INFORMATION IS PROVIDED BELOW, RATHER
THAN TO BOA OR THE COURT.

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an
Order of the United States District Court for the Southern District of New York, that Court-appointed Lead

---
[1]  Certain persons and entities are excluded from the Class by definition and others are excluded pursuant to request.  A complete
description of who is excluded from the Class is set forth in the full Settlement Notice referred to below.

Plaintiffs, the State Teachers Retirement System of Ohio; the Ohio Public Employees Retirement System; the Teacher Retirement System of Texas; Stichting Pensioenfonds Zorg en Welzijn, represented by PGGM Vermogensbeheer B.V.; and Fjärde AP-Fonden, on behalf of themselves and the Court-certified Class, in the above-captioned securities class action (the "Action") have reached a proposed settlement of the Action with defendants BoA, Merrill, Kenneth D. Lewis, John A. Thain, Joe L. Price, Neil A. Cotty, Banc of America Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, William Barnet III, Frank P. Bramble, Sr., John T. Collins, Gary L. Countryman, Tommy R. Franks, Charles K. Gifford, Monica C. Lozano, Walter E. Massey, Thomas J. May, Patricia E. Mitchell, Thomas M. Ryan, O. Temple Sloan, Jr., Meredith R. Spangler, Robert L. Tillman, and Jackie M. Ward (collectively, the "Defendants") for $2,425,000,000.00 and certain corporate governance enhancements to be implemented or continued by BoA, that, if approved, will resolve all claims in the Action.

A hearing will be held on _____, 2013 at _:__ _.m before The Honorable P. Kevin Castel, in the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Courtroom 12C, New York, NY 10007, to determine (i) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against Defendants, and the releases specified and described in the Stipulation and Agreement of Settlement dated November 30, 2012 should be granted; (iii) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (iv) whether Co-Lead Counsel's application for attorneys' fees and reimbursement of expenses should be approved.

If you are a member of the Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund.  If you have not yet received the full printed Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Settlement Notice") and the Proof of Claim Form, you may obtain copies of these documents by contacting the Claims Administrator at *In re Bank of America Corp. Securities Litigation*, c/o The Garden City Group, Inc., Claims Administrator, P.O. Box 9876, Dublin, Ohio 43017-5776, (855) 733-8308.  Copies of the Settlement Notice and Proof of Claim Form can also be downloaded from the website for the Action, www.boasecuritieslitigation.com, or from Co-Lead Counsel's respective websites.

If you are a Class Member, in order to be eligible to receive a payment under the proposed Settlement, you must submit a Proof of Claim Form *postmarked* no later than _____, 2013.  If you are a Class Member and do not submit a proper Proof of Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you previously submitted a request for exclusion from the Class in connection with the Notice of Pendency of Class Action ("Class Notice") and you wish to remain excluded, no further action is required.  If you previously submitted a request for exclusion from the Class in connection with the Class Notice and you want to opt-back into the Class and be eligible to receive a payment from the Settlement Fund, you must submit a request to opt-back into the Class in writing such that it is *received* no later than _____, 2013, in accordance with the instructions set forth in the Settlement Notice.  If you previously submitted a request for exclusion from the Class in connection with the Class Notice and do not opt-back into the Class in accordance with the instructions set forth in the Settlement Notice, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the net proceeds of the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, or Co-Lead Counsel's application for attorneys' fees and reimbursement of expenses, must be filed with the Court and delivered to Co-Lead Counsel and representative counsel for Defendants such that they are *received* no later than _____, 2013, in accordance with the instructions set forth in the Settlement Notice.

Inquiries, other than requests for the Settlement Notice, may be made to:

| | | |
|---|---|---|
| Bernstein Litowitz Berger & Grossmann LLP | Kaplan Fox & Kilsheimer LLP | Kessler Topaz Meltzer & Check, LLP |
| Max W. Berger, Esq. | Robert N. Kaplan, Esq. | David Kessler, Esq. |
| Steven B. Singer, Esq. | Frederic S. Fox, Esq. | Gregory M. Castaldo, Esq. |
| 1285 Avenue of the Americas | 850 Third Avenue | 280 King of Prussia Road |
| New York, NY  10022 | 14th Floor | Radnor, PA 19087 |
| | New York, NY 10022 | |

Requests for the Settlement Notice should be made to:

*In re Bank of America Corp. Securities Litigation,*
c/o The Garden City Group, Inc.
P.O. Box 9876
Dublin, Ohio 43017-5776
(855) 733-8308
www.boasecuritieslitigation.com

By Order of the Court

# 686671

# Exhibit B

**EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| IN RE BANK OF AMERICA CORP. SECURITIES, DERIVATIVE, AND EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION |
| THIS DOCUMENT RELATES TO: Consolidated Securities Action |

Master File No. 09 MDL 2058 (PKC)

ECF CASE

## JUDGMENT APPROVING CLASS ACTION SETTLEMENT

WHEREAS, a consolidated securities action is pending in this Court entitled *In re Bank of America Corp. Securities, Derivative and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09 MDL 2058 (PKC) (S.D.N.Y.) (the "Action");

WHEREAS, by Memorandum and Order dated February 6, 2012, this Court certified the Action to proceed as a class action on behalf of a class of investors consisting of: (i) as to claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), all persons and entities who held Bank of America Corporation ("BoA") common stock as of October 10, 2008, and were entitled to vote on the merger between BoA and Merrill Lynch & Co., Inc. ("Merrill"), and were damaged thereby; and (ii) as to claims under Sections 10(b) and 20(a) of the Exchange Act, all persons and entities who purchased or otherwise acquired BoA common stock during the period from September 18, 2008 through January 21, 2009, inclusive, excluding shares of BoA common stock acquired by exchanging stock of Merrill for BoA stock through the merger between the two companies consummated on January 1, 2009, and were damaged thereby; and (iii) as to claims under Sections 10(b) and 20(a) of the Exchange Act, all persons and entities who purchased or otherwise acquired January 2011 call options of BoA from September 18, 2008 through January 21, 2009, inclusive, and were damaged thereby; and (iv) as

to claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), all persons and entities who purchased BoA common stock issued under the Registration Statement and Prospectus for the BoA common stock offering that occurred on or about October 7, 2008, and were damaged thereby (the "Class");[1]

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meaning as they have in the Stipulation and Agreement of Settlement dated November 30, 2012 (the "Stipulation");

WHEREAS, pursuant to this Court's Order dated February 29, 2012, the Notice of Pendency of Class Action (the "Class Notice") was mailed to potential members of the Class to notify them of, among other things: (i) the Action pending against the Defendants; (ii) that the Action had been certified by the Court to proceed as a class action on behalf of the Court-certified Class; and (iii) their right to request to be excluded from the Class, the effect of remaining in the Class or requesting exclusion, and the requirements for requesting exclusion;

WHEREAS, Lead Plaintiffs, the State Teachers Retirement System of Ohio; the Ohio Public Employees Retirement System; the Teacher Retirement System of Texas; Stichting Pensioenfonds Zorg en Welzijn, represented by PGGM Vermogensbeheer B.V.; and Fjärde AP-Fonden, individually and on behalf of the Court-certified Class, and defendants BoA, Merrill,

---

[1] Excluded from the Class by definition are: Defendants, present or former executive officers of BoA and Merrill, present or former members of Merrill's and BoA's Board of Directors and their immediate family members (as defined in 17 C.F.R. § 229.404, Instructions). Also excluded from the Class are any Persons who previously submitted a request for exclusion as set forth on Appendix 1 to the Stipulation and Agreement of Settlement dated November 30, 2012 who have not opted-back into the Class in accordance with the terms set forth in the Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Settlement Notice") and the Court's Preliminary Approval Order (defined herein). All Persons excluded from the Class pursuant to request are set forth on Exhibit 1 hereto.

Kenneth D. Lewis, John A. Thain, Joe L. Price, Neil A. Cotty, Banc of America Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, William Barnet III, Frank P. Bramble, Sr., John T. Collins, Gary L. Countryman, Tommy R. Franks, Charles K. Gifford, Monica C. Lozano, Walter E. Massey, Thomas J. May, Patricia E. Mitchell, Thomas M. Ryan, O. Temple Sloan, Jr., Meredith R. Spangler, Robert L. Tillman, and Jackie M. Ward (collectively, the "Defendants" and, together with Lead Plaintiffs, the "Parties") entered into the Stipulation, which was approved by additional named plaintiff Grant Mitchell (together with Lead Plaintiffs, the "Class Representatives"), setting forth the terms and conditions of the Parties' proposed settlement (the "Settlement");

WHEREAS, by Order dated _____ __, 2012 (the "Preliminary Approval Order"), this Court (a) preliminarily approved the Settlement; (b) ordered that notice of the proposed Settlement be provided to potential Class Members; (c) provided Class Members with the opportunity to: (i) opt-back into the Class if they previously submitted a request for exclusion from the Class in connection with the Class Notice, or (ii) object to the proposed Settlement; and (d) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Class;

WHEREAS, the Court conducted a hearing on _____ __, 2013 (the "Settlement Hearing") to consider, among other things, (i) whether the terms and conditions of the Settlement are fair, reasonable and adequate, and in the best interests of Lead Plaintiffs and the other Class Members, and should therefore be approved; and (ii) whether a judgment should be entered dismissing the Action with prejudice as against the Defendants; and

WHEREAS, the Court having reviewed and considered the Stipulation, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments

3

received regarding the Settlement, and the record in the Action, and good cause appearing therefor;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.    **Jurisdiction** - The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Class Members.

2.    **Incorporation of Settlement Documents** - This Judgment incorporates and makes a part hereof:  (a) the Stipulation filed with the Court on November 30, 2012; and (b) the Settlement Notice and the Summary Notice, both of which were filed with the Court on _____ __, 2013.

3.    **Settlement Notice** - The Court finds that the dissemination of the Settlement Notice and the publication of the Summary Notice:  (i) were implemented in accordance with the Preliminary Approval Order; (ii) constituted the best notice practicable under the circumstances; (iii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members (a) of the effect of the Settlement (including the Releases provided for therein), (b) of Co-Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, (c) of their right to object to any aspect of the Settlement, the Plan of Allocation, and/or Co-Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses, (d) of their right to opt-back into the Class if they previously submitted a request for exclusion in connection with the Class Notice, and (e) of their right to appear at the Settlement Hearing; (iv) constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice of the proposed Settlement; and (v) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private

Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), 15 U.S.C. § 77z-1(a)(7), and all other applicable law and rules.

4.      **Final Settlement Approval and Dismissal of Claims -** Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation: the amount of the Settlement; the Releases provided for therein, including the release of the Released Lead Plaintiffs' Claims as against the Defendants' Releasees; and the dismissal with prejudice of claims against Defendants), and finds that the Settlement is, in all respects, fair, reasonable and adequate, and is in the best interests of Lead Plaintiffs and the other Class Members.  The Parties are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

5.      The Action and all of the claims against Defendants by Lead Plaintiffs and the other Class Members are hereby dismissed with prejudice.  The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

6.      **Binding Effect -** The terms of the Stipulation and of this Judgment shall be forever binding on the Defendants, Lead Plaintiffs and all other Class Members (regardless of whether or not any individual Class Member submits a Proof of Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective heirs, executors, administrators, predecessors, successors, affiliates and assigns.  The Persons listed on Exhibit 1 hereto are excluded from the Class pursuant to request and are not bound by the terms of the Stipulation or this Judgment.

7.      **Releases** - The releases as set forth in paragraphs 5 and 6 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects.  Accordingly, this Court orders that:

(a)      Without further action by anyone, and subject to paragraphs 8 and 9 below, upon the Effective Date of the Settlement, Lead Plaintiffs, Class Representatives, and each of the other Class Members, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, affiliates and assigns, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, discharged and dismissed each and every Released Lead Plaintiffs' Claim against the Defendants and the other Defendants' Releasees and shall forever be enjoined from prosecuting any or all of the Released Lead Plaintiffs' Claims against any of Defendants' Releasees.  This Release shall not apply to any Person listed on Exhibit 1 hereto.

(b)      Without further action by anyone, and subject to paragraphs 8 and 9 below, upon the Effective Date of the Settlement, each of the Defendants and each of the other Defendants' Releasees, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, affiliates and assigns, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, discharged and dismissed each and every Released Defendants' Claim against all of the Lead Plaintiffs' Releasees and shall forever be enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Lead Plaintiffs' Releasees.  This Release shall not apply to any Person listed on Exhibit 1 hereto.

8.      Notwithstanding ¶¶ 7(a) – (b) above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

9.      Notwithstanding ¶¶ 7(a) – (b) above, nothing in this Judgment shall release any of the Excluded Claims (as that term is defined within paragraph 1(uu) of the Stipulation).

10.      **<u>Corporate Governance Enhancements</u>** – The Corporate Governance Enhancements as set forth in paragraphs 36 and 37 of the Stipulation are expressly incorporated herein in all respects.  Accordingly, this Court orders that:

(a)      BoA will, within forty-five (45) days following the entry of this Judgment, implement the following Corporate Governance Enhancements, and will maintain such Corporate Governance Enhancements through the later of January 1, 2015 or eighteen (18) months following entry of this Judgment.

(i)      BoA will amend Section 3 of its Corporate Governance Guidelines to read, in relevant part, as follows:

"*Majority Voting for Directors*.  In an uncontested election, a director who fails to receive the required number of votes for re-election in accordance with the Bylaws shall offer to resign.  In addition, a director whose resignation is under consideration shall abstain from participating in any recommendation or decision regarding that resignation.  The Corporate Governance Committee shall make a recommendation to the Board as to whether to accept or reject the tendered resignation, or whether other action should be taken.  The Corporate Governance Committee and the Board, in making their decisions, may consider any factor or other information that they deem relevant.  The Board shall act on the tendered resignation, taking into account the Corporate Governance Committee's recommendation, and shall publicly disclose its decision regarding the resignation and the basis for the decision within ninety (90) days after the results of the election are certified.  If the resignation is not accepted, the director will continue to serve until the next annual meeting of stockholders and until the director's

7

successor is elected and qualified.  The Board shall not permit the director to stand for election at the next annual meeting."

(ii)     BoA will amend Section 8 of its Corporate Governance Guidelines to read, in relevant part, as follows:

"***Minimum Stock Ownership by Executive Officers and Directors***.  In order to align the interests of the Company's executive officers and directors with those of the Company's stockholders, the Board has adopted the following minimum stock ownership requirements:  (a) the Chief Executive Officer shall hold at least 500,000 shares of the Company's common stock and retain at least 50% of the net after-tax shares from future equity awards until retirement; (b) other executive officers shall hold at least 300,000 shares of the Company's common stock and retain at least 50% of the net after-tax shares from future equity awards until the ownership guideline is achieved; and (c) non-management directors are required to hold and cannot sell the restricted stock they receive as compensation (except as necessary to pay taxes upon vesting) until termination of their service.  The Company shall disclose in its annual proxy statement any failure of any director to comply with the stock ownership guidelines.  All full value shares and units beneficially owned by executive officers and directors are included in the calculation; performance contingent shares and units are included in the calculation when earned; and stock options are not included.  Newly appointed executive officers will have up to five years to achieve compliance."

(iii)     In connection with the establishment of the Corporate Development Committee, BoA will amend the charter for the Corporate Development Committee to read, in relevant part, as follows:

"***Committee Authority and Responsibilities***.  In carrying out its oversight responsibilities as set forth above, the Committee shall oversee senior management's establishment of policies and guidelines, to be adopted by the Board, establishing appropriate systems (including policies, procedures and/or management committees) to ensure that Applicable Transactions are vetted carefully and that adequate due diligence is performed prior to Board approval of any Applicable Transaction.  Among other things, the Committee shall ensure that the Chief Executive Officer and the Board are informed with respect to any bonus or incentive compensation agreements with an actual or estimated aggregate value exceeding 5% of the acquisition price at the time the Applicable Transaction is announced, which agreements have been negotiated in connection with an Applicable Transaction and are based on or otherwise related to such Applicable Transaction.  In connection with any Applicable Transaction to be submitted to the Board for approval, the Committee shall meet at least once, telephonically or in person, with members of senior management to review management's compliance with applicable policies and procedures related to the Company's consideration of the Applicable Transaction, prior to its presentation to the Board for approval."

(b)    BoA will maintain the following corporate governance reforms (agreed to previously with the SEC) through January 1, 2015:

(i)    that all compensation committee members be super-independent;

(ii)    that BoA publish on its website the incentive compensation principles and the requirement that it adhere to them;

(iii)    that BoA have its Chief Executive and Chief Financial Officers certify that they have reviewed all annual and merger proxy statements;

(iv)     that BoA maintain a consultant to the Compensation Committee who would report solely to the Compensation Committee and would be "independent" under all applicable NYSE rules and guidelines concerning compensation consultants; and

(v)     that BoA provide shareholders with an annual non-binding "say on pay" with respect to executive compensation.

(c)     The Court shall retain jurisdiction until the end-date of the Corporate Governance Enhancements on the later of January 1, 2015 or eighteen (18) months following entry of this Judgment to enforce any of the conditions set forth in this paragraph 10.

11.     **Complete Bar Order** -

(a)     Any and all Persons are permanently barred, enjoined and restrained, to the fullest extent permitted by applicable law, from commencing, prosecuting or asserting any claim for indemnity or contribution against any Defendants' Releasees (or any other claim against any Defendants' Releasees where the alleged injury to such Person is that Person's actual or threatened liability to the Class or a Class Member in the Action), based upon, arising out of or related to the Released Lead Plaintiffs' Claims, whether arising under state, federal or foreign law, as claims, cross-claims, counterclaims, or third-party claims, whether asserted in the Action, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere.  However, with respect to any judgment that the Class or a Class Member may obtain against such Person based upon, arising out of or relating to any Released Lead Plaintiffs' Claim belonging to the Class or a Class Member, that Person shall be entitled to a credit of the greater of (i) an amount that corresponds to the percentage of responsibility of the Defendants for the loss to the Class or the Class

Member or (ii) the amount paid by or on behalf of the Defendants to the Class or the Class

Member for common damages.

(b)     Except as provided in ¶ 11(d) below, each and every one of Defendants'

Releasees is hereby permanently barred, enjoined and restrained, to the fullest extent permitted

by applicable law, from commencing, prosecuting or asserting any claim for indemnity or

contribution against any Person (or any other claim against any such Person where the alleged

injury to such Defendants' Releasee is that Defendants' Releasee's actual or threatened liability

to the Class or a Class Member in the Action), based upon, arising out of or related to the

Released Lead Plaintiffs' Claims, whether arising under state, federal, or foreign law, as claims,

cross-claims, counterclaims, or third-party claims, whether asserted in the Action, in this Court,

in any other federal or state court, or in any other court, arbitration proceeding, administrative

agency, or other forum in the United States or elsewhere.

(c)     Nothing in this Complete Bar Order shall prevent any Person listed on

Exhibit 1 hereto from pursuing any Released Lead Plaintiffs' Claim against any Defendants'

Releasees.  If any such Person pursues any such Released Lead Plaintiffs' Claim against any

Defendants' Releasees, nothing in this Complete Bar Order or in the Stipulation shall operate to

preclude such Defendants' Releasees from asserting any claim of any kind against such Person,

including any Released Defendants' Claims (or seeking contribution or indemnity from any

Person, including any co-Defendant in the Action, in respect of the claim of such Class Member

who is excluded from the Class pursuant to request as set forth on Exhibit 1 hereto.

(d)     Notwithstanding anything in sub-paragraphs 11(a)-(c) above, nothing in

the Stipulation or in sub-paragraphs 11(a)-(c) above shall operate to (a) preclude the Defendants'

Releasees from asserting any claims against their own insurers; or (b) preclude the Defendants or

any other Person from asserting any claims, including claims for contribution or indemnity, against any Person, including any Defendant in this Action, in connection with or arising out of the Excluded Claims (as that term is defined within paragraph 1(uu) of the Stipulation).

12.    **Rule 11 Findings -** The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the commencement, maintenance, prosecution, defense and settlement of the Action.

13.    **No Admissions -** Neither this Judgment, the Term Sheet, the Stipulation (whether or not consummated) nor its negotiation, nor any proceedings taken pursuant to it:

(a)    shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Lead Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees;

(b)    shall be offered against any of the Lead Plaintiffs' Releasees, as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Lead Plaintiffs' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; provided, however, that if the Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement;

(c)      shall be construed against any of Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

(d)      shall be construed against Lead Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Second Amended Complaint would not have exceeded the Settlement Amount.

14.      **Retention of Jurisdiction** - Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over:  (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees and/or Litigation Expenses by Co-Lead Counsel in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Class Members for all matters relating to the Action.

15.      Separate orders shall be entered regarding approval of a plan of allocation and the motion of Co-Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses.  Such orders shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

16.      **Modification of the Agreement of Settlement** - Without further approval from the Court, Lead Plaintiffs and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (i) are not materially inconsistent with this Judgment; and (ii) do not materially limit the rights of Class Members in connection with the Settlement.  Without further order of

13

the Court, Lead Plaintiffs and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

17.     **Termination -** If the Effective Date does not occur or the Settlement is terminated as provided in the Stipulation, then this Judgment (and any orders of the Court relating to the Settlement) shall be vacated, rendered null and void and be of no further force or effect, except as otherwise provided by the Stipulation.  Within fourteen (14) business days after joint written notification of termination is sent by counsel for BoA and Co-Lead Counsel to the Escrow Agent pursuant to the terms of the Escrow Agreement, the Settlement Fund (including accrued interest thereon and any funds received by Co-Lead Counsel consistent with  ¶ 19 of the Stipulation), less any expenses and any costs which have either been disbursed or incurred and chargeable to Notice and Administration Costs and less any Taxes paid or due or owing shall be refunded by the Escrow Agent to BoA.  In the event that the funds received by Co-Lead Counsel consistent with ¶ 19 of the Stipulation have not been refunded to the Settlement Fund within the fourteen (14) business days specified in this paragraph, those funds shall be refunded by the Escrow Agent to BoA immediately upon their deposit into the Escrow Account consistent with ¶ 19 of the Stipulation.

18.     **Entry of Final Judgment -** There is no just reason to delay the entry of this Judgment as a final judgment in this Action.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

SO ORDERED this _____ day of _____, 2013.

_____
The Honorable P. Kevin Castel
United States District Judge

# 686669

14

**EXHIBIT 1**

**<u>Persons Excluded from the Class Pursuant to Request</u>**