UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ x
:
IN RE BANK OF AMERICA CORP.            :       Master File
SECURITIES, DERIVATIVE, AND            :       No. 09 MD 2058 (PKC)
EMPLOYEE RETIREMENT INCOME             :
SECURITY ACT (ERISA) LITIGATION        :       ECF CASE
:
------------------------------------------------ x       Oral Argument Requested
:
THIS DOCUMENT RELATES TO               :
:
*Waber v. Lewis, et al.*, No. 12 Civ. 4568   :
:
------------------------------------------------ x


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF
MICHAEL WABER'S SHAREHOLDER DERIVATIVE COMPLAINT**


| | |
|---|---|
| CLEARY GOTTLIEB STEEN & HAMILTON LLP | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| One Liberty Plaza | 1285 Avenue of the Americas |
| New York, NY 10006-1470 | New York, NY 10019-6064 |
| (212) 225-2000 | (212) 373-3000 |

*Attorneys for Bank of America Corporation*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

    A.    Mr. Waber's Demand to the Board ........................................................................ 2

    B.    The Composition of the Board ............................................................................. 4

    C.    The Complaint ...................................................................................................... 5

    D.    Mr. Waber's Section 220 Demand ....................................................................... 6

ARGUMENT .............................................................................................................................. 7

    A.    The Complaint Must Plead Particularized Facts Showing that Demand Was Wrongfully Refused ............................................................................................. 8

    B.    The Complaint Fails to Plead Particularized Facts that Would Demonstrate that the Board Acted Unreasonably or in Bad Faith .................................................. 9

        1.    Mr. Waber Has Waived Any Claim that the Board Cannot Act Independently ................................................................................................ 9

        2.    The Complaint's Wholly Conclusory Allegations of Interestedness Fail to Satisfy Mr. Waber's Pleading Burden ......................................... 10

        3.    The Complaint's Conclusory Allegations Are Belied by the Pleaded Facts ............................................................................................ 12

    C.    The Complaint Should Be Dismissed with Prejudice as Against Mr. Waber, and Without Leave to Amend .............................................................................. 14

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Amalgamated Bank v. NetApp, Inc.,
Civ. A. No. 6772-VCG, 2012 WL 379908 (Del. Ch. Feb. 6, 2012) .................... 7, 10

Aronson v. Lewis,
473 A.2d 805 (Del. 1984) ................................................................................. 7, 13

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ......................................................................................... 11-12

Baron v. Siff,
Civ. A. No. 15152, 1997 WL 666973 (Del Ch. Oct. 17, 1997) ........................ 10

Boeing Co. v. Shrontz,
Civ. A. No. 11273, 1994 WL 30542 (Del. Ch. Jan. 19, 1994) ......................... 10

Cent. Laborers Pension Fund v. News Corp.,
Civ. A. No. 6287-VCN, 2011 WL 6224538 (Del. Ch. Nov. 30, 2011) ............ 6-7

Furman v. Walton,
No. C 06-3532 SBA, 2007 WL 1455904 (N.D. Cal. May 16, 2007) ............... 9-10

Grimes v. Donald,
673 A.2d 1207 (Del. 2000) ............................................................................... 10, 12

Grobow v. Perot
539 A.2d 180 (Del. 1988) ................................................................................. 11

Hartsel v. Vanguard Group, Inc.,
Civ. A. No. 5394-VCP, 2011 WL 2421003 (Del. Ch. June 15, 2011) ............. 13

In re Merrill Lynch & Co., Inc., Sec., Derivative and ERISA Litig.,
773 F. Supp. 2d 330 (S.D.N.Y. 2011) .............................................................. passim

Kamen v. Kemper Fin. Servs., Inc.,
500 U.S. 90 (1991) ............................................................................................ 7

Lambrecht v. O'Neal,
No. 11-1285, 2012 WL 6013440 (2d Cir. Dec. 4, 2012) ................................. 2, 10

Levine v. Smith,
591 A.2d 194 (Del. 1991) ................................................................................. passim

Rales v. Blasband,
634 A.2d 927 (Del. 1993) ................................................................................. 7, 9

RCM Sec. Fund, Inc. v. Stanton,
928 F.2d 1318 (2d Cir. 1991) .................................................................................. 11, 12

Scattered Corp. v. Chicago Stock Exch., Inc.,
701 A.2d 70 (Del. 1997) .......................................................................................... 9, 10

South v. Baker,
Civ. A. No. 7294-VCL, 2012 WL 4372538 (Del Ch. Sept. 25, 2012) .............................. 14

Spiegel v. Buntrock,
571 A.2d 767 (Del. 1990) ........................................................................................ 7, 8, 10

Zapata Corp. v. Maldonado,
430 A.2d 779 (Del. 1981) ........................................................................................ 8

## Rules and Statutes

Fed. R. Civ. P. 23.1 ................................................................................................. 1, 8, 14

8 Del. C. § 141(a) .................................................................................................... 7

8 Del. C. § 220 ........................................................................................................ passim

Nominal Defendant Bank of America Corp. ("Bank of America" or the "Bank") respectfully submits this memorandum of law in support of its motion to dismiss the Shareholder Derivative Complaint filed on June 11, 2012 (the "Complaint" or "Compl.") pursuant to Rule 23.1 of the Federal Rules of Civil Procedure. The Individual Defendants[1] join in this motion.

## PRELIMINARY STATEMENT

The Bank is a Delaware corporation, Compl. ¶ 29, and a basic tenet of Delaware corporate law is that a company's board of directors manages the corporation's affairs. This includes the management of potential assets like causes of action.

Mr. Waber seeks to bring this action on the Bank's behalf, and displace the Bank's Board in the management of the asserted claims. Those claims arise primarily out of the Bank's acquisition of Countrywide Financial Corp. ("Countrywide") in July 2008 and of Merrill Lynch & Co., Inc. ("Merrill Lynch") in January 2009. The Complaint asserts various causes of action against certain present and former officers and directors of Bank of America.

In July 2011, Mr. Waber made a written demand on the Bank's Board to investigate and pursue the claims the Complaint asserts. Compl. ¶ 300. The Bank's Board, with the assistance of its Audit Committee, considered Mr. Waber's demand and ultimately rejected it. The Board then informed Mr. Waber of its decision and the reasoning behind it by letter. Id. ¶ 302 & Ex. 3. The Complaint does not allege (nor could it) that the Board's decision to reject Mr. Waber's demand was wrongful, much less does so with the particularity required by law. Instead, the Complaint alleges – in wholly conclusory terms – that the members of the Board,

---

[1] The Individual Defendants are: Kenneth D. Lewis, Joe L. Price, Neil A. Cotty, William Barnet, III, Mukesh D. Ambani, Susan S. Bies, William P. Boardman, Frank P. Bramble, Sr., Virgis W. Colbert, John T. Collins, Gary L. Countryman, Charles K. Gifford, Charles O. Holliday, Jr., D. Paul Jones, Monica C. Lozano, Walter E. Massey, Brian T. Moynihan, Thomas J. May, Donald E. Powell, Charles O. Rossotti, Thomas M. Ryan, and Robert W. Scully.

and of the Audit Committee, were conflicted and therefore unable to consider the demand. Id. ¶ 304.

This argument fails. First, by making a demand, Mr. Waber waived his ability to challenge the capacity of the Board to consider it. Delaware law makes clear that a stockholder concedes a board's impartiality and disinterestedness by making a demand. As the Second Circuit explained last month, "[b]y making a demand upon the Board, [the stockholder] has conceded the Board's independence." Lambrecht v. O'Neal, No. 11-1285, 2012 WL 6013440, at *3 (2d Cir. Dec. 4, 2012) (summary order). Second, the Complaint in any event sets forth no basis upon which to question the disinterestedness or independence of the members of the Board in connection with its consideration of Plaintiff's demand. Mr. Waber simply alleges that he has sued the entire Board, Compl. ¶ 304, but that is inadequate as a matter of settled law. There is no allegation about what any Board member knew, or did not know, or any action any Board member took, or did not take, that would meet Mr. Waber's obligation to plead facts demonstrating that a majority of the Board members faced a substantial likelihood of personal liability as a result of the Complaint's allegations. In fact, a majority of the Board was appointed *after* the events that form the gravamen of Plaintiff's complaint.

Accordingly, the Complaint should be dismissed, with prejudice as against Mr. Waber and without leave to amend.

## STATEMENT OF FACTS

A.   **Mr. Waber's Demand to the Board**

On July 18, 2011, Mr. Waber sent a letter to Bank of America's Board of Directors, demanding that the Board take action to investigate and recover damages from certain current and former officers and directors. See Compl., Ex. 1. The purported violations were

2

premised on the following alleged events: (1) Bank of America's acquisition of Countrywide; (2) the indemnification of certain former Countrywide officers; (3) Bank of America's acquisition of Merrill Lynch, and the alleged failure to adequately disclose the agreement for the payment of bonuses to Merrill Lynch employees in connection therewith; (4) alleged bid rigging in auctions of municipal guaranteed investment contracts; (5) "mortgage foreclosure problems;" and (6) certain recent settlements. Compl. ¶ 300. Mr. Waber explained in a June 26, 2012 letter to Judge Forrest (before whom this action was originally pending) that "the gravamen of [his] claims is related to Bank of America's acquisition of Countrywide." Declaration of Sean K. Mullen, dated January 3, 2013 ("Mullen Decl."), Ex. A. Indeed, allegations about the acquisition of Countrywide and Merrill – both of which were completed by January 1, 2009 – account for 231 of the 236 paragraphs of the section of the Complaint labeled the "substantive allegations." Compl. at 17. And it is a matter of public record that, of the thirteen Bank of America Directors in place at the time Mr. Waber sent the demand letter, eight (including each member of the Audit Committee) held no position at the Bank until *after* those transactions had closed, and therefore could not have owed – much less breached – fiduciary duties to the Bank or its shareholders in connection with the acquisition of either of those companies.

The Board communicated with Mr. Waber several times. First, on October 19, 2011 the Board acknowledged receipt of his demand and informed Mr. Waber that it had "authorized the Audit Committee to consider the Demand, undertake such steps as it determines to be advisable, and make recommendations to the Board with respect to the Demand." Compl., Ex. 2. Second, on January 19, 2012, the Board informed Mr. Waber that it had considered his demand and, based on the recommendation of the Audit Committee, determined not to pursue

3

the potential claims Mr. Waber's letter described.  See Compl., Ex. 3.  The Board explained the investigation and conclusion as follows:

> In evaluating the demand, both the Audit Committee and the full Board considered, among other things, the potential adverse effect of pursuing claims on the Corporation's defenses in certain pending litigations, proceedings and investigations, and weighed that against the likelihood of recovering from the persons who would be named as defendants on the claims proposed by your letter, taking into account those proposed defendants' rights to indemnification.  The Audit Committee and the full Board have concluded that commencing the litigation demanded by your letter would likely impair the Corporation's defenses in these various proceedings.  Plaintiffs in these cases would likely argue that assertion of such claims constitutes an admission of liability by the Corporation as to the full scope of claims currently being asserted against the Corporation, or otherwise seek to use any litigation papers filed by the Corporation against the Corporation itself.  Both the Audit Committee and the full Board also considered the practical barriers to recovery on the proposed claims, and the potential amounts that may be recovered from the defendants in the lawsuit proposed by your letter.
>
> Based on the recommendation of the Audit Committee, and in light of, among other things, the potential adverse effects and the legal and practical barriers to recovery, the Board has determined that the possibility of recovery by pursuing the claims outlined in your letter is outweighed by the risk of weakening the Corporation's defenses in various pending proceedings and, accordingly, that it is not in the Corporation's interest to pursue such claims at this time.

Id.

B.      **The Composition of the Board**

When the demand was received, the Board was composed of thirteen directors.  Of those, only four were members when the Countrywide and Merrill Lynch acquisitions were approved or had closed; a fifth, Mr. Moynihan, was a Bank of America executive at the time of those transactions.  See Mullen Decl., Ex. B (Bank of America Corp., Annual Proxy (Schedule 14A) at 2-6. (Mar. 30, 2011) (the "2011 Proxy").  The other eight members were not directors of (or employed by) Bank of America until after January 1, 2009.  Id.  All five members of the Audit Committee (Ms. Susan Bies, and Messrs. D. Paul Jones, Jr., Donald E. Powell, Charles O.

4

Rossotti, and Robert W. Scully) were among these eight. Even with respect to the five members of the Board who were associated with the Bank at the time of the Countrywide and Merrill Lynch acquisitions, the Complaint contains not a single allegation that points to any of their conduct that constitutes part of the alleged wrongs; indeed, none is even mentioned in the Complaint's "substantive allegations."

### C.  The Complaint

The Complaint was filed on June 11, 2012. It asserts claims against the Individual Defendants for breach of fiduciary duty, unjust enrichment, abuse of control and gross mismanagement. Virtually all of the "substantive allegations" relate to the Bank's acquisition of Countrywide and Merrill, both of which had been completed by January 1, 2009. The five paragraphs that do not concern either of these acquisitions consist of one- or two-paragraph mentions of alleged misconduct, including a July 7, 2011 whistleblower claim concerning the Home Affordable Modification Program (Compl. ¶ 266), a June 3, 2009 auction rate securities complaint (id. ¶ 275), an October 19, 2012 news article concerning "robo-signing" (id. ¶ 276), and a July 2010 news article concerning bid rigging of municipal guaranteed investment contracts (id. ¶¶ 283-284). None of them ever mentions any of the Individual Defendants.

The Complaint devotes one paragraph to Mr. Waber's demand allegations:

> At the time that the initial demand was made on July 18, 2011, the Board consisted of the following thirteen (13) directors: Defendants Ambani, Bies, Bramble, Colbert, Gifford, Jones, Holliday, Lozano, May, Moynihan, Powell, Rossotti and Scully. The members of the Audit Committee were Defendants Bies, Jones, Powell, Rossotti (Chair), and Scully. None of these individuals were disinterested and independent with respect to considering Plaintiff's demand letters.

Compl. ¶ 304. The Complaint contains no other allegations about the Audit Committee's investigation and recommendation, or the Board's conclusion to refuse Mr. Waber's demand.

5

### D. Mr. Waber's Section 220 Demand

In accordance with Your Honor's Individual Practice Rule 2.A.1, on August 3, 2012 the Bank and the Individual Defendants submitted a pre-motion letter setting forth the arguments they intended to make in their contemplated motions to dismiss. Those arguments included Mr. Waber's failure to properly plead wrongful demand refusal. Mullen Decl., Ex. C. In Mr. Waber's August 7 response he simply asserted with no explanation that his demand was wrongfully refused. Mullen Decl., Ex. D.

On October 18, three days after the pre-motion hearing conference before this Court at which the schedule for responding to the Complaint, including briefing on this motion to dismiss, was set, Mr. Waber sent a letter to the Board purporting to be a demand for inspection pursuant to 8 Del. C. § 220 ("Section 220"). Mullen Decl., Ex E. Therein, Mr. Waber sought books and records on an expansive array of topics ranging from the Board's refusal of his litigation demand, to its consideration of the Merrill Lynch-related consolidated derivative settlement currently pending before this Court in In re Bank of America Corp. Securities, Derivative, and ERISA Litigation, No. 09 ML 2058, to materials related to his underlying allegations in this action. Mr. Waber's demand letter failed to meet the most basic of Section 220's requirements insofar as he failed to include documentary evidence demonstrating that he is a beneficial owner of stock issued by the Bank. See 8 Del. C. § 220(b). By letter dated October 29, the Bank denied Mr. Waber's Section 220 request, explaining that not only had he failed to meet the bare statutory requirements of Section 220, but that his request was further defective because it: (1) failed to state a proper purpose given the pendency of the derivative suit before this Court;[2] (2) failed to state a credible basis for inferring wrongdoing by the Bank's board or

---

[2]  See Cent. Laborers Pension Fund v. News Corp., Civ. A. No. 6287-VCN, 2011 WL 6224538, at *2 (Del. Ch. Nov. 30, 2011) ("[O]nce the derivative action is filed, and until the judicial processing of the dismissal motion

6

management; (3) sought information in support of claims that are time-barred; and (4) was impermissibly styled as a broad discovery request, rather than a narrow demand with "rifled precision" as required by Section 220. Mullen Decl., Ex. F. The Bank has heard nothing further from Mr. Waber with respect to his Section 220 demand.

## ARGUMENT

It is a "cardinal precept" of Delaware corporation law[3] that "directors, rather than shareholders, manage the business and affairs of the corporation." Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984); see 8 Del. C. § 141(a). "The decision to bring a law suit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation," and is thus among the decisions prototypically entrusted to a board of directors. Spiegel v. Buntrock, 571 A.2d 767, 773 (Del. 1990). Derivative actions provide a mechanism through which a shareholder can file suit on behalf of a corporation; however, such an action "[b]y its very nature . . . impinges on the managerial freedom of directors." Aronson, 473 A.2d at 811. Accordingly, a shareholder's ability to bring suit derivatively "is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." Rales v. Blasband, 634 A.2d 927, 932 (Del. 1993).

---

reaches the point where a recasting of the allegations has been authorized, the stockholder may not, as a general matter, demonstrate a proper purpose for invoking Section 220."); Amalgamated Bank v. NetApp, Inc., Civ. A. No. 6772-VCG, 2012 WL 379908, at *3 (Del. Ch. Feb. 6, 2012) ("Plaintiff should, for purposes of economy, and consistent with the requirements of Rule 11, bring the Section 220 action *before* filing the substantive action." (emphasis added)).

[3]    Federal courts look to the law of the state of incorporation to determine the demand requirements for a derivative suit, Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 108-09 (1991), and the Bank is chartered in Delaware. Compl. ¶ 29.

A.  **The Complaint Must Plead Particularized Facts Showing that Demand Was Wrongfully Refused**

Where a stockholder has made a demand upon a board, and that demand was considered and refused, the stockholder's legal ability to initiate a derivative action is "terminate[d]," unless the refusal is found to be "wrongful." Zapata Corp. v. Maldonado, 430 A.2d 779, 784 (Del. 1981).[4] In a court's evaluation of whether a plaintiff has adequately pleaded with particularity that a refusal is "wrongful," the board's decision is "entitled to the benefit of the business judgment rule." In re Merrill Lynch & Co., Inc., Sec., Derivative and ERISA Litig., 773 F. Supp. 2d 330, 345 (S.D.N.Y. 2011) (citing Levine, 591 A.2d at 209), aff'd sub nom. Lambrecht, 2012 WL 6013440. "The business judgment rule is a presumption that in making a business decision, not involving self-interest, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Spiegel, 571 A.2d at 774.

"By electing to make a demand, a shareholder plaintiff tacitly concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation." Id. at 777.

A demand refusal will only be considered "wrongful" where a plaintiff can plead with particularity facts which, taken as true, support a reasonable doubt that the challenged decision was the product of a valid exercise of business judgment. Levine, 591 A.2d at 210; Spiegel, 571 A.2d at 773-75. Accordingly, "the directors' decision 'will be shielded by the

---

[4] Rule 23.1(b) of the Federal Rules of Civil Procedure is "parallel" to Rule 23.1 of the Rules of the Court of Chancery of the State of Delaware, and "cases interpreting both standards are equally applicable" to the interpretation of Rule 23.1(b) of the Federal Rules of Civil Procedure. In re Merrill Lynch & Co., Inc., Sec., Derivative and ERISA Litig., 773 F. Supp. 2d 330, 347 n.17 (S.D.N.Y. 2011), aff'd sub nom. Lambrecht, 2012 WL 6013440.

8

business judgment rule unless the shareholder plaintiff can carry the considerable burden of showing that the decision not to bring the lawsuit was made in bad faith or was based on an unreasonable investigation.'" Merrill Lynch, 773 F. Supp. 2d at 345 (quoting RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1328 (2d Cir. 1991)). "[F]ew, if any, plaintiffs surmount this obstacle." Id. (citing RCM Sec. Fund, 928 F.2d at 1328).

B.  **The Complaint Fails to Plead Particularized Facts that Would Demonstrate that the Board Acted Unreasonably or in Bad Faith**

The Complaint fails to satisfy the exacting pleading requirements for bringing a derivative action where a demand has been refused. The entirety of Mr. Waber's allegation is that at the time he made his demand the Board was not "disinterested and independent with respect to considering Plaintiff's demand letters." Compl. ¶ 304. The sole reason he gives for why the Board was not capable of appropriately considering his demand is that the Complaint named all of the directors as defendants. Id. That is insufficient to excuse demand, much less to show that the demand was wrongfully refused.

1.  **Mr. Waber Has Waived Any Claim that the Board Cannot Act Independently**

To have standing to bring a derivative claim, a shareholder must either demonstrate that a board's refusal of a demand was wrongful, or that the shareholder was excused from making a demand in the first place because the board was incapable of making a disinterested decision. Rales, 634 A.2d at 932. It is settled law that when a plaintiff chooses to make a demand, he is "deemed to have waived any claim [he] might otherwise have had that the board cannot independently act on the demand." Scattered Corp., 701 A.2d at 74.[5] The Second

---

[5] See also Merrill Lynch, 773 F. Supp. 2d at 346 ("It is well-established that where a shareholder . . . chooses to make a demand upon a board of directors, she concedes the independence of a majority of the board." (internal quotation marks omitted)); Furman v. Walton, No. C 06-3532 SBA, 2007 WL 1455904, at *4 (N.D. Cal. May 16, 2007) (rejecting allegations of partiality in demand-refused case because "it is settled law in Delaware that a

Circuit made the same point last month: under Delaware law, "[b]y making a demand upon the Board, [the stockholder] has conceded the Board's independence." Lambrecht, 2012 WL 6013440, at *3. Accordingly, Mr. Waber's argument that the Board was not disinterested – his entire demand allegation – can be "easily dispensed with": he is precluded from alleging that the Board was incapable of considering the demand that he chose to make after receiving an answer he did not like. Merrill Lynch, 773 F. Supp. 2d at 346.

### 2. The Complaint's Wholly Conclusory Allegations of Interestedness Fail to Satisfy Mr. Waber's Pleading Burden

Even if Mr. Waber's demand did not preclude him from alleging that the Board was interested when it received the demand, he has not pled *any* particularized facts creating a plausible inference of interestedness on the part of any director.[6] To demonstrate demand futility, a derivative plaintiff must plead facts, and must do so with particularity. "[C]onclusory statements will not suffice to cast a reasonable doubt upon the disinterestedness, good faith or reasonableness of [a board] in acting on the demand." Scattered Corp., 701 A.2d at 75.

Courts have repeatedly rejected allegations of lack of independence where plaintiffs have pled facts with much more particularity than the single demand paragraph in Mr. Waber's complaint. In Levine, the plaintiff alleged that certain outside directors' independence was compromised by inside directors' misleading, manipulative, and deceptive conduct. 591

---

shareholder who makes a demand concedes the disinterestedness and independence of a majority of the board to respond to the demand"), aff'd, 320 F. App'x 638 (9th Cir. 2009); Grimes v. Donald, 673 A.2d 1207, 1218-19 (Del. 2000); Levine, 591 A.2d at 212-13 ("[B]y electing to make demand upon the . . . [b]oard before filing suit, [plaintiff] tacitly conceded the independence of a majority of the . . . [b]oard to respond to his demand."); Spiegel, 571 A.2d at 777; Baron v. Siff, Civ. A. No. 15152, 1997 WL 666973, at *2 (Del Ch. Oct. 17, 1997) ("By making a pre-suit demand, a plaintiff concedes the independence and disinterestedness of the board."); Boeing Co. v. Shrontz, Civ. A. No. 11273, 1994 WL 30542, at *2 (Del. Ch. Jan. 19, 1994) ("By making demand, plaintiffs concede the independence and disinterestedness of a majority of the . . . [b]oard.").

[6]   That Mr. Waber elected to bring this derivative action without first utilizing Section 220 to investigate the Board's independence, see Amalgamated Bank, 2012 WL 379908, at *3 ("Plaintiff should, for purposes of economy, and consistent with the requirements of Rule 11, bring the Section 220 action before filing the substantive action."), is no one's fault but his own.

A.2d at 207. Because the complaint did not describe what conduct the inside directors allegedly engaged in, the allegations were found to be "unsupported by particularized facts." Id. In Grobow v. Perot, the plaintiffs alleged that the directors were not disinterested because of their pay for services as directors, because of fear of public embarrassment and fear of removal, and because of motives related to entrenchment. 539 A.2d 180, 188 (Del. 1988). The court held that none of these allegations constituted well pleaded facts sufficient to raise a reasonable doubt as to the ability of the board to act with appropriate disinterestedness. Id. at 188-89. In In re Merrill Lynch, the court held that allegations of potential liability facing directors, as well as allegations of relationships between a potentially interested director and a disinterested director, were not sufficient to create a reasonable doubt as to the board's independence. 773 F. Supp. 2d at 343. And, in RCM Sec. Fund, plaintiff claimed that the purpose of the challenged transaction was entrenchment and that the directors participated in and profited from the challenged transaction. 928 F.2d at 1330. However, without "particularized allegations" supporting these claims, the court found them to be too conclusory to raise a reasonable doubt as to the independence of the directors. Id.

      Mr. Waber does not even attempt the speculative, albeit granular, allegations pled by the plaintiffs in Levine, Grobow, Merrill and RCM. Instead, his complaint simply pleads a legal conclusion: that the entire Board, including each member of the Audit Committee, was not disinterested. But "[c]onclusory 'allegations of fact or law [which are] not supported by allegations of specific fact may not be taken as true.'" Levine, 591 A.2d at 207 (alteration in original) (quoting Grobow, 539 A.2d at 187); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion

couched as a factual allegation") (internal quotation marks omitted). The basis for claiming lack of independence "would normally be that: (1) a majority of the board has a material financial or familial interest; [or] (2) a majority of the board is incapable of acting independently for some other reason such as domination or control." Grimes, 673 A.2d at 1216. There is nothing about this type of interest or influence alleged in the Complaint. Instead, all the Complaint does is state that each member of the Board has been named as a defendant. That is insufficient as a matter of law; a stockholder cannot plead a lack of independence "simply because [he] has chosen to sue all directors. . . . To hold otherwise would permit plaintiffs to subvert the particularity requirements of Rule 23.1 simply by designating all the directors as targets." Id. at 1216 n.8.

### 3. The Complaint's Conclusory Allegations Are Belied by the Pleaded Facts

The bare conclusion contained in Mr. Waber's demand allegations is itself inconsistent with the allegations in the Complaint. Any inquiry into the independence of a board of directors turns on whether a majority of its members is conflicted. Merrill Lynch, 773 F. Supp. 2d at 340; RCM Sec. Fund, 928 F.2d at 1330; Levine, 591 A.2d at 206. As noted above, 231 of the 236 "substantive allegations" in the Complaint relate to the acquisitions of Countrywide and Merrill Lynch. The Merrill Lynch transaction (the later of the two) closed on January 1, 2009. Of the thirteen directors Mr. Waber identifies as having been on the Board as of the date of his initial demand, only four (Messrs. Bramble, Gifford, Lozano, and May) were on the Board when the Countrywide and Merrill Lynch acquisitions occurred; one more, Mr. Moynihan, was an employee of Bank of America at the time of those transactions. Compl. ¶¶ 38, 42, 45, 47, 48. The remainder – or eight of the thirteen directors, a majority – joined the Board after both the Countrywide and Merrill Lynch transactions closed. Compl. ¶¶ 34, 36, 39,

43, 44, 49, 50.[7] Further, no member of the Audit Committee began service on the Board until after those acquisitions closed.[8] Compl. ¶ 304. It is facially obvious that this eight-Director majority is unquestionably disinterested and independent with respect to the Countrywide and Merrill Lynch transactions; those transactions occurred *before these Directors were even associated with the Bank*. Nothing in the Complaint alludes to a possible – let along plausible – reason why any of them would be unable to consider any of the "substantive allegations" the Complaint asserts.

Moreover, irrespective of when their Board service began, the Complaint pleads no adequate basis for concluding that any member of the Board was disabled from properly considering Mr. Waber's demand. To establish that any one director was improperly conflicted requires pleading particularized facts so demonstrating. "[T]he mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterested[ness] of directors." Merrill Lynch, 773 F. Supp. 2d at 339 (internal quotation marks omitted). A conflict only exists in the "rare case" where "defendants' actions were so egregious that a substantial likelihood of personal liability exists." Id. at 342 n.11 (internal quotation marks omitted); see also Aronson, 473 A.2d at 815; Hartsel v. Vanguard Group, Inc., Civ. A. No. 5394-VCP, 2011 WL 2421003, at *25 (Del. Ch. June 15, 2011), aff'd, 38 A.3d 1254 (Del. 2012). The Complaint contains no allegation demonstrating that any one of

---

[7]   The Complaint makes objectively erroneous allegations about when certain Directors joined the Board, as the 2011 Proxy makes clear: (1) Mr. Ambani joined the Board in March 2011 (Mullen Decl., Ex. B (2011 Proxy at 2)), not March 2001 (see Compl. ¶ 34); (2) Messrs. Colbert and Rossotti were former Merrill Lynch directors who joined the Board on January 28, 2009 (Mullen Decl., Ex. B (2011 Proxy at 3, 6); see Compl. ¶¶ 39, 50); and (3) while the Complaint contains no allegation regarding when Mr. Scully joined the Board, it is a matter of public record that he did so in August 2009 (Mullen Decl., Ex. B (2011 Proxy at 6)).

[8]   At the time the demand was made, the members of the Audit Committee were Directors Bies, Jones, Powell, Rossotti and Scully. Compl. ¶ 304. None of them joined the Board until after the Merrill Lynch acquisition closed. Mullen Decl., Ex. B (2011 Proxy at 2-6).

the directors faces a "substantial likelihood of personal liability," much less that the requisite majority face such liability. That is particularly true with respect to the allegations not involving the Countrywide and Merrill Lynch acquisitions – no Board member is alleged to have had any involvement with, or knowledge of, them whatsoever.

C.    **The Complaint Should Be Dismissed with Prejudice as Against Mr. Waber, and Without Leave to Amend**

The Delaware "Supreme Court has admonished stockholders repeatedly to use Section 220 of the General Corporation Law, 8 *Del C.* § 220, to obtain books and records and investigate their claims *before* filing suit." South v. Baker, Civ. A. No. 7294-VCL, 2012 WL 4372538, at *1 (Del Ch. Sept. 25, 2012) (emphasis added); see id. at n.1 (citing numerous cases). As with Mr. Waber, the plaintiffs in South "did not heed this advice" and failed to conduct an inspection of books and records before filing a plenary action. Id. at *1. Concluding that the complaint failed to satisfy Rule 23.1's standing requirement, Vice Chancellor Laster granted the defendants' motion and dismissed the complaint "'with prejudice and without leave to amend as to the named plaintiff[s].'" Id. (quoting King v. VeriFone Holdings, Inc., 12 A.3d 1140, 1151 (Del. 2011)). Vice Chancellor Laster explained that the filing of a plenary action asserting derivative claims without first pursuing Section 220 rights or otherwise conducting a meaningful investigation gives "rise to a presumption of disloyalty," which plaintiffs had failed to rebut. Id. at *18.

The same result is warranted here. Mr. Waber has never sought to invoke Section 220. After the October 15 hearing he did submit a letter to the Bank seeking access to books and records, Mullen Decl., Ex. E. But the Bank promptly responded, explaining why Mr. Waber's letter failed to comply with the requirements of Section 220. Id., Ex. F. Mr. Waber did nothing further.

14

## CONCLUSION

For the reasons stated above, the Bank respectfully requests that the Court enter an order dismissing the Complaint with prejudice, denying leave to amend, and granting such further relief as the Court deems proper and just.

Dated: New York, New York
       January 3, 2013

Respectfully submitted,

CLEARY, GOTTLIEB, STEEN & HAMILTON LLP

By: _____
   Mitchell A. Lowenthal
   Jennifer Kennedy Park

One Liberty Plaza
New York, NY  10006
(212) 225-2000
jkpark@cgsh.com

and

Brad S. Karp
Daniel J. Kramer
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

*Attorneys for Defendant*
*Bank of America Corporation*