UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
IN RE BANK OF AMERICA CORP.                               :
SECURITIES, DERIVATIVE, AND                               :          Master File
EMPLOYEE RETIREMENT INCOME                                :     No. 09 MD 2058 (PKC)
SECURITY ACT (ERISA) LITIGATION                           :
                                                          :          ECF CASE
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
THIS DOCUMENT RELATES TO                                  :
                                                          :
*Waber v. Lewis, et al.*, No. 12 Civ. 4568                :
                                                          :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS THE VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Counsel for Defendants*

Dated:  January 3, 2013

## **TABLE OF CONTENTS**

P<small>AGE</small>

PRELIMINARY STATEMENT .............................................................................1

SUMMARY OF ALLEGATIONS AND RELEVANT FACTS...................................4

    A.    Plaintiff's Demand on the Board ........................................4

    B.    Plaintiff's Claims ......................................................5

    C.    Defendants ............................................................5

    D.    The Countrywide Acquisition..............................................6

    E.    Other Allegations .....................................................7

ARGUMENT ........................................................................................8

I.    PLAINTIFF FAILS TO PLEAD THAT HIS DEMAND WAS
WRONGFULLY REFUSED......................................................8

II.    PLAINTIFF'S CLAIMS ARE TIME-BARRED......................................8

    A.    The Limitations Period for Plaintiff's Claims Is Three Years...............8

    B.    Plaintiff's Claims Accrued More Than Three Years Ago ....................9

III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF
FIDUCIARY DUTY OR UNJUST ENRICHMENT ........................11

    A.    Defendants Who Were Not at BAC During the Relevant Period
Must Be Dismissed ...................................................12

    B.    The Complaint Fails to State a Claim for Breach of Fiduciary Duty
in Connection with the Countrywide Acquisition .....................12

        1.    The Complaint Fails to State a Claim Regarding the Countrywide
Due Diligence ..................................................12

        2.    The Complaint Fails to State a Claim that Defendants Misled
Shareholders About Countrywide...............................14

    C.    Plaintiff's Summary Allegations Regarding Various Unresolved Suits and
Investigations Do Not State a Claim....................................17

    D.    The Complaint Fails to State a Claim for Unjust Enrichment ...............17

i

IV.   THE COMPLAINT SHOULD BE DISMISSED AS TO ALL BUT ONE
      DEFENDANT FOR LACK OF PERSONAL JURISDICTION ......................................18

CONCLUSION.........................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

PAGE

*Alki Partners, L.P. v. Vatas Holding GMBH*, 769 F. Supp. 2d 478 (S.D.N.Y. 2011) ................. 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 11

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 357 F. Supp. 2d 712 (S.D.N.Y. 2005), *aff'd*,
   493 F.3d 87 (2d Cir. 2007) .................................................................................................. 18

*Baena v. Woori Bank*, 2006 WL 2935752 (S.D.N.Y. Oct. 11, 2006) ........................................... 9

*Bahnmaier v. Bank of Am. Corp.*, 2012 WL 1353523 (S.D.N.Y. Apr. 12, 2012) ........... 3-4, 15, 16

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990) ................................. 20

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
   757 F. Supp. 2d 260 (S.D.N.Y. 2010) ................................................................... 13, 14, 15, 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 11

*Bond Safeguard Ins. Co. v. LR Buffalo Creek, LLC*,
   2009 WL 2601211 (W.D.N.C. Aug. 21, 2009) ..................................................................... 18

*Brinckerhoff v. JAC Holding Corp.*, 692 N.Y.S.2d 381 (App. Div. 1999) ................................... 9

*Burns v. Del. Charter Guar. & Trust Co.*, 805 F. Supp. 2d 12 (S.D.N.Y. 2011) ........................ 17

*Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*,
   1996 WL 506906 (Del. Ch. Sept. 3, 1996), *aff'd*, 692 A.2d 411 (Table) (Del. 1997) .......... 11

*In re Citigroup S'holder Derivative Litig.*, 964 A.2d 106 (Del. Ch. 2009) ....................... 3, 15, 16

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006) ..................................................... 18

*Feinstein v. Resolution Trust Corp.*, 942 F.2d 34 (1st Cir. 1991) .............................................. 18

*Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*,
   2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) ..................................................................... 17

*Freeplay Music, Inc. v. Cox Radio, Inc.*, 2005 WL 1500896 (S.D.N.Y. June 23, 2005) ............. 19

*Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160 (2d Cir. 1989) .............................................. 8

*Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482 (N.Y. 1999) .......................................... 9, 20

P<small>AGE</small>

*Graulich v. Dell Inc.*, 2011 WL 1843813 (Del. Ch. May 16, 2011) ................................................ 9

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999) .............................................................. 8

*Korn v. Merrill*, 403 F. Supp. 377 (S.D.N.Y. 1975),
    *aff'd by oral opinion*, 538 F.2d 310 (2d Cir. 1976) ................................................................ 9

*La. Mun. Police Emps. Ret. Sys. v. Blankfein*, 2009 WL 1422868 (S.D.N.Y. May 19,
    2009) .......................................................................................................................................... 11

*In re Lear Corp. S'holder Litig.*, 967 A.2d 640 (Del. Ch. 2008) ...................................... 11, 13, 14

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50 (2d Cir. 2012) ...................... 19

*Lyondell Chem. Co. v. Ryan*, 970 A.2d 235 (Del. 2009) .............................................................. 13

*Matthieu v. Piedmont Natural Gas Co.*, 152 S.E.2d 336 (N.C. 1967) ..................................... 9-10

*Mazloum v. Int'l Commerce Corp.*, 829 F. Supp. 2d 223 (S.D.N.Y. 2011) ................................. 19

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 218 F.R.D. 76 (S.D.N.Y. 2003) .......... 17

*In re Merrill Lynch & Co. Sec., Derivative & ERISA Litig.*, 773 F. Supp. 2d 330
    (S.D.N.Y. 2011), *aff'd sub nom. Lambrecht v. O'Neal*,
    2012 WL 6013440 (2d Cir. Dec. 4, 2012) ......................................................................... 13-14

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ............................... 18

*Monroe Cnty. Empls. Ret. Sys. v. Carlson*, 2010 WL 2376890 (Del. Ch. June 7, 2010) ............ 17

*N. Val. Partners, LLC v. Jenkins*, 2009 WL 1058162 (N.Y. Sup. Ct. Apr. 14, 2009) ................ 20

*NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*,
    2012 WL 3191860 (S.D.N.Y. Feb. 9, 2012) ...................................................................... 4, 15, 16

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 229 F.R.D. 456 (S.D.N.Y. 2005) ........................... 18

*Pfeffer v. Redstone*, 965 A.2d 676 (Del. 2009) ........................................................................... 15

*In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 466 (S.D.N.Y. 2010) .................... 18

*Platt Corp. v. Platt*, 217 N.E.2d 134 (N.Y. 1966) ....................................................................... 19

*RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009),
    *aff'd*, 387 F. App'x 72 (2d Cir. 2010) ................................................................................... 17

PAGE

*SEC v. Todd*, 2007 WL 1574756 (S.D. Cal. May 30, 2007),
    *aff'd in part, rev'd in part on other grounds*, 642 F.3d 1207 (9th Cir. 2011) ...................... 18

*Seghers v. Morgan Stanley DW, Inc.*, 2007 WL 1404434 (S.D.N.Y. May 10, 2007) ................. 9

*Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008) ...................................... 10

*Sugar Creek Charter Sch., Inc. v. Charlotte-Mecklenburg Bd. of Educ.*,
    655 S.E.2d 850 (N.C. Ct. App. 2008) ...................................................................................... 9

*Tomczak v. Morton Thiokol, Inc.*, 1990 WL 42607 (Del. Ch. Apr. 5, 1990) ........................... 3, 14

*Toomer v. Branch Banking & Trust Co.*, 614 S.E.2d 328 (N.C. Ct. App. 2005) .......................... 9

*Willey v. J.P. Morgan Chase, N.A.*, 2009 WL 1938987 (S.D.N.Y. July 7, 2009) ....................... 11

*Ziegler, Ziegler & Assocs. LLP v. China Digital Media Corp.*,
    2010 WL 2835567 (S.D.N.Y. 2010) ...................................................................................... 20


STATUTES & RULES

8 Del. Code § 102(b)(7) ............................................................................................................... 13

10 Del. Code § 8106(a) .................................................................................................................. 9

Fed. R. Civ. P. 12(b)(2) ................................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 1

Fed. R. Civ. P. 12(f) ..................................................................................................................... 17

Fed. R. Civ. P. 23.1 .................................................................................................................... 1, 8

N.C. Gen. Stat. § 1-52(1) ............................................................................................................... 8

N.C. Gen. Stat. § 1-52(4) ............................................................................................................... 8

N.Y. C.P.L.R. § 202 ...................................................................................................................... 9

N.Y. C.P.L.R. § 301 ..................................................................................................................... 19

N.Y. C.P.L.R. § 302 ................................................................................................................. 19, 20

Defendants respectfully submit this memorandum of law in support of their motion to dismiss the Verified Shareholder Derivative Complaint (the "Complaint" or "Compl.") pursuant to Rules 12(b)(2), 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

This shareholder derivative action purports to assert claims on behalf of Bank of America Corporation ("BAC") against current and former BAC directors and officers based on allegations that Defendants breached their fiduciary duties in connection with two aspects of BAC's business activities:  (i) by allegedly failing to conduct adequate due diligence before approving BAC's acquisition of Countrywide Financial Corporation ("Countrywide") and misleading shareholders about that due diligence and BAC's Countrywide-related exposures, and (ii) by various purported failures relating to BAC's acquisition of Merrill Lynch.  The Complaint also includes a hodgepodge of summary allegations (consisting of five paragraphs in total) relating to certain lawsuits and investigations into alleged misconduct at BAC.  The Complaint also asserts a claim for unjust enrichment.  Prior to filing his Complaint, Plaintiff made a demand on the BAC board of directors (the "Board") to seek redress for these alleged breaches of fiduciary duty, which the Board, in its business judgment, refused.

Under Federal Rule 23.1 and Delaware law, a shareholder who makes a pre-suit demand on a corporate board, as Mr. Waber did here, cannot assert claims derivatively on behalf of the corporation unless he alleges with particularity that the demand was wrongfully refused.  Mr.

---

[1] "Defendants" are Kenneth D. Lewis, Joe L. Price, Neil A. Cotty, William Barnet, III, Mukesh D. Ambani, Susan S. Bies, William P. Boardman, Frank P. Bramble, Sr., Virgis W. Colbert, John T. Collins, Gary L. Countryman, Charles K. Gifford, Charles O. Holliday, Jr., D. Paul Jones, Jr., Monica C. Lozano, Walter E. Massey, Brian T. Moynihan, Thomas J. May, Donald E. Powell, Charles O. Rossotti, Thomas M. Ryan and Robert W. Scully.  Messrs. Lewis, Price and Cotty are referred to herein as "Officer Defendants."  The remaining Defendants are referred to as "Director Defendants."  Defendant John A. Thain has been voluntarily dismissed.  (Dkt. No. 18.)

Waber fails to satisfy this essential prerequisite, as BAC has explained in the memorandum of law in support of its motion to dismiss, on which Defendants also rely.

Apart from this threshold failure, the Complaint suffers from a host of other defects.

First, Plaintiff's Merrill-related claims are, as the Court knows, already being litigated in related proceedings before this Court, *In re Bank of America Corp. Securities, Derivative, & ERISA Litigation*, No. 09 MD 2058 (PKC) (the "Consolidated Derivative Action"), the parties to which have agreed on a proposed settlement.  If approved, that settlement will release the Merrill-related claims in this case, as Plaintiff has conceded, *see* Ex. 1 at 1 n.1.[2]  But in any event, Plaintiff should not be permitted to press the same claims Court-appointed lead plaintiffs have actively litigated for nearly four years.  *See* Consolidation Orders, dated July 29, 2009 and June 24, 2010 (MDL Dkt. Nos. 16 & 290).

Second, Plaintiff's claims based on the Countrywide acquisition are facially time-barred under the applicable three-year statute of limitations.  The same claimed wrongdoing at Countrywide that Defendants allegedly failed adequately to diligence and disclose—*e.g.*, purportedly improper loan practices and lax underwriting guidelines—was, as the Complaint acknowledges, asserted in "numerous state investigations and lawsuits" brought in 2008.  These lawsuits and governmental investigations into Countrywide's underwriting and origination practices were widely reported at the time.  Plaintiff was thus on notice of the alleged basis for his claims more than three years before this action was filed.

Third, Plaintiff's Countrywide-related allegations fail to state a claim against Defendants. Several Defendants were not even at BAC at the time of the alleged misconduct, and thus could not have breached any duty or been unjustly enriched.  As for those Defendants who were at

---

[2] "Ex." refers to documents attached to the Declaration of Brian M. Burnovski, filed herewith.

2

BAC, the Complaint does not come close to pleading the elements of a claim against them. Plaintiff's assertion that Defendants failed to conduct adequate due diligence of Countrywide does not state a claim because, among other things, the Complaint alleges *no* facts about what was wrong with the diligence that was conducted, or what Defendants purportedly should have done differently.  Moreover, no facts are alleged that would sustain an inference that any Director Defendant acted in conscious bad faith, as would be necessary to state a claim given that BAC's certificate of incorporation exculpates the Director Defendants from liability except in cases of disloyalty (or other circumstances not relevant here).  As for the Officer Defendants, Plaintiff must show they were "grossly negligent" in performing their duties.  *Tomczak v. Morton Thiokol, Inc.*, 1990 WL 42607, at *12 (Del. Ch. Apr. 5, 1990).  But the Complaint fails to allege any facts about the Officer Defendants' roles, responsibilities or actions regarding the Countrywide acquisition that would provide any plausible basis for such a conclusion.

Plaintiff's claims based on BAC's disclosures about Countrywide fare no better.  To state a disclosure claim, Plaintiff must allege that Defendants "*deliberately* misinform[ed] shareholders about the business of the corporation, either directly or by a public statement."  *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 132, 134 n.93 (Del. Ch. 2009) (citations omitted).  The Complaint does not even allege an actionable misstatement or omission, much less facts that would even begin to show that any Defendant *deliberately* misinformed shareholders.  Indeed, Plaintiff's disclosure claims are a mere rehash of nearly identical allegations in two other lawsuits in this Court, *Bahnmaier v. Bank of America Corp.*, No. 09 Civ. 5411 (S.D.N.Y. filed Feb. 27, 2009), and *NECA-IBEW Pension Trust Fund v. Bank of America Corp.*, No. 10 Civ. 440 (S.D.N.Y. filed Jan. 19, 2010), both of which have been dismissed for, among other reasons, failure to plead an actionable misstatement or omission.  *See Bahnmaier*,

2012 WL 1353523, at *4-10 (S.D.N.Y. Apr. 12, 2012); *NECA-IBEW*, 2012 WL 3191860, at *9-23 (S.D.N.Y. Feb. 9, 2012); Ex. 2 (March 16, 2012 Order).  Plaintiff alleges no additional facts that would merit a different result in this case.

Nor do Plaintiff's five paragraphs of sundry summary allegations—related to (i) a whistleblower claim concerning BAC's participation in the Home Affordable Modification Program ("HAMP"); (ii) an SEC suit regarding BAC's auction rate securities disclosures; (iii) a purported FBI investigation into alleged "robo-signing"; and (iv) suits relating to alleged bid rigging of municipal guaranteed investment contracts—even begin to state a claim against any Defendant.  These allegations do not even mention any Defendant, much less demonstrate the conscious bad faith or gross negligence that would be necessary to state a claim.

Plaintiff's makeweight claim of unjust enrichment fails for the same reasons as the flawed claims for breach of fiduciary duty.  Also, for all but one Defendant, Plaintiff does not even allege what compensation was received.  Even where compensation is alleged, the Complaint fails to plead any facts showing why it would be unfair or inequitable to allow that Defendant to retain such compensation.

Finally, in the event that the Court does not dismiss the Complaint as to all Defendants for the foregoing reasons, those Defendants other than Robert Scully must be dismissed for lack of personal jurisdiction.  The Complaint fails to allege any basis for either general or specific jurisdiction over these nonresident Defendants.

## SUMMARY OF ALLEGATIONS AND RELEVANT FACTS

### A.    Plaintiff's Demand on the Board

On July 18, 2011, Plaintiff made a demand that the Board take action to remedy purported breaches of fiduciary duty by certain BAC directors and officers in connection with, *inter alia*, the Countrywide and Merrill Lynch acquisitions and related liabilities.  Ex. 3.  In

response, the Board authorized the Audit Committee to consider the demand, undertake such steps as it determined to be advisable and make recommendations to the Board.  Ex. 4.  After the conclusion of the investigation, the Board advised Plaintiff by letter dated January 19, 2012 that it had determined, based upon the recommendation of the Audit Committee, that it was "not in the Corporation's interest to pursue" the claims outlined in Plaintiff's demand.  *Id.*

### B.     Plaintiff's Claims

Five months later, on June 11, 2012, Plaintiff commenced this action.  The Complaint purports to bring five causes of action derivatively on behalf of BAC relating primarily to the Company's acquisition of Countrywide.  Counts I and II assert claims for breach of fiduciary duty for disseminating false and misleading information (Count I) and failing to maintain adequate internal controls (Count II).  Compl. ¶¶ 305-12.  Count III asserts a claim for unjust enrichment.  *Id.* ¶¶ 313-15.  Counts IV and V assert claims for "abuse of control" and "gross mismanagement," respectively, which merely re-label Plaintiff's breach of fiduciary duty claims. *Id.* ¶¶ 316-24.  Each count of the Complaint is asserted indiscriminately against all Defendants, without regard to their varying tenures at BAC.

### C.     Defendants

The nineteen Director Defendants are the thirteen directors who served on the Board when Plaintiff's demand was made in July 2011 and refused in January 2012, and six former directors, all of whom had left the Board prior to the making of the demand.  Compl. ¶¶ 34-51. Each Director Defendant except current CEO Brian Moynihan is or was a non-management "outside" director.  *Id.*  Nine of the nineteen Director Defendants—Ambani, Bies, Boardman, Colbert, Holliday, Jones, Powell, Rossotti and Scully—were not at BAC until *after* the events underlying Plaintiff's substantive allegations.  *Id.* ¶¶ 34, 36-37, 39, 43-44, 49; *see also* Ex. 5

at 6.[3]  The three Officer Defendants are BAC's former Chairman and CEO, Kenneth Lewis, who

had left the Bank more than a year and a half before the demand was made; former CFO Joe

Price; and former chief accounting officer Neil Cotty.  *Id.* ¶¶ 30-31, 33.  Other than stating their

titles, the Complaint alleges nothing about the Officer Defendants' roles or responsibilities with

regard to BAC's acquisition of Countrywide.

### D.      The Countrywide Acquisition

On January 11, 2008, after "extensive" due diligence, BAC announced that it would

acquire Countrywide for approximately $4 billion in an all-stock transaction.  Compl. ¶¶ 64, 67.

Mr. Lewis publicly stated that the acquisition was a "one time opportunity" for BAC and a

chance "to acquire the best mortgage platform in the business at a time when the value is very

attractive."  *Id.* ¶ 66.  He also stated that the acquisition was expected to improve BAC's

customer service and profitability.  *Id.* ¶ 64.  He acknowledged "the issues within the housing

and mortgage industries," and stated that the terms of the Countrywide acquisition "reflect[ed]

those challenges."  *Id.*  A press release announcing the acquisition touted Countrywide's

"subprime initiatives," including programs to help delinquent borrowers and minimize

foreclosures when feasible.  *Id.* ¶ 65.  During an analyst conference call, Mr. Price explained that

the "focus of due diligence, as you would expect was on the mortgage servicing rights, credit,

and legal, as well as accounting and operational areas."  *Id.* ¶ 67.  Mr. Price stated that the results

of the due diligence supported BAC's "overall valuation and pricing of the transaction."  *Id.*  In

response to a question about "lawsuits potentially looming," Mr. Lewis stated that BAC "had a

---

[3] Mr. Moynihan also joined the Board following the events at issue, in January 2010, Compl. ¶ 48, after previously serving in various executive capacities.  The Complaint erroneously alleges that Mr. Ambani joined the Board in March 2001, Compl. ¶ 34, rather than in March 2011, Ex. 5 at 2.  It also erroneously alleges that Messrs. Colbert and Rossotti were on the Board as of January 11, 2008, Compl. ¶¶ 39, 50; in fact, they did not join the Board until January 2009, following the closing of the Merrill Lynch merger, Ex. 5 at 3, 6.

lot of advice from both our internal group[s] and also from two other entities that put some parameters around it." *Id.* ¶ 69.

According to Plaintiff, numerous state attorneys general were, at the time of the January 11, 2008 announcement, publicly investigating Countrywide for predatory lending practices and other misconduct. *Id.* ¶¶ 70-71. In June 2008, attorneys general in Illinois and California commenced lawsuits against Countrywide alleging deceptive and unfair business practices; Florida commenced a similar action on July 1, the same date the transaction closed. *Id.* ¶¶ 75-76. In August, attorneys general in Connecticut, West Virginia and Indiana each filed suit directed toward Countrywide's lending practices. *Id.* ¶¶ 78-79. The Complaint also details other legal actions arising out of Countrywide's lending practices that were commenced in this general period by private parties and government agencies. *See, e.g., id.* ¶¶ 90, 264-65. On October 6, 2008, BAC announced a settlement with 11 state regulators. *Id.* ¶ 89.

Plaintiff contends that Defendants failed to conduct thorough due diligence of Countrywide prior to BAC's acquisition of the company. *Id.* ¶¶ 72, 269. Plaintiff also asserts that Defendants failed to warn shareholders of potential liabilities stemming from Countrywide's "reckless lending practices," *id.*, including "billions in expenses related to lawsuits and investigations," and misrepresented the thoroughness and adequacy of the due diligence BAC conducted, the impairment of Countrywide's assets and the negative effects that Countrywide might have on BAC's financial condition. *Id.* ¶¶ 2, 70-72.

### E.    <u>Other Allegations</u>

The Complaint also includes five paragraphs unrelated to Countrywide (or the Merrill Lynch acquisition), directed at a range of other supposed misconduct at BAC. They concern a July 7, 2011 whistleblower claim concerning BAC's participation in HAMP, Compl. ¶ 266; a June 3, 2009 complaint by the SEC alleging that BAC misled investors about the liquidity risks

of auction rate securities, *id.* ¶ 275; an October 19, 2012 press report regarding an investigation of BAC by the FBI into alleged "robo-signing," *id.* ¶ 276; and a July 2010 press report concerning alleged bid rigging of municipal guaranteed investment contracts and related lawsuits, *id.* ¶¶ 283-84.   None of these allegations mentions any of the Defendants.[4]

<u>**ARGUMENT**</u>

**I.     PLAINTIFF FAILS TO PLEAD THAT HIS DEMAND
        WAS WRONGFULLY REFUSED**

For the reasons set forth in BAC's memorandum of law in support of its motion to dismiss, in which Defendants join, the Complaint fails to meet the stringent requirements of Rule 23.1 and Delaware law of demonstrating through particularized allegations that Plaintiff's demand was "wrongfully refused."  Plaintiff's failure to satisfy this essential prerequisite to sue derivatively requires dismissal of this action.

**II.    PLAINTIFF'S CLAIMS ARE TIME-BARRED**

It is clear from the face of the Complaint that Plaintiff's claims are untimely and thus do not state a claim upon which relief might be granted.  *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) (claim should be dismissed under Rule 12(b)(6) when complaint, on its face, "clearly shows the claim is out of time").

**A.     <u>The Limitations Period for Plaintiff's Claims Is Three Years</u>**

North Carolina's three-year limitations period for claims of breach of fiduciary duty and unjust enrichment governs Plaintiff's claims.  N.C. Gen. Stat. §§ 1-52(1), (4).  Because this is a diversity action, Compl. ¶ 25, this Court applies New York's choice of law rules to determine

---

[4] Given that the derivative claims regarding Merrill will be released if the settlement in the Consolidated Derivative Action is approved (and that, in any event, Court-appointed lead plaintiffs have been prosecuting that action), Defendants do not detail those claims here.

which state's statute of limitations applies. *Seghers v. Morgan Stanley DW, Inc.*, 2007 WL 1404434, at *3 (S.D.N.Y. May 10, 2007). Under New York's "borrowing statute," N.Y. C.P.L.R. § 202, "the cause of action [must] be timely under the limitations period of both New York and the jurisdiction where the cause of action accrued." *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 484 (N.Y. 1999) (explaining that statute "prevents nonresidents from shopping in New York for a favorable Statute of Limitations"). The "place of injury" where BAC's purported causes of action accrued is North Carolina, because that is where BAC is headquartered and thus "resides and sustain[ed] the economic impact" of the alleged loss. *Id.* at 485; *see also Korn v. Merrill*, 403 F. Supp. 377, 385-86 (S.D.N.Y. 1975) (cause of action of corporation with principal place of business in California accrued in California), *aff'd by oral opinion*, 538 F.2d 310 (2d Cir. 1976); *Brinckerhoff v. JAC Holding Corp.*, 692 N.Y.S.2d 381, 382 (App. Div. 1999) (cause of action of corporation with principal place of business in Georgia accrued in Georgia). Plaintiff's claims accordingly must be timely under North Carolina's three-year limitations period.[5]

### B.  Plaintiff's Claims Accrued More Than Three Years Ago

Under North Carolina law, in cases for breach of fiduciary duty, "the statute of limitations begins to run when the claimant knew or, [by] due diligence, should have known of the facts constituting the basis for the claim." *Toomer v. Branch Banking & Trust Co.*, 614 S.E.2d 328, 336 (N.C. Ct. App. 2005) (citation omitted; alteration in original); *see also Sugar Creek Charter Sch., Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 655 S.E.2d 850, 857 (N.C. Ct. App. 2008) ("In general, a cause or right of action accrues, so as to start the running of the statute

---

[5] If the claims were instead viewed as having accrued in BAC's state of incorporation, *i.e.*, Delaware, *see Global Fin. Corp.*, 715 N.E.2d at 485 (cause of action for corporation accrues in "its [s]tate of incorporation or its principal place of business"); *Baena v. Woori Bank*, 2006 WL 2935752, at *6 (S.D.N.Y. Oct. 11, 2006) (Castel, J.) (same), they would still be subject to a three-year limitations period, *see* 10 Del. Code § 8106(a).

of limitations, as soon as the right to institute and maintain a suit arises[.]" (citation omitted; alteration in original)).  Plaintiff's own allegations demonstrate that he knew, or by diligence should have known, the factual basis for each of his claims more than three years before he brought suit on June 11, 2012.[6]

Plaintiff's claims are time-barred as a matter of law.  Countrywide's allegedly "predatory and fraudulent lending practices" and "lax underwriting guidelines," Compl. ¶ 72, were the subject of numerous investigations and suits by various state attorneys general in mid-2008, *see, e.g.*, *id.* ¶¶ 75, 78-79, which BAC settled for approximately $8.7 billion in October 2008, *id.* ¶ 89.  These practices were also the subject of numerous other lawsuits filed more than three years before Plaintiff filed his suit.  *See, e.g.*, *id.* ¶ 264 (January 17, 2008 whistleblower action against Countrywide regarding "questionable lending practices").  There were also widely publicized press reports in 2007 and 2008 that Countrywide's underwriting and origination practices were under investigation and the subject of lawsuits.[7]  The supposed misconduct at Countrywide that Plaintiff claims Defendants should have identified and disclosed had been alleged for years beforehand.  The statute of limitations runs not from the occurrence of the last known injury, but rather "from the time when the *first* injury was sustained."  *Matthieu v.*

---

[6] Under Delaware law, the limitations period runs from the time of the wrongful act "even if the plaintiff is unaware of the cause of action or the harm."  *Graulich v. Dell Inc.*, 2011 WL 1843813, at *6 (Del. Ch. May 16, 2011) (citation omitted).  The period may be tolled under certain limited circumstances but in no event "beyond the point where the plaintiff was objectively aware, or should have been aware, of facts giving rise to the wrong."  *Id.*

[7] *See, e.g.*, Gretchen Morgenson, *Inside the Countrywide Lending Spree*, N.Y. Times, Aug. 26, 2007, at § 3, p.1; E. Scott Reckard & Marc Lifsher, *Mortgages; 2 States Probe Countrywide Home Loans; The Lender Says California and Illinois Have Issued Subpoenas*, L.A. Times, Dec. 14, 2007, at C1; Amir Efrati et al., *Deal May Bring Legal Troubles*, Wall St. J., Jan. 11, 2008, at A8; *Suit Against Home Lender Is Expanded; Banks and Firms Are Added As Defendants in the Countrywide Case*, L.A. Times, Jan. 26, 2008, at C4; Ruth Simon, *U.S. News: Countrywide's Pressures Mount—Three States File Legal Actions*, Wall St. J., June 26, 2008, at A3; *Connecticut Joins Other States in Suing Countrywide*, N.Y. Times, Aug. 7, 2008, at C8; *Judge OKs Suit Against Countrywide*, L.A. Times, Dec. 3, 2008, at C7; Gretchen Morgenson, *Ex-Chief Accused of Stock Fraud at a Big Lender*, N.Y. Times, June 5, 2009, at A1 (Exs. 6-13).  In considering a motion to dismiss for untimeliness, the Court may take "judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents," to assess whether inquiry notice was triggered.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424-26 (2d Cir. 2008) (collecting cases).

*Piedmont Natural Gas Co.*, 152 S.E.2d 336, 339 (N.C. 1967) (citation omitted; emphasis

added).[8]  According to Plaintiff's own claims, as a result of the purportedly improper due

diligence of Countrywide, BAC first sustained injury in the immediate aftermath of the

acquisition.  *See, e.g.*, Compl. ¶¶ 89, 269.  Indeed, another BAC shareholder brought a putative

class action based on essentially the same allegations in February 2009.  *See Bahnmaier v. Bank

of Am. Corp.*, No. 09 Civ. 5411 (S.D.N.Y. filed Feb. 27, 2009).  Plaintiff's Countrywide-related

allegations appear to have been taken virtually word-for-word from those in the *Bahnmaier*

second amended complaint.  *Compare* Compl. ¶¶ 62-84, 89-91, *with Bahnmaier* Second Am.

Compl. ¶¶ 38-64 (Ex. 14).[9]

## III.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY OR UNJUST ENRICHMENT

Even if Plaintiff's claims were timely, the Complaint fails to state a claim for breach of

fiduciary duty or unjust enrichment.  The Complaint does not allege a single fact regarding

Defendants' conduct, much less facts that would state a claim that is "plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  Plaintiff's conclusory assertion of misconduct without any alleged factual basis is

insufficient.  *See Willey v. J.P. Morgan Chase, N.A.*, 2009 WL 1938987, at *4 (S.D.N.Y. July 7,

2009) ("*Iqbal* unequivocally rejects the notion that conclusory statements unsupported by factual

allegations can subject a defendant to the burdens of discovery.").

---

[8] *Accord Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, at *16 (Del. Ch. Sept. 3, 1996) ("statute of limitations begins running even though actual or substantial damages are inflicted at a later date"), *aff'd*, 692 A.2d 411 (Table) (Del. 1997).

[9] As for Plaintiff's Merrill claims, the same claims were asserted by other shareholders in this Court early in 2009, more than three years before this suit was filed.

11

**A.      Defendants Who Were Not at BAC During
the Relevant Period Must Be Dismissed**

Nine of the Director Defendants—Ambani, Bies, Boardman, Colbert, Holliday, Jones,

Powell, Rossotti and Scully—held no positions at BAC prior to joining the Board at various

times beginning in 2009 through 2011.  *See* pp. 5-6, *supra*.  Since the purported misconduct

alleged in the Complaint all had occurred prior to the start of 2009, no misconduct is or can be

alleged against these Defendants, and they accordingly should be dismissed with prejudice.

**B.      The Complaint Fails to State a Claim for Breach of Fiduciary Duty
in Connection with the Countrywide Acquisition**

**1.      The Complaint Fails to State a Claim Regarding the
Countrywide Due Diligence**

Plaintiff alleges that Defendants are responsible for a purported failure by BAC to

"conduct adequate due diligence" on Countrywide prior to BAC's acquisition of the company in

2008.  Compl. ¶¶ 72, 80, 269.  Plaintiff does not challenge BAC's public statements that its due

diligence examination lasted 30 days and involved more than 60 professionals.  *Id.* ¶¶ 67, 232.

Nor does Plaintiff identify any defect in the way the due diligence was conducted.  He does not

allege any facts indicating that BAC did not investigate important areas of concern, nor does he

identify any new facts that a supposedly proper diligence exercise would have uncovered.

Plaintiff merely states that BAC should have uncovered "fraudulent loan practices and extremely

lax underwriting guidelines," *id.* ¶ 72, and ostensibly then "backed out of the deal, or purchased

Countrywide at a much lower price," *id.* ¶ 269.

Such *post-hoc* reasoning is inadequate to meet Plaintiff's burden of pleading that the

Director Defendants acted with conscious bad faith, which is required here because BAC's

certificate of incorporation exculpates its directors from all personal liability except in cases of

disloyalty, as permitted by Section 102(b)(7) of the Delaware Code. *See id.* ¶¶ 295-97.[10]

Plaintiff has not even asserted facts showing that the process employed was inadequate or

flawed. Indeed, Plaintiff concedes that the due diligence undertaken by BAC "uncovered major

problems and potential liabilities." *Id.* ¶ 70. But even if Plaintiff had alleged some inadequacy,

more must be shown in order to hold directors accountable where, as here, they are protected by

an exculpatory charter provision. *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243-44 (Del.

2009) (allegations that process was "inadequate or flawed" insufficient); *see also Lear*, 967 A.2d

at 652 (allegations that a decision was "unreasonable or even grossly unreasonable" fail to show

bad faith). Rather, a plaintiff must identify "a very extreme set of facts" to support a "fair

inference that the directors consciously acted in a manner contrary to the interests of [the

company] and its stockholders." *Lear*, 967 A.2d at 652, 654-55.

   The Complaint fails to do this. It alleges no facts about what the Board had been advised

regarding the due diligence or about the Board's evaluation of Countrywide more generally.

There is no basis to suspect that the Board ignored any deficiency in the due diligence in bad

faith. Indeed, Plaintiff does not even attempt to conjure an explanation of why it would possibly

do so. As this Court held regarding a similar challenge to the Board's decision to acquire Merrill

Lynch, "*post-hoc* criticisms" of due diligence are nothing more than "a claim that the BofA

board's review was inadequate. That, however, cannot form the basis of a claim that the

directors acted in bad faith." *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 757 F.

Supp. 2d 260, 337 (S.D.N.Y. 2010); *see also In re Merrill Lynch & Co. Sec., Derivative &*

---

[10] *See* Ex. 15, Art. VI (providing that, "[t]o the fullest extent permitted" under Delaware law, "a director of the Corporation shall not be personally liable to the Corporation for monetary damage for breach of his duty as a director"). Contrary to Plaintiff's assertion, Compl. ¶ 295, the Court may take judicial notice of an exculpatory charter provision when deciding a motion to dismiss. *See, e.g., La. Mun. Police Emps. Ret. Sys. v. Blankfein*, 2009 WL 1422868, at *7 (S.D.N.Y. May 19, 2009); *see also In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 648 (Del. Ch. 2008).

*ERISA Litig.*, 773 F. Supp. 2d 330, 341 (S.D.N.Y. 2011) ("BofA's purported failure to conduct adequate due diligence . . . implicates the duty of care rather than the duty of loyalty, especially as there are no allegations of bad faith"), *aff'd sub nom. Lambrecht v. O'Neal*, 2012 WL 6013440 (2d Cir. Dec. 4, 2012).  The same reasoning applies here.

Plaintiff likewise fails to state a claim against any Officer Defendant.  To plead a claim for breach of fiduciary duty against a corporate officer, the complaint must allege facts showing that the officer was, at a minimum, "grossly negligent" in performing his or her duties—*i.e.*, that an Officer Defendant acted with a "reckless indifference" or "deliberate disregard" of BAC's interests, operating in a manner outside "the bounds of reason."  *Tomczak v. Morton Thiokol, Inc.*, 1990 WL 42607, at *12 (Del. Ch. Apr. 5, 1990).  The Complaint here does not even attempt to meet this "extremely stringent" standard.  *See Lear*, 967 A.2d at 652.  Indeed, it suffers from the same defects that led this Court to dismiss similar claims against various BAC officers based on purportedly inadequate diligence of Merrill Lynch:  Plaintiff does not allege "that these officers were part of BofA's due diligence team," nor does he allege "facts sufficient to support a reasonable inference that even if these defendants were part of the BofA due diligence team, they were grossly negligent in performing their due diligence functions."  *See In re Bank of Am.*, 757 F. Supp. 2d at 338.  These claims must therefore be dismissed.[11]

2.   **The Complaint Fails to State a Claim that Defendants Misled Shareholders About Countrywide**

Plaintiff likewise fails to make out a claim that Defendants misled shareholders about the quality of the due diligence performed on Countrywide or their expectations about how acquiring

---

[11] Mr. Moynihan was a corporate officer before being named President and CEO and joining the Board in January 2010, Compl. ¶ 48, but the Complaint does not allege what his position or responsibilities were in 2007 and 2008, other than that he served as General Counsel for a matter of "weeks" in December 2008, *id.* ¶ 171. Accordingly, although Mr. Moynihan appears to have been sued solely in his capacity as director, Compl. ¶¶ 48, 304, even viewed as an officer, the Complaint does not state a claim against him.

Countrywide would affect BAC. "[I]nherent in disclosure cases" is the requirement "that the misstated or omitted facts be identified and that the pleading not be merely conclusory." *Pfeffer v. Redstone*, 965 A.2d 676, 687 (Del. 2009). A plaintiff must offer, at a minimum, "well-pleaded facts from which it can be reasonably inferred that [the purportedly misstated or omitted information] was knowable and that the defendant was in a position to know it." *Id.* Moreover, where the challenged disclosures do not relate to any request for shareholder action—and no such connection is alleged here—a plaintiff must also show that the defendant "*deliberately* misinform[ed] shareholders about the business of the corporation, either directly or by a public statement." *In re Citigroup S'holder Derivative Litig.*, 964 A.2d 106, 132, 134 n.93 (Del. Ch. 2009) (citations omitted). The Complaint meets none of these requirements.

As a threshold matter, Plaintiff fails to show any misrepresentation. As noted above, Plaintiff's allegations were lifted nearly verbatim from the complaint in *Bahnmaier. See* p. 11, *supra*. In that case, this Court held that the allegations failed to state an actionable misstatement or omission. *Bahnmaier*, 2012 WL 1353523, at *4-10; *see also NECA-IBEW*, 2012 WL 3191860, at *18-23 (similar). The same conclusion necessarily obtains here. Plaintiff alleges that Defendants misrepresented the scope of due diligence, *e.g.*, Compl. ¶ 72, but fails to show that they "misstated the amount of staffing and time devoted to diligence, or that [BAC] did not, in truth, incorporate diligence findings into its valuation of the Countrywide acquisition," *see Bahnmaier*, 2012 WL 1353523, at *6; *see also NECA-IBEW*, 2012 WL 3191860, at *19 (similar). Plaintiff also alleges that Defendants failed to disclose Countrywide's litigation exposure and the risks of its subprime portfolio, *e.g.*, Compl. ¶¶ 70-72, 80, but identifies no statement that was rendered false or misleading by any such omission. *Bahnmaier*, 2012 WL 1353523, at *7, 9; *see also In re Bank of Am.*, 757 F. Supp. 2d at 340 (omissions nonactionable

15

under Delaware law, absent request for shareholder action).  BAC's statements about the acquisition, such as its belief that Countrywide was "the best domestic mortgage platform at an attractive price" and a "one time opportunity," *e.g.* Compl. ¶¶ 64, 66, are nonactionable "statements of puffery and corporate optimism," *see Bahnmaier*, 2012 WL 1353523, at *10, that contained "no specific representations or guarantees concerning the quality of Countrywide's origination and underwriting practices," *NECA-IBEW*, 2012 WL 3191860, at *22.[12]

Nor does Plaintiff plead that Defendants "deliberately misled" shareholders.  Mr. Waber points to nothing that even begins to suggest an intention to mislead or even a rationale as to why any Defendant might seek to mislead.  Indeed, Plaintiff's allegation that the diligence was flawed and thus *failed to uncover* problems at Countrywide, *see, e.g.*, Compl ¶¶ 72, 80, is inconsistent with the notion that Defendants deliberately obscured Countrywide's problems.  The challenged statements by Messrs. Lewis and Price, *id.* ¶¶ 64-69, 77, are not alleged to have been knowingly false when made.  Nor does Plaintiff plead facts to support a reasonable inference that Messrs. Lewis or Price (or any other Defendant) should have "anticipate[d] future negative events arising from Countrywide's holdings." *Bahnmaier*, 2012 WL 1353523, at *9.  As this Court held in dismissing similar claims in *Bahnmaier*, a claim that Messrs. Lewis or Price intentionally misinformed shareholders about Countrywide cannot be sustained where the complaint is simply "silent" about their states of mind. *See id.* at *12.

---

[12] The sole disclosure claim not lifted verbatim from *Bahnmaier*—an alleged failure to disclose Countrywide's agreement to indemnify its former executives, Compl. ¶ 72(g); *see also id.* ¶¶ 85-88—similarly does not state a claim, because, among other things, Plaintiff does not allege that this supposed omission rendered any other statement false or misleading.  Moreover, Plaintiff's own allegations show that the indemnity was a matter of public record by no later than June 9, 2009, *id.* ¶ 86, more than three years before he brought suit, and the claim is thus time-barred, *see* pp. 8-11, *supra*.

16

**C.      Plaintiff's Summary Allegations Regarding Various Unresolved
Suits and Investigations Do Not State a Claim**

The Complaint's allegations related to various investigations and lawsuits regarding

BAC's participation in HAMP, its auction rate securities disclosures, alleged "robo-signing" of

foreclosure-related documents and alleged bid rigging, *see* pp. 7-8, *supra*, do not even begin to

state a plausible claim against any Defendant.  *See, e.g.*, *Burns v. Del. Charter Guar. & Trust

Co.*, 805 F. Supp. 2d 12, 21-22 (S.D.N.Y. 2011) ("Plaintiffs' vague references among paragraphs

discussing other claims are insufficient to state a plausible claim for common law breach of

fiduciary duty.").  None of these miscellaneous allegations even mentions any Defendant, much

less attempts to show the conscious bad faith that would be required to state a claim against the

Director Defendants or the gross negligence required for the Officer Defendants.  Moreover, as

the relevant allegations "are either based on, or rely on, complaints in other actions that have

been dismissed, settled, or otherwise not resolved," they "are, as a matter of law, immaterial" and

should be stricken under Rule 12(f).  *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403

(S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).[13]

**D.      The Complaint Fails to State a Claim for Unjust Enrichment**

The failure to state a claim for breach of fiduciary duty is fatal to Plaintiff's unjust

enrichment claim.  *See Monroe Cnty. Empls. Ret. Sys. v. Carlson*, 2010 WL 2376890, at *2 (Del.

Ch. June 7, 2010).  Nor does the Complaint allege facts showing that any Defendant "has been

enriched . . . under unfair or inequitable circumstances."  *In re Bank of Am.*, 757 F. Supp. 2d

at 342.  Although Plaintiff asserts unjust enrichment indiscriminately against all Defendants, he

pleads the essential element of "enrichment" only as to one—Mr. Lewis, Compl. ¶ 294.  As to the

---

[13] *See also Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*, 2010 WL 3790810, at *5 (S.D.N.Y.
Sept. 28, 2010) (Castel, J.) (striking allegations "based on pleadings, settlements, and government investigations in
other cases"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78-79 (S.D.N.Y. 2003).

others, the claim necessarily fails.  *See Bond Safeguard Ins. Co. v. LR Buffalo Creek, LLC*, 2009

WL 2601211, at *16 (W.D.N.C. Aug. 21, 2009) (dismissing unjust enrichment claim where

"plaintiff has failed to allege what benefit [was] conferred on [the] defendants").  And as to Mr.

Lewis, Plaintiff fails to plead that his compensation was inequitable.  *See SEC v. Todd*, 2007 WL

1574756, at *18 (S.D. Cal. May 30, 2007) (proposition that "Defendants should give up their

salaries for the time at issue is untenable—it is basically a statement that because of several

business decisions or errors, nothing else they did during that period matters"), *aff'd in part and

rev'd in part on other grounds*, 642 F.3d 1207 (9th Cir. 2011); *see also In re Pfizer Inc. S'holder

Derivative Litig.*, 722 F. Supp. 2d 453, 466 (S.D.N.Y. 2010) (given "lack of non-conclusory

allegations that defendants' compensation was profligate or paid for an improper purpose,"

plaintiff failed to state a plausible claim for unjust enrichment (citation omitted)).

## IV.    THE COMPLAINT SHOULD BE DISMISSED AS TO ALL BUT ONE DEFENDANT FOR LACK OF PERSONAL JURISDICTION

If this Court does not grant dismissal as to all Defendants for any of the foregoing

reasons, then it must reach the question whether it has personal jurisdiction over Defendants

other than Mr. Scully, who alone is subject to personal jurisdiction in New York.[14]

Plaintiff bears the burden to show that the court has jurisdiction over each Defendant.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996); *see also D.H.

Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) ("In diversity cases, the issue of

---

[14] In view of this Court's personal jurisdiction over Mr. Scully, it is presented with the arguments under Rule 23.1, the statute of limitations and the merits regardless of whether it has personal jurisdiction over the other Defendants, and accordingly can properly dismiss all Defendants on any of those grounds.  *See Alki Partners, L.P. v. Vatas Holding GMBH*, 769 F. Supp. 2d 478, 492 n.18 (S.D.N.Y. 2011) ("Though the Complaint has failed to plead personal jurisdiction over some of the Defendants sufficiently, this Court will nonetheless address the substantive claims against all Defendants."); *id.* at 498-500 (granting 12(b)(6) motions of all defendants); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 357 F. Supp. 2d 712, 720 n.63 (S.D.N.Y. 2005) (where certain defendants assert lack of personal jurisdiction but "'do[] not insist that the jurisdictional issue be determined first, and no special circumstances exist,' a court may dismiss on the merits without reaching the issue of personal jurisdiction") (quoting *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34 (1st Cir. 1991)), *aff'd*, 493 F.3d 87 (2d Cir. 2007); *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 229 F.R.D. 456, 458 n.5 (S.D.N.Y. 2005) (same).

personal jurisdiction is governed by the law of the forum state[.]").  Plaintiff accordingly must show that each Defendant either is (i) a New York domiciliary or otherwise subject to general jurisdiction in New York, N.Y. C.P.L.R. § 301; or (ii) subject to specific jurisdiction pursuant to New York's long-arm statute, N.Y. C.P.L.R. § 302.  *See Freeplay Music, Inc. v. Cox Radio, Inc.*, 2005 WL 1500896, at \*2-8 (S.D.N.Y. June 23, 2005) (Lynch, J.).  To avoid dismissal, Plaintiff must make a *prima facie* showing of jurisdiction, including "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

Excepting Mr. Scully, none of the Defendants is a New York domiciliary.  Plaintiff concedes that the remaining Defendants are domiciled outside of New York, Compl. ¶¶ 30-31, 33-51, and does not begin to show that any of them is otherwise subject to general jurisdiction in New York.

Nor are any facts alleged that would support specific personal jurisdiction under New York's long-arm statute.  *See* N.Y. C.P.L.R. § 302(a).  Plaintiff does not allege that Defendants transacted business or committed a tort in New York.  *See* N.Y. C.P.L.R. §§ 302(a)(1), (2); *Platt Corp. v. Platt*, 217 N.E.2d 134, 136 (N.Y. 1966) (non-domiciliary director of New York corporation not subject to jurisdiction in New York absent showing that he had done "anything whatever in New York in connection with the corporation").[15]  Nor did Defendants allegedly commit a tort that caused injury in New York.  *See* N.Y. C.P.L.R. § 302(a)(3).  Any purported injury to BAC would have been sustained where it "resides and sustain[ed] the economic impact" of the alleged loss—*i.e.*, North Carolina, or perhaps Delaware, but not New York.  *See*

---

[15] The conclusory assertion that "a substantial portion of transactions and wrongs" about which Plaintiff complains "occurred in this district," Compl. ¶ 27, does not suffice to establish jurisdiction in the absence of any supporting allegations of fact.  *See Mazloum v. Int'l Commerce Corp.*, 829 F. Supp. 2d 223, 227 (S.D.N.Y. 2011) ("plaintiff may not rely on conclusory statements without any supporting facts" to establish jurisdiction).

*Global Fin. Corp.*, 715 N.E.2d at 485.  Nor did Defendants allegedly engage in a persistent course of conduct or derive "substantial revenue" from New York or from interstate or international commerce.  *See Ziegler, Ziegler & Assocs. LLP v. China Digital Media Corp.*, 2010 WL 2835567, at *5-6 (S.D.N.Y. 2010) (failure to "proffer sufficient evidence for any element" under N.Y. C.P.L.R. § 302(a)(3) "is dispositive of the issue of personal jurisdiction under this provision"); *N. Valley Partners, LLC v. Jenkins*, 2009 WL 1058162, at *5 (N.Y. Sup. Ct. Apr. 14, 2009) (finding 302(a)(3) jurisdiction "clearly unwarranted" in the absence of any allegations bearing on the substantial revenue tests).[16]

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed.

Dated:   New York, New York
              January 3, 2013

DAVIS POLK & WARDWELL LLP

/s/ Charles S. Duggan
Lawrence Portnoy (lawrence.portnoy@davispolk.com)
Charles S. Duggan (charles.duggan@davispolk.com)
Brian M. Burnovski (brian.burnovski@davispolk.com)
450 Lexington Avenue
New York, NY  10017
Telephone:  (212) 450-4000
Fax:  (212) 701-5800

*Counsel for Defendants*

---

[16] Because "there has been no *prima facie* showing of jurisdiction," it is "unnecessary to consider" constitutional due process.  *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 200 (2d Cir. 1990).