**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE BANK OF AMERICA CORP. SECURITIES, DERIVATIVE, AND EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION | Master File No. 09 MDL 2058 (PKC) ECF CASE |
| THIS DOCUMENT RELATES TO: Consolidated Securities Action | |

### MEMORANDUM OF LAW IN SUPPORT OF CO-LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

Dated:  February 19, 2013

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………iii

PRELIMINARY STATEMENT ........................................................................2

ARGUMENT ...................................................................................................5

I.  CO-LEAD COUNSEL ARE ENTITLED TO AN  AWARD OF ATTORNEYS'
FEES FROM THE COMMON FUND..............................................................5

II.  THE COURT SHOULD AWARD A REASONABLE  PERCENTAGE OF THE
COMMON FUND ...........................................................................................6

III.  THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER
EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE
LODESTAR METHOD....................................................................................7

    A.  The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-
the-Fund Method.....................................................................................7

    B.  The Requested Attorneys' Fees Are Reasonable Under the Lodestar
Method ....................................................................................................9

IV.  OTHER FACTORS CONSIDERED BY COURTS IN THE SECOND CIRCUIT
CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE................10

    A.  The Time and Labor Expended Support the Requested Fee................................11

    B.  The Risks of Litigation Support the Requested Fee ................................12

    C.  The Magnitude and Complexity of the Action Support the Requested Fee ..........15

    D.  The Quality of Co-Lead Counsel's  Representation Supports the
Requested Fee .........................................................................................16

    E.  The Requested Fee in Relation to the Settlement .................................18

    F.  Public Policy Considerations Support the Requested Fee .....................18

    G.  The Requested Fee Has Been Approved by Lead Plaintiffs.................19

    H.  The Reaction of the Class to Date Supports the Requested Fee ...........................20

V.  THE EXPENSES INCURRED ARE REASONABLE AND WERE
NECESSARY TO ACHIEVE THE BENEFIT OBTAINED...........................................21

VI.  LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE
COSTS AND EXPENSES UNDER 15 U.S.C. § 78u-4(a)(4).........................................22

CONCLUSION...................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Basic Inc. v. Levinson*,
      485 U.S. 224 (1988)....................................................................................................18

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
      472 U.S. 299 (1985)................................................................................................6, 19

*Blum v. Stenson*,
      465 U.S. 886 (1984)......................................................................................................7

*Boeing Co. v. Van Gemert*,
      444 U.S. 472 (1980)......................................................................................................5

*City of Detroit v. Grinnell Corp.*,
      495 F.2d 448 (2d Cir. 1974).......................................................................................12

*Fogarazzo v. Lehman Bros., Inc.*,
      No. 03-cv-5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) .......................7

*Goldberger v. Integrated Resources, Inc.*,
      209 F.3d 43 (2d Cir. 2000)................................................................................. *passim*

*Hicks v. Morgan Stanley*,
      No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)........6, 18, 23

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
      No. 03 MDL 1529 LMM, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ................17

*In re Am. Bank Note Holographics Inc. Sec. Litig.*,
      127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................................13

*In re American International Group, Inc. Securities Litigation*
      No. 04 Civ. 8141 (DAB), 2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) ...................24

*In re AMF Bowling Sec. Litig.*,
      334 F. Supp. 2d 462 (S.D.N.Y. 2004)........................................................................25

*In re BankAmerica Corp. Sec. Litig.*,
      228 F. Supp. 2d 1061 (E.D. Mo. 2002).......................................................................9

*In re Blech Sec. Litig.*,
      94 Civ. 7696, 2002 U.S. Dist. LEXIS 23170 (S.D.N.Y. Nov. 27, 2002) ..................8

*In re Cardinal Health, Inc. Sec. Litig.,*
  528 F. Supp. 2d 752 (S.D. Ohio 2007) .................................................................9

*In re China Sunergy Sec. Litig.,*
  No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011)................................21

*In re Comverse Tech., Inc. Sec. Litig.,*
  No. 06-CV-1825 (NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010)..........................7, 20

*In re DaimlerChrysler AG Sec. Litig.,*
  Master File No. 00-0993 (KAJ), slip op. (D. Del. Feb. 5, 2004) .............................9

*In re Deutsche Telekom AG Sec. Litig.,*
  No. 00-CV-9475 (NRB), 2005 U.S. Dist. LEXIS 45798 (S.D.N.Y. June 9, 2005).................9

*In re Enron Corp. Sec., Derivative & ERISA Litig.,*
  586 F. Supp. 2d 732 (S.D. Tex. 2008) ...............................................................8

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.,*
  No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................. *passim*

*In re Gilat Satellite Networks, Ltd.*
  No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...................24

*In re Global Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................16, 20

*In re Marsh & McLennan Cos. Sec. Litig.,*
  No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)...................7, 9, 15, 24

*In re Marsh ERISA Litig.,*
  265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................................15

*In re McKesson HBOC, Inc. Sec. Litig.,*
  No. 99-CV-20743 (N.D. Cal. 2006, 2007 & 2008) ...............................................8

*In re NASDAQ Market-Makers Antitrust Litig.,*
  187 F.R.D. 465 (S.D.N.Y. 1998) ...................................................................10

*In re Nortel Networks Corp. Sec. Litig.,*
  No. 05-MD-1659 (LAP), slip op. (S.D.N.Y. Dec. 26, 2006).....................................8

*In re Royal Ahold N.V. Sec. & ERISA Litig.,*
  461 F. Supp. 2d 383 (D. Md. 2006) ...............................................................8

*In re Royal Dutch/Shell Transp. Sec. Litig.,*
  No. 04-cv-374 (JAP), slip. op. (D.N.J. Sept. 26, 2008) .......................................24

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
   No. 09-MD-2027-BSJ, slip. op. (S.D.N.Y. Sept. 13, 2011) ...................................................24

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)...........................................................................10, 12

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007)...................................................................................8, 17

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ...................6, 10, 16

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)...........................................................................9, 16, 20

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
   487 F.2d 161 (3d Cir. 1973)..................................................................................................9

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
   540 F.2d 102 (3d Cir. 1976) (*en banc*) .................................................................................9

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................................9, 18

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)........................................................................................................7, 10

*Savoie v. Merchs. Bank*,
   166 F.3d 456 (2d Cir. 1999).....................................................................................................6

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004).........................12, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)...........................................................................................................6, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ("*Visa*") ........................................................................... *passim*

## STATUTES

Private Securities Litigation Reform Act of 1995 ("PSLRA")
   15 U.S.C. § 78u-4(A)(4) ............................................................................................1, 22, 23

## OTHER AUTHORITIES

4 NEWBERG ON CLASS ACTIONS § 14:6 (4th ed. 2012) ..................................................................8

Fed. R. Civ. P. 23(h) .......................................................................................................................1

Court-appointed Co-Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), Kaplan Fox & Kilsheimer, LLP ("Kaplan Fox"), and Kessler Topaz Meltzer & Check, LLP ("KTMC") (collectively, "Co-Lead Counsel"), having achieved a Settlement providing for a recovery of $2,425,000,000 in cash (the "Settlement Amount") for the benefit of the Class in this action, as well as the agreement of Bank of America Corporation ("BoA") to implement or continue certain significant corporate governance changes, respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 23(h), for an award of attorneys' fees in the amount of $158,549,766.46, representing 6.56% of the Settlement Amount net of Plaintiffs' Counsel's expenses (*i.e.*, 6.56% of the $2,425,000,000 Settlement Amount less expenses of $8,082,828.32) plus interest on such amount at the same rate as earned by the Settlement Fund.[1]   Co-Lead Counsel also seek reimbursement of $8,082,828.32 in litigation expenses that were reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the Action, as well as awards pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Class in the total amount of $453,003.04.

---

[1] Lead Plaintiffs, the State Teachers Retirement System of Ohio ("STRS Ohio"); the Ohio Public Employees Retirement System ("Ohio PERS"); the Teacher Retirement System of Texas ("Texas Teachers"); Stichting Pensioenfonds Zorg en Welzijn, represented by PGGM Vermogensbeheer B.V. ("PGGM"); and Fjärde AP-Fonden ("AP-4"), are simultaneously submitting herewith the Joint Declaration of Steven B. Singer, Frederic S. Fox, and David Kessler in Support of (A) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (B) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Joint Declaration" or "Joint Decl."). The Court is respectfully referred to the Joint Declaration for a detailed description of, *inter alia*, the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the value of the Settlement to the Class, as compared to the risks and uncertainties of continued litigation; and a description of the services Co-Lead Counsel provided for the benefit of the Class. Unless otherwise noted, capitalized terms have the meanings set out in the Joint Declaration and in the Stipulation and Agreement of Settlement dated as of November 30, 2012 (the "Stipulation").

## PRELIMINARY STATEMENT

The settlement of this Action for $2.425 billion in cash, plus corporate governance reforms, represents an outstanding result.  The Settlement is the fourth largest ever funded by a single corporate defendant for violations of the federal securities laws (and overall the sixth largest securities class action settlement in history); the largest resolving a claim under Section 14(a) of the Exchange Act; and by far the largest securities class action settlement related to the subprime financial crisis.  We respectfully submit that this exceptional result was achieved through the skill, tenacity and effective advocacy of Co-Lead Counsel, who vigorously litigated this Action for more than three-and-a-half years on a purely contingent fee basis against numerous highly skilled defense counsel.  The Settlement was achieved only weeks before trial and in the face of numerous hurdles and risks that posed a real threat of obtaining no recovery for the Class, much less the exceptional Settlement now before the Court for approval.

As detailed in the accompanying Joint Declaration and Section IV.A below, Plaintiffs' Counsel dedicated very substantial resources to this litigation having collectively spent over 193,500 hours in its prosecution.  Co-Lead Counsel's efforts included, among other things: drafting two detailed amended complaints; successfully moving for partial modification of the PSLRA's mandatory discovery stay; opposing two rounds of Defendants' motions to dismiss; obtaining class certification in a vigorously contested motion; engaging in extensive fact and expert discovery, including participation in 61 depositions and the review of more than 4.75 million pages of documents; opposing Defendants' motions for summary judgment and preparing Lead Plaintiffs' own motion for partial summary judgment; and preparing for trial, including briefing motions *in limine* and *Daubert* motions.

The Settlement is a particularly exceptional result when considered in light of the considerable risks and challenges confronted in this Action from the outset.  As set forth in detail

in the Joint Declaration, Lead Plaintiffs faced substantial hurdles in establishing Defendants' liability with respect to both their fraud claims under Section 10(b) and their negligence claims under Section 14(a).  For example, Lead Plaintiffs faced the risk that the Court or a jury could find that Defendants did not act recklessly or negligently in failing to disclose Merrill's fourth-quarter 2008 losses and the bonus agreement; that the alleged omissions were immaterial in light of other information in the market; or that Defendants had no duty to disclose the allegedly omitted information.   There were also substantial risks in establishing loss causation and damages.  The relative paucity of case law establishing the remedies available to Class Members under Section 14(a), including whether the Section 14(a) remedy was direct or derivative and the proper measure of damages it provided, presented significant risks.  We also faced substantial risks in proving that the series of alleged corrective disclosures in January 2009 identified by Lead Plaintiffs had, in fact, revealed the information that they had alleged was previously undisclosed; and that the price declines on the identified corrective disclosure dates were caused by the alleged corrective disclosures.  *See* Joint Decl. ¶¶ 125-145 and Section IV.B herein.

As compensation for their efforts on behalf of the Class, Co-Lead Counsel request a fee award in the amount of $158,549,766.46 plus interest, and reimbursement of the litigation expenses incurred in connection with the prosecution and resolution of the Action in the amount of $8,082,828.32.   The requested attorneys' fees are significantly below the range of fees commonly awarded in comparable settlements, whether considered as a percentage of the Settlement or on a multiplier basis.   Indeed, the requested fee represents a multiplier of approximately 1.8 on Plaintiffs' Counsel's total lodestar, a multiplier that is well below the range typically awarded in complex class actions with substantial contingency risks such as this one.

Lead Plaintiffs, each of which is a sophisticated institutional investor, have evaluated Co-Lead Counsel's application for fees and expenses and have endorsed it as fair and reasonable. *See* Neville Decl. ¶¶ 8-9; Becker Decl. ¶¶ 8-9; Wei Decl. ¶¶ 9-10; Groenewout-Hendriks Decl. ¶¶ 8-9; and Kåremer Decl. ¶¶ 8-9, attached as Exhibits 2 - 6 to the Joint Decl.  The 6.56% net fee award requested is consistent with or below the amounts set forth in the retainer agreements entered into at the outset of the Action by each of the Lead Plaintiffs with the Co-Lead Counsel firm they respectively retained.  Joint Decl. ¶¶ 180-181, 197.  The fact that the requested fee is consistent with retainer agreements entered into by sophisticated Lead Plaintiffs appointed pursuant to the PSLRA, and has been reviewed and endorsed by Lead Plaintiffs at the conclusion of the Action, is another significant factor strongly supporting approval of the fee request.

In addition, pursuant to the Court's Order Preliminarily Approving Proposed Settlement and Providing for Notice dated December 4, 2012 (ECF No. 771) (the "Preliminary Approval Order"), more than 3.2 million copies of the Settlement Notice have been mailed to potential Class Members and nominees, and the Summary Notice was published once in each of *The Wall Street Journal*, *The New York Times*, and *Financial Times* and transmitted once over the *PR Newswire*.  *See* Affidavit of Stephen J. Cirami Regarding (A) Mailing of the Settlement Notice and Proof of Claim Form; (B) Publication of the Summary Notice; and (C) Report on Opt-Ins Received to Date, attached as Exhibit 7 to the Joint Decl. ("Cirami Aff."), at ¶¶ 6-7.  The Settlement Notice advised potential Class Members that Co-Lead Counsel would seek fees equal to 6.56% of the Settlement Fund and reimbursement of litigation expenses and PSLRA awards in an amount not to exceed $17.5 million.  *See* Cirami Aff. Exhibit A, at ¶¶ 5, 103.  While the deadline set by the Court for Class Members to object to the requested attorneys' fees and

expenses has not yet passed, to date, only one objection to the amount of attorneys' fees and expenses set forth in the Settlement Notice has been received.  *See* Joint Decl. at ¶¶ 178, 212.[2]

Thus, Co-Lead Counsel respectfully request that the Court approve their application for an award of attorneys' fees and reimbursement of litigation expenses and PSLRA awards.

## ARGUMENT

## I.    CO-LEAD COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).  Courts recognize that awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature."  *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010)

---

[2]  A copy of the objection submitted by Scott Boatwright is attached as Exhibit 9 to the Joint Declaration. Mr. Boatwright's primary objection is that the fee request is not "reasonable compensation for the work of Co-Lead Counsel in this case."  Mr. Boatwright, however, acknowledges that his knowledge of the litigation is "limited to press reports and the Notice of Proposed Settlement and Plan of Allocation" and that he does not have the necessary information to fully assess the fees sought by Co-Lead Counsel.  Co-Lead Counsel will post this memorandum, along with the other documents in support of the Settlement and fee request, including the Joint Declaration which details the extensive time and effort expended by Co-Lead Counsel during the pendency of this Action, on the website, www.boasecuritieslitigation.com, for review by Class Members.  The deadline for the submission of objections is March 5, 2013.  Should any additional objections be received, Co-Lead Counsel will address them, along with Mr. Boatwright's objection, in reply papers, which will be filed with the Court on March 29, 2013.  Counsel is also aware of another potential objection which was served upon defense counsel by Mr. Robert Shattuck in a separate matter and which states that it will also be filed in the ***Bank of America*** matter at the appropriate time.  As of this date, however, the objection has yet to be filed in this Action or served upon Co-Lead Counsel in accordance with the Preliminary Approval Order.  If filed and served in a timely fashion, Co-Lead Counsel will also address the Shattuck Objection in our reply papers.

(internal quotation marks omitted); *see In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007) (same).

Indeed, the Supreme Court has emphasized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'") (citation omitted)). Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

## II.     THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE COMMON FUND

Co-Lead Counsel submit that this Court should award a fee based on a percentage of the common fund obtained for the Class. The Second Circuit has expressly approved the percentage method, recognizing that it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("*Visa*"); *see also Goldberger*, 209 F.3d at 48-50 (holding that either the percentage or lodestar method may be used, but noting that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources"); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). The Supreme Court has also endorsed the percentage

method, stating that "under the 'common fund doctrine' . . . a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

District Courts repeatedly recognize the benefits of the percentage method in common fund cases.  As the Second Circuit has noted, the "trend in this Circuit is toward the percentage method."  *Visa*, 396 F.3d at 121; *see Fogarazzo v. Lehman Bros., Inc.*, No. 03-cv-5194 (SAS), 2011 WL 671745, at *2 (S.D.N.Y. Feb. 23, 2011); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *14 (S.D.N.Y. Dec. 23, 2009).

Additionally, the percentage method is what Lead Plaintiffs, who were vigilant in their responsibility to the Class in negotiating the fee agreements with their respective counsel, chose as the method for determining the fees that Co-Lead Counsel could seek.  Joint Decl. ¶¶ 180-181.

## III. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD

### A. The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace.  *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989).  If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery.  *See Blum v. Stenson*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).

In securities class actions, attorneys' fees awarded routinely range from 20% to 33% of the settlement fund and commonly represent multipliers of 3 to 4.5 of counsel's lodestar.  *See* 4

NEWBERG ON CLASS ACTIONS § 14:6 (4th ed. 2012) ("In the normal range of common fund recoveries in securities and antitrust suits, common fee awards fall in the 20 to 33 per cent range"); *Visa*, 396 F.3d at 123 ("multipliers of between 3 and 4.5 have become common") (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998)).

In the handful of securities class action cases like this one in which settlements of over a billion dollars have been obtained, fee awards have been granted in the range of 7% to 14.5% of the recovery, and the fee awards represent, on average, a lodestar multiplier of nearly 3.5. *See* Appendix A hereto. The fee requested here, at 6.56% and a 1.8 multiplier, is significantly lower than awards in comparable cases on both a percentage and a multiplier basis. *See, e.g., In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 778-79 (S.D. Tex. 2008) (awarding 9.52% of $7.227 billion settlement fund, representing a 5.2 multiplier); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 265-71 (D.N.H. 2007) (awarding 14.5% of $3.2 billion settlement fund, representing a 2.7 multiplier); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 387 (D. Md. 2006) (awarding 12% of $1.1 billion settlement fund, representing a 2.57 multiplier); *In re McKesson HBOC, Inc. Sec. Litig.*, No. 99-CV-20743 (N.D. Cal. 2006, 2007 & 2008) (awarding 7.6% of $1.04 billion total settlement fund, representing a 2.1 multiplier)[3]; *In re Nortel Networks Corp. Sec. Litig.*, Civil Action No. 05-MD-1659 (LAP),

---

[3]  Fees in *McKesson* were awarded in three separate orders for an aggregate award of 7.6% of the $1.04 billion total settlement representing a collective lodestar multiplier of 2.1. *See In re McKesson HBOC, Inc. Sec. Litig.*, No. 99-CV-20743, slip op. at 1 (N.D. Cal. Feb. 24, 2006), ECF No. 1444; *In re McKesson HBOC, Inc. Sec. Litig.*, No. 99-CV-20743, slip op. at 1 (N.D. Cal. Apr. 13, 2007), ECF No. 1560; and *In re McKesson HBOC, Inc. Sec. Litig.*, No. 99-CV-20743, slip op. at 1 (N.D. Cal. Jan. 18, 2008), ECF No. 1727 (attached hereto as Exhibit 1).

slip op. at 10 (S.D.N.Y. Dec. 26, 2006), ECF No. 77 (attached hereto as Exhibit 2) (awarding 8% of $1.04 billion settlement fund, representing a 4.8 multiplier).[4]

### B.  The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to "cross-check" the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50.[5]  In cases of this nature, fees representing multiples above the lodestar are regularly awarded to reflect the contingency fee risk and other relevant factors.

As noted above, in complex class actions with significant contingency risks, lodestar multipliers between 3 and 4.5 are commonly awarded.  *See Visa*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal and quoting district court's statement that "multipliers of between 3 and 4.5 have become common"); *In re Deutsche Telekom AG Sec. Litig.*, Civil Action No. 00-CV-9475 (NRB), 2005 U.S. Dist. LEXIS 45798, at *13-*14 (S.D.N.Y. June 9, 2005) (awarding fee representing a 3.96 multiplier); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005) (awarding fee representing a 4.0 multiplier); *Maley v. Del*

---

[4] In securities class actions that have resulted in settlements in the hundreds of millions of dollars, courts have often awarded attorneys' fees of 18% or more of the settlement amount, with multipliers of 3 or higher.  *See, e.g.*, *In re Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 770 (S.D. Ohio 2007) (awarding 18% of $600 million settlement fund, representing a 6 multiplier); *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1066 (E.D. Mo. 2002) (awarding 18% of $490 million settlement fund, representing a 3 multiplier); *In re DaimlerChrysler AG Sec. Litig.*, Master File No. 00-0993 (KAJ), slip op. at 1 (D. Del. Feb. 5, 2004), ECF No. 971 (attached hereto as Exhibit 3) (awarding 22.5% of $300 million settlement fund, representing a 4.2 multiplier).

[5] Under the lodestar method, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) "to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."  *FLAG Telecom*, 2010 WL 4537550, at *23; *see also Marsh & McLennan*, 2009 WL 5178546, at *20 (same); *see generally Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973), *subsequently refined in Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*).

*Global Techs. Corp.*, 186 F. Supp. 2d 358, 369, 371 (S.D.N.Y. 2002) (awarding fee representing a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *NASDAQ Market-Makers*, 187 F.R.D. at 487-89 (awarding fee representing a 3.97 multiplier).  Indeed, in the nine securities class actions that settled for more than $1 billion, the average cross-check multiplier was nearly 3.5.  *See* Appendix A hereto.

Plaintiffs' Counsel have spent a total of 193,547 hours of attorney and other professional support time prosecuting the Action.  *See* Joint Decl. ¶ 190.  Plaintiffs' Counsel's lodestar is $88,307,135.[6]  *See id*.  The requested 6.56% fee, which amounts to $158,549,766.46 (without interest), represents a multiplier of 1.8.  Thus, the fee requested is well below the range of fees routinely awarded, whether calculated as a percentage of the fund or under the lodestar method.

Additionally, as set forth below, the factors established for the review of attorneys' fee awards by the Second Circuit in *Goldberger* also strongly support a finding that the requested fee is reasonable and Lead Plaintiffs have reviewed and approved the request.

## IV. OTHER FACTORS CONSIDERED BY COURTS IN THE SECOND CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (internal quotes and citation omitted).  Consideration of these factors, together with the analyses above, demonstrates that the fee requested is fair and reasonable.

---

[6] *See supra* n. 5.  The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflationary losses, and the loss of interest.  *See Missouri v. Jenkins*, 491 U.S. at 284; *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 n.10 (S.D.N.Y. 2008); *Veeco*, 2007 WL 4115808 at *9.

### A.   The Time and Labor Expended Support the Requested Fee

Co-Lead Counsel vigorously litigated this Action for more than three-and-a-half years before the Settlement was reached just weeks before trial was scheduled to begin.  As discussed in the Joint Declaration, Co-Lead Counsel exerted tremendous efforts in pursuing the claims of Lead Plaintiffs and the Class.  Co-Lead Counsel's efforts included, among other things:

- conducting an extensive pre-filing investigation into the Class's claims and drafting two detailed amended complaints (*id*. ¶¶ 38-43, 59-61);

- successfully moving for partial modification of the PSLRA discovery stay and obtaining key documents that Defendants had previously produced to government regulators and Congress (*id*. ¶¶ 44-46, 80-85);

- successfully opposing Defendants' motions to dismiss in two separate rounds of briefing (*id*. ¶¶ 47-50, 57, 62-64);

- successfully opposing Defendants' efforts to seek certification of a question regarding Lead Plaintiffs' Section 14(a) claim to the Delaware Supreme Court (*id*. ¶¶ 51-53, 57);

- successfully opposing Defendants' efforts to seek interlocutory appeal of certain issues decided by the Court in connection with Defendants' motion to dismiss the First Amended Complaint or reconsideration of those issues (*id*. ¶ 58);

- successfully moving for class certification, which included substantial class certification discovery over a short time period (including 16 depositions that Co-Lead Counsel either defended or participated in); and successfully opposing Defendants' petition for interlocutory appellate review of the Court's order granting class certification (*id*. ¶¶ 67-77);

- engaging in an extensive, highly contested and fast-paced discovery program, which included taking or participating in 45 fact and expert merits depositions and reviewing and analyzing more than 4.75 million pages of documents (*id*. ¶¶ 87-95);

- opposing Defendants' motions for summary judgment (*id*. ¶¶ 96, 100-102);

- preparing Lead Plaintiffs' own motion for partial summary judgment concerning the alleged falsity and materiality of statements related to the projected accretive/dilutive impact of the Merger (*id*. ¶¶ 97-99);

- submitting a total of 12 reports from six different experts over the course of the litigation in the areas of damages, corporate disclosure requirements, valuation and solvency, and accounting for goodwill (*id*. ¶¶ 108-116, 217); and

- engaging in extensive pre-trial preparations, including preparing or responding to eight *Daubert* motions and 32 motions *in limine*, as well as exchanging exhibit lists, deposition lists, jury verdict forms, jury instructions, voir dire and draft pre-trial orders (*id*. ¶¶ 103-105).

Substantial time was also required to negotiate the Settlement.  There were negotiations and mediation efforts over several years, including several rounds of in-person and telephonic mediation at which Co-Lead Counsel and defense counsel made presentations regarding liability and damages and provided expert presentations.  Joint Decl. ¶¶ 153-160.

As noted above, Plaintiffs' Counsel have expended more than 193,500 hours investigating, prosecuting and resolving this Action with a total lodestar value of over $88,000,000.  Joint Decl. ¶ 190.  The enormous amount of time and effort devoted to this case by Plaintiffs' Counsel and the efficient and effective management of the litigation confirm that the fee request here is reasonable.

### B.      The Risks of Litigation Support the Requested Fee

The risk of litigation is one of the most important *Goldberger* factors.  *See Goldberger*, 209 F.3d at 54; *Telik*, 576 F. Supp. 2d at 592 ("'the risk of the litigation' is a pivotal factor in assessing the appropriate attorneys' fees").  The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted), *abrogated on other grounds by Goldberger*, 209 F.3d 43.  "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."  *Teachers' Ret. Sys.*

*of La. v. A.C.L.N., Ltd.,* No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *see also In re Am. Bank Note Holographics Inc. Sec. Litig.,* 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take this [contingent-fee] risk into account in determining the appropriate fee to award").

As the Court is aware from the extensive briefing in the case, including the Parties' respective motions for summary judgment, there were numerous, substantial risks relating to Lead Plaintiffs' ability to establish liability, loss causation and damages that made it far from certain that any recovery, let alone a recovery in the magnitude of the $2.425 billion Settlement, would ultimately be obtained for the Class.

As discussed in greater detail in the Joint Declaration and in the memorandum of law in support of the Settlement, Co-Lead Counsel faced substantial risks in establishing Defendants' liability with respect to both Lead Plaintiffs' fraud claims under Section 10(b) and their negligence claims under Section 14(a).  With respect to Lead Plaintiffs' claims regarding the failure to disclose Merrill's fourth-quarter 2008 losses, there was a significant risk that the Court or a jury could find that Defendants did not act recklessly (as required for establishing a Section 10(b) claim) or negligently (as required for the Section 14(a) claims) in failing to disclose the losses, particularly in light of the evidence that in-house and outside counsel were closely involved in the decision not to disclose the losses and that Defendants did not obtain a personal financial benefit from the non-disclosure of the losses.  Joint Decl. ¶¶ 125-128.  There were also substantial risks that Defendants could prevail in their contentions that the loss forecasts were only interim in nature and, therefore, too uncertain to be disclosed; and/or that Defendants had no duty to disclose the losses as they were intra-quarter results.  *Id*. ¶¶ 129-130.  Defendants also contended that the non-disclosure of the fourth-quarter losses was immaterial in light of the

massive losses Merrill reported in previous quarters, and the detailed risk disclosures in Merrill's and BoA's SEC filings, and further argued that the market understood that Merrill was continuing to report enormous losses in the fourth quarter of 2008.  *Id*. ¶ 131.

Lead Plaintiffs' claims regarding the failure to disclose Merrill's bonuses faced similar risks.  For example, there was a risk that the Court or a jury could conclude, as Defendants argued, that the non-disclosure of the bonus agreement in the Proxy was immaterial because the market knew that Merrill would be paying bonuses prior to the close of the Merger.  *Id*.  ¶¶ 132. There was also a risk that the Court or a jury could find that non-disclosure of the bonus agreement was not intentionally false or reckless (with respect to Section 10(b)) nor negligent (with respect to Section 14(a)) in light of Defendants' arguments that the decision to disclose the schedule of bonuses was left entirely up to BoA's and Merrill's attorneys, and that none of the Individual Defendants were recipients of the bonuses.  *Id*.  ¶¶ 133.

Co-Lead Counsel also recognized that there were additional substantial risks in establishing loss causation and damages.  The limited case law establishing the remedies available to Class Members under Section 14(a), including whether the Section 14(a) remedy was direct or derivative and the proper measure of damages it provided, presented additional risks to the prosecution of the Action.  Joint Decl. ¶¶ 135-137.  Throughout the litigation, Defendants argued that Plaintiffs could not recover under Section 14(a) for a stock price drop resulting from the disclosure of information allegedly improperly concealed from voters on a merger.  *Id*. ¶¶ 138-139.  The measure of damages under Section 14(a) under the particular facts of this case was a novel issue, and an adverse ruling by the Court or on appeal on this issue would have arguably eliminated Lead Plaintiffs' Section 14(a) claim.  Co-Lead Counsel also faced substantial risks in proving that the series of alleged corrective disclosures in January 2009

identified by Plaintiffs had, in fact, revealed the information that Plaintiffs had alleged was previously undisclosed; and that the price declines on the identified corrective disclosure dates were caused by the alleged corrective disclosures as opposed to being the result of other adverse information about BoA unrelated to the allegations in the Action or other market or industry factors. *Id*. ¶¶ 140-145.

In the face of these uncertainties regarding the outcome of the case, Co-Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require devotion of a substantial amount of attorney time and a significant advance of litigation expenses with no guarantee of compensation. "In numerous class actions, including complex securities cases, plaintiffs' counsel have expended thousands of hours and advanced significant out-of-pocket expenses and received no remuneration whatsoever." *Marsh & McLennan*, 2009 WL 5178546, at *18. Co-Lead Counsel's assumption of this contingency fee risk and extensive and intense litigation of the Action in the face of these risks further support the reasonableness of the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at *27 ("the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### C.    The Magnitude and Complexity of the Action Support the Requested Fee

The magnitude and complexity of the Action and the novelty and complexity of legal issues raised also support the requested fee. Courts have long recognized that securities class action litigation is "notably difficult and notoriously uncertain." *FLAG Telecom*, 2010 WL 4537550, at *27 (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)). And this case was, in many ways, more complex than the average securities class action, as it

involved claims under Section 14(a) of the Exchange Act as well as Section 10(b) of the Exchange Act and Section 11 of the Securities Act.  As noted above and in the Joint Declaration, the litigation raised a number of complex and novel questions, and required an enormous undertaking by the Parties and the Court over an extended period of time.  *See* Joint Decl. ¶¶ 204.

### D.   The Quality of Co-Lead Counsel's Representation Supports the Requested Fee

The quality of the representation by Co-Lead Counsel is another important factor that supports the reasonableness of the requested fee.  Co-Lead Counsel submit that the quality of their representation in this Action is best evidenced by the quality of the result achieved.  *See Goldberger*, 209 F.3d at 55; *Veeco*, 2007 WL 4115808, at *7; *WorldCom*, 388 F. Supp. 2d at 358; *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004).  The cash settlement of $2.425 billion − the fourth largest securities class action settlement ever paid by a single corporate defendant – combined with the Corporate Governance Enhancements to be implemented or maintained by BoA, is an extraordinary result for the Class, particularly in light of the significant risks in the Action.  Joint Decl. ¶¶ 199-200.  Co-Lead Counsel obtained this result where there was neither a financial restatement involved (in contrast to the vast majority of comparable mega-settlements, including all of the larger PSLRA settlements) nor a criminal conviction related to the alleged misconduct.  *Id.*

Co-Lead Counsel submit that the quality of their efforts in the litigation, their substantial experience in securities class actions, their commitment to the litigation and their demonstrated willingness to bring the case to trial, were key elements in enabling them to negotiate this Settlement.  *See WorldCom*, 388 F. Supp. 2d at 359 ("If the Lead Plaintiff had been represented by less tenacious and competent counsel, it is by no means clear that it would have achieved the

success it did here on behalf of the Class. . . . While some significant recovery in a case of this magnitude may seem a foregone conclusion now, the recovery achieved here was never certain. . . . it is likely that less able plaintiffs' counsel would have achieved far less"); *see also Tyco*, 535 F. Supp. 2d at 261 (finding the settlement to be "the product of arms-length negotiations by highly skilled and diligent counsel on both sides" and that "'the advocacy on both sides of the case was outstanding,' and both sides were prepared to try the case if settlement talks failed").

Significantly, Co-Lead Counsel uncovered important facts that were not alleged by any regulator. For example, Co-Lead Counsel uncovered evidence concerning the material negative impact of Merrill's fourth-quarter losses on Merrill and BoA prior to the vote on the Merger, including evidence that Merrill's losses had, according to Lead Plaintiffs, (i) caused a liquidity crisis at Merrill that forced BoA to issue billions of dollars in debt; (ii) severely eroded Merrill's capital, which forced BoA to order Merrill to sell billions of dollars of assets; and (iii) significantly decreased Merrill's earnings power going forward. Joint Decl. ¶ 97. Co-Lead Counsel also obtained unique testimony from Defendant Kenneth Lewis, BoA's former CEO admitting that the Proxy's statements concerning the accretive/dilutive impact of the Merger were not accurate as of the time of the shareholder vote. *Id*. ¶¶ 98-99. This evidence formed the basis for Lead Plaintiffs' motion for partial summary judgment.

Courts have recognized that the quality of the opposition faced by plaintiffs' counsel should also be taken into consideration in assessing the quality of counsel's performance. *See, e.g., In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,* No. 03 MDL 1529 LMM, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work") (citation omitted);

*Teachers' Ret. Sys.*, 2004 WL 1087261, at *7 ("The quality of opposing counsel is also relevant in evaluating the quality of services rendered by Plaintiffs' Counsel."). Here, Defendants were represented by many of the nation's most elite defense firms. *See* Joint Decl. ¶ 203. Notwithstanding this formidable opposition, Co-Lead Counsel's ability to present a strong case and demonstrate their willingness to continue to trial enabled them to achieve the very favorable settlement for the benefit of the Class.

### E.     The Requested Fee in Relation to the Settlement

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery.  The requested 6.56% net fee award is well within the range of fees that courts in the Second Circuit and around the country have awarded in comparable cases, and is fully justified by the work performed and the result obtained.

### F.     Public Policy Considerations Support the Requested Fee

A strong public policy concern exists for rewarding firms for bringing successful securities litigation.  *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.") (citation omitted); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988) (the federal securities laws are remedial in nature, and the courts must encourage private lawsuits to effectuate their purpose of protecting investors).  The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the

securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman*, 472 U.S. at 310 (citation omitted); *see also Tellabs*, 551 U.S. at 313.  Accordingly, public policy favors granting Co-Lead Counsel's fee and expense application here.

### G.    The Requested Fee Has Been Approved by Lead Plaintiffs

Each of the Court-appointed Lead Plaintiffs in this Action is a sophisticated institutional investor and each Lead Plaintiff entered into a retainer agreement with its respective counsel at the outset of the Action.   Joint Decl. ¶¶ 180-181.   Under the retainer agreements, Co-Lead Counsel agreed to undertake the litigation on an entirely contingent basis, meaning that Co-Lead Counsel would not be compensated at all, nor reimbursed for any expenses they incurred on behalf of the Class, unless they obtained a recovery for the Class.  *Id.* ¶ 180.  Generally, the retainer agreements provided that attorneys' fees would be based on a "fee grid" in which percentage attorneys' fees would be adjusted based upon the amount recovered and the stage of the proceedings, with the permissible fee percentage decreasing with the size of the settlement amount and increasing as the case got closer to trial.  *Id.*  At the outset of the Action, Lead Plaintiffs insisted and agreed that the lowest fee grid among the retainer agreements that each had negotiated with their respective counsel firms would be utilized to calculate the percentage of attorneys' fees that Co-Lead Counsel would be allowed to apply for in connection with a settlement of the Action.  *Id.* ¶ 181.  In accordance with that agreement, Co-Lead Counsel are requesting a fee of 6.56% of the Settlement Fund net of Plaintiffs' Counsel's expenses, a request which was evaluated and approved by Lead Plaintiffs after the Settlement was achieved.  *Id.* ¶¶ 181, 197.

The fact that the requested attorneys' fees are based upon retainer agreements negotiated with sophisticated Lead Plaintiffs at the outset of the Action strongly supports the reasonableness of the requested fee.  The PSLRA was intended to encourage institutional investors like Lead

Plaintiffs to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at *27 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731.  Congress believed that these institutions would be in the best position to monitor the ongoing prosecution of the litigation and assess the reasonableness of counsel's fee request.  As set forth in the respective Lead Plaintiff Declarations (*see* Joint Decl. Exs. 2-6), each of the Lead Plaintiffs was actively involved in the prosecution and resolution of the Action and, have a firm basis for assessing the reasonableness of the fee request before approving it.

While a district court is not required to adhere to such a retainer agreement, *see Visa*, 396 F.3d at 123-24, Courts have found that such agreements should be given great weight.  As Judge Cote observed in *WorldCom*, "when class counsel in a securities lawsuit have negotiated an arm's-length agreement with a sophisticated lead plaintiff possessing a large stake in the litigation, and when that lead plaintiff endorses the application following close supervision of the litigation, the court should give the terms of that agreement great weight."  *WorldCom*, 388 F. Supp. 2d at 356; *see also Global Crossing*, 225 F.R.D. at 466 ("in class action cases under the PSLRA, courts presume fee requests submitted pursuant to a retainer agreement negotiated at arm's length between lead plaintiff and lead counsel are reasonable"); *Comverse*, 2010 WL 2653354, at *4 ("The fact that this fee request is the product of arm's-length negotiation between Lead Counsel and the lead plaintiff is significant.").

## H.      The Reaction of the Class to Date Supports the Requested Fee

The reaction of the Class to date also supports the requested fee.  As of February 14, 2013, the Claims Administrator has disseminated the Settlement Notice to more than 3.2 million potential Class Members and nominees informing them of, among other things, Co-Lead

Counsel's intention to apply to the Court for an award of attorneys' fees of 6.56% of the Settlement Fund and reimbursement of up to $17,500,000 in expenses and PSLRA awards.  Joint Decl. ¶ 212.  While the time to object to the fee and expense application does not expire until March 5, 2013, to date, only one objection to the amount of attorneys' fees and expenses set forth in the Settlement Notice has been received.  *Id*.  Co-Lead Counsel will address all objections received in their reply papers to be filed with the Court on March 29, 2013.

## V.     THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Co-Lead Counsel's fee application includes a request for reimbursement of litigation expenses that were reasonably incurred and necessary to the prosecution of this Action.  *See* Joint Decl. ¶ 213.  These expenses are properly recovered by counsel.  *See In re China Sunergy Sec. Litig.,* No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'") (citation omitted); *FLAG Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").  As set forth in detail in the Joint Declaration, Plaintiffs' Counsel incurred $8,082,828.32 in litigation expenses on behalf of the Class in the prosecution of the Action.  Joint Decl. ¶ 215.  Reimbursement of these expenses is fair and reasonable.

Of the total expenses, the vast majority was related to experts.  Specifically, $4,462,782.80, or 55%, was expended on experts and consultants, including a trial consulting firm to prepare exhibits for trial, conduct jury focus groups and mock trials and analyze the results of the deliberations of mock jurors.  Joint Decl. ¶ 217.  Co-Lead Counsel retained seven experts and consultants in multiple disciplines whose work was critical to the development of the

case.  *Id*. ¶¶ 108-116, 217.  During the course of the litigation, these experts produced a total of 12 reports and six of them were deposed by Defendants.  *Id*. ¶ 217.

Another large component of the expenses, $1,115,997.14, or 13.9%, was for outside vendors to provide the necessary services for electronic database document review that enabled our discovery team to efficiently and effectively search and review the more than 4.75 million pages of documents produced to Plaintiffs.  Joint Decl. ¶ 218.  Additionally, Co-Lead Counsel paid $302,553.76 for fees assessed by the mediator in this matter, Judge Phillips.  *Id*. ¶ 219.

The other expenses for which Co-Lead Counsel seek reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These expenses include, among others, court fees, court reporters, out-of-town travel, and copying costs.  *Id*. ¶¶ 219.  The foregoing expense items are billed separately by Plaintiffs' Counsel, and such charges are not duplicated in the firm's hourly billing rates.[7]

The Settlement Notice informed potential Class Members that Co-Lead Counsel would apply for reimbursement of litigation expenses and PSLRA awards in an amount not to exceed $17,500,000.  The total amount of expenses requested is well below the amount listed in the Settlement Notice and, to date, there has been no objection to the request for expenses.

## VI.  LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. § 78u-4(a)(4)

In connection with their request for reimbursement of litigation expenses, Co-Lead Counsel also seek $453,003.04 in PSLRA awards for Lead Plaintiffs representing the costs and expenses incurred by them directly relating to their representation of the Class.  The PSLRA

---

[7] No expenses for general overhead are included in the expenses for which reimbursement is sought and expenses incurred as a result of disbursements by Co-Lead Counsel to an outside service provider reflect the actual amount billed by the service provider and do not include any surcharge over that amount.  Joint Decl. ¶ 215.

specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."   15 U.S.C. § 78u-4(a)(4).   Moreover, "Courts in [the Second] Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the actions and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks*, 2005 WL 2757792, at *10.

As set forth in the declarations of representatives of the respective Lead Plaintiffs, the Lead Plaintiffs were extremely active and vigilant in their representation of the Class.   As required and envisioned by the PSLRA, their claims for reimbursement of expenses are based upon the substantial amount of time devoted to the Action by employees of Lead Plaintiffs. *See* Lead Plaintiffs' respective declarations attached as Exhibits 2-6 to the Joint Declaration.

Lead Plaintiffs have been committed to pursuing their claims against the Defendants in for more than three years.   These large institutions have actively and effectively fulfilled their obligations as representatives of the Class, complying with all of the many demands placed upon them, and providing valuable assistance to Co-Lead Counsel.   In devoting substantial effort to the commencement of, oversight of, and participation in this Action on behalf of the Class, as detailed in the Joint Declaration and Lead Plaintiffs' declarations, Lead Plaintiffs, among other things: (i) participated in discussions with Co-Lead Counsel concerning significant developments in the litigation, including case strategy and the retention of experts and consultants; (ii) reviewed and commented on all significant pleadings and briefs; (iii) supervised the production of discovery, including gathering and reviewing documents in response to discovery requests; (iv) prepared and sat for depositions in furtherance of their motion for class certification; (v)

worked cooperatively with the other Court-appointed Leads Plaintiffs throughout the litigation; and (vi) prepared for and fully participated in the protracted settlement negotiations on behalf of the Class.  *See* Neville Decl. at ¶¶ 4-6, 13; Becker Decl. at ¶¶ 4-6, 13; Wei Decl. at ¶¶ 4-7; Groenewout-Hendriks Decl. at ¶¶ 4-6, 13; and Kåremar Decl. at ¶¶ 4-6, 12.

The foregoing efforts by Lead Plaintiffs are precisely the types of activities Courts have found to support reimbursement to class representatives.  *See, e.g.*, *Marsh & McLennan*, 2009 WL 5178546, at *21 (awarding $144,657 to the New Jersey Attorney General's Office and $70,000 to certain Ohio pension funds, to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class" and noting that these efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives"); *In re Satyam Computer Servs. Ltd. Sec. Litig.*, No. 09-MD-2027-BSJ, slip. op. at 3-4 (S.D.N.Y. Sept. 13, 2011), ECF No. 365 (attached hereto as Exhibit 4) (awarding an aggregate amount of $195,111 as reimbursement for the costs and expenses of class representatives directly relating to their services in representing the class); *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-cv-374 (JAP), slip. op. at 14 (D.N.J. Sept. 26, 2008), ECF No. 525 (attached hereto as Exhibit 5) (awarding $150,000 to Pennsylvania State Employees' Retirement System and the Pennsylvania Public School Employees' Retirement System for reimbursement of reasonable costs and expenses).  As Judge Sweet observed in *In re Gilat Satellite Networks, Ltd.*, "[s]ince the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks and rates appear reasonable to the furtherance of the litigation, the motion for . . . expenses for Lead Plaintiffs is granted."  No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007).  Similarly, in *In re American International Group, Inc. Securities Litigation*, Judge

24

Batts found that "the request of [lead plaintiffs] OPERS and STRS Ohio for reimbursement of $71,910.00 in lost wages related to their active participation in this action is reasonable," No. 04 Civ. 8141 (DAB), 2012 WL 345509, at *6 (S.D.N.Y. Feb. 2, 2012).[8]  Here, the awards sought by Lead Plaintiffs are reasonable and fully justified under the PSLRA based on their extensive involvement in the Action and should be granted.

The Settlement Notice to Class Members stated that the Litigation Expenses requested by Co-Lead Counsel may include the reasonable costs and expenses of Lead Plaintiffs.  To date, there have been no objections to this request.  Co-Lead Counsel respectfully request that the Court award $34,375.00 to STRS Ohio; $19,263.66 to Ohio PERS; $14,065.00 to Texas Teachers; $259,610.98 to PGGM; and $125,688.40 to AP-4[9] as compensation for their reasonable costs and expenses incurred in representing the Class.

## CONCLUSION

For the foregoing reasons, Co-Lead Counsel respectfully request that the Court award $158,549,766.49 (plus interest) in attorneys' fees, reimbursement of $8,028,828.32 in litigation expenses that Plaintiffs' Counsel incurred in connection with the prosecution of this Action and $453,003.04 in PSLRA awards representing Lead Plaintiffs' costs and expenses.

---

[8] While this Court and several others in this Circuit have declined to award costs and expenses to representative plaintiffs under the PSLRA, in those cases no record was presented demonstrating that the time spent resulted in a tangible cost or expense to the plaintiff.  *See, e.g.*, *In re AMF Bowling Sec. Litig.*, 334 F. Supp. 2d 462, 470 (S.D.N.Y. 2004).  In contrast, here, Lead Plaintiffs' declarations establish that the time dedicated to the Action by their employees was time that these salaried employees could not devote to other work for Lead Plaintiffs and thus resulted in a tangible cost to the institutional Lead Plaintiffs.  Additionally, the hourly rates for which reimbursement is sought are based on the annual salaries of the respective Lead Plaintiff personnel who worked on this Action.

[9] The requested PSLRA awards for PGGM and AP-4 were determined by converting their respective currencies, the euro and the Swedish krona, to US dollars. The United States Dollar-Euro exchange rate reported by the European Central Bank for the close of trading at 5 p.m. eastern standard time on February 15, 2013 was $1.3325 per euro, while the United States Dollar-Swedish Krona exchange rate reported by the Sveriges Riksbank (Swedish Central Bank) was $0.1579 per krona.

Dated:  February 19, 2013

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

By:     */s/ Steven B. Singer*
          Max W. Berger
          Steven B. Singer
          1285 Avenue of the Americas
          New York, NY  10019
          Tel:  (212) 554-1400
          Fax:  (212) 554-1444


**KAPLAN FOX & KILSHEIMER LLP**

By:     */s/ Frederic S. Fox*
          Robert N. Kaplan
          Frederic S. Fox
          850 Third Avenue, 14th Floor
          New York, NY  10022
          Tel:  (212) 687-1980
          Fax:  (212) 687-7714


**KESSLER TOPAZ MELTZER & CHECK, LLP**

By:     */s/ David Kessler*
          David Kessler
          Gregory M. Castaldo
          280 King of Prussia Road
          Radnor, PA 19087
          Tel:  (610) 667-7706
          Fax:  (610) 667-7056

#698230

*Co-Lead Counsel*

26

## Appendix A

## Attorneys' Fee Awards in PSLRA Actions with Settlements of $1 Billion and greater

| | Case | Settlement Amount (in millions) | Fee Award % | Multiplier | Stage of Case Upon Settlement |
|---|---|---|---|---|---|
| 1 | Enron[1] | $7,227 | 9.52% | 5.2 | Weeks away from trial |
| 2 | WorldCom[2] | $6,133 | 5.48% | 4.0 | Various |
| 3 | Cendant[3] | $3,318 | 1.7% | 4.2 | Class Certification |
| 4 | Tyco[4] | $3,200 | 14.5% | 2.7 | End of merits discovery / submission of expert reports |
| 5 | AOL Time Warner[5] | $2,500 | 5.9% | 3.69 | Merits discovery |
| 6 | Nortel I[6] | $1,142 | 3% | 2.04 | Class Certification |
| 7 | Royal Ahold[7] | $1,100 | 12% | 2.57 | Class Certification |
| 8 | Nortel II[8] | $1,043 | 8% | 4.8 | Class Certification |
| 9 | McKesson[9] | $1,043 | 7.6% | 2.1 | Merits discovery |
| | Average of settlements $1 billion or greater: | | 7.52% | 3.47 | |

---

[1] *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 778-79 (S.D. Tex. 2008).

[2] *In re WorldCom, Inc. Sec. Litig.,* No. 02 CIV 3288 (DLC), 2004 WL 2591402, at *16-*23 (S.D.N.Y. 2004); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 353-59 (S.D.N.Y. 2005).

[3] *In re Cendant Corp. Litig.,* 243 F. Supp. 2d 166, 172-74 (D.N.J. 2003).

[4] *In re Tyco Int'l, Ltd. Multidistrict Litig.,* 535 F. Supp. 2d 249, 265-71 (D.N.H. 2007).

[5] *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575 (SWK), 2006 WL 3057232, at *18, *28 (S.D.N.Y. Oct. 25, 2006).

[6] *In re Nortel Networks Corp. Sec. Litig.*, Civil Action No. 01-CV-1855 (RMB), slip op. at 10 (S.D.N.Y. Jan. 29, 2007), ECF No. 194, *aff'd*, 539 F.3d 129 (2d Cir. 2008).

[7] *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 387 (D. Md. 2006).

[8] *In re Nortel Networks Corp. Sec. Litig.*, Civil Action No. 05-MD-1659 (LAP), slip op. at 10 (S.D.N.Y. Dec. 26, 2006), ECF No. 77.

[9] *In re McKesson HBOC, Inc. Sec. Litig.*, No. 99-CV-20743, slip op. at 1 (N.D. Cal. Feb. 24, 2006), ECF No. 1444; *In re McKesson HBOC, Inc. Sec. Litig.*, No. 99-CV-20743, slip op. at 1 (N.D. Cal. Apr. 13, 2007), ECF No. 1560; *In re McKesson HBOC, Inc. Sec. Litig.*, No. 99-CV-20743, slip op. at 1 (N.D. Cal. Jan. 18, 2008), ECF No. 1727.