IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BANK OF AMERICA CORP. SECURITIES DERIVATIVE, AND EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION | Master File No. 09-md-2058 (PKC) ECF Case |
| THIS DOCUMENT RELATES TO: Consolidated Securities Action | |

**OBJECTIONS OF ST. STEPHEN, INC. TO SETTLEMENT AND NOTICE OF INTENT TO APPEAR THROUGH COUNSEL**

## I.      INTRODUCTION AND CLASS MEMBERSHIP

Comes now, class member, St. Stephen, Inc. ("Objector"), by and through its counsel, hereby: (i) files these Objections to the Proposed Class Action Settlement (the "Proposed Settlement") which is based on the "Class Action Settlement Agreement" (the "Settlement Agreement"); (ii) object to Class Counsel's notice of motion and motion for attorneys' fees; (iii) gives notice of its counsel's intent to appear at the final fairness settlement hearing; and (iv) requests an award of incentive fees for serving as an unnamed class member objector.

Objector represents to the court that it is a Class Member who purchased the stocks as defined in the Settlement Agreement as follows:

| Acquisition Date | Liquid- ation date | Qty | Acquisition Price | Acquisition Cost | Liquid Price | Liquid Cost |
|---|---|---|---|---|---|---|
| 10/28/08 | 1/23/09 | 10 | $17.1530 | $172 | $10.2940 | $103 |
| 10/20/08 | 1/23/09 | 49 | $17.4500 | $855 | $10.2940 | $504 |
| 10/20/08 | 1/22/09 | 133 | $17.4500 | $2,321 | $10.1560 | $1,351 |

## II. OBJECTIONS

**A.    THE SETTLEMENT IS NOT FAIR TO CLASS MEMBERS AND THERE IS NO EVIDENCE TO SUPPORT ITS ALLEGED REASONABLENESS**

It is well established that the court has a duty under Rule 23 of the Federal Rules of Civil Procedure as the guardian of the absent class members' interests to independently determine whether the settlement agreement is fair, reasonable, and in the best interests of the class.  The ultimate responsibility to ensure that the interests of class members are not subordinated to the interests of either the class representatives or class counsel rests with the district court. See, e.g., *In re "Agent Orange" Product Liability Litigation*, 996 F.2d 1425, 1438 (2d Cir.1993) Here, the Settlement does not adequately compensate class members for the losses they have suffered and there is insufficient or no evidence for the court and class members to determine whether the settlement is fair and reasonable.

This Settlement for approximately $2.5 billion is being touted by counsel as favorable to class members because it is one of the largest settlements in the history of class action settlements.  However, when analyzed in terms of the dollar value to be received by each individual class member in relation to the loss sustained by the member, it is easy to see that there is little or no value in the Settlement.  The Notice identifies that each shareholder will receive only cents on the dollar.  Per the Notice, under the Settlement, each share will receive about $0.40 ($0.43 minus an estimate of $0.03 for fees and costs).  Objector here lost about $7 per share.  The recovery of 40 cents is insignificant and of little value to the Objector.  Bank of America (BofA) made stock offering at $22 per share to about 10 billion class members and in total the class members experienced a loss of approximately $7.5 billion.  The Notice estimates that 3.795 billion

2

shares of BofA common stock were held by shareholders.  When analyzed in these terms it is clear that the Settlement does not offer real value to the class members.

Additionally, there is little or no evidence provided to class members and the court to determine whether the Settlement is reasonable.  The memorandum of points and authorities submitted in support of the preliminary approval of the Settlement (Dkt. No. 768) states that "At the final approval hearing (the "Settlement Hearing"), the Court will have before it more extensive motion papers submitted in support of the Settlement, and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding the Action." (p. 4-5)  However, it appears that no further evidence has been provided to the court or to class members to determine if the settlement is fair, reasonable, and adequate given the size of the class and the amount of loss sustained by the class.  In the absence of sufficient evidence, the court must deny final approval of the Settlement.

## B.    PLAN OF ALLOCATION OF REMAINING FUNDS IS ARBITRARY

The Settlement's provisions regarding the distribution of remaining funds (Settlement Agreement, Para. 32) is arbitrary and is not in the best interest of class members because: (i) class counsel and settlement administrator have the been vested with the discretion to decide whether to make any additional re-distributions of the funds remaining after all claims are paid. This provision is not fair to class members because there are no guidelines to class counsel making this decision and the decision will be made without the court or the class member's involvement; (ii) the Settlement Agreement provides that no re-distributions will be made to class members who receive less than $20 in the initial round of payments.  There appears to be no rationale basis to exclude class

members who receive less than $20; and (iii) if the funds are not re-distributed, based on

class counsel's decision, then, the funds are to be distributed to charitable organizations

that have not been identified.  The failure to identify the charitable organizations to class

members deprives them of an opportunity to ensure that settlement funds are being

disbursed to organizations which "reasonably approximates the interests being pursued

by the class."

First, the plan of distribution of remaining funds is arbitrary and not in the best

interest of class members because neither the court nor class members will have any

oversight or ability to decide if and when re-distributions will be made to class members.

Here, the identity of class members can easily be identified from Bank of America and

other brokerage firm's records.  Under the circumstances, re-distributions can be easily

made to class members.  Instead, the Settlement Agreements provision permitting class

counsel to decide whether re-distributions are necessary and limiting re-distributions, if

any, to class members who receive more than $20 is arbitrary.

Second, the plan of distributing remaining funds to charitable organizations also

does not adequately protect the interests of class members.  The plan of distributing

remaining funds to charitable organizations has not been termed *cy pres* distribution in

the Settlement Agreement, but that is what it is—a *cy pres* distribution.  The Second

Circuit is generally guided by the American Law Institute's draft Principles of the Law of

Aggregate Litigation in distributing class action settlement funds.  These draft principles

have been adopted by the Second Circuit while considering *cy pres* distributions or

distributions of remaining funds.  As noted in *In re Norton Networks Corp. Securities

Litigation*, 2010 WL 3431152 (2010, S.D.N.Y):

The [Second Circuit] has indicated that the draft Principles of the Law of Aggregate Litigation by the American Law Institute (the 'ALI Draft') is an appropriate standard for courts to consider in distributing class actions settlements. The ALI Draft ... caution[s] that if 'the court finds that individual distributions are not viable ..., the settlement may utilize a *cy pres* approach only if the parties can identify a recipient involving the same subject matter as the lawsuit that reasonably approximates the interests being pursued by the class. (internal citations omitted) Id. *7.

Following this principle, the court in *In re Norton Networks Corp. Securities Litigation*, 2010 WL 3431152 (2010, S.D.N.Y) directed class counsel to provide the names of proposed charitable organizations to receive the benefit of the residual payments, before the settlement could be approved.

The Second Circuit has also observed that its position regarding *cy pres* distributions is consistent with decisions by other Federal court, such as the Ninth circuit in *Six (6) Mexican Workers* v. *Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir.1990). See *Masters* v. *Wilhelmina Model Agency, Inc.*,473 F.3d 423, 435 (2007, N.Y.) In the Ninth Circuit, similar to the Second Circuit, it has been held that a *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," *Id*. at 1039, and must not benefit a group "too remote from the plaintiff class," *Six Mexican Workers*, 904 F.2d at 1308.

Here, the proposed *cy pres* distributions do not comply with the standards established in this circuit.  The proposed charitable organizations to receive the *cy pres* distributions have not yet been proposed or decided.  By deferring to a later date, class members will not be able to determine if there is any nexus between the recipients and the underlying claims or whether the recipients are aligned with class interests; the class will also be unable to object to the nominated recipients.

Because the provision regarding the distribution of remaining funds is arbitrary, the court should not grant final approval of the Settlement.  The provision regarding re-distribution of remaining funds must be modified; a partially defective settlement cannot be approved.  The court must direct parties to nominate the *cy pres* recipients before the final approval hearing and extend the objection deadline and continue the fairness hearing.

## C.   PLAINTIFF'S COUNSEL'S FEE REQUEST IS UNREASONABLY HIGH

The Second Circuit may choose to utilize either the lodestar-multiplier or the percentage-of-the-fund method to calculate reasonable attorneys' fees in class action settlements. *In re KeySpan Corp. Securities Litigation*, 2005 WL 3093399, Fed. Sec. L. Rep. P 93,534 (E.D.N.Y. Sep 30, 2005) (citing *Goldberger v. Integrated Resources, Inc.* (2d. Cir. 2000) 209 F.3d 43, 50.)  If the court uses a percentage of the fund approach, the Second Circuit recommends analyzing the documentation of the hours submitted by counsel as a "cross check" on the reasonableness of the requested percentage. *Goldberger*, 209 F.3d at 50.  Courts use a five-pronged analysis of reasonableness in determining the fee awardable to Class Counsel; (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger* 209 F. 3d at 50. (Citing *City of Detroit v. Grinnell Corporation* (Grinnell I), 495 F.2d 448, 469 (2d Cir.1974), and *Grinnell II*, 560 F.2d 1093 (2nd Cir.1977).  One of the primary factors common to this analysis and the lodestar method is the "time and labor expended by counsel."  Here, counsel requests 6.56% of the Settlement Funds or 158,549,766.46 which counsel claims is cross checked by using the lodestar amount with a 1.8 multiplier.  Counsel claims that under the lodestar method the total attorney charges

were about $88,307,135 based on 193,547 hours spent.  The court must engage in a

detailed analysis of counsel's billing to determine the reasonable of the lodestar

calculation.  Under such an analysis it is clear that the billed charges are unreasonably

high.  Further, there is no justification for using a 1.8 multiplier.  In a settlement this

large, percentages should not persuade; the court must award a reasonable fee based on

the actual time and effort by counsel.

### D.      NOTICE IS INADEQUATE

The Class Action Settlement notice is not adequate because: (i) it does not

identify with specificity that class representatives are seeking expenses of $453,003.04

under the PSLRA.  Class counsel appears to argue that no specific mention of these

expenses are necessary because all expenses sought to be recovered (Attorneys' expenses

and Class representative's expenses) are encompassed in the 1.7 million amount stated in

the notice.  Contrary to class counsel's position, class members are entitled to notice of

not merely the amount of expenses, but also the nature of the expenses.  Because the

notice does not identify with specificity that class representatives with seek to recover

$453,003.04 under the PSLRA, the notice is inadequate; (ii) the notice does not identify

that the distribution of remaining funds or the proposed charitable organizations to

receive *cy pres* distributions.  Under the circumstances, the lack of sufficient notice

renders the process unfair.  The court must direct parties to restart the Settlement process

and provide proper notice to class members of the terms of the Settlement.

### III.      JOINDER IN OTHER CLASS ACTION OBJECTIONS

This Objector joins in all other meritorious, bona fide objections filed with the

Court.

## IV.   CONCLUSION

WHEREFORE, this Objector respectfully requests that this Court:

   A.  Upon proper hearing, sustain these Objections;

   B.  Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

   C.  Award an incentive fee to this Objector for its service in improving the settlement for the class, if any.

Dated:   March 5, 2013

Forrest S. Turkish (FT1197)
Law Office of Forrest S. Turkish
595 Broadway
Bayonne, NJ 07002
Phone: (201) 339-8866
Fax: (201) 339-8456
Email: fsturkish@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2013, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Southern District of New York by using the USDC CM/ECF system.

I certify that all participants in the case who are registered CM/ECF users that service will be accomplished by the USDC CM/ECF system.

_____

Forrest S. Turkish
Attorney for Objector

9