UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BANK OF AMERICA CORP. SECURITIES, DERIVATIVE, AND EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION | Master File No. 09-MD-2058 (PKC) ECF Case |
| ------------------------------------------------------- | |
| THIS DOCUMENT RELATES TO: | |
| Consolidated Derivative Action | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF OBJECTOR
MATTHEW PINSLY'S COUNSEL'S MOTION FOR AN AWARD OF
<u>ATTORNEYS' FEES AND EXPENSES</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT...........................................................................................................3

        A.      Counsel for Objectors Are Entitled to Fees.................................................3

        B.      The Board's Arguments Are Unavailing; Mr. Pinsly Successfully
                Prosecuted Each of His Objections and Is Entitled to a Fee.......................5

        C.      The Reaction of Shareholders Supports the Fee Application...................10

III.    CONCLUSION......................................................................................................10

## I.      INTRODUCTION

The Motion for an Award of Attorneys' Fees and Expenses (the "Fee Application") sets forth, in great detail, the reasons why counsel for Matthew Pinsly ("Pinsly") are entitled to a fee. In opposing the Fee Application, the Board[1] makes little, if any, effort to address or rebut the arguments made by Mr. Pinsly.[2]   It does not dispute the recitation of facts underlying the Fee Application.  It does not distinguish or analyze a single case cited in support of the Fee Application.  Indeed, despite the fact that the Fee Application devotes some twenty-five pages to a detailed explanation of the reasons why the actions of Mr. Pinsly and his counsel protected the interests of the Company, how they helped to maximize the benefits of the settlement, and why his counsel are entitled to a fee for their work, the Board's response is a cursory two-and-a-half-pages worth of generic, unsupported arguments.   The Board may not overcome the Fee Application by pretending that its arguments and authorities do not exist.

Indeed, what little argument the Board makes in response to the Fee Application is flat-out wrong, or simply unconvincing.  For example, the Board argues that Mr. Pinsly's counsel are not entitled to a fee because Pinsly did not prosecute the New York action or the Delaware action or take part in the negotiation ordered by the Court on January 4, 2013.  BOA Memorandum of Law in Response to the Motions for Awards of Attorneys' Fees and Expenses (the "BOA Opp.") at 13-14.  But this ignores that the fee award is sought based on a successful objection, not on

---

[1] Capitalized terms are defined in Fee Application and have the same meaning herein.

[2] Herein, Mr. Pinsly refers to the arguments made by the Company as akin to being made by the Board.  To do otherwise would be to suggest an agency that the Company does not and cannot possess.  And it would embrace the polite, yet utterly fallacious, idea that the decision of BOA to endorse the patently insufficient terms of the Settlement as initially proposed was anything other than that of the Board.  That is, behind the opposition to the Fee Application are the very same people who would have – had they had their way unopposed – caused the Company to forego $42.5 million in consideration and to enter into dangerously overbroad releases.  *See e.g.*, Joinder of BOA in Individual Defendants' Memorandum of Law in Support of the Settlement.  Dkt. No. 748.  The Board's hands are unclean; they further taint their already disingenuous arguments in opposition to compensation for those shareholders who undertook the Board's duty to protect the Company's interests when the Board, itself, abandoned its duty.

prosecution of the underlying case.  And it ignores that Mr. Pinsly and his counsel could not participate in the additional negotiations because they were not invited or directed by the Court to do so.  Indeed, notwithstanding the fact that the Derivative Parties undertook every effort to lock Mr. Pinsly and his counsel out of the settlement process altogether, Mr. Pinsly's objection that the original settlement was radically insufficient *still* proved valid, and he and his counsel were *still* able to force the Individual Defendants to materially limit the scope of the claims released through the Settlement.

The Board's cavalier response, while unacceptable and insufficient to prevail, is not unexpected.  In April, 2012, the Board chose – instead of diligently protecting the interests of the Company and its shareholders – to sell-out the interests of the Company and its shareholders by endorsing a blatantly insufficient reverse-auction settlement orchestrated by Lead Plaintiffs and the Individual Defendants.  Because of the objections and efforts of Mr. Pinsly and other shareholders, the Board's behavior was exposed during the final approval process and the Settlement was radically (perhaps, unprecedentedly) improved: the claims BOA has released through the Settlement have been substantially and materially limited, and the financial relief for BOA in the Settlement has more than tripled, increasing from $20 million to $62.5 million.  In fact, every single inadequacy to the proposed settlement Mr. Pinsly raised in his Objection was remedied and ultimately incorporated into the final Settlement.  And each modification served to materially improve the terms of the Settlement and conferred substantial benefits on both the Company and its shareholders.

It also bears consideration that the Board's objection to the Fee Application is the only objection.  That is, not even one of the Company's shareholders (representing some 11 billion

shares) notified of the Settlement has voiced any objection to the Fee Application.[3]   The Court should reject the Board's objection.

As discussed in the Fee Application, and below, the actions of Mr. Pinsly and his counsel have brought substantial value to the settlement process and the Company: they acted to protect the Company when the Board would not.[4]   And they were successful.

## II.   ARGUMENT

### A.   <u>Counsel for Objectors Are Entitled to Fees</u>

The Board argues that counsel for Mr. Pinsly is not entitled to a fee because they did not prosecute the New York or Delaware actions and did not participate in the negotiations that led to the increased monetary consideration in the Settlement.  BOA Opp. at 13-14.  The Board is wrong.

First, the Board ignores that an objector does not prosecute the action underlying his objection; this is why he is an objector and not a plaintiff.  The Board knows full-well that the Fee Application is brought because counsel for Mr. Pinsly successfully prosecuted his objection, not because they prosecuted the underlying action.   And the Board knows that it is well-established that objectors to a settlement serve a "valuable and important role" and that their counsel are entitled to "attorneys' fees and expenses where a proper showing has been made that the settlement was improved as a result of their efforts."  *White*, 500 F.2d at 828.  Indeed, the Board does not attempt to rebut (nor even discuss) the arguments and authorities offered by counsel for Mr. Pinsly for the proposition that objectors who successfully prosecute the very

---

[3] In connection with the settlement of representative actions, the reaction of shareholders "is perhaps the most significant factor to be weighed in considering its adequacy."  *In re Bear Stearns Co., Inc. Sec., Derivative & ERISA Litig.*, No. 08-md-1963, 2012 WL 5465381, at *5 (S.D.N.Y. Nov. 9, 2012) (citation omitted); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02–CV–3400, 2010 WL 4537550, at *23 (S.D.N.Y. November 8, 2010) (absence of objection from shareholders supports fee request from counsel).

[4] *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974) (objectors serve "valuable and important role" in settlement process that should be compensated).

objections he raises are entitled to an award of attorneys' fees.  *See* Fee Application at 9-17.  And it does not offer any authority to the contrary.  The Board's arguments thus fail.

Nor does it matter that counsel for Mr. Pinsly did not participate in the Court-ordered negotiation sessions where the Individual Defendants ultimately agreed to triple the settlement consideration.  BOA Opp. at 14.  While Mr. Pinsly was not allowed to participate in those negotiations, each of Mr. Pinsly's objections was valid, and they were addressed, remedied, and ultimately incorporated into the terms of the Settlement.  Nothing offered by the Board in response to the Fee Application suggests that counsel for Mr. Pinsly would have been any less effective in negotiating a similar result, or that he would have been willing to withdraw his objection for less consideration than that for which the Delaware Plaintiffs were willing to withdraw theirs.  Indeed, the tenacity that counsel for Mr. Pinsly demonstrated in pursuing the additional modifications to the provisions of the Settlement support the very contrary of the Board's suggestion: counsel for Mr. Pinsly would have zealously pursued and prosecuted his objections until they were addressed and resolved.[5]

Indeed, the Board's argument on this point is especially illogical in the face of the fact that its members did everything they could to *prevent* Mr. Pinsly from remedying the harm to the Company that *the Board* caused by endorsing a deficient settlement in the first place.  That is, the Board: (i) refused to allow Mr. Pinsly or his counsel (or the counsel for any other objector) to participate in any settlement-related discovery; (ii) opposed Mr. Pinsly's efforts to inspect corporate books and records relating to the reasons the Board was willing to settle the case for just $20 million in financial relief for the Company; and (iii) opposed every aspect of Mr.

---

[5] Again, the Board neither addresses nor seeks to rebut the authority cited by Mr. Pinsly for the proposition that his counsel are still entitled to an award of fees even though they were not permitted to take part in the additional negotiation sessions.  *See* Fee Application at 17-18 (discussing fact that fee award is appropriate even in cases where the court or parties may ultimately have reached a similar result without action by the objector).

Pinsly's Objection. Thus, the Board's argument is fatally inconsistent: the Board took every step that it could to prevent Mr. Pinsly from stopping *it* from causing the Company to consummate an insufficient and collusive settlement. It may not now complain that his counsel are not entitled to a fee because they were shut-out of a negotiation session. Indeed, despite the Board's efforts, every one of Mr. Pinsly's objections was ultimately addressed and remedied.

**B.     The Board's Arguments Are Unavailing; Mr. Pinsly Successfully Prosecuted Each of His Objections and Is Entitled to a Fee**

In addition to successfully pursuing his objection regarding the insufficiency of the original settlement consideration, Mr. Pinsly also succeeded in prosecuting the balance of his objections and secured valuable changes in the terms of the claims released through the Settlement. In response to Mr. Pinsly's argument that his counsel are entitled to seek fees for these contributions, the Board characterizes the changes to the language of the release "minor edit[s]" that "certainly did not add value to the settlement." BOA Opp. at 14. This is wrong.

As explained in detail in the Fee Application, absent inclusion of the changes to the language of the release demanded by Mr. Pinsly, valuable claims of the Company would have been released. Fee Application at 10-16. The Board's response does not engage the substance of Mr. Pinsly's arguments. Rather, the Board asserts that Mr. Pinsly's arguments must fail because the Court held that the changes were a "redundancy" and cites one decision in this District where a release with similar language was approved. BOA Opp. at 14. The Board is wrong on both points.

First, the Board misrepresents that the Court held that the changes in release language relating to the *Pinsly* Action were a "redundancy." It did not. On May 30, 2012, counsel for Mr. Pinsly apprised the Board that an express carve-out for the *Pinsly* Action was necessary to prevent those claims from being released. They reiterated and maintained this position for the

next six months, and the Individual Defendants steadfastly refused to include a carve-out. Fee Application at 3-8. At the hearing on January 11, 2013, counsel for Mr. Pinsly again raised this issue. Counsel for the Individual Defendants represented that it was not the intent of his clients to release those claims.[6] In response, the Court stated that:

> It does sometimes come to pass that welcomed redundancy in an agreement can eliminate an issue. So you may wish to, in drafting your papers, make doubly clear that which you've confirmed was the intent of the parties in the first place.[7]

Thus, and contrary to the Board's representation, the Court made no finding. Rather, it offered the unassailable proposition that if the Individual Defendants believed their counsel's representation – that Mr. Pinsly's objection was redundant – then there would be no harm in resolving it by including the carve-out. The change, of course, was anything but redundant; if it were truly redundant then one would have expected that lawyers as talented and skilled as those representing the Individual Defendants would have made such a change when it was first requested six months prior, rather than burdening their clients, the Company, and Mr. Pinsly with wave on wave of unneeded and vigorously contested motion practice until the Court suggested that they just include the carve-out. Further, simple logic undermines the Board's argument: had the Court held that the change was redundant, then it would have had no reason *not* to overrule Mr. Pinsly's objection.

Second, the mere fact that the Board has identified one case where the release included language as overbroad and defective as that originally proposed is a *non sequitur*: an error twice made is no less wrong. Mr. Pinsly has gone to great lengths to explain *why* the language of the

---

[6] Counsel for the Individual Defendants in this Action, of course, cannot bind the defendants in the *Pinsly* Action. Further, if it was the case that the Individual Defendants did not wish to release the claims in the *Pinsly* Action, then why did they refuse, for six months, to include the language requested by Mr. Pinsly?

[7] *See* Transcript of January 11, 2013 Hearing at 26-28 (Dkt. No. 796), relevant portions attached as Exhibit D to the Nelson Decl. previously filed with the Fee Application.

release as originally drafted was overbroad; the Board's failure respond to those arguments with any substantive analysis or argument concedes the validity of Mr. Pinsly's point. The changes in the language of the release secured by Mr. Pinsly prevented the Board from causing the Company to release potentially valuable claims brought in the *Pinsly* Action, and remedied a critical flaw in the language of the release by restricting the unknown claims released through the Settlement.[8]

Third, and again ignored by the Board, is the fact that the actions of the Individual Defendants in response to Mr. Pinsly's objections regarding the scope of the release confirm the value of those objections. That is, the Individual Defendants: (i) opposed Mr. Pinsly's attempt to limit the scope of the releases at every turn for more than six months; (ii) maintained their opposition to limiting the release even following their affirmative representation to the Court that they would do so; (iii) refused to change the language of the release until mere hours before the deadline for filing an amended final order; and (iv) only then agreed to make Mr. Pinsly's changes under the threat that he would inform the Court that they had failed to modify and limit the language of the release. *See* Fee Application at 3-8. Simply put, if Mr. Pinsly's complaints

---

[8] The Board also asserts that Pinsly's objection that Lead Plaintiffs were conflicted was a valueless attack "*ad hominem*" that he did not "substantiate" with any "concrete evidence" and which was not cited by the Court as a "concern at any time during its consideration of the original settlement." BOA Opp. at 14. Again, the Board is wrong. First, Mr. Pinsly's arguments were not attacks *ad hominem*. An attack *ad hominem* is an informal fallacy through which one attacks the character or trait of an actor rather than the substance of the argument advanced. *Oyster Bay Assocs. Ltd. P'ship v. Town Bd. of Town of Oyster Bay*, No. 2001–16830, 2008 WL 2390343, at *4 (N.Y. Sup. June 9, 2008). Here, Mr. Pinsly did not attack the character of Lead Plaintiffs, he correctly identified the reasons why Lead Plaintiffs lacked the legal ability to act for the benefit of anyone other than their beneficiaries. Objection at 18-22. Nor does it matter that the Court did not cite Lead Plaintiff's inadequacy as a concern before approving the Settlement. Once the Court ordered the Delaware Plaintiffs to engage in negotiations with Lead Plaintiffs and the Individual Defendants (prior to approval of the Settlement), Mr. Pinsly's argument was mooted: Nancy Rothbaum, one of the Delaware Plaintiffs, is an individual and thus suffers from none of the defects identified by Mr. Pinsly. Thus, at the final hearing on January 11, 2013, it is no surprise that the Court did not cite Mr. Pinsly's argument on this point as impediment to the approval of the Settlement – the issue had already been resolved.

were mere "redundancy" that could be cured by "belt and suspenders" modifications, then they would not have been so vigorously opposed.

Next, the Board argues that counsel for Mr. Pinsly should not be awarded a fee because (i) under a lodestar cross-check the requested fee results in an 8 times multiplier; and (ii) the hours claimed by his counsel include an ultimately unsuccessful Section 220 action in Delaware. BOA Opp. at 15-16.

First, Mr. Pinsly has already explained why the fee sought is fair and reasonable.  It represents just 3% of the value of the financial consideration obtained through the prosecution of the Action for BOA and its shareholders.  Fee Application at 19.  And Mr. Pinsly has provided a host of authority for the proposition that the award sought is reasonable and appropriate in light of both the increased consideration and the changes in the language of the release secured through his efforts. *See* Fee Application at 10-12 (discussion of analogous case where objector awarded fees for preventing release of claims alleged in related lawsuit filed following settlement); 19-25 (analysis and application of a host of cases supporting the requested award of fees under both percentage-of-benefit and lodestar metrics).  The Board utterly ignores Mr. Pinsly's authority; it neither cites nor attempts to distinguish a single case cited by Mr. Pinsly in support of the requested fee.  Instead, it simply claims, with no legal support whatsoever, that the fee sought by Mr. Pinsly's counsel is too high and should be denied.  BOA Opp. at 15-16. Absent provision of some legal authority supporting that position, the opinion of the Board on what fee is fair or warranted is simply irrelevant.

Similarly unavailing is the Board's argument that Mr. Pinsly is not entitled to seek a fee because he failed to prevail in the Section 220 action through which he sought to force the Board to produce documents justifying their decision to endorse the original, inadequate $20 million

settlement.  BOA Opp. at 15-16.  First, inherent in the Board's argument is the proposition that an attorney litigating a case should only be compensated for those aspects of the litigation in which he prevails; but this makes no sense.  Mr. Pinsly brought the Section 220 action in the hope that he could strengthen his argument that the original settlement approved by the Board was insufficient and improper; it was thus just one aspect of his overall strategy to prevent an inadequate settlement from moving forward.  It is impossible for an attorney to know in advance which arguments or motions will be successful; if it were possible, there would be no need to litigate.  As such, the zealous attorney will attack the issues in a case from every angle that poses a reasonable chance of furthering the interests of his client.   Counsel for Mr. Pinsly did just that, here.

Second, the Board's position is flawed in that it fails to recognize that but for the Board's refusal to produce documents justifying their reasons for endorsing a clearly inadequate settlement, Mr. Pinsly's Section 220 action need not have been brought at all.  Indeed, prior to bringing that action Mr. Pinsly implored both the Company and Lead Plaintiffs to voluntarily turn over documents related to the reasons for the settlement, and served a formal letter pursuant to Section 220 demanding production.  It was only after he was refused at all turns that he was forced to bring the Section 220 action.  And the very concerns that drove Mr. Pinsly to bring the Section 220 action were borne out as true.  The original settlement was critically inadequate, and the Board should never have approved it in the first place; the fact that the Individual Defendants were willing to pay an additional $42.5 million on top of the number to which they had originally agreed indisputably confirms as much.

C.      **The Reaction of Shareholders Supports the Fee Application**

As noted, above, the reaction of shareholders is a key factor in determining the appropriateness of an application for fees in a representative action. *See In re Bear Stearns*, 2012 WL 5465381, at *5; *In re Flag*, 2010 WL 4537550, at *23. Here, pursuant to the Court's order entered January 24, 2013, notice regarding the deadlines related to the fee hearing and the amount of the fees and expenses sought by counsel was published. In response, not one of the Company's shareholders (representing approximately 11 billion shares) voiced any objection to the Fee Application. Accordingly, it is clear that the Company's shareholders do not oppose, and it can be inferred that they support, the Fee Application.

III.    **CONCLUSION**

For the foregoing reasons, Pinsly's counsel respectfully requests that this Court grant the Fee Application.

Dated: March 15, 2013

**THE WEISER LAW FIRM, P.C.**

s/ Christopher L. Nelson
ROBERT B. WEISER
BRETT D. STECKER
CHRISTOPHER L. NELSON (*pro hac vice*)
22 Cassatt Avenue, First Floor
Berwyn, PA 19312
Telephone: (610) 225-2677
Facsimile: (610-225-8062

**LAW OFFICE OF DEBRA S. GOODMAN, P.C.**
DEBRA S. GOODMAN
1301 Skippack Pike, Suite 7A, #133
Blue Bell, PA 19422
Telephone: (610) 277-6057
Facsimile: (484) 231-1922

Counsel    for    Objector    Matthew    Pinsly

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 15, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

/s/ Christopher L. Nelson
Christopher L. Nelson