**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BANK OF AMERICA CORP. SECURITIES, DERIVATIVE, AND EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION | Master File No. 09 MDL 2058 (PKC)<br><br>ECF CASE |
| THIS DOCUMENT RELATES TO:<br><br>Consolidated Securities Action | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF:**
**(1) LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT AND PLAN OF ALLOCATION; AND (2) CO-LEAD COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF**
**LITIGATION EXPENSES**

Dated:  March 29, 2013

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................ii

I.    INTRODUCTION ................................................................................................................1

II.   ARGUMENT .......................................................................................................................2

    A.   The Masiowski/Rinis Objection Is Without Merit ......................................................2

    B.   The Washenik Objection Should Be Rejected .............................................................5

    C.   The Turkish Objections Are Meritless ......................................................................10

    D.   Scott Boatwright Objection .......................................................................................16

    E.   Dennis Breuel's Objection Should Be Overruled .....................................................17

    F.   Phil Nothstein's Objection Should Be Overruled .....................................................18

    G.   The Objection of AMP Capital Limited, Colonial First State Investments Ltd,
        and H.E.S.T. Australia Ltd Is Without Merit ...........................................................18

        1.   The Pending Appeal In *International Fund Management* Does Not
            Require The Court To Defer Consideration Of The Settlement Or Provide
            A Second Opt-Out Period ...............................................................................20

        2.   Neither The Filing Of Lead Plaintiffs' Partial Summary Judgment Motion
            Nor The Announcement Of The Settlement Require A Second Opt-Out
            Period ...............................................................................................................26

        3.   The Class Notice Satisfies Rule 23 And Due Process .................................28

III.  CONCLUSION .................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Pipe & Constr. Co. v. Utah,*
    414 U.S. 538 (1974) .................................................................................. 21, 25, 26, 27

*Blessing v. Sirius XM Radio Inc.,*
    No. 11-3696, 2012 WL 6684572 (2d Cir. Dec. 20, 2012) ..................................... 6

*Bozeman v. Lucent Techs. Inc.,*
    378 F. Supp. 2d 1348 (M.D. Ala. 2005) ............................................................. 25

*Cassese v. Williams.,*
    No. 11-4333, 2012 WL 5861804 (2d Cir. Nov. 20, 2012) ..................................... 6

*Cent. States Se. & Sw. Areas Health & Welfare Fund*
    *v. Merck-Medco Managed Care, L.L.C.,*
    504 F.3d 229 (2d Cir. 2007) ............................................................................... 20

*CLRB Hanson Indus., LLC v. Weiss & Assocs., PC,*
    465 Fed. App'x 617 (9th Cir. 2012) ...................................................................... 3

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006) ............................................................................... 18

*Feder v. Elec. Data Sys. Corp.,*
    248 Fed. App'x 579 (5th Cir. 2007) .................................................................... 11

*Footbridge Limited Trust v. Countrywide Financial Corporation,*
    770 F. Supp. 2d 618 (S.D.N.Y. 2011) ........................................................*passim*

*Goldberger v. Integrated Resources, Inc.,*
    209 F. 3d 43 (2d Cir. 2000) ............................................................................... 16

*Green v. Wolf Corp.,*
    406 F.2d 291 (2d Cir. 1968) ............................................................................... 24

*Hicks v. Morgan Stanley,*
    No. 01-cv-10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................. 9

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
    452 Fed. App'x 75 (2d Cir. 2012) .................................................................... 3, 4

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
    No. 04-cv-8141, 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010) .............................. 9

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  No. 04-cv-8141, 2012 WL 345509 (S.D.N.Y. Feb. 2, 2012)..................................................... 6

*In re AOL Time Warner, Inc. Sec. Litig.*,
  503 F. Supp. 2d 666 (S.D.N.Y. 2007)...................................................................................... 24

*In re Bank of America Corp. Sec., Deriv. & ERISA Litig.*,
  757 F. Supp. 2d 260 (S.D.N.Y. 2010)...................................................................................... 23

*In re Bear Stearns Cos., Sec., Derivative, & ERISA Litig.*,
  08 MDL No. 1963, 2012 WL 5465381 (S.D.N.Y. Nov. 9, 2012) .......................................... 16

*In re Brand Name Prescription Drugs Antitrust Litig.*,
  No. 94 C 897, 1996 WL 167347 (N.D. Ill. Apr. 4, 1996)................................................. 28, 30

*In re Broadcom Corp. Sec. Litig.*,
  No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 45656
  (C.D. Cal. Dec. 5, 2005)........................................................................................................... 3

*In re Citigroup Inc. Sec. Litig.*,
  No. 07-cv-09901 (SHS) (S.D.N.Y. Mar. 15, 2013) ............................................................... 11

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008)............................................................................................ 3

*In re Diet Drugs Prods. Liab. Litig.*,
  No. 99-2059, 2002 U.S. Dist. LEXIS 19396 (E.D. Pa. Oct. 3, 2002)...................................... 3

*In re Gilat Satellite Networks, Ltd*
  No. 02-cv-1510 (CPS) (SMG), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007). ..................... 9

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) (Lynch, J.) ........................................................................... 2

*In re IndyMac Mortgage-Backed Sec. Litig.*,
  793 F. Supp. 2d 637 (S.D.N.Y. 2011)...................................................................................... 26

*In re Initial Pub. Offering Sec. Litig.*,
  728 F. Supp. 2d 289 (S.D.N.Y. 2010)........................................................................................ 6

*In re Initial Pub. Offering Sec. Litig.*,
  No. 21 MC 92 (SAS), 2011 WL 3792825 (S.D.N.Y. Aug. 25, 2011) .................................... 11

*In re Ins. Brokerage Antitrust Litig.*,
  No. 04-cv-5184, 282 F.R.D. 92 (D.N.J. 2012)................................................................... 3, 12

*In re Lehman Bros. Securities & ERISA Litig.*,
  800 F. Supp. 2d 277 (S.D.N.Y. 2011)...................................................................................... 26

*In re Linerboard Antitrust Litig.*,
    443 F. Supp. 2d 703 (E.D. Pa. 2006) .................................................................. 24

*In re Lloyd's Am. Trust Fund Litig.*,
    No. 96-cv-1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) (Sweet, J.) .................. 19, 30

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    205 F.R.D. 369 (D.D.C. 2002) .......................................................................... 3

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    MDL No. 1290, No. 99-cv-0790, 2002 U.S. Dist. LEXIS 9017 (D.D.C. Apr. 15, 2002) ........ 3

*In re Lucent Techs., Inc. Sec. Litig.*,
    327 F. Supp. 2d 426 (D.N.J. 2004) .................................................................... 3

*In re Managed Care Litig.*,
    No. 00-1334, 2004 U.S. Dist. LEXIS 29884 (S.D. Fla. Feb. 2, 2004) ............................ 3

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    No. 04-cv-8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................ 7, 9, 16

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) ...................................................................... 16

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 WL 4526593 (S.D.N.Y Dec. 20, 2007) .......................... 14

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................................................... 19

*In re Micron Tech, Inc. Sec Litig.*,
    No. 1:06-cv-00085-S-WFD (D. Id. Jan. 19, 2011), *aff'd*,
    484 F. App'x 138 (9th Cir. 2012) .................................................................... 12

*In re Nortel Networks Corp. Sec. Litig.*,
    No. 01-cv-1855 (RMB), 2010 WL 3431152 (S.D.N.Y. Aug. 20, 2010) .......................... 15

*In re Nortel Networks Sec. Litig.*,
    No. 01-cv-1855 (RMB), 2006 WL 3802198 (S.D.N.Y. Dec. 26, 2006) ........................ 3, 15

*In re Phillip Morris Inc.*,
    212 F.3d 132 (2d Cir. 2000) .......................................................................... 25

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
    No. 04-cv-374 (JAP), slip. op. (D.N.J. Sept. 26, 2008) ........................................... 9

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
    No. 09-MD-2027-BSJ, slip. op. (S.D.N.Y. Sept. 13, 2011) ...................................... 9

iv

*In re Serzone Prods. Liab. Litig.*,
   231 F.R.D. 221 (S.D.W.V. 2005) ................................................................. 3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. MDL 3:07–md–1827 SI, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ...................... 3, 5

*In re Tyco Int'l Ltd. Sec. Litig.*,
   535 F. Supp. 2d 249 (D.N.H. Dec. 19, 2007) ................................................. 3

*In re UnitedHealth Grp. Inc. Shareholder Deriv. Litig.*,
   631 F. Supp. 2d 1151 (D. Minn. 2009) ....................................................... 5

*In re Vivendi Univ., S.A. Sec. Litig.*,
   284 F.R.D. 144 (S.D.N.Y. 2012) ............................................................ 25

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002) .............................................................. 3

*In re WorldCom, Inc. Sec. Litig.*,
   02 CIV 3288 (DLC), 2004 U.S. Dist. LEXIS 22992 (S.D.N.Y. Nov. 12, 2004) ........... 3, 27

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................... 19, 27

*In re Yahoo! Litig.*,
   No. 06-2737 (C.D. Cal. Feb. 11, 2010) ...................................................... 6

*International Fund Management, S.A. v. Citigroup, Inc.*,
   No. 12-1903-cv (2d Cir. 2012) .......................................................... 21, 20

*McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*,
   339 F.3d 1087 (9th Cir. 2003) ............................................................. 18

*Meyenburg v. Exxon Mobil Corp.*,
   3:05-cv-15-DGW, 2006 U.S. Dist. LEXIS 52962 (S.D. Ill. July 31, 2006) .................... 3

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) ............................................................... 3

*Peters v. Nat'l R.R. Pass. Corp.*,
   966 F.2d 1483 (D.C. Cir. 1992) ............................................................ 24

*Phillips Petro. Co. v. Shutts*,
   472 U.S. 797 (1985) ....................................................................... 24

*Power Travel Int'l, Inc. v. Am. Airlines, Inc.*,
   No. 1:02-CV-7434-RWS, 2004 WL 5299598 (S.D.N.Y. Nov. 4, 2004) ......................... 29

*Richman v. Goldman Sachs Grp., Inc.*,
    274 F.R.D. 473 (S.D.N.Y. 2011).........................................................................8

*Schwartz v. TXU Corp.*,
    No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005).................3

*Take-Two Interactive Software, Inc. v. Brant*,
    No. 06 Civ. 05279 (LTS), 2010 WL 1257351 (S.D.N.Y. Mar. 31, 2010) ............................22

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) ...........................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .....................................................................*passim*

*White v. Experian Info. Solutions*,
    No. 05-1070, 2011 WL 2971957 (C.D. Cal. Jul. 15, 2011) ....................................6

*Xianglin Shi v. Sina Corp.*,
    No. 05 Civ. 2154, 2005 WL 1561438 (S.D.N.Y. July 1, 2005)...................................8

## STATUTES

15 U.S.C. § 78u-4(a)(4) ...........................................................................................8

15 U.S.C. § 78u-4(a)(7)(B)(ii) ................................................................................4

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 .....................................................................................*passim*

Fed. R. Civ. P. 23(b)(3)..................................................................................24, 28

Fed. R. Civ. P. 23(c)(2) ...........................................................................28, 29, 30

Fed. R. Civ. P. 23(c)(3) ...............................................................................25, 29

Lead Plaintiffs and Co-Lead Counsel respectfully submit this reply memorandum of law in further support of: (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

## I.  INTRODUCTION

The Garden City Group, Inc. ("GCG"), the Claims Administrator, has disseminated the Settlement Notice to more than 3.3 million potential Class Members and nominees informing them of, among other things, the terms of the Settlement and the Plan of Allocation, and Co-Lead Counsel's intention to apply to the Court for attorneys' fees of 6.56% of the Settlement Fund and reimbursement of up to $17,500,000 in expenses, including any PSLRA awards.[1]  The deadline to file objections was March 5, 2013.

In response to the Settlement Notice, Co-Lead Counsel have received only eight objections from potential Class Members, many of which were filed by "professional" or "serial" objectors – *i.e.*, attorneys who seek out class action settlements and routinely lodge unsupported, generic objections.[2]  Even counting the objections filed by these serial objectors, the number of objections received is infinitesimal compared to the size of the Class.

Significantly, more than 60% of BoA's common stock was owned by institutions during the Class Period.  Many of these institutions had very substantial financial interests in this Action, and have their own in-house legal departments to closely review the proposed Settlement and fee request.  Apart from one objection filed by three Australian-based investment managers on the

---

[1]      *See* Joint Declaration of Steven B. Singer, Frederic S. Fox, and David Kessler in Support of (A) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (B) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (Dkt. No. 829) (the "Joint Declaration" or "Joint Decl."), at ¶ 212; *see also* Affidavit of Jason Zuena Regarding (A) Mailing of Settlement Notice and Proof of Claim Form; (B) Report on Opt-Ins Received; and (C) Report on Late Exclusions Received, submitted herewith, at ¶ 2.

[2]      The professional objectors who have filed objections in this matter have collectively filed at least 50 prior objections to class action settlements, as detailed in sections II.A, II.B and II.C below.

discrete issue of whether the Court should order a second opt-out period, no institutions have objected to the Settlement, the Plan of Allocation, or the requested attorneys' fees and expenses. The handful of objectors who have challenged the adequacy of the Settlement, the Plan of Allocation, or the fee request owned approximately 3,500 shares of BoA stock during the Class Period, a miniscule amount.[3]   Indeed, the 3,500 shares owned by these objectors constitute 0.00007% of the 5 billion shares of BoA common stock outstanding during the Class Period, further demonstrating that the Settlement has been well-received by the overwhelming majority of the Class.

Lead Plaintiffs and Co-Lead Counsel respectfully submit that the lack of meaningful objections is compelling evidence that the Settlement, the Plan of Allocation, and the fee request are fair and reasonable, and should be approved by the Court.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118, 119 (2d Cir. 2005) ("the favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in our *Grinnell* inquiry"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457, 458 (S.D.N.Y. 2004) (Lynch, J.) (six objections out of a class of approximately one million was "vanishingly small" and "constitutes a ringing endorsement of the settlement by class members").

Lead Plaintiffs address each of the eight objections below, and explain why they should be rejected.

## II.    ARGUMENT

### A.    The Masiowski/Rinis Objection Is Without Merit

Leonard and MaryAnn Masiowksi, Michael and Babette Rinis, and Michael J. Rinis IRA (the "Masiowski/Rinis Objectors") have objected to: (1) the sufficiency of the Settlement Notice;

---

[3]    As noted above, while the Australian investment managers style their objection as one to the Settlement, they object only on the narrow issue of whether the Court should order a second opt-out period.

and (2) Co-Lead Counsel's Request for Attorneys' Fees.  *See* Ex. 1.[4]  The Masiowski/Rinis Objectors have a very small financial interest in this Action: they collectively purchased 500 shares of BoA stock during the Class Period, and held another 868 shares during the Class Period.  The Masiowski/Rinis Objection should be rejected for several reasons.

First, Michael Rinis and N. Albert Bacharach, Jr., Esq., who is counsel for the Masiowski/Rinis Objectors, are professional objectors.  Counting this case, Messrs. Rinis and/or Bacharach have objected to class action settlements, notices and/or fee requests at least 22 times. Mr. Rinis has objected so often that numerous federal courts have held that he is a "serial objector." *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07–md–1827 SI, 2011 WL 7575004, at *3 (N.D. Cal. Dec. 27, 2011) ("Mr. Rinis appears to be a 'serial objector' who has filed objections in at least 21 class action settlements in federal courts."); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 500 (E.D. Mich. 2008) ("Mr. Rinis … can be fairly characterized as a 'serial objector.'").[5]  Here, Messrs. Rinis and Bacharach repeat many of the same objections they have made in these other cases.  Indeed, the papers they filed in support of their objection appear in some key places to be "form" objections that were recycled to object to this

---

[4]      "Ex. __" refers to the exhibits to the Supplemental Declaration of Steven B. Singer, which is being filed together with this Reply Memorandum.

[5]      *See also In re Am. Int'l Grp., Inc. Sec. Litig.*, 452 Fed. App'x 75, 76 (2d Cir. 2012); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 100, 106 (2d Cir. 2005); *In re Nortel Networks Sec. Litig.*, No. 01-CIV-1855 (RMB), 2006 WL 3802198, at *3, *5 (S.D.N.Y. Dec. 26, 2006); *In re WorldCom, Inc. Sec. Litig.*, 02 CIV 3288 (DLC), 2004 U.S. Dist. LEXIS 22992, at *32 (S.D.N.Y. Nov. 12, 2004); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 429, 443 (D.N.J. 2004); *In re Managed Care Litig.*, No. 00-1334, 2004 U.S. Dist. LEXIS 29884, at *7 (S.D. Fla. Feb. 2, 2004); *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 228 n.9 (S.D.W.V. 2005); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 236, 253 (D. Del. 2002); *Meyenburg v. Exxon Mobil Corp.*, 3:05-cv-15-DGW, 2006 U.S. Dist. LEXIS 52962, at *1 (S.D. Ill. July 31, 2006); *In re Tyco Int'l Ltd. Sec. Litig.*, 535 F. Supp. 2d 249, 273 (D.N.H. Dec. 19, 2007); *Newby v. Enron Corp.*, 394 F.3d 296, 298, 300-11 (5th Cir. 2004); *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *76 (N.D. Tex. Nov. 8, 2005); *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 45656, at *14 & n.5 (C.D. Cal. Dec. 5, 2005); *In re Diet Drugs Prods. Liab. Litig.*, No. 99-2059, 2002 U.S. Dist. LEXIS 19396, at **41-42 (E.D. Pa. Oct. 3, 2002); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 112-17 (D.N.J. 2012); *CLRB Hanson Indus., LLC v. Weiss & Assocs., PC*, 465 Fed. App'x 617, 618 (9th Cir. 2012); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 379 (D.D.C. 2002) & 2002 U.S. Dist. LEXIS 9017, at *9 (D.D.C. Apr. 15, 2002); *In re Trans Union Corp. Privacy Litig.*, No. 00-4729 (N.D. Ill. Aug. 27, 2008), Dkt. No. 491 (Ex. 10); *Lipuma v. Am. Express Co.*, No. 04-20314-CIV (S.D. Fla. Feb. 15, 2005), Dkt. No. 213 (Ex. 11).

Settlement.  *See, e.g.*, Objection ¶ 9 (Ex. 1) (inaccurately stating that Co-Lead Counsel are requesting a fee equal to 25% of the Settlement Amount, when the Settlement Notice stated that counsel are seeking a fee of 6.56%).

The Masiowski/Rinis Objection is meritless.  For example, these objectors argue that the Settlement Notice is defective because paragraph 4, entitled "Statement of Average Amount of Damages Per Share," does not provide a specific estimate of damages per share that plaintiffs would have recovered had they succeeded in establishing liability.  *See* Objection at ¶¶ 2-4. However, just last year, Mr. Bacharach made this same argument, and the Second Circuit summarily rejected it, holding that it "contradicts the [PSLRA's] plain language and finds no support in the precedent of this or any other circuit." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 452 Fed. App'x 75, 77 (2nd Cir. 2012).  Specifically, the Second Circuit held that where, as here, the parties do not agree about per share damages, the PSLRA requires "no more" than a statement of the issues about which the parties disagree, and "clearly requires an amount recoverable be provided *only* in the case that the parties agree on that amount." *Id.* (emphasis in original); *see also* 15 U.S.C. § 78u-4(a)(7)(B)(ii).

The Settlement Notice here (Dkt. No. 829-7 Ex. A) plainly satisfies these requirements. Paragraph 4 of the Settlement Notice states that Plaintiffs and Defendants "do not agree on the average amount of damages per share that would be recoverable if Lead Plaintiffs were to prevail in the Action," and describes the issues on which the parties disagree, including that "[t]he Parties also disagree on the appropriate methodology for determining damages, if liability were established, particularly under Section 14(a)."  Accordingly, the Settlement Notice was clearly adequate.

The Masiowski/Rinis Objectors also object to Co-Lead Counsel's fee application, contending that the fee request is excessive, without explaining why that is supposedly the case, or what a reasonable fee would be.  As demonstrated in Co-Lead Counsel's opening papers, the

requested fee is fair and reasonable, and is in fact significantly below the range of fees commonly awarded in securities class action settlements, whether considered as a percentage of the Settlement or on a multiplier basis. *See* Dkt. No. 828 at 7-10. Indeed, the requested fee represents a multiplier of only approximately 1.8 on Plaintiffs' Counsel's total lodestar, which is well below the multipliers of between 3 and 4.5 that are typically awarded in complex class actions with substantial contingency risks such as this one. *Id*. Moreover, in the handful of securities class action cases like this one in which settlements of over $1 billion have been obtained, fee awards have generally ranged between 7% to 14.5% of the recovery, and have represented, on average, a lodestar multiplier of nearly 3.5 – well in excess of that requested by Co-Lead Counsel here. *Id*. at 8.

The Masiowksi/Rinis Objectors also contend that Co-Lead Counsel's fee request should be denied because "there appears to be no appreciable risk of non-recovery" in securities class actions since "virtually all cases are settled" (Obj. at 6). This is nonsense, and ignores the real risk of non-recovery faced here. As set forth in the Joint Declaration, Lead Plaintiffs and Co-Lead Counsel faced substantial risks to establishing liability, loss causation and damages that made it far from certain that any recovery, let alone a recovery in the magnitude of the Settlement, would ultimately be obtained for the Class. *See* Joint Decl. at ¶¶ 124-150. In sum, the objection to Co-Lead Counsel's fee request should be overruled.[6]

**B.    The Washenik Objection Should Be Rejected**

Michael and Laurel Washenik (the "Washenik Objectors") object to: (1) the documentation requirement of the Claim Form; (2) Co-Lead Counsel's fee request; and (3) Lead Plaintiffs' request for reimbursement of reasonable costs and expenses. *See* Ex. 2. The Washenik Objectors have a *de*

---

[6]    The Masiowski/Rinis Objection also appears to be untimely, which is reason alone to deny it. The Settlement Notice clearly states that objections must be filed "on or before March 5, 2013" (Settlement Notice at ¶ 114), but the docket indicates that the Masiowski/Rinis Objection was not filed until March 7, 2013 (*see* Dkt. No. 843). *See TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *3 (refusing to consider Michael Rinis's untimely objection); *In re UnitedHealth Grp. Inc. Shareholder Deriv. Litig.*, 631 F. Supp. 2d 1151, 1158 n.6 (D. Minn. 2009) (refusing to consider untimely objection).

*minimis* financial interest in this case and do not possess a Section 14(a) claim, as they purchased 300 shares of BoA stock on December 4, 2008, months after the record date for voting on the Merger.[7]  The Washenik Objection should be overruled for several reasons.

As is the case with Messrs. Bacharach and Rinis, Steve A. Miller, counsel for the Washenik Objectors, is a professional objector.  Including this case, Mr. Miller has objected in whole or in part to at least 20 class action settlements (and counting).[8]  In his objection, Mr. Miller repeats many of the arguments he has raised as a matter of course in these other cases.

Specifically, the Washenik Objectors object to the requirement that Class Members who want to receive a distribution from the Settlement Fund must submit documentation of their trades in BoA stock because Bank of America already "has the data and means to calculate and make class member distributions."  Washenik Obj. (Ex. 2) at ¶ 3(a).  This statement – which appears to have

---

[7]     Although the Washenik Objectors do not object to the adequacy of the Settlement, they claim that they lost $28.00 per share on their investment in BoA, as compared to the average recovery per share of approximately $0.43 (before certain deductions) calculated by Lead Plaintiffs' damages expert. Washenik Obj. at ¶ 1.  However, this $28 per share loss is based on the fact that they paid $35 per share for their stock on December 4, 2008 – a date when BoA stock traded at a high of $15.36 and closed at $14.34, or approximately 60% less than what the Washenik Objectors paid for it.  It appears that the Washenik Objectors may have paid more than double the market price for their BoA stock that day because they were forced to cover a pre-existing option transaction (such as a put option).  Further, their claimed loss of $28 per share bears no relationship to the misrepresentations and omissions at issue in this case or to potentially recoverable damages.  *See, e.g.,* Settlement Notice at ¶ 82 n.15 ("$4.74 represents the total amount of decline in the price of BoA common stock calculated by Lead Plaintiffs' damages expert as being related to the disclosure of the alleged misrepresentations and omissions").

[8]     *See, e.g., In re Initial Pub. Offering Sec. Litig.,* 728 F. Supp. 2d 289, 291 n.5 (S.D.N.Y. 2010); *In re Am. Int'l Grp., Inc. Sec. Litig.,* No. 04-8141, 2012 WL 345509, at *2 (S.D.N.Y. Feb. 2, 2012); *Pecover v. Electronic Arts Inc.,* No. 08-2820 (N.D. Cal. Dec. 10, 2012), Dkt. No. 397 (Ex. 12); *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. 07–md–1827 (N.D. Cal. Apr. 13, 2012), Dkt. No. 5454 (Ex. 13); *In re Groupon, Inc. Marketing & Sales Practices Litig.,* No. 11-md-2238 (S.D. Cal. July 27, 2012), Dkt. No. 68 (Ex. 14); *Cassese v. Williams.,* No. 11-4333, 2012 WL 5861804 (2d Cir. Nov. 20, 2012); *In re New Motor Vehicles Canadian Export Antitrust Litig.,* MDL No. 03-1532 (D. Me. Jan. 31, 2011), Dkt. No. 1140 (Ex. 15); *Blessing v. Sirius XM Radio Inc.,* No. 11-3696, 2012 WL 6684572 (2d Cir. Dec. 20, 2012); *In re Lawnmower Engine Horsepower Marketing & Sales Practice Litig.,* No. 08-md-1999 (E.D. Wis. June 4, 2010), Dkt. No. 272 (Ex. 16); *The nVidia GPU Litig.,* No. 08-4312 (N.D. Cal. Jan. 19, 2011), Dkt. No. 329 (Ex. 17); *White v. Cellco P'ship d/b/a Verizon Wireless,* No. RG04-137699 (Cal. Sup. Ct., Alameda Cty. Oct. 17, 2008) (Ex. 18); *Fogel v. Farmers Grp., Inc.,* No. BC300142 (Cal. Sup. Ct., LA Cty.) (Ex. 19); *In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.,* MDL No. 07-ml-1897 (C.D. Cal. Feb. 19, 2010), Dkt. No. 194 (Ex. 20); *In re Yahoo! Litig.,* No. 06-2737 (C.D. Cal. Feb. 11, 2010), Dkt. No. 232 (Ex. 21); *White v. Experian Info. Solutions,* No. 05-1070, 2011 WL 2971957 (C.D. Cal. Jul. 15, 2011); *CLRB Hanson Indus., LLC v. Google, Inc.,* No. 05-3649 (N.D. Cal. July 10, 2009), Dkt. No. 326 (Ex. 22); *Milliron v. T-Mobile USA, Inc.,* No. 08-4149 (D.N.J. July 2, 2009), Dkt. No. 53 (Ex. 23); *In re Trans Union Corp. Privacy Litig.,* No. 00-4729 (N.D. Ill. Oct. 15, 2008), Dkt. No. 530 (Ex. 24); *Reformulated Gasoline Antitrust and Patent Litig.,* No. 2:05-ml-01671-CAS-VBK (C.D. Cal. Nov. 19, 2008), Dkt. No. 276 (Ex. 25).

been rehashed from one of Mr. Miller's prior objections in an unrelated case – is incorrect. Contrary to what the Washenik Objectors contend, BoA, like virtually all defendants in securities class actions, does not possess trading data for Class Members. Rather, BoA has only the names and addresses of certain record holders of the stock (which were provided to GCG in connection with the mailing of the Class Notice). Thus, Class Members who wish to receive distributions must submit their trading data so that their claimed losses can be verified and their distribution amounts can be calculated – a requirement that is standard practice in securities class action settlements. *See, e.g.*, *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *25 (S.D.N.Y. Dec. 23, 2009) (rejecting objection that lawyers should fill out the claim form and that potential class members should simply verify the information because it did "not comport with the long-approved procedures for the efficient management of class-action settlement distributions").

The Washenik Objectors also argue that Co-Lead Counsel's fee request is "excessive" because the "claimed lodestar is more than adequate compensation in this Circuit for the result achieved in this securities fraud action." Obj. at ¶ 3(b). Contrary to this assertion, as set forth more fully in Co-Lead Counsel's opening fee brief and noted above, courts in this Circuit routinely award multipliers of between 3 and 4.5 in complex class actions with substantial contingency risks. Co-Lead Counsel's fee request would result in a multiplier of only 1.8 – far below what is commonly awarded by courts in this Circuit. Further, while the Washenik Objectors state that the "court should be looking at a percentage of recovery far less than the typical range" (*id.*), the percentage sought here is indeed well below the 20% to 33% of the settlement fund that is typically awarded in securities cases. *See* Dkt. No. 828 at 7-8.

Finally, the Washenik Objectors raise two issues with respect to Lead Plaintiffs' request for reimbursement of their reasonable costs and expenses directly related to their representation of the

Class.  Obj. at ¶ 3(c).  To start, the Washenik Objectors contend that the Settlement Notice did not state that "Lead Plaintiffs are seeking $453,000 in PSLRA awards for representing the class."  *Id*. However, the Settlement Notice stated that Co-Lead Counsel "will" seek reimbursement of expenses "in an amount not to exceed $17.5 million, which may include the reasonable costs and expenses of Class Representatives … directly related to their representation of the Class." Settlement Notice at ¶¶ 5, 103.  Co-Lead Counsel's total reimbursement request of $8,535,831.36, which includes the $453,003.04 in costs and expenses requested by the Lead Plaintiffs, is less than half of the $17.5 million cap set forth in the Settlement Notice.  Contrary to what the Washenik Objectors contend, plaintiffs are not required to itemize in the Notice each separate expense for which they will seek reimbursement.  It is standard federal practice in class actions for the settlement notice to set forth an overall "cap" on expenses that lead counsel and lead plaintiffs may seek, and for lead plaintiffs to later identify their specific expenses at the time they move for approval of their fees and expenses.

The Washenik Objectors also contend that the "employee time" for which the Lead Plaintiffs seek reimbursement is not compensable under the PSLRA.  Obj. at ¶ 3(c).  This argument fails.  In enacting the PSLRA, Congress expressed its preference for institutional investors to serve as lead plaintiffs in securities litigation.[9]  To allow institutional investors to obtain reimbursement for the lost time and other expenses they incur by serving as lead plaintiff, the PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

---

[9]  *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 477 (S.D.N.Y. 2011) ("Congress has instructed [that actions under the PSLRA] should be guided by institutional investors"); *Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154, 2005 WL 1561438, at *5 (S.D.N.Y. July 1, 2005) ("Because the size and experience of institutional investors can be of significant assistance to the prosecution of the action, a number of courts 'have understood [the PSLRA] to favor large institutional investors' as lead plaintiff.") (citation omitted) (alteration in original).

Pursuant to this provision, and contrary to what the Washenik Objectors contend, "[c]ourts in [the Second] Circuit routinely award such costs and expenses [including employee time] both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005). As the court held in *In re Gilat Satellite Networks, Ltd*., "[s]ince the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks and rates appear reasonable to the furtherance of the litigation, the motion for . . . expenses for Lead Plaintiffs is granted." No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007); *see also In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141, 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (reimbursing lead plaintiffs for employee time). Indeed, courts have repeatedly granted sizeable reimbursement awards on much smaller settlement amounts where, as here, the requests are sufficiently supported by the facts and circumstances of the particular case.[10]

There is no question that Lead Plaintiffs' request is reasonable under the facts and circumstances of this matter. All five institutional Lead Plaintiffs were extremely active and vigilant in their representation of the Class, devoting substantial effort to the Action, including *inter alia*: (i) consulting with Co-Lead Counsel concerning case strategy and the retention of experts and consultants; (ii) reviewing, commenting on, and editing significant pleadings and briefs; (iii) supervising the production of discovery, including gathering and reviewing hundreds of thousands

---

[10]    *See Marsh & McLennan Cos.*, 2009 WL 5178546, at *21 (awarding $144,657 to the New Jersey Attorney General's Office and $70,000 to certain Ohio pension funds on a settlement of $400 million); *In re Satyam Computer Servs. Ltd. Sec. Litig.*, No. 09-MD-2027-BSJ, slip. op. at 3-4 (S.D.N.Y. Sept. 13, 2011), Dkt. No. 365 (Ex. 26) (awarding an aggregate amount of $195,111 to class representatives on a settlement of $150.5 million); *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-cv-374 (JAP), slip. op. at 14 (D.N.J. Sept. 26, 2008), Dkt. No. 525 (Ex. 27) (awarding $150,000 to Pennsylvania State Employees' Retirement System and the Pennsylvania Public School Employees' Retirement System on a settlement of $120 million).

of documents in response to discovery requests; (iv) preparing and sitting for depositions in furtherance of their motion for class certification; (v) working cooperatively with the other Court-appointed Lead Plaintiffs throughout the litigation; and (vi) preparing for and fully participating in the protracted settlement negotiations on behalf of the Class.  *See* Neville Decl. at ¶¶ 4-6, 13; Becker Decl. at ¶¶ 4-6, 13; Wei Decl. at ¶¶ 4-7; Van't Groenewout-Hendriks Decl. at ¶¶ 4-6, 13; Kåremar Decl. at ¶¶ 4-6, 12.  These efforts are precisely the types of activities that courts have found to support reimbursement to class representatives.

It is also clear that these requests were calculated in an appropriate manner by dividing annual salaries by hours typically worked during the course of a year and then applying that rate for each individual to the number of hours they each devoted to serving on behalf of the Class in this Action.  *See* Neville Decl. at ¶¶ 13-15; Becker Decl. at ¶¶ 13-15; Wei Decl. at ¶¶ 13-14; Van't Groenewout-Hendriks Decl. at ¶¶ 12-13; and Kåremar Decl. at ¶¶ 11-12.  Further, Lead Plaintiffs' declarations adequately establish that the time dedicated to the Action by their employees was time that these salaried employees could not devote to other work for Lead Plaintiffs and thus resulted in a tangible cost to the institutional Lead Plaintiffs.  *Id.*  Thus, the requests are adequately supported under Second Circuit precedent.

C. **The Turkish Objections Are Meritless**

Attorney Forrest S. Turkish has filed two identical objections, one on behalf of St. Stephen, Inc., and one on behalf of the Orloff Family Trust DTD 10/3/91 and the Orloff Family Trust DTD 12/13/01 (the "Orloff Family Trusts") (collectively, the "Turkish Objectors").  *See* Exs. 3 and 4.  St. Stephen, Inc. claims to have purchased 192 shares of BoA stock during the Class Period, but did not provide any trade slips or other documentation confirming these purchases.  Similarly, the Orloff Family Trusts generally claim that they purchased BoA stock and are Class Members, but provide no information or supporting documentation showing how much, if any, BoA stock they purchased,

10

or when such purchases were made. Instead, the Orloff Family Trusts summarily state in their objection that these supposed "details … will be submitted in a supplemental declaration," but they have not filed this supplemental declaration.

As a threshold matter, while the Turkish Objectors claim to be Class Members, in direct violation of this Court's Order Preliminarily Approving Proposed Settlement and Providing for Notice (the "Preliminary Approval Order") and the requirements in the Settlement Notice, they have failed to provide documentation (*i.e.*, account statements, trading slips, etc.) "sufficient to prove the objector's membership in the Class," and they have failed to sign their objections. *See* Preliminary Approval Order ¶ 15(a) and (c); Settlement Notice ¶ 115. There is ample precedent that bare assertions of Class membership do not establish standing. *See Feder v. Elec. Data Sys. Corp.*, 248 Fed. App'x 579, 581 (5th Cir. 2007) (holding that objector who produced no evidence to prove his class membership lacked standing to object to settlement, and stating that "[a]llowing someone to object to settlement in a class action based on this sort of weak, unsubstantiated evidence would inject a great deal of unjustified uncertainty into the settlement process"); *In re Initial Pub. Offering Sec. Litig.*, Master File No. 21 MC 92 (SAS), 2011 WL 3792825, at *2 (S.D.N.Y. Aug. 25, 2011) (finding unsigned, unsworn, unauthenticated tax form to be insufficient to establish class membership).

Even if the Turkish Objectors established standing, which they have not, their objections are baseless. Mr. Turkish and the Orloff Family Trusts are professional objectors. In addition to the two identical objections Mr. Turkish submitted in this case, Mr. Turkish and/or the Orloff Family Trusts have submitted substantially identical objections in at least ten other recent class action cases in this District and others.[11] The Turkish Objections submitted in this Action appear to contain

---

[11]    *See, e.g.*, *In re Citigroup Inc. Sec. Litig.*, No. 07-cv-09901 (SHS) (S.D.N.Y. Mar. 15, 2013), Dkt. No. 226 (Ex. 28); *In re Am. Int'l Grp. Sec. Litig.*, Master File No. 04-Civ-8141 (DAB)(AJP) (S.D.N.Y. Mar. 6, 2013), Dkt. No. 671 (Ex. 29); *In re Tremont Sec. Law, State Law & Ins. Litig.*, Master File No. 08-cv-11117 (TPG) (S.D.N.Y. May 11,

form errors left over from the objections that Mr. Turkish and the Orloff Family Trusts have submitted in these other cases. *See, e.g.*, Turkish Objs. at 7 (claiming that the Settlement Notice states Co-Lead Counsel will seek "1.7 million" in expenses and PSLRA awards, when it actually states Co-Lead Counsel will seek up to $17.5 million in expenses, including any PSLRA awards). As explained below, the form objection that the Turkish Objectors rehash in this Action should be rejected.

Notwithstanding the exceptional quality of the Settlement, the Turkish Objectors claim that the Settlement does not "adequately compensate class members for the losses they have suffered." Turkish Objs. at pp. 2-3. As purported support for their argument, the Turkish Objectors contend that they lost $7.00 per share, whereas the Settlement Notice states Class Members will receive an estimated $0.43 per share. Turkish Objs. at 2. This argument fails for multiple reasons.

First, as set forth in the Joint Declaration, the Settlement is more than adequate. The Settlement, if approved, will be the largest securities class action settlement ever resolving a Section 14(a) claim, and the sixth largest securities class action settlement in history. *See* Joint Declaration at ¶ 6. Moreover, in light of the significant risks to establishing liability and damages, Lead Plaintiffs faced the realistic possibility that, even if they prevailed on many of their arguments at trial and on appeal, they might not obtain a judgment larger than the Settlement Amount, or they might obtain a lesser amount. *See* Joint Decl. ¶¶ 6, 124-150. Second, even assuming that the Turkish Objectors actually lost $7 per share on their transactions in BoA securities (which they have not established), that fact is irrelevant. The claimed $7 per share loss figure has no connection to

---

2011), Dkt. No. 464 (Ex. 30); *In re L.G. Philips LCD Co., Ltd. Sec. Litig.*, Civil Action No. 1:07-cv-00909-RJS (S.D.N.Y. Mar. 3, 2011), Dkt. No. 76 (Ex. 31); *In re Micron Tech, Inc. Sec Litig.*, Master File No. 1:06-cv-00085-S-WFD (D. Id. Jan. 19, 2011), Dkt. No. 173 (Ex. 32), *aff'd*, 484 F. App'x 138 (9th Cir. 2012); *In re Mercury Interactive Corp. Sec. Litig.*, No. 5:05-CV-3395-JF(PVT) (N.D. Cal. Jan. 13, 2011), Dkt. No. 401 (Ex. 33); *Brody v. Merck & Co.*, No. 12-cv-4774 (D.N.J. Jan. 31, 2013), Dkt. No. 27 (Ex. 34); *Alin v. Honda Motor Co.*, No. 08-cv-4825 (D.N.J. Feb. 27, 2012), Dkt. No. 147 (Ex. 35); *In re Ins. Brokerage Antitrust Litig.*, No. 04-cv-5184 (D.N.J. Aug. 30, 2011) (Ex. 36); *In re Resort Condos. Int'l, LLC*, No. 06-cv-1222 (D.N.J. Nov. 20, 2009), Dkt. No. 453 (Ex. 37).

the potentially recoverable damages in this case and, even if that figure were related to the potentially recoverable damages here (which it is not), the Turkish Objectors have not explained how it would render the Settlement inadequate given the specific risks that Lead Plaintiffs faced.

The Turkish Objectors also assert that "there is little or no evidence provided to class members and the court to determine that the Settlement is reasonable," but they do not explain what evidence is supposedly missing, or what evidence would be sufficient in their view. Turkish Objs. at 3. Contrary to this contention, Lead Plaintiffs and Co-Lead Counsel have filed extensive submissions demonstrating the adequacy of the Settlement, including a detailed memorandum in support of final approval of the Settlement and an 81-page joint declaration from Co-Lead Counsel which set forth, among other things, the history of the litigation, the recovery obtained for the Class, the specific risks of further litigation and a trial of this Action, and the extensive efforts undertaken by Co-Lead Counsel to obtain such a result. All of these documents were promptly posted on the website for the Action, www.boasecuritieslitigation.com, for review by Class Members and other interested parties. These submissions provide the Court and Class Members with more than sufficient evidence to assess the Settlement and, indeed, it is standard practice for Courts to consider settlements in securities class actions based on precisely these types of submissions.

The Turkish Objectors also raise several arguments in which they contend that the proposed Plan of Allocation is "arbitrary." Each of these arguments relates to the provisions for re-distribution of the settlement proceeds remaining following the initial distribution to the Class. These objections are baseless and should be swiftly rejected.

The Turkish Objectors first assert that the Plan of Allocation is arbitrary because "class counsel and [the] settlement administrator have … the discretion to decide whether to make any additional re-distributions of the funds remaining after all claims are paid," but "there are no guidelines to class counsel making this decision and the decision will be made without the court or

the class member's involvement." Turkish Objs. at 3. However, the Settlement Notice states that any funds remaining after the initial distribution are to be <u>automatically</u> redistributed by Co-Lead Counsel to all Class Members who have cashed their prior distribution and would receive at least $20 from the redistribution. *See* Settlement Notice at ¶ 94. Thereafter, redistributions will continue to be made to Class Members who have cashed their prior distributions and would receive at least $20 so long as "Co-Lead Counsel, in consultation with GCG, determine that additional re-distributions, after the deduction of any additional fees and expenses that would be incurred with respect to such re-distributions, would be cost-effective." *Id*. The fact that the Plan of Allocation allows Co-Lead Counsel and GCG to determine whether an additional redistribution is "cost-effective," *i.e.*, whether the remaining Settlement funds are sufficient to make redistributions to Authorized Claimants who satisfy the above requirements after the costs and expenses of redistribution have been deducted, does not vest them with "discretion" over redistributions or render the Plan of Allocation "arbitrary." It merely assures that any additional redistribution will be economically feasible.

The Turkish Objectors also contend that the $20 minimum redistribution amount itself is "arbitrary."[12] Turkish Objs. at 4. However, it is standard practice in securities class actions to employ minimum distribution amounts when allocating settlement proceeds, and courts in this District regularly approve minimum distribution amounts. *See, e.g.*, *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 4526593, at *12 (S.D.N.Y Dec. 20, 2007) (approving a $50 minimum distribution amount and stating that "courts have approved minimum payouts in class action settlements in order to foster the efficient administration of the

---

[12]     As set forth in the Stipulation and Settlement Notice, the $20 minimum redistribution amount is consistent with the $20 minimum distribution amount Lead Plaintiffs proposed for the initial distribution. *See* Settlement Notice at ¶ 93 ("The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment is $20.00 or greater.").

settlement"); 2 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS § 6:22 (6th ed. Westlaw 2009) ("Courts have recognized that minimum payment thresholds for payable claims benefit the class as a whole because they protect the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs.").

The Turkish Objectors next claim that the Plan of Allocation and the Settlement Notice are defective because they do not identify the *cy pres* recipients that may receive any remaining Settlement funds after redistributions are no longer cost-effective.  Turkish Objs. at 5.  First, there may well be no need for any *cy pres* distribution to be made in this case.  Moreover, even if one ultimately is made, there is no requirement that the plan of allocation or settlement notice identify potential *cy pres* recipients.[13]  Indeed, it is typical in securities class actions for lead counsel to propose *cy pres* recipients for the court's approval when they move for *a cy pres* distribution of the settlement proceeds.  As set forth in the Settlement Notice, Co-Lead Counsel will adhere to that accepted practice in this Action.   *See* Settlement Notice ¶ 94 (*cy pres* recipients will "be recommended by Co-Lead Counsel and approved by the Court").

The Turkish Objectors next object to Co-Lead Counsel's fee request, claiming that the lodestar is "unreasonably high" – without stating why that is purportedly the case or what a reasonable lodestar for this Action would be.  Turkish Objs. at 6.  They are wrong.  As set forth in the Joint Declaration, Co-Lead Counsel have vigorously prosecuted this Action for almost four years, litigating the case until it was trial-ready and settling it within weeks of the Court's trial date

---

[13]      In support of their assertion, the Turkish Objectors incorrectly state that the court in *In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855 (RMB), 2010 WL 3431152 (S.D.N.Y. Aug. 20, 2010) ("*Nortel*"), "directed class counsel to provide the names of proposed charitable organizations to receive the benefit of the residual payments, before the settlement could be approved."  Turkish Objs. at 5.  To the contrary, the settlement in *Nortel* was approved in January 2007, three years prior to the opinion cited in the Turkish Objections.  The August 2010 *Nortel* opinion was issued in response to a motion for additional legal and administrative fees and following several distributions to the class.  The plan of allocation approved by the Court in *Nortel*, like in this Action, did <u>not</u> name specific *cy pres* recipients and provided that settlement proceeds should "be contributed proportionally to United States and Canadian non-sectarian, not-for profit organizations designated by plaintiffs' counsel ... after notice to the [US and Canadian] Courts and subject to the direction, if any, by the Courts."  *Nortel*, 2010 WL 3431152, at *7 (alteration in original).

after extensive mediation.  *See* Joint Decl. at ¶¶ 7-123.  Further, Co-Lead Counsel prosecuted this Action against numerous highly skilled defense counsel from several of the leading securities class action defense firms in the country, who contested an array of issues concerning both liability and damages at every stage of the Action.  Given the extensive litigation efforts that were necessary to achieve the Settlement, Co-Lead Counsel's lodestar is appropriate.[14]  *See In re Bear Stearns Cos., Sec., Derivative, & ERISA Litig.*, 08 MDL No. 1963, 2012 WL 5465381, at *11 (S.D.N.Y. Nov. 9, 2012) (overruling objection that proposed attorneys' fees are "excessive" for being "conclusory and bereft of factual or legal support"); *Marsh & McLennan Cos.*, 2009 WL 5178546, at *22 (rejecting broad, unsupported objections because "[they] are of little aid to the Court); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 168 (S.D.N.Y. 2007) (same).[15]

Finally, the Turkish Objectors contend that the Settlement Notice is defective because it does not specifically state that the Lead Plaintiffs would seek reimbursement of $453,003.04 in costs and expenses.  As explained above at page 8, this argument is without merit.

### D.   Scott Boatwright Objection

On January 22, 2013, almost one month before Co-Lead Counsel moved for final approval of the Settlement and for an award of attorneys' fees, Scott Boatwright filed a general objection to the fees sought by Co-Lead Counsel. Mr. Boatwright's objection is that the fee request is not "reasonable compensation for the work of Co-Lead Counsel in this case."  Boatwright Obj. (Ex. 5)

---

[14]     While the Turkish Objectors also contend that there is "no justification for using a 1.8 multiplier," courts in this circuit routinely award multipliers of between 3 and 4.5 in securities class actions with significant contingency risks, as noted above.

[15]     The Turkish Objectors state that the Court must conduct a detailed analysis of counsel's billing to determine a reasonable lodestar calculation.  Turkish Objs. at 7.  However, as noted above, the lodestar is amply supported by Co-Lead Counsel's vigorous prosecution of this case.  Further, as demonstrated in Co-Lead Counsel's opening papers, courts in the Second Circuit have repeatedly recognized the benefits of the percentage method in common fund cases, and have noted the "trend in this Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).  Consistent with this authority, the fee agreement between Co-Lead Counsel and Lead Plaintiffs utilized a percentage method to calculate the fee.  *See* Joint Decl. at ¶¶ 180-81.  Moreover, courts in this Circuit typically award attorneys' fees without undertaking a review of detailed time records.  *See, e.g., Goldberger*, 209 F.3d at 48-49 (line-item review is "an inevitable waste of judicial resources").

at 1.  Mr. Boatwright, however, acknowledges that his knowledge of the litigation is "limited to press reports and the Notice of Proposed Settlement and Plan of Allocation" and that he does not have the necessary information to assess the amount of fees sought by Co-Lead Counsel, such as "information about time expended by counsel."  *Id.*

Pursuant to the Court's Preliminary Approval Order, on February 19, 2013, Co–Lead Counsel filed their settlement approval and fee motions and supporting materials, which were made available to Class Members on the public docket and on the case website www.boasecuritieslitigation.com.  Co-Lead Counsel also served these motions and supporting materials on Mr. Boatwright.  *See* Dkt. No. 830.  Class Members, including Mr. Boatwright, had two weeks to examine the motions, and Mr. Boatwright has not made any further submissions in connection with his objection.  Co-Lead Counsel's submissions set forth ample support for the requested fee, including a detailed breakdown of fees by firm and "time expended by counsel."  In addition, as noted above, Co-Lead Counsel have demonstrated that a fee request of 6.56% is appropriate given the circumstances of this case and the applicable law.  Accordingly, the Court should overrule Mr. Boatwright's objection to the requested attorneys' fee.[16]

### E.      Dennis Breuel's Objection Should Be Overruled

Dennis Breuel's objection states that "the settlement should require" a new vote on the Merger, and "[i]f the vote decouples the merger, the management should reverse the integration."  Breuel Obj. (Ex. 6) at 1.  This objection should be overruled.  What Mr. Breuel seeks is arguably impossible, and the fact that the Settlement does not require a new merger vote does not render it

---

[16]     Mr. Boatwright also asserts that the Settlement Notice was defective because it did not state that Co-Lead Counsel were seeking a fee of approximately $159 million.  However, the Settlement Notice clearly stated that Co-Lead Counsel will seek fees "in the amount of 6.56% of the Settlement Fund."  Settlement Notice ¶ 93.  Nothing more was required.  Finally, Mr. Boatwright contends that Class Members should not be bound by the fee agreements between Co-Lead Counsel and the Lead Plaintiffs.  Class Members are not bound by these fee agreements.  The Court must approve any fee, and Class Members are free to object.  However, the fact that the requested fee is authorized by the retainer agreements between Co-Lead Counsel and Lead Plaintiffs, which are all sophisticated institutions, is an important factor the Court may consider in determining the reasonableness of the fee.

inadequate.  *See, e.g.*, *McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1096 (9th Cir. 2003) ("It is nearly impossible to imagine that the Merger Agreement could be rescinded at this late stage, four years after it was signed, and after thousands of … shareholders have traded their stock in various ways; unscrambling this particular egg is virtually impossible."). Further, Mr. Breuel has not provided documentation demonstrating his membership in the Class.

### F.   Phil Nothstein's Objection Should Be Overruled

Phil Nothstein's objection states that the fee request is supposedly "high," the Settlement Amount is "ridiculous" and the "U.S. government … should also repay all shareholders."  Nothstein Obj. (Ex. 7) at 1.  This objection should be overruled.  As explained above, the fee request is fair and reasonable, and the Settlement is clearly adequate.  The fact that the U.S. Government is not contributing to the Settlement does not render it inadequate.  Finally, Mr. Nothstein has not provided documentation demonstrating his membership in the Class.[17]

### G.   The Objection of AMP Capital Limited, Colonial First State Investments Ltd, and H.E.S.T. Australia Ltd Is Without Merit

At the time the Parties informed the Court of the proposed Settlement, the Court requested that the Parties address in their preliminary approval papers whether, given that Class Members had already received notice of this class action and an opportunity to opt out of the Class, a second opportunity to opt out should be provided at the settlement approval stage.  As Lead Plaintiffs explained in their preliminary approval brief, the Second Circuit has held that the decision whether to grant a second opt-out period is "confided to the [district] court's discretion," and "the court is under no obligation to do so."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) (affirming decision to not provide a second opt-out period) (internal quotation marks omitted); *see*

---

[17]      As noted in Lead Plaintiffs' opening brief, Co-Lead Counsel are aware of another potential objection which was served on defense counsel by Mr. Robert Shattuck in a separate matter.  *See* Dkt. No. 826 at 19-20 n.14.  However, this objection was never filed in this Action or served on Co-Lead Counsel in accordance with the Preliminary Approval Order.  Mr. Shattuck admits that he is not a Class Member in this Action and thus does not have standing to object (*see* Ex. 9. at 1), and his objection provides no reason to reject the Settlement.

*also* Prelim. App. Br. (Dkt. No. 768) at pages 15-21.  Indeed, the Second Circuit has specifically

held that it is unnecessary to provide a second opt-out period where, as here, the class has received

"notice of the action, the opportunity to opt out [following class certification], notice of the

proposed settlement, and the opportunity to object." *Wal-Mart*, 396 F.3d at 114.[18]

Lead Plaintiffs further explained that a second opt-out period was particularly unwarranted

here because: (i) following class certification, Lead Plaintiffs conducted an extensive notice

program that clearly satisfied the requirements of Rule 23 and the Due Process Clause, and

provided Class Members with full information concerning their opt-out rights and an ample

opportunity to exercise those rights; (ii) the Class Notice fully informed potential Class Members

that it was within the Court's sole discretion as to whether to allow a subsequent opt-out

opportunity; (iii) in response to that notice program, 864 requests for exclusion from the Class were

received from potential Class Members, including numerous institutions, demonstrating that Class

Members had received a full opportunity to make an informed decision as to whether to opt-out;

and (iv) the exceptional quality of the Settlement provided a clear benefit to the Class, negating any

possible prejudice from not allowing a second opt-out opportunity.[19]

Based on the Court's thorough consideration of the authority and facts summarized above,

on December 4, 2012, the Court entered its Preliminary Approval Order, in which it declined to

allow a second opportunity for Class Members to request exclusion from the Class.  In particular,

---

[18]     Thus, courts in this Circuit have repeatedly declined to provide second opt-out periods in complex securities class actions when notice has previously been provided to the class.  *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 342 (S.D.N.Y. 2005) (Cote, J.); *In re Lloyd's Am. Trust Fund Litig.*, No. 96CV1262, 2002 WL 31663577, at *12 (S.D.N.Y. Nov. 26, 2002) (Sweet, J.); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 345 (E.D.N.Y. 2010) (Weinstein, J.).

[19]     Further demonstrating that the Settlement is an outstanding result, out of the 864 requests for exclusion received during the opt-out period, at least 45 have opted back into the Class.  Fifteen have been rescinded by requests to "opt-in" pursuant to the terms of the Settlement Notice.  Additionally, persons and entities who had requested exclusion filed Proof of Claim Forms by the "opt-in" deadline.  Co-Lead Counsel have confirmed, to date, that at least 30 of these persons or entities wish their Proof of Claim Form to be deemed an "opt-in" request and they are being so treated.

the Court held as follows:

> In light of the extensive notice program undertaken in connection with class certification and the ample opportunity provided to Class Members to request exclusion from the Class at that time, the Court is exercising its discretion in accordance with Second Circuit precedent (*see, e.g.*, *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) and *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114-15 (2d Cir. 2005)) to preclude Class Members from having a second opportunity to exclude themselves from the Class in connection with the Settlement proceedings.

Preliminary Approval Order at ¶ 12.

Notwithstanding the legal and factual basis supporting the Court's decision, three Australian-based investment managers – AMP Capital Investors Limited, Colonial First State Investments Ltd, and H.E.S.T. Australia Ltd (collectively, the "Investment Managers") – contend that the Court essentially abused its discretion in declining to provide a second opt-out opportunity and that, as a result, the Settlement is "unfair, unreasonable and inadequate, and should be rejected." *See* Inv. Mgr. Br. (Ex. 8) at 1-22.  As set forth below, the Investment Managers' arguments are meritless.[20]

### 1.    The Pending Appeal In *International Fund Management* Does Not Require The Court To Defer Consideration Of The Settlement Or Provide A Second Opt-Out Period

The Investment Managers do not dispute that they received the Class Notice in timely fashion, and did not exercise their right to opt out of the Class at that time.  Nor did they raise any issues at that time regarding any supposed infirmities with the Class Notice.   Now, however, they contend that the Court purportedly abused its discretion by declining to provide a second opt-out

---

[20]    It is unclear whether the Investment Managers have standing to object to the Settlement.  Specifically, they have not demonstrated that they transacted in BoA stock for their own accounts (in which case they would have standing), rather than for the accounts of the third-party clients whose funds they manage (in which case they would lack standing absent specific assignments of claim and powers of attorney).  *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107-10 (2d Cir. 2008) (holding that investment managers lack standing to assert securities law claims on behalf of their clients); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 243-44 (2d Cir. 2007) (holding that administrator of employee benefit plans lacked standing to object because only the plans were class members).  Even assuming that the Investment Managers have standing to object, which they have not shown, their objection should be rejected for the reasons set forth herein.

period "without accounting for the significant implications of the appeal currently before the Court of Appeals for the Second Circuit in … *International Fund Management, S.A. v. Citigroup, Inc.*, No. 12-1903-cv" ("*IFM*").  Inv. Mgr. Br. at 1; *id.* at 1-17.  Specifically, they argue that, at the time the Class was permitted to opt out after the Class Notice was disseminated in March 2012, that opt-out right was meaningless because the statute of repose had already expired on Class Members' Section 14(a) claims under this Court's decision in *Footbridge Limited Trust v. Countrywide Financial Corporation*, 770 F. Supp. 2d 618, 624-27 (S.D.N.Y. 2011), which held that *American Pipe* tolling does not apply to the Securities Act's statute of repose.  Thus, they contend, any Class Members who opted out "would have forfeited their Section 14(a) claims [if] they excluded themselves from the Class" at that time.  *See* Inv. Mgr. Br. at 2.  The Investment Managers further contend that, on May 9, 2012, two days after the expiration of the opt-out period, the Second Circuit accepted an interlocutory appeal in *IFM*, a case which raises the same issue decided in *Footbridge*, and given this appeal: (i) the Court must defer approval of the Settlement until the Second Circuit rules on that issue; and (ii) if the Second Circuit holds that *American Pipe* does toll the statute of repose, the Court must then "afford current Class members a fresh opportunity to exclude themselves from the Class" and allow them to assert their Section 14(a) claims individually.  Inv. Mgr. Br. at 3.[21]  Notably, out of millions of potential Class Members, the Investment Managers are the only ones to object to the Settlement on this basis, and they fail to cite a single case holding that such circumstances require a court to defer consideration of a class action settlement or provide a second opt-out period.  As explained below, the Investment Managers' arguments are without merit.

First, the Investment Managers' argument that they and other Class Members have been denied the opportunity to bring individual Section 14(a) claims is wrong.  Indeed, at any time

---

[21]	Taken to its logical endpoint, in the event that the unsuccessful party were to seek a writ of certiorari from the U.S. Supreme Court and that writ were to be granted, the Investment Managers would have this Court continue to wait for the Supreme Court's decision before ruling on the fairness of the Settlement.

during the pendency of this litigation, these investors had ample opportunity to bring an individual case alleging violations of Section 14(a).  In fact, that is precisely what dozens of institutional and individual investors did in this case.  *See, e.g.*, Dkt. No. 48 in 10-Civ-2284, at ¶¶ 11-49 (listing 39 plaintiffs in the Consolidated Individual Actions).  As the Court is aware, beginning in 2009, numerous institutions brought individual cases alleging Section 14(a) claims, and Lead Plaintiffs assisted in the prosecution of these claims by coordinating discovery with these individual plaintiffs.  *See* Dkt. No. 264; Dkt. No. 290 at 2, n.1 & ¶¶ 8, 11, 13-14.  Moreover, if the Investment Managers did not want to file an individual case but still wanted to preserve their claims, they could have sought a tolling agreement from Defendants for that purpose.  Instead, they did nothing.

The mere fact that the statute of repose arguably ran on their Section 14(a) claims in November 2011 – almost three years after this case commenced – does not change the fact that the Investment Managers and all Class Members had ample opportunity to assert their Section 14(a) claims individually.[22]  Even assuming that the statute of repose expired then, the Investment Managers were still free to opt out when they received the Class Notice, and bring any causes of action that they wanted, including claims under Sections 10(b) and 14(a), state law, and potentially Australian law.[23]  If the Court eventually held that their Section 14(a) claims were time-barred, the Investment Managers could then have pursued their remaining claims, and appealed the dismissal of the Section 14(a) claims on statute of repose grounds.  In sum, nothing prevented the Investment Managers from asserting individual Section 14(a) claims at any time before the opt-out period expired on May 7, 2012.

Notably, this is not a case where the Investment Managers can, or do, claim that they were

---

[22]    The statute of repose governing Section 14(a) claims begins to run when the "last proxy statement signed by … Defendants was issued," which in this case was November 3, 2008, and runs for three years.  *See Take-Two Interactive Software, Inc. v. Brant*, No. 06 Civ. 05279 (LTS), 2010 WL 1257351, at *7 (S.D.N.Y. Mar. 31, 2010).

[23]    Indeed, numerous institutions did exactly that.  During the opt-out period, more than 30 institutions opted out of the Class.

22

unaware of this Action or its underlying facts.  From its inception, this case and its underlying facts have been public knowledge and the subject of widespread media reports.  In September 2009 and October 2010, Lead Plaintiffs publicly filed two complaints setting forth detailed evidence supporting their claims, including internal documents and sworn testimony from senior BoA executives and senior officials from the Treasury Department and the Federal Reserve.  *See* Dkt. Nos. 29 and 363.  In August 2010, this Court issued an extensive Opinion sustaining Lead Plaintiffs' Section 14(a) claims, thus holding that the facts alleged stated a Section 14(a) claim on behalf of the Class.  *See In re Bank of America Corp. Sec., Deriv. & ERISA Litig.*, 757 F. Supp. 2d 260, 295-307 (S.D.N.Y. 2010).  The Court's decision was covered by the mainstream press.  *See, e.g.*, Chad Bray, *Judge Rules BofA Suits Can Proceed*, Wall St. J., Aug. 30, 2010, at C3 (Ex. 38).

Similarly, in August of 2009, the SEC brought a highly publicized case against BoA for violations of Section 14(a), which it ultimately settled in February 2010.  *See, e.g.*, Louise Story, *Bank's Deal With S.E.C. Is Approved*, N.Y. Times, Feb. 23, 2010, at B1 (Ex. 39).  Further, in the summer and fall of 2009, Congress held a series of public hearings concerning the Merger that were widely covered by the media.  *See, e.g.*, Michael R. Crittenden & Dan Fitzpatrick, *Lewis Takes Heat but Defends Merrill Deal – Lawmakers Question BofA's CEO on Role of Federal Officials*, Wall St. J., June 12, 2009 at C1 (Ex. 40); Paul Davidson, *Paulson endures tough day on Hill,* USA Today, July 17, 2009 at 1B (Ex. 41).  At these hearings, former senior BoA officers and senior officials from the U.S. Government – including former CEO Ken Lewis, former General Counsel Timothy Mayopoulos, former Treasury Secretary Hank Paulson and Federal Reserve Chairman Ben Bernanke – testified in detail about many of the facts on which this Action was based.  In connection with these hearings, Congress released hundreds of internal documents from BoA, the Treasury Department and the Federal Reserve that contained facts germane to the Section 14(a) claims.  In addition, in February 2010, the New York Attorney General brought a highly publicized

action against BoA and certain other Defendants for false and misleading statements and omissions in the Proxy. *See, e.g.*, Dan Fitzpatrick & Kara Scannell, *Ex-BofA Chief Sued for Fraud*, WALL ST. J., Feb. 5, 2010 at A1 (Ex. 42). In short, the Investment Managers were obviously aware long before the opt-out period expired that they could assert claims arising under Section 14(a) in a direct action if they wanted to do so.

Second, the Investment Managers contend that they have the right to opt-out when they "know with certainty [whether] they can opt out of the Class without running the risk of forfeiting their Section 14(a) claims." Inv. Mgr. Br. at 17; *see id.* at 3, 14-17. Again, their argument is incorrect. As the Supreme Court has long held, the due process right to opt out exists only to guarantee that class members can choose whether to be bound by the judgment in the class action. *See Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 803-04, 810-13 (1985) (holding that due process requires only "that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt-out' or 'request for exclusion'" so that he is not "bound by the judgment"); *see also Peters v. Nat'l R.R. Pass. Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("due process . . . in the context of the rule 23(b)(3) class action guarantees the opportunity to be excluded from the class and not to be bound by any subsequent judgment"); *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968) ("the judgment in a class action [is] binding upon all members of the class … unless a member affirmatively 'opts out'"). Neither Due Process nor Rule 23 requires that class members who choose to opt out must be permitted to bring any particular individual claim – let alone that class members must be permitted to bring a meritorious individual claim. As the Court is aware, individual claims brought by opt-out plaintiffs are properly subject to dismissal on any number of grounds, including statutes of repose and limitations.[24] That is the risk that any class

---

[24]     *See, e.g.*, *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 679 (S.D.N.Y. 2007) (dismissing Section 14(a) claims asserted by opt-out plaintiffs on loss causation grounds); *In re Linerboard Antitrust Litig.*, 443 F. Supp. 2d 703, 716 (E.D. Pa. 2006) (granting summary judgment dismissing claims of opt-out plaintiff for lack of

member assumes when it opts out of a class action and decides to bring an individual claim.

Indeed, as the Supreme Court has recognized, the reason that class members are required to decide whether to opt out at the time of class certification is to prevent them from deferring their opt-out decision until they know whether disputed issues will be resolved in their favor, a circumstance known as "one way intervention." *See, e.g.*, *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974) ("This situation – the potential for so-called 'one-way intervention' – aroused considerable criticism upon the ground that it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one.  The 1966 amendments were designed, in part, specifically to mend this perceived defect …."); *In re Phillip Morris Inc.*, 212 F.3d 132, 135 (2d Cir. 2000) (Rule 23 does not permit "a risk-free intervention decision by thousands of putative plaintiffs"); *In re Vivendi Univ., S.A. Sec. Litig.*, 284 F.R.D. 144, 149 (S.D.N.Y. 2012) (Rule 23's provisions eliminate "one-way intervention"); Committee Notes to Rule 23(c)(3) (1966 Amendments) ("one way intervention is excluded").  Thus, contrary to what the Investment Managers contend, they do not have a due process right to wait until after the Second Circuit resolves the *American Pipe* tolling issue before deciding whether to opt out.

<u>Third</u>, the Investment Managers contend that the *IFM* appeal is supposedly a "significant development" that occurred after the opt-out period expired.  Inv. Mgr. Br. at 3-4, 6-7, 5-17.  Again, they are wrong.  The substantial difference of opinion among courts on the issue of whether *American Pipe* tolling applies to statutes of repose is not a "new" development.  As this Court recognized in its March 2011 *Footbridge* decision, federal courts have long been divided over the question of whether *American Pipe* tolling is legal or equitable in nature, and thus, whether it

---

standing); *Bozeman v. Lucent Techs. Inc.*, 378 F. Supp. 2d 1348, 1351-53 (M.D. Ala. 2005) (dismissing claims of opt-out plaintiffs on statute of limitations grounds).

applied to statutes of repose in class actions.  770 F. Supp. 2d at 624-27.  In addition, *IFM* was <u>not</u> the first case on this issue to be appealed to the Second Circuit.  Indeed, only two days after this Court issued its decision in *Footbridge*, the *Footbridge* plaintiffs appealed that decision.[25]  *See* Ex. 43.  Then, in July 2011, plaintiffs in another securities action that had been dismissed on statute of repose grounds by Judge Kaplan – *In re IndyMac Mortgage-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 642-43 (S.D.N.Y. 2011) – filed their own notice of appeal.  *See* Ex. 44.  In fact, when the Second Circuit subsequently accepted the *IFM* appeal in May 2012, the court ordered that it be heard in tandem with the *IndyMac* appeal.  *See* Ex. 45.[26]  In sum, long before the statute of repose on the Section 14(a) claims arguably expired, it was public knowledge that federal courts were split over the *American Pipe* tolling issue, and that appeals were pending before the Second Circuit on this exact issue.

In sum, the pending *IFM* appeal provides no basis for deferring consideration of the Settlement or permitting a second opt-out period.

> **2.      Neither The Filing Of Lead Plaintiffs' Partial Summary Judgment Motion Nor The Announcement Of The Settlement Require A Second Opt-Out Period**

The Investment Managers also incorrectly argue that two other developments that occurred after the Class Notice was issued necessitate a second opt-out period.  First, they assert that the filing of Lead Plaintiffs' partial summary judgment motion requires a second opt-out period because it "attaches and refers to numerous documents which now conclusively demonstrate Defendants' scienter, information that was not available to the Class at the time of the March 21, 2012 Notice."

---

[25]      In October 2011, the parties voluntarily dismissed the *Footbridge* appeal.

[26]      In addition, in May 2011, plaintiffs in another securities action that had been dismissed on statute of repose grounds by Judge Kaplan (*In re Lehman Bros. Securities & ERISA Litig.*, 800 F. Supp. 2d 277 (S.D.N.Y. 2011)) filed a notice of appeal.  *See* Ex. 46.  That appeal was stayed in December 2011 after the parties reached a settlement.

Inv. Mgr. Br. at 18-19; *see id.* at 3-4, 7-9.[27]   This argument is meritless.   The fact that Lead Plaintiffs filed a partial summary judgment motion – which Defendants opposed and the Court had not yet ruled on – has no bearing on whether a second opt-out period is required.   If the Investment Managers were correct, then a second opt-out period would be required whenever a plaintiff moved for summary judgment or obtained a favorable ruling.   Moreover, to the extent that the Investment Managers are suggesting that a second opt-out opportunity is required so that Class Members can decide whether to pursue individual actions based on the compelling evidence adduced by Lead Plaintiffs during fact and expert discovery, the law is explicitly to the contrary.   As noted above, Rule 23 requires that an opt-out decision be made at the class certification stage precisely because class members do <u>not</u> have the right to defer their opt-out decision until they know how disputed issues will be (or are likely to be) resolved.   *See Am. Pipe*, 414 U.S. at 546.

Second, the Investment Managers argue that "the announcement of the $2.43 billion Settlement itself constitutes new information" that requires a second opt-out period.   Inv. Mgr. Br. at 20-22; *see id.* at 3-4.   This argument is wrong as a matter of law.   The Second Circuit has specifically held that neither the Due Process Clause nor Rule 23 requires class members to be given "the opportunity to opt out after the settlement notice [is] issued."   *Wal-Mart*, 396 F.3d at 114.   As Judge Cote noted in rejecting this exact argument in *WorldCom*, which like this case involved a multi-billion dollar settlement, "the Second Circuit has <u>explicitly rejected</u> the contention that Class Members must be given a second opportunity to opt out after the terms of a settlement are announced."   *WorldCom*, 388 F. Supp. 2d at 342 (citing *Wal-Mart*, 396 F.3d at 114) (emphasis added).   Moreover, the Investment Managers' assertion that some Class Members "may now assess the $2.43 billion settlement [as] inadequate given Defendants' apparent clear-cut liability" is

---

[27]     As this Court is aware, scienter is not an element of a Section 14(a) claim.

baseless.   As set forth in detail in paragraphs 5-6 and 124-150 of the Joint Declaration, the Settlement easily satisfies the adequacy requirement, and Lead Plaintiffs faced meaningful risks to establishing liability and damages.

In sum, the Court did not abuse its discretion in not providing a second opt-out period.

### 3.        The Class Notice Satisfies Rule 23 And Due Process

The Investment Managers assert that the Class Notice was purportedly defective because it "did not explain to Class members the risks associated with *Footbridge*," and thus, supposedly caused "many" of those who requested exclusion to "unwittingly forfeit[] their Section 14(a) claims."  Inv. Mgr. Br. at 3, 7, 14.  Tellingly, <u>none</u> of the other millions of Class Members who received the Class Notice – including the 864 investors who supposedly "unwittingly forfeited" their Section 14(a) claims – claim that the Class Notice was defective.  As demonstrated by this dearth of objections, the Investment Managers' argument is incorrect.

Contrary to what they contend, it is well-established that a "[c]lass notice is not intended to serve as a complete source of information as to each and every alternative a class member may have in pursuing any potential claim."  *In re Brand Name Prescription Drugs Antitrust Litig.,* No. 94 C 897, 1996 WL 167347, at *4 (N.D. Ill. Apr. 4, 1996).  Indeed, the notice "need not include 'every material fact' or be 'overly detailed,'" and must contain only the "information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action."  *Wal-Mart*, 396 F.3d at 115.

To implement this requirement, Rule 23(c)(2) specifies that the following information must be "clearly and concisely state[d]" in the notice of pendency for classes certified under Rule 23(b)(3): "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues and defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests

exclusion; (vi) the time and manner for requesting exclusion; and (viii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  "Notice procedures ordered by a court in accordance with Rule 23" – such as the issuance of the Class Notice ordered by the Court here – "are presumptively valid."  *Power Travel Int'l, Inc. v. Am. Airlines, Inc.*, No. 1:02-CV-7434-RWS, 2004 WL 5299598, at *10 (S.D.N.Y. Nov. 4, 2004).

The Class Notice here contained all of the information required by Due Process and Rule 23. Specifically, it contained a clear description of the nature and status of the action from its inception through the Court's Order granting class certification.  *See* Notice of Pendency of Class Action (Dkt. No. 539-1) at ¶¶ 1-16.   It also set forth the class definition and described the Class's claims, the Court's decisions on the two rounds of motions to dismiss, and Defendants' denial of liability. *Id.* at ¶¶ 1, 3, 5-17.  In addition, the Class Notice clearly described the nature of a class action, Class Members' right to make an appearance, and their "right to decide whether to remain a member of the Class."  *Id.* at ¶¶ 17-19.  The Class Notice also explained in detail that Class Members who choose to remain a member of the Class "will be bound by all past, present and future orders and judgments in the Action, whether favorable or unfavorable," while those who opt out "will not be bound by any judgment in this Action."  *Id.* at ¶¶ 18(a)-(b).  Further, the Class Notice clearly described the time and procedures for requesting exclusion.  *Id.* at ¶¶ 20-22.

Significantly, although this information is not required by Rule 23(c)(2), the Class Notice also clearly stated that it was within the Court's discretion whether to grant a second opt-out period, thus informing Class Members that, even if the law were to change in a favorable way, there was no guarantee that they would be permitted to opt out again.  *See id.* at ¶ 18(a).  Based on its review of the Class Notice before it was issued, the Court found that it was adequate and directed that it be disseminated to Class Members.  In its March 1, 2012 Order Approving Notice and Summary Notice of Pendency of Class Action, the Court found that the Class Notice "clearly" set forth all the

information required by Rule 23(c)(2), met "the requirements of Rule 23 and due process, constitute[s] the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto."  Dkt. No. 531 at ¶ 2.  *See also In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *12 (notice satisfied due process where it summarized case and described whose rights would be affected).

The fact that the Class Notice did not describe the "risks" *Footbridge* potentially posed to Class Members' claims does not overcome the presumption of validity and render it inadequate. Neither the Due Process Clause nor Rule 23 required the Class Notice to set forth speculation concerning the potential "risk" or future impact of a court decision whose holding is currently under review and which may or may not survive appellate scrutiny.  Indeed, as noted above, the law is clear that a Class Notice need not state "each and every alternative a class member may have in pursuing any claim" or even set forth "every material fact" – let alone provide the sort of speculation that the Investment Managers contend should have been disclosed.  *Wal-Mart*, 396 F.3d at 115; *Brand Name Prescription Drugs Antitrust Litig.*, 1996 WL 167347, at *4.

For all the above reasons, the Investment Managers' objection should be rejected.

## III.   CONCLUSION

For the foregoing reasons, Co-Lead Counsel respectfully request that the Court overrule the objections received and: (1) approve the Settlement and Plan of Allocation; and (2) grant the request for attorneys' fees in the amount of $158,549,766.49 (plus interest), litigation expenses in the amount of $8,028,828.32, and PSLRA awards to the Lead Plaintiffs in the amount of $453,003.04.

Dated: March 29, 2013
    New York, New York

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

By: */s/ Steven B. Singer*
   Max W. Berger
   Steven B. Singer
   1285 Avenue of the Americas
   New York, NY  10019
   Tel:  (212) 554-1400
   Fax:  (212) 554-1444

   *Co-Lead Counsel*

**KAPLAN FOX & KILSHEIMER LLP**

By: */s/ Frederic S. Fox*
   Robert N. Kaplan
   Frederic S. Fox
   850 Third Avenue, 14th Floor
   New York, NY  10022
   Tel:  (212) 687-1980
   Fax:  (212) 687-7714

   *Co-Lead Counsel*

**KESSLER TOPAZ MELTZER & CHECK, LLP**

By: */s/ David Kessler*
   David Kessler
   Gregory M. Castaldo
   280 King of Prussia Road
   Radnor, PA 19087
   Tel:  (610) 667-7706
   Fax:  (610) 667-7056

   *Co-Lead Counsel*