USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-11-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE: BANK OF AMERICA CORP.
SECURITIES, DERIVATIVE, AND
EMPLOYEE RETIREMENT INCOME
SECURITY ACT (ERISA) LITIGATION
-----------------------------------------------------------x
THIS DOCUMENT RELATES TO:

CONSOLIDATED SECURITIES ACTION
-----------------------------------------------------------x

Master File No. 09 MD 2058 (PKC)

MEMORANDUM AND ORDER

CASTEL, District Judge:

On April 5, 2013, this Court presided over a hearing to consider approval of a settlement of the Consolidated Securities Class Action in exchange for the payment by defendants of $4,250,000,000, plus certain corporate governance reforms. After reviewing the adequacy of notice, the circumstances surrounding the negotiations, the relative difficulty of proving the claims and damages at trial, the extent to which the case had been litigated (61 depositions were conducted, more than 3.8 million documents were produced, and the case was close to trial), the reaction of class members (there were approximately 10 objections), and the other Grinnell factors, the Court approved the settlement as fair, reasonable and adequate to the members of the class. See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 117-19 (2d Cir. 2005) (citing City of Detroit v. Grinnell Corp., 495 F.2d 448, 454 (2d Cir. 1974)).

Separately, the Court also considered the fee application of Counsel to the Lead Plaintiffs, the law firms of Bernstein Litowitz Berger & Grossman LLP ("Bernstein Litowitz"), Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") and Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz"). After reviewing the factors set forth in Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000), the Court approved a fee award of $152,414,235.89 and expenses of $8,069,985.04 which amounted to 6.62% of the overall recovery to the class.

- 2 -

Counsel's fee award is a multiplier of 1.795 against their combined lodestar. Counsel to the

Lead Plaintiffs rendered services of great value to the class and, throughout this Court's time

presiding over the case (i.e., since April 2010), performed at a high level of professionalism.

Their fee request was reasonable in context.

The Court denied any fee award or reimbursement of expenses to the law firm of

Flanagan, Lieberman, Hoffman and Swaim (the "Flanagan Firm"), which did not function as

Lead Counsel. The Court set forth its reasons for the disallowance on the record at the hearing,

but now supplements it with this Memorandum and Order.

"[T]he court is to act 'as a fiduciary who must serve as a guardian of the rights of

absent class members.'" Goldberger, 209 F.3d at 52 (quoting City of Detroit v. Grinnell Corp.,

560 F.2d 1093, 1099 (2d Cir. 1977)). This is particularly true of protecting "class rights in

relation to settlement review . . . ." In re Agent Orange Product Liab. Litig., 818 F.3d 216, 221

(2d Cir. 1987). Close review of an attorneys' fees application is "an essential part of its role as

guardian of the interests of its class members . . . ." In re Herald, Primeo, and Thema Sec. Litig.,

2011 WL 4351492, at *6 (S.D.N.Y. Sept. 15, 2011) (Berman, J.) (quotation marks omitted).

The Private Securities Litigation Reform Act of 1995 provides that a court shall

appoint as Lead Plaintiff "the member or members of the purported plaintiff class that the court

determines to be most capable of adequately representing the interests of class members." 15

U.S.C. § 78u-4(a)(3)(B)(i). This case was originally assigned to then-District Judge Chin, who

summarized the standards for determining lead plaintiffs:

> Determination of the "most capable" class representative entails a
> two-step process. First, the PSLRA sets forth a rebuttable
> presumption that "the most adequate plaintiff" is "the person or
> group of persons" who or that (a) has either filed the complaint or
> made a motion for appointment as lead plaintiff, (b) has "the
> largest financial interest in the relief sought by the class," and (c)

"otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  In deciding which proposed lead plaintiff has "the largest financial interest in the relief sought by the class," courts consider four factors: (i) the gross number of shares purchased; (ii) the net number of shares purchased; (iii) the net funds spent; and (iv) the net loss.

In re Bank of Am. Corp. Sec., Derivative & ERISA Litig., 258 F.R.D. 260, 268 (S.D.N.Y. 2009) (quotation marks omitted).  Judge Chin carefully reviewed the competing motions for appointment as lead plaintiff, and named the State Teachers Retirement System of Ohio, the Ohio Public Employees Retirement System, the Teachers Retirement System of Texas, Stichting Pensioenfonds Zorg en Wilzijn, represented by PGGM Vermongensbeheer B.V., and Fjarde AP-Fonden as co-Lead Plaintiffs in this case. Id. at 268-71.

Judge Chin also approved Lead Plaintiffs' proposed selection of Bernstein Litowitz, Kaplan Fox and Kessler Topaz as co-Lead Counsel. The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv).  Judge Chin noted that "[a]ll three firms are highly experienced in prosecuting securities class actions.  Additionally, the firms indicate that they have implemented measures to limit legal fees and costs, including dividing labor among counsel for the sake of efficiency, requiring approval for significant expenses, and negotiating a competitive fee agreement with plaintiffs." In re Bank of Am., 258 F.R.D. at 271.

The appointment of Lead Counsel does not foreclose the possibility that there could be counsel for the class who make a valuable contribution that does not qualify as a "lead" role. See generally Victor v. Argent Classic Convertible Arbitrage Fund L.P., 623 F.3d 82, 86-90 (2d Cir. 2010) (discussing appropriateness of fee awards to non-lead counsel in a securities class action).  As discussed in Victor, non-lead counsel may "conduct significant factual

investigations, perform legal research on novel or innovative theories, and make strategic legal decisions affecting the content of the complaints and the ultimate course of the litigation." Id. at 87. Lead Counsel also may need a law firm to pursue discovery in a jurisdiction where it is not admitted. It could require a certain area of expertise, for example, in tax law.

In this case, no showing has been made that the Flanagan Firm rendered specific services in a particular jurisdiction or in an area of the law requiring a certain expertise that was not otherwise available through Lead Counsel. The Flanagan Firm filed no notice of appearance in this case. The Declaration of Dennis A. Lieberman in support of the fee award consists of generalized descriptions of "consulting," "reviewing," "assisting" and "participating" in different stages of litigation, with no examples or details. (Joint Dec. Ex. D.)

At the April 5 hearing, the Flanagan Firm acknowledged that their clients were the two Ohio-based Lead Plaintiffs: the State Teachers Retirement System of Ohio and the Ohio Public Employees Retirement System. Lead Counsel described the Flanagan Firm as a liaison to the two entities. (Apr. 5, 2013 Tr. at 47.) However, the claim that the Flanagan Firm acted in any significant capacity for these two entities is undercut by the submissions of those entities. William J. Neville, general counsel for the State Teachers Retirement System of Ohio, submitted a declaration in which he stated that he consulted on a host of issues with the law firms of Kaplan Fox and Bernstein Litowitz. (Neville Dec. ¶¶ 4-5.) Nowhere is there mention of services performed by the Flanagan Firm. Similarly, Julie E. Becker, general counsel of the Ohio Public Employees Retirement System, submitted a declaration that described consultations with Kaplan Fox and Bernstein Litowitz. (Becker Dec. ¶¶ 4-6.) Again, there is no mention of the Flanagan Firm.

The Flanagan Firm has explained that it was not directly retained by either of the Lead Plaintiffs in Ohio, but by the Ohio Attorney General, and that it interacted with the Ohio Attorney General, who by law renders advice to the two Ohio entities.  The point demonstrates how far afield the fees application has drifted.  Although the State Teachers Retirement System of Ohio and the Ohio Public Employees Retirement System recounted, respectively, the 275 and 251.5 hours that they and their personnel spent on gathering information for discovery purposes and analyzing the case and serving as Lead Plaintiffs and communicating with Lead Counsel (Neville Dec. ¶¶ 13-16; Becker Dec. ¶¶ 13-16), the Flanagan Firm merited no mention by these entities.  The Ohio-based Lead Plaintiffs seek no reimbursement for the Flanagan Firm's services.  They appear to have assembled the required discovery with no material help or input from the Flanagan Firm. This record does not establish that services rendered by the Flanagan Firm were for the benefit of the class.  See generally Victor, 623 F.3d at 87.

Where large sums of money change hands in the course of a class action settlement, it is important that a court exercise its authority to police and scrutinize fee applications to ensure that the members of the class are not charged for services of little or no worth.[1]  With the adoption of the PSLRA, the days are gone when a law firm may successfully apply to be compensated for nothing more than its efforts to monitor, review and render arm-chair advice without performing services of material benefit to the class.

---

[1] Kurt Vonnegut, Jr. portrays a fictional professor cynically advising on the ways of lawyers: "In every big transaction . . . there is a magic moment during which a man has surrendered his treasure, and during which the man who is due to receive it has not yet done so.  An alert lawyer will make that moment his own, possessing the treasure for a magic microsecond, taking a little of it, passing it on." Kurt Vonnegut, God Bless You, Mr. Rosewater, as quoted in Stephen Gillers, Regulation of Lawyers: Problems of Law and Ethics, at 459 (9th ed. 2012).

- 6 -

Because of the absence of a sufficient record in support of the fee application,

Lead Counsel's application is DENIED insofar as it includes an award to the Flanagan Firm.[2]

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       April 11, 2013

---

[2] As a precautionary measure, the Court required insertion of the following language into the April 8, 2013 Order awarding fees to Lead Counsel: "Co-Lead Counsel shall not share any portion of the fees and expenses awarded to them with any other law firm, or with any person not associated with Co-Lead Counsel's law firms, absent an order from the Court." (Docket # 862 ¶ 4.)