UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
IN RE: BANK OF AMERICA CORP.
SECURITIES, DERIVATIVE, AND
EMPLOYEE RETIREMENT INCOME                 Master File No. 09 MD 2058 (PKC)
SECURITY ACT (ERISA) LITIGATION
----------------------------------------------------------x
THIS DOCUMENT RELATES TO:

CONSOLIDATED SECURITIES ACTION
----------------------------------------------------------x

### FLANAGAN, LIEBERMAN, HOFFMAN & SWAIM'S CORRECTED[1] AND RENEWED POST-REMAND APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

Flanagan, Lieberman, Hoffman & Swaim ("the Flanagan Firm") files this Renewed Post-Remand Application for an Award of Attorneys' Fees and Litigation Expenses, and would show the Court as follows:

### I.

### INTRODUCTION

1.  On March 17, 2016, the Second Circuit Court of Appeals issued its decision in *Flanagan, Lieberman, Hoffman & Swaim v. Ohio Public Employees Retirement Sys., et al.*, 814 F.3d 652 (2nd Cir. 2016), vacating this Court's previous orders denying the Flanagan Firm's fee request and remanding the case for further proceedings. Thereafter, on May 6 this Court issued an order inviting the Flanagan Firm and other parties and interested class members to submit argument "on the issue of the 'more' that is required of the district court 'where, as here, no natural party may step forward seeking to rebut a presumption of correctness or argue against a fee allocation.'" (Dkt. No. 1014 at 1, quoting from *Flanagan, Lieberman, Hoffman & Swaim*,

---

[1] The Flanagan Firm is filing a corrected version of this motion because the previous filing had the incorrect document attached as Exhibit 1-A. This filing has attaches the correct Exhibit 1-A.

814 F.2d at 659-660). This Court also required the Flanagan Firm to submit sworn testimony with accompanying timesheets establishing the date, time, duration and nature of communications between the Flanagan Firm and (a) the State Teachers' Retirement System of Ohio and the Ohio Public Employees Retirement System; (b) the Office of the Attorney General of Ohio; and (c) Co-Lead Plaintiff's Counsel. (Dkt. No. 1014 at 1-2).

2.    The Flanagan Firm now submits this Renewed Post-Remand Application for Fees in order to present argument regarding how the Court should assess the presumption of correctness and evidence relating to the Flanagan Firm's time as requested in the Court's Order.

## II.

## WHAT "MORE" IS REQUIRED?

3.    In *Flanagan, Lieberman, Hoffman & Swaim*, the Second Circuit discussed the role of a district court in assessing whether the "presumption of correctness" applicable to the lead plaintiff's endorsement of a fee request from non-lead counsel has been rebutted. 814 F.2d at 659. The court noted that the district court must still act as guardian of the rights of absent class members and stated that fulfillment of that role "may require more where, as here, no natural party may step forward seeking to rebut a presumption of correctness or argue against a fee allocation." *Id.* at 659-660. Based on this language, this Court held that silence in the face of presumption was insufficient to enable a district court to acquit its guardian role and asked for briefing on what further action a court should take in assessing the presumption. (Dkt. No. 1014 at 1). The Flanagan Firm respectfully suggests that very little "more" is required in this case, and that an extensive *de novo* review of lead counsel's determination would denude the presumption of its intended effect.

4.     Under federal law, a presumption works to shift the burden of producing evidence to the party opposing the presumption. *See*, FED.R.EVID. 301 ("[t]he party against whom a presumption is directed has the burden of producing evidence to rebut the presumption"). *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993)(a presumption means "that a finding of the predicate fact . . . produces a required conclusion in the absence of an explanation").

5.     In this case, Co-Lead Counsel included the Flanagan Firm's fees in their motion for an award of attorneys' fees and reimbursement of litigation expenses. (Dkt. Nos. 829 at ¶¶189-190; 829-10). Similarly, each of the lead Plaintiffs endorsed Co-Lead Counsel's request for an award of attorneys' fees, which such request included the award of fees to the Flanagan Firm. (Dkt. Nos. 829-2 at ¶¶8-9, 16; 829-3 at ¶¶8-9, 16; 829-4 at ¶¶8-9, 15; 829-5 at ¶¶8-9, 14). Based on these endorsements, the Court should presume that the Flanagan Firm's application for attorneys' fees and litigation expenses is reasonable and should be granted.

6.     Further, if a presumption of correctness works the way presumptions typically do, then the burden to come forward with evidence should shift to parties who may oppose the fee award, which would mean that silence should not be sufficient to overcome the presumption. This is particularly true here, where lead Plaintiffs' determination and its attending presumption are accompanied by two other indicia of reliability. The first indicia is that no party objected to the Flanagan Firm's fee. While the court of appeals did suggest that the lack of an objection may be a reason to examine the fee application more carefully, *Flanagan, Lieberman, Hoffman & Swaim,* 814 F.3d at 659-660, this Court's analysis of that fact should also take into account the opportunities class members had to object and whether class members objected to any aspect of the settlement or proposal for fees. Here, class members were afforded multiple opportunities to object, and while some class members lodged general objections to the fee award, no class

member objected specifically to the Flanagan Firm's fee request. Stated another way, their silence in the face of an invitation and multiple opportunities to object is not so much silence as it is tacit approval.

7. In its December 4, 2012 Order Preliminarily Approving Proposed Settlement and Providing Notice, the Court gave class members the right to file written objections to Co-Lead's Counsel's motion for an award of attorneys' fees and required those objections to be filed on or before thirty-one days prior to the April 5, 2013 hearing. (Dkt. No. 771 at ¶¶ 2, 14). Several class members filed objections (Dkt. Nos. 836, 838, 841, 842 and 843), and while some of the objectors complained that the overall attorneys' fees were too high, none of them complained about the inclusion of the Flanagan Firm's fees in the total. In approving the class settlement and the attorneys' fees motion as to lead counsel, the Court found it significant that no institutional investors objected to the settlement or fee motion, and that even though copies of the settlement notice were mailed to more than 3.3 million potential class members, there were only ten objections to the requested award of fees and litigation expenses. (Dkt. No. 878 at 60:22-61:1; Dkt. No. 862 at ¶10(c)). These facts are also significant with respect to the Flanagan Firm's fee application. More than three million class members were invited to object to the Flanagan Firm's fee award, but none did. The failure of any class member to specifically object to that award is a fact which supports the presumption of correctness.

8. The opportunity to object presented itself again when the Flanagan Firm filed its Motion for Reconsideration, Vacation and Amendment of the April 8, 2013 Order which asked the Court to reconsider its denial of fees to the Flanagan Firm. (Dkt. Nos. 881-882). Despite the fact that the Court had criticized the Flanagan Firm's submission in open court during the April 5, 2013 hearing, no party responded or objected to the Flanagan Firm's Motion for

Reconsideration. Thus, the issue was again before the Court, but no class member opposed the Flanagan Firm's motion. Likewise, after the Flanagan Firm appealed the decision and filed its brief with the Second Circuit Court of Appeals, no attorney representing any party or class member filed a responsive brief to refute the Flanagan Firm's claim for fees. In short, there were multiple opportunities for absent class members to object to the award of fees to the Flanagan Firm, but no class member or other party objected. The absence of an objection despite multiple opportunities and a class consisting of millions of members indicates that class members were not opposed to the award of fees to the Flanagan Firm and did not feel their interests were being violated.

9. The second indicia of reliability supporting the presumption of correctness is that the total fee sought by all attorneys was within the percentage agreed upon by the lead Plaintiffs. As the Court will recall, at the outset of the action, the lead Plaintiffs insisted that the lowest fee grid among the retainer agreements previously executed between lead Plaintiffs and Co-Lead Counsel be utilized to calculate the percentage of attorneys' fees that counsel would be permitted to apply for in connection with the settlement. (Dkt. No. 829 at ¶181). Based on that agreement, Co-Lead Counsel applied for a fee award of 6.56% of the settlement amount, which included the Flanagan Firm's claim for fees. (*Id.*; Dkt. No. 829-10; Dkt. No. 878 at 64:11-17).

10. The court of appeals held that the inclusion of the Flanagan Firm's fee as part of an agreed percentage fee submitted to the Court supported the presumption of correctness with respect to Co-Lead Counsel's endorsement of the fee. 814 F.2d at 658-59. Indeed, both the lead Plaintiffs and Co-Lead Counsel have a fiduciary duty to not overpay attorneys' fees and would therefore not endorse the payment of fees to attorneys who had not worked for them. *Id.* at 659. Here, the lead Plaintiffs and Co-Lead Counsel agreed at the beginning to an extremely

reasonable 6.56% fee and their inclusion of the Flanagan Firm's fee as part of that 6.56% indicates that the rights of absent class members were protected because the fee requested was within the percentage agreed upon. Indeed, to disallow the Flanagan Firm's fee would act as a windfall to class members because it would reduce the overall percentage below the agreed amount and allow the class to benefit from the work of the Flanagan Firm attorneys without having to pay for it. Since the Flanagan Firm's fee was within the agreed upon percentage, and since no class member objected to the fee, the Flanagan Firm's fee application stands on firm ground and should be upheld.

11. In light of these indicia of reliability, the Court can acquit its duty to act as guardian for absent class members by accepting the presumption of correctness and awarding the Flanagan Firm its fee as requested below. But, if "more" is required, the Court's request for timesheets and other documentation showing the attorneys' work on the case satisfies that requirement because it allows the Court to verify that the Flanagan Firm performed the work that it claimed. Indeed, the requested documentation is different than what was submitted by Co-Lead counsel in support of their fee application. (Dkt. Nos. 829-11, 829-12, and 819-13). Co-Lead counsel did not submit their time sheets, but the Flanagan firm is submitting theirs. (Ex. 1-A). And, since the additional documentation verifies the Flanagan Firm's performance of substantial work on the case, the Court should uphold the presumption of correctness.

**III.**

### ADDITIONAL EVIDENCE SUBMITTED BY THE FLANAGAN FIRM SUPPORTS THE PRESUMPTION OF CORRECTNESS AND THE AWARD OF FEES

12. In accordance with the Court's Order requesting additional information, the Flanagan Firm is submitting with this application the Declaration of Dennis A. Lieberman with attached contemporaneously kept timesheets, a spreadsheet providing specific information

regarding time spent in communications with the clients, the attorney general's office, and Co-Lead Plaintiffs' counsel, a pie chart, and a color-coded version of the time-sheets. (*See* Exhibits. 1, 1-A, 1-B, 1-C and 1-D). In addition, the spreadsheet and pie chart submitted by the Flanagan Firm also track time for work performed pursuant to the direction of lead counsel; attorney reading and research; and internal communications between Flanagan Firm attorneys and/or staff.[2]

13.   These materials show that the Flanagan Firm worked closely with Co-Lead Counsel from the inception of the case in January 2009. The Court will note that the timesheets include six months of time before the appointment of Lead Plaintiffs and their counsel on June 30, 2009. Since the court of appeals made clear that the presumption of correctness applies only to fees for work performed after the appointment of lead counsel, the Flanagan Firm is withdrawing its request for fees for its pre-appointment work. This withdrawal reduces the Flanagan Firm's lodestar amount by $244,712.5.

14.   As for work performed after the appointment of lead counsel, the Flanagan Firm's time breaks down as follows:

| **Flanagan Firm Work** | **Hours** |
| --- | --- |
| Direct communication with the State Teachers' Retirement System of Ohio and the Ohio Public Employees Retirement System (not including communications through the Ohio Attorney General) | 53.25 |
| Communication with the Ohio Attorney General's Office | 112.75 |

---

[2]   In addition to these materials, the Flanagan Firm incorporates and relies on the evidence submitted with its original fee application and its motion for reconsideration. (*See,* Dkt. Nos. 827, 828, 829, 829-2, 829-3, 829-4, 829-5, 829-6, 829-7, 829-10, 829-14, 881, 882, 882-1, 882-2 and 882-3).

| | |
|---|---|
| Communication with Co-Lead Plaintiffs' Counsel | 671.75 |
| Work performed pursuant to direction of Co-Lead Plaintiffs' Counsel | 3,558.25 |
| Internal communication between Flanagan Firm attorneys and/0r staff | 617.25 |
| Attorney research and reading | 1,940.25 |

15.     As the timesheets show, Flanagan Firm attorneys were in contact with Co-Lead Plaintiffs' counsel as the case progressed.  They also had regular communications with the Ohio Attorney General's Office.  These communications included numerous consultations between Dennis Lieberman and lawyers in the Attorney General's Office regarding the proposed settlement of the case, (*See,* Ex. 1-A, and 1-D, time entries for 8/14/12, 8/19/12, 8/21/12, 8/22/12, 8/27/12, 8/30/12, 9/3/12, 9/6/12, 9/10/12, 9/12/12, 9/18/12, 9/27/12 and 10/3/12).  Mr. Lieberman benefitted the class as a whole  by communicating with the Attorney General's Office about the settlement proposal.  (Lieberman Declaration at ¶ 5) The timesheets also show communication with the Ohio governmental clients, but those communications occurred less frequently as the Flanagan Firm had been instructed to conduct its communications with the Ohio Attorney General.  (*Id.* at ¶ 4).

16.     The Court will note that the communications with Co-Lead Counsel category includes time spent on regular conference calls between Flanagan Firm attorneys, attorneys from the Ohio Attorney General's Office, and attorneys from the Bernstein Litowitz and Kaplan Fox firms. (Lieberman Declaration at ¶ 6).  These calls began prior to the appointment of Co-Lead Counsel and continued on a weekly or other regular basis throughout the pendency of the case. (*See, e.g.*, time entries for 7/2/09, 7/20/09, 7/27/09, 8/3/09, 8/10/09, 8/17/09, 8/24/09, 8/31/09,

9/16/09, 9/30/09, 10/5/09, 10/13/09, 11/18/09, 11/23/09, 11/30/09, 12/10/09 and 12/16/09). The Flanagan Firm's participation in these calls is further proof that it was an important part of the Plaintiffs' class action legal team and actively involved in the prosecution of this case. During these calls, counsel would discuss the progress of the case, ongoing work which needed to be completed, and litigation strategy. (Lieberman Declaration at ¶ 6). The Flanagan Firm was also in frequent e-mail communication with Co-Lead Counsel. (*Id.*).

17. In addition to regular telephone consultation with Co-Lead Counsel, Mr. Lieberman and other lawyers in his office traveled to New York on several occasions to meet with Co-Lead Counsel and to participate in mock trials and mediation sessions. (Lieberman Declaration at ¶ 6). (*See* Exhibits 1-A and 1-D, time entries for 4/26/10, 8/15/10, 9/30/10, 3/15/11, 7/11/12, and 9/4/12).

18. While not requested by the Court, the Flanagan Firm has also broken out the time it spent in performing work "pursuant to the direction of Lead Counsel." This time includes 3,558.25 hours spent by Flanagan Firm lawyers preparing and responding to discovery, reviewing various assigned batches of documents produced by the Defendants, conducting secondary document reviews in preparation for depositions and deposition summaries. This work establishes that the Flanagan firm was not acting in the capacity of "in-house counsel" tasked with monitoring litigation and reporting to company officials. To the contrary, this work was individually assigned to Flanagan Firm lawyers as part of their specific role in prosecuting this litigation. And it is not duplicative of work performed by other counsel. (Lieberman Declaration at ¶ 7). This work indisputably benefitted the entire class.

19. In addition, hours allocated to the categories of "attorney research and reading" and "internal communication between Flanagan Firm attorneys and/or staff" are likewise

reasonable and compensable. The Court is aware of the magnitude of the filings in this case and the complexity of the issues involved. In order to effectively participate on the team of lawyers representing the class, it was necessary for Flanagan Firm lawyers to spend time reviewing petitions, motions, responses and court orders. . (Lieberman Declaration at ¶ 8). It was likewise necessary for them to communicate among themselves regarding litigation strategy, legal and factual issues, document review and other discovery matters. (*Id.*). The timesheets, together with the spreadsheet, pie chart and Declaration of Dennis Lieberman serve to verify that the Flanagan Firm worked extensively on this case and that Co-Lead Counsel's endorsement of their request for fees was correct.

## IV

## **REQUESTED RELIEF**

20.    Based on the evidence submitted to the Court, the Flanagan Firm requests that the Court award attorneys' fees to it in the amount of $5,710,628.25. This amount represents a lodestar calculation for the Flanagan Firm's fee work after June 30, 2009 in the amount of $3,172,571.25 with a multiplier of 1.8 as used in the calculation of the fees for Co-Lead Counsel. The evidence submitted to this Court justifies the use of the same multiplier for the Flanagan Firm as was used for Co-Lead Counsel. This Court has already noted that the result for the class in this case was excellent. (Dkt. No. 878 p.59:30-60:6). The evidence attached to this application shows that the Flanagan Firm was working in close cooperation with Co-Lead Counsel. Further, the evidence shows that Dennis Lieberman was an important participant in the litigation process. (Lieberman Declaration at ¶¶ 4-5. *See also,* Dkt. Nos 882-1 at ¶¶ 3-6, 10 and 18; 882-2 and 882-3 [declarations of Dennis A. Lieberman, Matthew J. Lampke and William Schenk]). Because the Flanagan Firm was a valuable part of the Plaintiffs' litigation team, the

Court should use the same multiplier for the Flanagan Firm's fee as it used for Co-Lead Counsel's fee.

21. In addition to the award of these fees, the Flanagan Firm also requests reimbursement of its litigation expenses in the amount of $12,843.28, (Lieberman Declaration at ¶ 9), and interest on these sums earned while they have been on deposit.

## IV

## **CONCLUSION**

22. For the foregoing reasons, the Flanagan Firm respectfully requests that the Court award attorneys' fees to the Flanagan Firm in the amount of $5,710,628.25, reimbursement of litigation expenses in the amount of $12,843.28 and interest on all of these sums earned while they have been on deposit.

Respectfully submitted,

/s/ *Arthur R. Miller*
LANIER LAW FIRM, PLLC
Arthur R. Miller
Evan M. Janush
126 E. 56th Street, 6th Floor
New York, New York 10022
Phone: 212/421-2800
Fax: 212/421-2878
millera@exchange.law.nyu.edu
ejm@lanierlawfirm.com


LANIER LAW FIRM, P.C.
Kevin P. Parker
P.O. Box 691448
6810 FM 1960 West (77069)
Houston, Texas 77269-1448
Telephone: (713) 659-5200
Fax: (713) 659-2204
kpp@lanierlawfirm.com

## CERTIFICATE OF SERVICE

This is to certify that on May 23, 2016, a copy of Flanagan, Lieberman, Hoffman & Swaim's Corrected and Renewed Post-Remand Application for An Award of Attorneys' Fees and Litigation Expenses was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record. In addition, copies of said papers were served via First Class Mail upon the following, who are receiving service by means other than ECF:

Christopher W. Kaul
Kahn Swick & Foti, LLC
206 Covington Street
Madisonville, LA 70447

Darren J. Check
Schiffrin & Barroway, L.L.P.
Three Bala Plaza East
Bala Cynwyd, PA 19004

Edward Hutchinson Robbins , Jr
Miles and Stockbridge PC
10 Light St
Baltimore, MD 21202-1487

James N. Benedict
Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa St.
Los Angeles, CA 90017

Lowell Harry Haky
Charles Schwab and Co., Inc.
Office of Corporate Counsel
211 Main Street
SF211MN-6-455
San Francisco, CA 94105

N. Albert Bacharach , Jr
N. Albert Bacharach Jr.
115 Northeast 6th Avenue
Gainsville, FL 32601

Sean Miles Murphy
Milbank, Tweed, Hadley & McCloy LLP (NYC)
1 Chase Manhattan Plaza
New York, NY 10005

          LANIER LAW FIRM, PLLC

          */s/ Arthur R. Miller*
          Arthur R. Miller